Timothy T. Pridmore; SBN: 00788224
Todd J. Johnston; SBN: 24050837
MCWHORTER, COBB & JOHNSON, LLP
1722 Broadway (79401)
P. O. Box 2547
Lubbock, Texas 79408
806/762-0214; 806/762-8014 (fax)
*Attorneys for Debtors/Defendants/Counter-Plaintiffs/Third-Party Plaintiffs/Third-Party
Defendants 2B Farms, a Texas General Partnership, Terry M. Robinson, Rebecca A. Robinson
and Non-Debtor, Angela Robinson*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| McClain Feed Yard, Inc., et. al., | § | Case No. 23-200-84-rlj7 |
| *Debtors.* | § | Jointly Administered |
| | § | |
| In re: | § | |
| | § | |
| 2B Farms, a Texas General | § | Case No. 23-500096-rlj12 |
| Partnership, et. al., | § | Jointly Administered |
| *Debtors.* | § | |
| | § | |
| AgTexas Farm Credit Services, AgTexas PCA, | § | |
| Thorlakson Diamond T Feeders, LP, | § | |
| *Plaintiffs,* | § | |
| | § | |
| Edward Dufurrena, et. al., | § | Adversary No. 24-02007-rlj |
| *Intervernor-Plaintiffs,* | § | Consolidated Adversary Proceeding |
| | § | |
| v. | § | |
| | § | |
| Rabo AgriFinace, LLC, et. al., | § | |
| *Defendants.* | § | |
| | § | |
| HTLF Bank, as successor to First Bank & | § | |
| Trust, | § | |
| *Plaintiff, Counter-Defendant and* | § | |
| *Cross-Claim Defendant,* | § | |
| | § | |
| | § | |

{00811065.DOCX - ver}

<table>
<tr><td></td><td>§</td><td></td></tr>
</table>

|  | § |  |
|---|---|---|
|  | § |  |
| v. | § |  |
|  | § | Adversary No. 24-02007-rlj |
| 2B Farms, a Texas General Partnership, Terry | § | Consolidate Adversary Proceeding |
| M. Robinson, and Rebecca A. Robinson, | § |  |
| *Defendants, Counterclaim-Plaintiffs,* | § |  |
| *Third-Party Plaintiffs and Third-Party* | § |  |
| *Counterclaim Defendants,* | § |  |
|  | § |  |
| v. | § |  |
|  | § |  |
| Rabo AgriFinace, LLC and Mechanics Bank, | § |  |
| *Third-Party Defendants and, as to Rabo* | § |  |
| *AgriFinace LLC only, Third-Party.* |  |  |

### WITNESS AND EXHIBIT LIST

TO THE HONORABLE ROBERT L. JONES, BANKRUPTCY JUDGE:

**COME NOW**, 2B Farms, a Texas General Partnership, Terry M. Robinson and Rebecca A

Robinson (collectively, "**2B Farms**" and/or "**Debtors**") and file this Witness and Exhibit List for the

hearing set for January 15, 2025 at 1:30 p.m. on *Mechanics Bank's Motion for Protective Order and Stay*

*of Discovery Pending Ruling on Motion to Dismiss* [Adv. Dkt. # 37]  and 2B Farms' objection thereto

[Adv. Dkt. # 53], and would show the Court as follows:

### I.
### WITNESS LIST

2B Farms expects to call some or all of the following witnesses:

1.     none

2B Farms reserves the right to call rebuttal or impeachment witnesses, as may be necessary.

### II.
### EXHIBIT LIST

2B Farms intends to submit the following exhibits:

Exhibit "A"    Third-Party Plaintiff, 2B Farms' First Set of Discovery Requests to Mechanics
Bank dated October 16, 2024.

Exhibit "B"    Excerpts of the Deposition taken of Meagan Goad on July 16, 2024.

2B Farms reserves the right to offer any exhibit designated by other parties, present exhibits for rebuttal or impeachment purposes and to offer any documents or pleadings filed in this bankruptcy proceeding.

2B Farms further reserves the right to supplement or amend this list any time prior to the hearing.

DATED:  January 10, 2025.

Respectfully submitted,

**McWhorter, Cobb & Johnson, L.L.P.**
1722 Broadway (79401)
P.O. Box 2547
Lubbock, Texas 79408
(806) 762-0214 - Telephone
(806) 762-8014 – Facsimile

Timothy T. Pridmore
SBN:  00788224
*tpridmore@mcjllp.com*
Todd J. Johnston
SBN:  24050837
*tjohnston@mcjllp.com*

By: /s/ Timothy T. Pridmore
     Timothy T. Pridmore
***ATTORNEYS FOR DEFENDANTS, COUNTER-PLAINTIFFS, THIRD-PARTY PLAINTIFFS AND THIRD-PARTY DEFENDANTS 2B FARMS, A GENERAL TEXAS PARTNERSHIP, TERRY ROBINSON, REBECCA ROBINSON, AND ANGELA ROBINSON***

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025, the foregoing document was filed with the Clerk of the

Court using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in this

case, including the following:

- **Richard A. Illmer** *at rick.illmer@huschblackwell.com*
- **Lynn Hamilton Butler** *at lynn.butler@huschblackwell.com*
- **Alex Brakefield** at *alex.brakerfield@huschblackwell.com*

*/s/ Timothy T. Pridmore*
Timothy T. Pridmore

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| McClain Feed Yard, Inc., et. al., | § | Case No. 23-200-84-rlj7 |
| Debtors. | § | Jointly Administered |
| | § | |
| | § | |
| In re: | § | |
| | § | |
| 2B Farms, a Texas General | § | Case No. 23-500096-rlj12 |
| Partnership, et. al., | § | Jointly Administered |
| Debtors. | § | |
| | § | |
| | § | |
| AgTexas Farm Credit Services, AgTexas PCA, | § | |
| Thorlakson Diamond T Feeders, LP, | § | |
| Plaintiffs, | § | |
| | § | |
| Edward Dufurrena, et. al., | § | Adversary No. 24-02007-rlj |
| Intervernor-Plaintiffs, | § | Consolidated Adversary Proceeding |
| | § | |
| v. | § | |
| | § | |
| Rabo AgriFinace, LLC, et. al., | § | |
| Defendants. | § | |
| | § | |
| | § | |
| HTLF Bank, as successor to First Bank & Trust, | § | |
| Plaintiff, Counter-Defendant and | § | |
| Cross-Claim Defendant, | § | |
| | § | |
| v. | § | |
| | § | |
| 2B Farms, a Texas General Partnership, Terry M. | § | Adversary No. 24-02007-rlj |
| Robinson, and Rebecca A. Robinson, | § | Consolidate Adversary Proceeding |
| Defendants, Counterclaim-Plaintiffs, | § | |
| Third-Party Plaintiffs and Third-Party | § | |
| Counterclaim Defendants, | § | |
| | § | |
| v. | § | |
| | § | |
| Rabo AgriFinace, LLC and Mechanics Bank, | § | |
| Third-Party Defendants and, as to Rabo | § | |
| AgriFinace LLC only, Third-Party. | § | |

**THIRD-PARTY PLAINTIFF, 2B FARMS'**
**FIRST SET OF DISCOVERY REQUESTS TO MECHANICS BANK**

1

**TO:**    Mechanics Bank, by and through their attorneys of record Richard Illmer, Husch Blackwell LLP, 1900 N. Pearl Street, Suite 1800, Dallas, Texas 75201.

Third-Party Plaintiff 2B Farms serves these Requests for Admissions on Third-Party Defendant, Mechanics Bank ("Mechanics" or "Bank"), as allowed by FED. R. BANKR. P. 7936 and FED. R. CIV. P. 36. Mechanics must either admit or deny specifically the matters stated in the attached list of facts requested to be admitted, or set forth in detail the reasons why you cannot truthfully either admit or deny those facts. Each of the facts listed shall be deemed admitted, unless you make and deliver or cause to be delivered your response within thirty (30) days from the date of service of these discovery requests.

Pursuant to FED. R. BANKR. P. 7033 and FED. R. CIV. P. 33, you are to answer the attached Interrogatories separately, fully, in writing, and under oath. These Interrogatories should be answered based on all of the information available to Mechanics Bank, its agents, representatives, and attorneys. You should deliver a true copy of your answers to the attorney for 2B Farms, within thirty (30) days from the date of service of these discovery requests. You are under a duty to supplement your answers.

Pursuant to FED. R. BANKR. P. 7034 and FED. R. CIV. P. 34, you are to produce documents responsive to each request for production. You should deliver true and correct copies of your responsive documents to the attorney for 2B Farms, within thirty (30) days from the date of service of these discovery requests. You are under a duty to supplement your answers.

Respectfully submitted,

McWHORTER, COBB & JOHNSON, L.L.P.
1722 Broadway
P.O. Box 2547
Lubbock, Texas 79408
(806) 762-0214 - Telephone
(806) 762-8014 – Facsimile

Timothy T. Pridmore
SBN:  00788224
*tpridmore@mcjllp.com*
Todd J. Johnston
SBN:  24050837
*tjohnston@mcjllp.com*

By: */s/ Todd J. Johnston*
        Todd J. Johnston

***Attorneys for Third-Party Plaintiff 2B Farms***

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing instrument was on October 16, 2024, served on the attorneys of record via e-mail delivery, as follows:

Richard A. Illmer                         *Via e-mail delivery: Rick.Illmer@huschblackwell.com*
HUSCH BLACKWELL LLP
1900 N. Pearl St., Ste. 1800
Dallas, TX 75201

And

Lynn Hamilton Butler                      *Via e-mail delivery: Lynn.Butler@huschblackwell.com*
HUSCH BLACKWELL LLP
111 Congress Ave., Ste. 1400
Austin, TX 78701
*Attorneys for Mechanics Bank*

David L. LeBas                            *Via e-mail delivery: dlebas@namanhowell.com*
NAMAN HOWELL SMITH & LEE, PLLC
8310 N. Capital of Texas Hwy, Ste. 490
Austin, TX 78731
*Attorney for AgTexas Farm Credit Services, AgTexas, PCA,
and Thorlakson Diamond T Feeders, LP*

Michael Johnson                           *Via e-mail delivery: mjohnson@rqn.com*
RAY QUINNEY & NEBEKER, P.C.
36 South State St., Ste. 1400
Salt Lake City, UT 84111

And

Thomas C. Riney                           *Via e-mail delivery: Tom.Riney@uwlaw.com*
W. Heath Hendricks                        *Via e-mail delivery: Heath.Hendricks@uwlaw.com*
UNDERWOOD LAW FIRM, P.C.
P.O. Box 9158
Amarillo, TX 79105-9158
*Attorneys for Rabo AgriFinance, LLC*

John F. Massouh                           *Via e-mail delivery: john.massouh@sprouselaw.com*
SPROUSE SHRADER SMITH
P.O. Box 15008
Amarillo, TX 79105-5008
*Attorney for Intervenors in State Court Action*

Hudson M. Jobe                            *Via e-mail delivery: hjobe@jobelawpllc.com*
JOBE LAW PLLC
6060 North Central Expressway, Suite 500
Dallas, TX 75206
*Special Counsel for Kent Ries, Trustee*

3

/s/ Todd J. Johnston
Todd J. Johnston

4

# DEFINITIONS

1.    **Mechanics Bank**. The term "Mechanics" or "Bank" shall mean Mechanics Bank, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

2.    **MF**. The term "MF" shall mean McClain Farms, Inc., a Kentucky corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

3.    **MFY**. The term "MFY" shall mean McClain Feed Yards, Inc., a Texas corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

4.    **7M**. The term "7M" shall mean 7M Cattle Feeders, Inc, a Kentucky corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

5.    **McClain**. The term "McClain" shall mean Brian Keith McClain, aka Brian K. McClain, and also includes his agents, heirs and representatives, including but not limited to his estate, his widow Chelsea McClain, his former spouse Crystal McClain, his daughter Meagan B. Goad, f/k/a Meagan B. Powell, and his daughter Kinsey Moreland.

6.    **McClain Parties**. The term "McClain Parties" shall mean each and all of MF, MFY, 7M, and McClain, either individually or collectively as the context may require.

7.    **2B Farms**. The term "2B Farms" shall mean each and all of 2B Farms, a General Partnership, Terri M. Robinson, and/or Rebecca A. Robinson, all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing, and all affiliates of the foregoing.

8.    **Bankruptcy Cases**. The term "Bankruptcy Cases" refers to the Chapter 7 bankruptcy cases filed by each of MF, MFY and 7M in the United States Bankruptcy Court for the Northern District of Texas, which bankruptcy cases are being jointly administered under Case Number 23-20084-7-rlj.

9.    **Adversary**. The term "Adversary" refers to that certain consolidated adversary proceeding now pending in the United States Bankruptcy Court for the Northern District of Texas, consolidated under Adversary No. 24-02007-rlj.

10.    **Cattle**. The term "Cattle" shall mean any cattle or other livestock that was owned (in whole or in part by) by, under the control of, or in the possession of any of the McClain Parties.

11.    **USDA**. The term "USDA" shall mean the United States Department of Agriculture, Packers & Stockyards Division.

12.    **USDA Claims**. The term "USDA Claims" shall mean any and all claims filed with the USDA in 2023, which refer to, relate in any way to or assert claims against any of the McClain Parties.

13.    **McClain Accounts**. The term "McClain Accounts" shall mean any and all savings, checking, money market, demand, deposit, loan or other financial accounts owned by or in the name of any of the McClain Parties and held or located at Mechanics Bank during the Relevant Documents Time Period.

14.    **Trustee**. The term "Trustee" shall mean Kent Ries, the Chapter 7 Trustee for the estates of MFY, MF and 7M, as well as the Trustee's attorneys and other retained professionals.

15.    **Relevant Documents Time Period**. The term "Relevant Documents Time Period" shall mean the period from January 1, 2018 through the present.

16.    **Relevant Communications Time Period**. The term "Relevant Communications Time Period" shall mean the period from January 1, 2021 through the present.

17.    **Documents or Electronically Stored Information**. The term "documents or electronically stored information" shall be synonymous in meaning and equal in scope to the usage of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, *without limitation*, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent or received or neither, including the original, drafts, copies, and non-identical copies bearing notations or marks not found on the original, and includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, electronic mail messages, electronic text messages, voicemail, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files (including activity logs, records of internet and web browser generated files, history files, caches, and cookies), network access information, blogs, tweets, instant messages, letters, envelopes, telegrams, cables, telex messages, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcripts or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, invoices, or photographs, or other data compilations in any medium from which information can be obtained, including, but not limited to microfilms, magnetic tapes, electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart phones, and archives, and includes any other documents discoverable under Federal Rule of Civil Procedure 26, which are in your custody, possession, and/or control or to which you otherwise have access. The term "document" *also includes* file and folder tabs associated with each of the aforementioned originals, copies, drafts, or versions. The term "document" also includes "communication" as defined herein.

18.    **Communications**. The term "communications" shall be construed as broadly as possible, and shall include, but not be limited, to all e-mails, text messages, correspondence, memoranda, or other written documentation in any form.

19.    **Concerning**. The term "concerning" means referring to, referencing, reflecting, in connection with, describing, evidencing, indicating, supporting or constituting, digesting, embodying, establishing, tending to establish, tending not to establish, comprising, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, in whole or in part.

20.    **All/Each**. The terms "all" and "each" shall be construed as all and each.

21.    **And/Or**. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

22.    **Tense**. The use of the present tense includes the present and past tense, and the use of the past tense includes the past and present tense.

23.    **You/Your**. The terms "You" and/or "Your" means each, any and/or all of the 2B Parties.

## REQUESTS FOR ADMISSIONS TO MECHANICS BANK

1.    Admit that Mechanics Bank was aware of McClain Parties' fraudulent/check-kiting scheme at any time prior to April 4, 2023.

**RESPONSE:**

2.    Admit that Mechanics Bank exercised control over the McClain Accounts at any time between April 4-15, 2023.

**RESPONSE:**

3.    Admit that Mechanics Bank's uses check kiting data-analytics software, or similar check kiting detection software, on the accounts that it maintains for its customers.

**RESPONSE:**

4.    Admit that Mechanics Bank's check kiting data-analytics software alerted it of the McClain Parties' check kiting scheme at some point prior to April 4, 2023.

**RESPONSE:**

5.    Admit that Mechanics Bank held a separate "bank-controlled account" through which it cleared certain items from the McClain Accounts. *See* Interrogatory No. 3 below.

**RESPONSE:**

6.    Admit that Mechanics Bank allowed the following wire deposit into the McClain Accounts from 2B Farms' account:

| Wire Out Date | Recipient | Amount |
|---|---|---|
| April 4, 2023 | McClain Feedyard, Inc. | $2,473,847.58 |

**RESPONSE:**

7.    Admit that Mechanics Bank allowed the following wire deposit into the McClain Accounts from 2B Farms' account:

| Wire Out Date | Recipient | Amount |
|---|---|---|
| April 5, 2023 | McClain Feedyard, Inc. | $2,499,037.72 |

**RESPONSE:**

8.  Admit that Mechanics Bank allowed the following wire deposit into the McClain Accounts from 2B Farms' account:

| Wire Out Date | Recipient | Amount |
|---|---|---|
| April 6, 2023 | McClain Feedyard, Inc. | $2,486,071.62 |

**RESPONSE:**

9.  Admit that Mechanics Bank prevented the following check from clearing the McClain Accounts:

| Check | Date of Check | Amount of Check |
|---|---|---|
| McClain Farms Inc. Check # 7331 | April 4, 2023 | $2,530,920.39 |

**RESPONSE:**

10. Admit that Mechanics Bank prevented the following check from clearing the McClain Accounts:

| Check | Date of Check | Amount of Check |
|---|---|---|
| McClain Farms Inc. Check # 7620 | April 5, 2023 | $2,559,407.02 |

**RESPONSE:**

11. Admit that Mechanics Bank prevented the following check from clearing the McClain Accounts:

| Check | Date of Check | Amount of Check |
|---|---|---|
| McClain Farms Inc. Check # 7621 | April 6, 2023 | $2,510,991.45 |

**RESPONSE:**

12. Admit that Mechanics Bank was able to avoid deficits on the McClain Accounts (i.e. an overdrawn account), by allowing deposits to come into the McClain Accounts, while at the same time, preventing certain checks from clearing the McClain Accounts, including the checks written to 2B Farms referenced in Request for Admissions No. 9, 10 and 11 above.

**RESPONSE:**

13. Admit that Mechanics Bank delivered $1,414,714.60 to the Trustee from the McClain Accounts.

**RESPONSE:**

14. Admit that Rabo AgriFinance shared with Mechanics Bank information its investigators discovered regarding potentially fraudulent activities in the McClain Feed Yard operations prior to April 4, 2023.

**RESPONSE:**

15. Admit that Mechanics Bank protected itself prior to April 4, 2023, when it became aware of McClain Feed Yard's fraudulent activities.

**RESPONSE:**

16.  Admit that, upon becoming aware of McClain Feed Yard fraudulent activities, Mechanics Bank's actions related to Requests for Admissions No. 6 through 11 above damaged 2B Farms.

**RESPONSE:**

## INTERROGATORIES TO MECHANICS BANK

1.  Explain when any Mechanics Bank officer, employee or agent first became aware of or suspected McClain's fraudulent/ check kiting scheme being conducted through the McClain Accounts and the actions the Bank took as a result of this notice.

**ANSWER:**

2.  Explain in detail (including time, date, method and parties involved) when Mechanics Bank was contacted by a representative of Rabo AgriFinance notifying it of the McClain Parties' fraudulent/check kiting scheme.

**ANSWER:**

3.  Rabo AgriFinance's stated the following in its *Response to the Trustee's (A) Motion for Status Conference on Trustee's Notice of USDA Approved Trustee Claims, and (B) Notice of Approved Trust Claims* [Bankruptcy Case # 23-20084-rlj7, Dkt. # 134. P. 10]:

> Furthermore, on April 5, 2023, or prior to the Petition Date, Rabo exercised its rights under the DACAs by delivering to Mechanics Bank its *Written Instructions to Freeze MFI Account, 7M Account and MFY Account, and to Prevent Items from Being Withdrawn or Paid from the MFI Account, 7M Account and MFY Account* (the "**Freeze and Turnover Letter"**). After it received the Freeze and Turnover Letter, on information and belief, Mechanics Bank cleared certain items from the Debtors' accounts using a bank-controlled account, and then remitted the $1,414,714.60 to the Trustee. Significantly, the only accounts that the Debtors had at Mechanics Bank were the three accounts upon which Rabo had a DACA. Thus, the entirety of the $1,414,714.60 consists upon cash upon which Rabo had a perfected lien by control, and it does not matter that Mechanics Bank first placed the funds into a bank-controlled account before sending the funds to the Trustee. That bank-controlled account consisted entirely of the Debtors' funds upon which Rabo had a security interest perfected by control, and the funds are clearly traceable to the Debtors (why else would Mechanics Bank have turned them over).

Explain in detail what Mechanics Bank did in relation to Rabo AgriFinance's statement that, Mechanics Bank had a "bank-controlled account" with respect to transactions related to the McClain Accounts and that it "cleared certain items from the Debtors' accounts" referenced in the above paragraph.

**ANSWER:**

4.  Explain why Mechanics Bank allowed wire deposits from 2B Farms' account referenced in Request for Admission Nos. 6 through 8 above while at the same time preventing checks drawn on the McClain Accounts made payable to 2B Farms from clearing the McClain Accounts referenced in Request for Admission Nos. 9 through 11 above.

**ANSWER:**

5.  Explain how Mechanics Bank was able to deliver $1,414,714.60 to the Trustee while checks drawn on the McClain Accounts made payable to 2B Farms referenced in Requests for Admission Nos. 9 through 11 above did not clear the McClain Accounts.

**ANSWER:**

6.  If your response to the Request for Admissions No. 1 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

7.  If your response to the Request for Admissions No. 2 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

8.  If your response to the Request for Admissions No. 3 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

9.  If your response to the Request for Admissions No. 4 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

10. If your response to the Request for Admissions No. 5 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

11. If your response to the Request for Admissions No. 6 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

12. If your response to the Request for Admissions No. 7 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

13. If your response to the Request for Admissions No. 8 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

14. If your response to the Request for Admissions No. 9 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

15. If your response to the Request for Admissions No. 10 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

16. If your response to the Request for Admissions No. 11 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

17. If your response to the Request for Admissions No. 12 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

18. If your response to the Request for Admissions No. 13 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

19. If your response to the Request for Admissions No. 14 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

20. If your response to the Request for Admissions No. 15 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

21. If your response to the Request for Admissions No. 16 contained herein is not an unqualified admission, please state the scope of your denial and state the legal theories and describe the general factual bases for such denial.

**ANSWER:**

22. Has any government representative or regulatory agency contacted you about the McClain activities, and if so, please identify who, when and subject matter of same.

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS TO MECHANICS BANK

1.  Please produce all e-mail, text or other written or electronic forms of communication sent to or from Jamie Rabitin, Mechanics Bank's Senior Vice President/Direct of Commercial Servicing, with any party that in any way concerns the McClain Accounts from February 1, 2023 – April 30, 2023.  **Said communications should include, but not limited, internal correspondence by and between any Mechanics Bank employees as well as by and between Megan Goad, Brian McClain and/or any representative of Rabo AgriFinance.**

    **RESPONSE:**

2.  Please produce all documents produced by Mechanics Bank in response to the Subpoena For Rule 2004 Production of Documents served by Creditors AgTexas Farm Credit Services, AgTexas PCA and Thorlakson Diamond T. Feeders, LP on or about November 10, 2023.

    **RESPONSE:**

3.  Please produce any notice(s) generated by any check kiting data-analytics software, or any similar check-kiting detection software, utilized by Mechanics Bank that was delivered to any officer or employee or agent regarding the deposits and/or withdrawals through the McClain Accounts held at Mechanics Bank.

    **RESPONSE:**

4.  Please produce any documents that support your claim against 2B Farms.

    **RESPONSE:**

5.  Please produce any documents that support your claim against Rabo.

    **RESPONSE:**

6.  Please produce any documents that support your claim against HTLF Bank, successor to First Bank & Trust.

    **RESPONSE:**

7.  Please produce any documents that support your defensive claims/arguments against 2B Farms.

    **RESPONSE:**

8.  Please produce any documents that support your defensive claims/arguments against Rabo.

    **RESPONSE:**

9.  Please produce any documents that support your defensive claims/arguments against First Bank & Trust.

    **RESPONSE:**

10. Please produce any documents you have presented to any expert in this case.

    **RESPONSE:**

11. Please produce any documents used to answer these discovery requests, or that supports your position taken in same.

    **RESPONSE:**

## VERIFICATION

THE STATE OF _____ §

§

COUNTY OF _____ §

     **BEFORE ME**, the undersigned authority, on this day personally appeared the Affiant, _____, of Mechanics Bank, its _____, known to me to be the person whose name is subscribed to the above and foregoing instrument. After being first duly sworn, Affiant declared under oath that he/she has read the attached answers to interrogatories, and that each answer is true and correct according to his/her personal knowledge and belief.

_____

     SWORN TO AND SUBSCRIBED BEFORE ME by the said _____, of Mechanics Bank, its _____, on this the _____ day of _____, 2024, to certify which witness my hand and seal of office.

_____

Notary Public, State of _____

16

# EXHIBIT "B"

1

```
             IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       AMARILLO DIVISION
```

IN RE:                        |  CASE NOS. 23-20084-7-rlj
                              |             23-20085-7-rlj
McCLAIN FEEDYARD, INC.;       |             23-20086-7-rlj
McCLAIN FARMS, INC.; and      |
7M CATTLE FEEDERS, INC.,      |
                              |
     Debtors.                 |  CHAPTER 7

---

## DEPOSITION OF MEAGAN GOAD

---

     The deposition of MEAGAN GOAD, taken by Rabo
AgriFinance, LLC, pursuant to Subpoena on Tuesday, the
16th day of July, 2024, at the hour of 9:57 a.m., at
the Law Offices of Farmer & Wright, 4975 Alben Barkley
Drive, Suite 1, in the City of Paducah, County of
McCracken, State of Kentucky, before me, Amy S.
Fleming, RPR, CSR, and Notary Public in and for the
Commonwealth of Kentucky at Large, to be used for the
purpose of discovery and/or evidence and all other
purposes allowed under the Federal Rules of Bankruptcy
Procedure.

---

            WEST KENTUCKY REPORTING SERVICE, INC.
              -Registered Professional Reporters-
               -Certified Shorthand Reporters-
                 125 Nahm Street, Suite 105
                  Paducah, Kentucky 42001
                       (270)443-9631
                    info@wkrsdepo.com

2

APPEARANCES

FOR RABO AGRIFINANCE:

Michael R. Johnson, Esq.
Matthew Cannon, Esq.  (via Zoom)
RAY, QUINNEY & NEBECKER, PC
36 South State Street, Suite 1400
Salt Lake City, UT 84111
mjohnson@rqm.com

Linda Kobliska, Esq.
Head of Litigation & Asset Recovery
RABO DIVERSIFIED SERVICES
1402 Technology Parkway
Cedar Falls, IA 50613
linda.kobliska@raboag.com

Brad Bakker, Esq.  (via Zoom)
RABO DIVERSIFIED SERVICES
14767 North Outer 40 Road, Suite 400
Chesterfield, MO  63017
brad.bakker@raboag.com

FOR HTLF BANK:

John Lovell, Esq.
Matthew S. Merriott, Esq.  (via Zoom)
LOVELL, ISERN & FARABOUGH, PLLC
112 SW 8th Avenue, Suite 1000
Amarillo, TX 79101-2314
john@lovell-law.net
matthew@lovell-law.net

FOR AGTEXAS PCA AND DIAMOND T FEEDERS:

David L. LeBas, Esq.
Naman, Howell, Smith & Lee, PLLC
8310 N. Capital of Texas Highway, Suite 490
Austin, TX 78731
dlebas@namanhowell.com

3

```
 1                   APPEARANCES (continued)

 2

    FOR 2B FARMS, TERRY AND REBECCA ROBINSON:
 3
    Todd J. Johnston, Esq.  (via Zoom)
 4  McWHORTER COBB & JOHNSON, LLP
    1722 Broadway
 5  Lubbock, TX  79401
    tjohnston@mcjllp.com
 6

 7  FOR MAP ENTERPRISES:

 8  Thomas A. Swafford, Esq.  (via Zoom)
    SWAFFORD LAW
 9  414 Union Street, Suite 1900
    Nashville TN 37219
10  tony@swaffordlawfirm.com

11

    FOR KENT RIES, CHAPTER 7 TRUSTEE:
12
    Hudson Jobe, Esq.  (via Zoom)
13  JOBE LAW, PLLC
    6060 North Central Expressway, Suite 500
14  Dallas, TX 75206
    hjobe@jobelawpllc.com
15

16

    FOR DENNIS BUSS, ET AL
17
    John Massouh, Esq. (via Zoom)
18  Sprouse Shrader & Smith
    701 South Taylor Street, Suite 500
19  Amarillo, TX 79101
    john.massouh@sprouselaw.com
20

21  FOR WILD FOREST CATTLE:

22  David Kelly, Esq. (via Zoom)
    KEULER, KELLY, HUTCHINS, BLANKENSHIP & SIGLER, LLP
23  100 South 4th Street, Suite 400
    Paducah, KY 42001
24  dkelly@kkhblaw.com

25
```

MEAGAN GOAD

4

```
 1                   APPEARANCES (continued)

 2

     FOR RIDGEFIELD CAPITAL ASSET MANAGEMENT; ROBERT ELLIS;
 3   DREW PHILLIPS; BARRY PHILLIPS; ROBERT CARRAWAY;
     CARRAWAY CATTLE, LLC; AND BIG SEVEN CATTLE, LLC:
 4
     Amber Miller, Esq.  (via Zoom)
 5   CRENSHAW DUPREE & MILAM
     Happy State Bank Building
 6   4411 98th Street, Suite 400
     Lubbock, TX 79424
 7   amiller@cdmlaw.com

 8

     FOR MECHANICS BANK:
 9
     Javon Johnson, Esq.     (via Zoom)
10   HUSCH BLACKWELL
     1900 North Pearl Street
11   Suite 1800
     Dallas, TX 75201-2467
12   javon.johnson@huschblackwell.com

13
     FOR THE WITNESSES MEAGAN GOAD, WILLIAM JEDEDIAH GOAD,
14   AND KINSEY MORELAND

15   Charity Bird, Esq.
     KAPLAN JOHNSON ABATE & BIRD, LLP
16   710 West Main Street, 4th Floor
     Louisville, KY 40202
17   cbird@kaplanjohnsonlaw.com

18   Todd A. Farmer, Esq.
     FARMER & WRIGHT, PLLC
19   4975 Alben Barkley Drive, Suite 1
     Paducah, KY 42001
20

21   ALSO PRESENT:

22
       Tom Thorlakson
23     Diamond T Feeders

24     Ben Thorlakson     (via Zoom)
       Diamond T Feeders
25
```

130

1  that.
2       Were you aware on April 5, 2023, Rabo
3  AgriFinance instructed Mechanics Bank to freeze
4  accounts of McClain and McClain Farms?
5  **A.  Was I aware on this date?**
6  Q.  Yes.
7  **A.  No, sir.**
8  Q.  When did you become aware of that event?
9  **A.  On the 6th, when I tried to log into the**
10 **bank account online.**
11 Q.  And that would have been April 6th, 2023?
12 **A.  Yes, sir.**
13 Q.  Do you know who the person is that received
14 this letter, I mean, who it's addressed to?  Do you
15 know who that is, Jamie Rabitin?
16 **A.  I spoke with her some, but, no, I don't.**
17 **She did not -- I did not have a business**
18 **relationship with her.**
19 Q.  You spoke with her by telephone?
20 **A.  Or email, yes.**
21 Q.  Did you meet her in person anywhere?
22 **A.  Not that I'm aware of.  I -- but I don't**
23 **remember.**
24 Q.  When did you exchange electronic
25 communications or phone calls, have phone calls

131

1  with Ms. Rabitin?
2  **A.  That would have -- are you asking when did**
3  **I --**
4  Q.  Yes.
5  **A.  -- when did we get --**
6  Q.  Yes.
7  **A.  I don't know.  I -- she was who I would --**
8  **she is who I would contact if I had any issues with**
9  **deposits on online banking.**
10 Q.  So she was your contact person at Mechanics
11 Bank?
12 **A.  Yes.**
13 Q.  Did you understand that Mechanics Bank was
14 accepting deposits and would honor checks
15 pertaining to the McClain account and the Rabo
16 AgriFinance line of credit?
17 **A.  Can you rephrase your question?**
18 Q.  I'll try.  You're aware that Rabo
19 AgriFinance is not a bank that accepts deposits and
20 honors checks?
21 **A.  Yes, sir.**
22 Q.  And that the line of credit for Rabo as a
23 result had to go through a depository bank?
24 **A.  Yes.**
25 Q.  Are you aware of that?

132

1  **A.  Yes, sir.**
2  Q.  And that the depository bank in that
3  relationship was Mechanics Bank?
4  **A.  Yes.**
5  Q.  Then Ms. Rabitin, was she the person that
6  you would interact with at Mechanics Bank when you
7  had questions about the account?
8  **A.  I would never have questions about the**
9  **accounts.  Brian spoke with her more than I did.  I**
10 **would just have questions if the checks -- if -- it**
11 **was only on online banking is what I would have if**
12 **I needed -- if something happened with one of our**
13 **deposits or something didn't read correctly on one**
14 **of the deposits would be when I would talk to her.**
15 **I didn't have any other conversations with her.**
16 Q.  So I hate to use this word, but I don't
17 know a better one.  The mechanics of the bank
18 account, making sure that deposits were accounted
19 for, checks that were presented for payment were
20 actually paid, Jamie would be the person that you
21 would interact with at the Mechanics Bank about
22 those subjects?
23 **A.  I wouldn't interact with anyone about those**
24 **subjects.  That would be Brian.**
25 Q.  Give us an example of what would prompt

133

1  your communication with Jamie.
2  **A.  If I had a check that I was depositing on**
3  **the online banking and there was an issue with it**
4  **or if they had a deposit limit -- so if the deposit**
5  **limit needed to be raised, I would contact her to**
6  **raise the deposit limit.**
7  Q.  What would be a problem with a check
8  presented for deposit?
9  **A.  If it didn't read correctly on the reader**
10 **that it would scan through.**
11 Q.  Did you have a scanner at your office --
12 **A.  Yes, sir.**
13 Q.  -- at the barn?
14 **A.  Yes, sir.**
15 Q.  And so if you got a check from someone that
16 dealt with this account, it would scan the check
17 in?
18 **A.  Yes.**
19 Q.  And send it to the Mechanics Bank account?
20 **A.  Yes.**
21 Q.  And if something was smudged or something
22 and the bank couldn't read the check, then you
23 would have a discussion with Jamie about that
24 problem?
25 **A.  Yes.**

154

1  Q.  What does that mean?
2  A.  I don't know.  That's why I asked.  "Is
3  everything okay?"
4    He responded with "Absolutely."
5    I said, "Okay."
6    And he said, "Nothing to do with here."  So
7  I dropped it.
8  Q.  And I can't tell from this if that was on
9  March 20 or not, but the next entry did occur on
10  March 20?
11  A.  Yes.
12  Q.  And you say, "I need to get at least a
13  million from Bo."
14  A.  Yes.
15  Q.  And does that mean $1 million from Bo
16  Robinson?
17  A.  That was on the transactions that we had
18  talked about on the phone, and I was telling him
19  what was going to be coming from Bo.
20  Q.  Why did you need to get at least $1 million
21  from Bo?
22  A.  Because that's what -- I was texting him so
23  he would tell me if -- what I was doing on the
24  paperwork, to text him what I was doing.  Like, he
25  told me what to do, but then he would tell me to

155

1  text him the same thing, basically, so he could
2  have it in front of him.  And that's just what he
3  had told me to do.
4  Q.  All right.  And then your next entry, you
5  tell him, "I only have 772 from Sam.  I didn't do
6  Friday."
7    What does that mean?
8  A.  So that would be invoices on Wild Forest
9  that -- that was the total of the invoices from
10  Wild Forest that were done -- or not done on the
11  Friday before.  So I guess he had told me to add up
12  the invoices from Sam that were not done on the
13  Friday prior.
14  Q.  "772," does that mean $772,000?
15  A.  Yes.
16  Q.  And then you say, "Do some from Friday?"
17    And he says, "Yes.  Remember deposit
18  limit."
19    What does that mean?
20  A.  We had a deposit limit.
21  Q.  Who's "we"?
22  A.  McClain Farms, Feedyard, 7M.
23  Q.  What was the deposit limit?  Was it an
24  amount?
25  A.  Yes, sir.

156

1  Q.  And was the amount an amount of dollars
2  that could be deposited on a single day at
3  Mechanics Bank?
4  A.  Yes, sir.
5  Q.  What was the total amount of that limit?
6  A.  If you would have asked me a year ago, I
7  probably could have told you.
8  Q.  You don't remember today?
9  A.  I can't remember today, no, sir.
10  Q.  All right.  Well, it might come to you.
11    And then you say to him, "That's why I have
12  to do so much of Bo."
13    What does that mean?
14  A.  Bo would wire money in instead of a check,
15  and so he would want more money to get wired in
16  than a check.
17  Q.  I don't understand "wanting to get more
18  money wired in than a check."
19  A.  Because of the deposit limit, we could only
20  deposit so much money, so they would have -- it
21  would only --
22    Wires didn't count in the deposit limit, so
23  we could only physically deposit so much money.
24  And he would want -- need so much more money to
25  come in, and so that money would be in wires.

157

1    MR. MICHAEL JOHNSON:  So you're saying the
2  wire -- they could wire you a hundred million
3  dollars?
4    THE WITNESS:  Yes, they could wire a
5  hundred million dollars.  It didn't matter.
6  BY MR. LEBAS:
7  Q.  The deposit limit applied to checks and not
8  to --
9  A.  Yes, sir.
10  Q.  -- electronically transmitted funds --
11  A.  That's correct.
12  Q.  -- right?
13    Was there some amount that you had in mind
14  that you needed to get in deposits, whether they
15  were checks or wires?
16  A.  It would have been an amount he told me.
17  Q.  That "he" being Brian --
18  A.  Yes.
19  Q.  -- told you?
20  A.  That's correct.
21  Q.  So he might say just, for example, "Today
22  we need $8,500,000"?
23  A.  Yes.
24  Q.  And if the deposit limit is 1 million, then
25  you need 7,000,500 from electronic sources?

162

1  Q.  And he'd bring the cattle here to be sorted
2  or to -- I mean, your dad pens in Kentucky to be
3  sorted?
4  A.  Yes, sir.
5  Q.  So that's what was happening here?
6  A.  Yes, sir.
7  Q.  Do you have -- would you turn to the next
8  page, please?  It's Number 00340.
9  A.  Yes, sir.
10  Q.  The entries I want to ask you about start
11  on April 3.  There's a -- something that your dad
12  sent with some information about "Jared Lesh
13  cowhorses inc"?
14  A.  Yes.
15  Q.  And that looks to me like a printout, or at
16  least an electronic version, of someone's contact
17  information.  Is that what that is?
18  A.  To me it looks like wire instructions.
19  Q.  Okay.  You're ahead of me.  Do you know why
20  your dad sent you wire instructions for Jared Lesh
21  Cowhorses, Inc.?
22  A.  With the next message being sent, I'm going
23  to say I was supposed to send a wire to Jared.
24  Q.  Do you know what the amount was?
25  A.  Absolutely not.

163

1  Q.  You just don't recall the transaction?
2  A.  No.
3  Q.  Then we're going now further into the day,
4  April 3.  All that happened at 12:55, the
5  information about Mr. Lesh.
6        Then April 3, the next -- that evening, he
7  says, "Limit is raised."
8        You get that and you say, "Okay."
9        Do you recall what that's about?
10  A.  That would be the deposit limit for the day
11  was raised.
12  Q.  So that means that limit we talked about
13  in my hypothetical of $1 million, that got raised
14  to -- I'll make it up -- say $2 million?
15  A.  Yes, sir.
16  Q.  Do you know what the new deposit limit was
17  after April 3, 2023?
18  A.  They would only raise it as -- day by day.
19  It was not permanently raised.
20  Q.  When you say they would always -- only
21  raise it --
22  A.  Mechanics.
23  Q.  -- who's "they"?
24  A.  Mechanics.
25  Q.  So Mechanics would raise the deposit limit

164

1  on a day-by-day basis from time to time?
2  A.  Yes, sir.
3  Q.  How would you find out about that?
4  A.  How would I find out the deposit limit was
5  raised?
6  Q.  Yes.
7  A.  That would be one of the things that Jamie
8  did.
9  Q.  So Jamie -- if she did it, though, how
10  would you find out about it?
11  A.  She would email.  It would have to be
12  requested.
13  Q.  And who would do the request?
14  A.  Me or Brian.
15  Q.  How would you make that request?
16  A.  Email.
17  Q.  Now we're in the next day, April 4, 2023,
18  8:09 a.m.  You say, "She is getting phone numbers."
19  "Told her I didn't have Tom's."
20        Do you know what that's about?
21  A.  She was -- there was a lady from Rabo
22  there.  I don't know what she was doing because I
23  was not privy to any of that information.  I was
24  only told to speak with her when she wanted to
25  speak with me and to stay sparse the rest of the

165

1  time.  And told her I didn't have Tom's number
2  because I did not have Tom's number saved in my
3  phone.
4  Q.  And "Tom" being Tom Thorlakson --
5  A.  Yes, sir.
6  Q.  -- who's here today with --
7        You said a lady from Rabo was where?
8  A.  At the barn in Benton.
9  Q.  With you in your office?
10  A.  Yes.
11  Q.  At the barn?
12  A.  Yes.
13  Q.  Do you remember her name?
14  A.  No, sir.
15  Q.  Was she alone, or did she come with someone
16  else?
17  A.  I feel like there was somebody else there,
18  but I don't really recall much.
19  Q.  A man or a woman?
20  A.  It would have been a man.
21  Q.  Do you recall his name?
22  A.  No, sir.
23  Q.  Did they tell you why they were there?
24  A.  No.
25  Q.  Did you know they were coming?

206

1     _____

2          MEAGAN GOAD

3  COMMONWEALTH OF KENTUCKY    )
                                )

4  COUNTY OF _____ )

5      I certify that this deposition was signed in my
   presence by MEAGAN GOAD, on the _____ day of

6  _____, 2024.

7      IN WITNESS WHEREOF, I have hereunto set my hand and
   affixed my seal of office on this the _____ day of

8  _____, 2024.

9      _____
        Notary Public No. _____

10       State of Kentucky at Large

11  My Commission expires _____.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

208

1  COMMONWEALTH OF KENTUCKY

2  COUNTY OF McCRACKEN

3
        I, AMY S. FLEMING, RPR, CSR, and Notary

4  Public in and for said Commonwealth of Kentucky at
   Large, do hereby certify that the above and foregoing

5  is a true, correct, and complete transcript of the
   deposition of MEAGAN GOAD, taken at the time and place

6  and for the purpose set out in the caption hereof; that
   said witness was duly sworn by me; that said deposition

7  was taken down in stenotype by me and thereafter
   transcribed; that the appearances were as set out in

8  the caption hereof.

9      I further certify that I am neither attorney
   for, nor counsel for, nor related to, nor employed by

10  any of the parties to the action in which this
   deposition is taken; and further, that I am not a

11  relative or employee of any attorney or counsel
   employed by the parties hereto nor financially

12  interested in the action.

13      My commission expires on June 16, 2027.

14      Given under my hand and seal of office on
   this the 29th day of July, 2024.

15

16

            /s/ Amy S. Fleming

17          AMY S. FLEMING, RPR, CSR
            Notary Public No. KYNP73114

18          State of Kentucky at Large

19

20

21

22

23

24

25

207

1      E R R A T A   S H E E T

2

   DEPOSITION OF:  MEAGAN GOAD

3  DATE TAKEN:   July 16, 2024
   RE:      CHAPTER 7 BANKRUPTCY

4          McCLAIN FEEDYARD, McCLAIN FARMS,
           AND 7M CATTLE FEEDERS

5

6  INSTRUCTIONS  After reading the transcript of
   your deposition, please note any change or

7  correction and the reason therefor on this
   sheet. Do not make any marks or notations on

8  the transcript itself.

9  PAGE   LINE   CHANGE/CORRECTION AND REASON

10  _____  _____  _____

11  _____  _____  _____

12  _____  _____  _____

13  _____  _____  _____

14  _____  _____  _____

15  _____  _____  _____

16  _____  _____  _____

17  _____  _____  _____

18  _____  _____  _____

19  _____  _____  _____

20  _____  _____  _____

21  I have read the foregoing transcript of my
   deposition and, except for any corrections or

22  changes noted above, I hereby subscribe to the
   transcript as an accurate record of the

23  statements made by me.

24

        _____

25          MEAGAN GOAD