UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

--and--

Michael R. Johnson (*Pro Hac Vice*)
Matthew M. Cannon (*Pro Hac Vice*)
Austin C. Nate (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com
Email:  mcannon@rqn.com
Email:  anate@rqn.com

*Attorneys for Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| In re:<br><br>MCCLAIN FEED YARD, INC., et al.,<br><br>    Debtors. | CASE NO. 23-20084-rlj7<br><br>(Jointly Administered Cases) |
|---|---|

| | |
|---|---|
| In re:<br><br>2B FARMS, a Texas General Partnership, et al.,<br><br>    Debtors.<br><br>AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA and THORLAKSON DIAMOND T FEEDERS, LP,<br><br>    Plaintiffs,<br><br>EDWARD DUFURRENA et al.,<br><br>    Intervenor Plaintiffs,<br><br>v.<br><br>RABO AGRIFINANCE LLC et al.,<br><br>    Defendants. | CASE NO. 23-50096-rlj12<br><br>(Jointly Administered Cases)<br><br><br><br>ADVERSARY NO. 24-02007-rlj<br><br>(Consolidated Adversary Proceeding) |
| HTLF BANK, as successor to FIRST BANK & TRUST,<br><br>    Plaintiff, Counter-Defendant, and Cross-Claim Defendant,<br><br>v.<br><br>2B FARMS, a Texas General Partnership, TERRY M. ROBINSON, and REBECCA A. ROBINSON,<br><br>    Defendants, Counterclaim-Plaintiffs, Third-Party Plaintiffs and Third-Party Counterclaim Defendants,<br><br>v.<br><br>RABO AGRIFINANCE LLC and MECHANICS BANK, | ADVERSARY NO. 24-02007-rlj<br><br>(Consolidated Adversary Proceeding) |

| | |
|---|---|
| Third-Party Defendants and, as to Rabo AgriFinance LLC only, Third-Party Counterclaim Plaintiff and Cross-Claim Plaintiff.<br><br>HTLF BANK, as successor to FIRST BANK & TRUST,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>2B FARMS, a Texas General Partnership, TERRY M. ROBINSON, and REBECCA A. ROBINSON,<br><br>    Defendants and Counter-Plaintiffs. | |

**RABO AGRIFINANCE LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS PETITION IN INTERVENTION**

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), made applicable to this Adversary Proceeding by Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure, Defendant Rabo AgriFinance LLC ("**Rabo**"), through counsel, hereby submits this brief in support of its motion to dismiss the Petition in Intervention [Dkt No. 9] (the "**Petition**") filed by Intervenors Ridgefield Capital Asset Management, LP, Robert Ellis, Carraway Cattle, LLC, Big Seven Capital Partners, LLC, Richard Carraway, Drew Phillips, Barry Phillips, Priest Cattle Company, Ltd ("**Priest**"), Priest Victory Investment LLC, Wiley Roby Russell, Jr., W. Robbie Russell Living Trust, and Eddie Stewart (collectively, "**Intervenors**").

**SUMMARY OF THE ARGUMENT**

Intervenors assert seven claims against Rabo: conversion; common law fraud; negligent lending, hiring, and supervising; aiding and abetting fraud; civil conspiracy; conversion based on a contract and breach of contract; and declaratory judgment. Each of these claims should be dismissed. Because Intervenors' claims center on a fraudulent scheme carried out by the McClain Entities, each of Intervenors' claims must satisfy Rule 9(b)'s heightened pleading standard. Intervenors' claims fail to meet this standard. None of Intervenors' claims include the who, what, when, where, and how allegedly giving rise to such claims, and Intervenors consistently lump the Defendants together, failing to segregate the unlawful conduct allegedly committed by each Defendant.

In addition to being inadequately pleaded, many of Intervenors' claims fail as a matter of law. As to Intervenors' fraud claim, Intervenors can cite to no duty to disclose that Rabo owed to Intervenors. As to their negligence-based claims, Intervenors can cite to no legal duty that Rabo owed to Intervenors, nor can Intervenors contend that their alleged injuries were foreseeable. As to Priest's conversion claim related to the Letter of Understanding ("**LoU**"), that claim is barred by the economic loss rule. And as to Priest's claim for breach of the LoU, Priest fails to adequately allege any facts when, taken as true, demonstrate a breach by Rabo. Indeed, Priest does not even identify the cattle and proceeds he claims Rabo took in violation of the LofU. For these reasons, the Motion should be granted, and Intervenors' claims should be dismissed.

4

## ARGUMENT

Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure apply to adversary proceedings pursuant to Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure. *See* Fed. Bank. R. 7009, 7012(b). Rule 12(b)(6) governs dismissals for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Although courts accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff" in analyzing a Rule 12(b)(6) motion, "a complaint may be dismissed if it clearly lacks merit—for example, where there is 'an absence of law to support a claim of the sort made.'" *Thurman v. Med. Transportation Mgmt., Inc.*, 982 F.3d 953, 955–56 (5th Cir. 2020). Moreover, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This requires, at a minimum, that a plaintiff plead the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Colquitt v. Abbott Lab'ys*, 858 F.3d 365, 371 (5th Cir. 2017). Moreover, "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)." *Busch v. Basic Organics, Inc.*, No. CIVA 3:06CV2261 L, 2007 WL 603385, at *6 (N.D. Tex. Feb. 27, 2007). And if a plaintiff fails to satisfy this pleading standard, "[t]he application of Rule 9(b) is . . . fatal" to its claims, and they must be dismissed. *Elson v. Black*, 56 F.4th 1002, 1008 (5th Cir. 2023).

As shown below, all of Intervenors' claims fail under these basic pleading requirements, and the Petition should be dismissed on such grounds. Dismissal is also warranted based on Intervenors' failure to allege facts supporting essential elements of their claims.

### I. THE PETITION FAILS TO ALLEGE FACTS SUPPORTING CONVERSION.

Under Texas law, "[c]onversion occurs when, wrongfully and without authorization, one assumes and exercises control and dominion over the personal property of another, either inconsistently with or to the exclusion of the owner's rights." *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012). When the alleged conversion relates to money (proceeds), however, the plaintiff must satisfy additional requirements. *See id.* "It is well settled that money can be a subject of conversion *only* if it can be described or identified as a specific chattel." *Campbell v. Fort Worth & W. R.R.*, No. 4:09-CV-037-Y, 2010 WL 11570869, at *5 (N.D. Tex. Mar. 24, 2010) (emphasis added). Specifically, "[a]ctions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (cleaned up). And, critically, "when a claim, such as conversion, is based on allegations of fraud, the heightened pleading standard of Rule 9(b) must be satisfied." *Travelers Cas. & Sur. Co. of Am. v. Nelms*, No. 3:16-CV-00080-DMB-RP, 2017 WL 1101099, at *7 (N.D. Miss. Mar. 22, 2017); *Sgaliordich v. Lloyd's Asset Mgmt.*, No. 1:10-CV-03669 ERK, 2012 WL 4327283, at *5 (E.D.N.Y. Sept. 20, 2012) (explaining that Rule 9(b)'s heightened standard applies to conversion claims "when the underlying acts are allegedly fraudulent").

Here, Intervenors fail to allege facts supporting their conversion claim. First, Intervenors do not allege that Rabo converted any actual cattle.[1] Instead, it appears that Intervenors base their claim on Rabo allegedly converting proceeds of cattle that would have been sold by the McClain Entities. However, Intervenors fail to identify what specific proceeds Rabo allegedly converted, or who, among the Intervenors, such proceeds even belonged to. Indeed, Intervenors provide *no* specificity or identification of the proceeds that Rabo allegedly converted, instead contending that Rabo generally converted proceeds belonging to Intervenors because it loaned money to the McClain Entities and received payments from them. Such vague and ambiguous allegations fail to provide Rabo with adequate notice regarding the basis of Intervenors' claims.

Second, and relatedly, Intervenors fail to include any allegations (nor could they) that they delivered proceeds to Rabo for safekeeping that were intended to be segregated in a particular form or intact fund. In other words, Intervenors have failed to advance the very allegations necessary to support a claim for conversion of money. This is a second and independent basis for dismissing the claim.

Third, the Petition makes clear that Rabo's alleged conversion of proceeds is based entirely on the McClain Entities' fraudulent scheme. (*See* Petition at ¶¶ 18-24.) As a result, Intervenors'

---

[1] To the extent Intervenors contend that Rabo did convert cattle, Intervenors fail to provide *any* specificity related to that alleged conversion, including the dates of the alleged conversion, how many head were converted, who the cattle were sold to, etc. Simply put, they fail to allege which cattle were allegedly converted, or when, where, or how such conversion took place. Also, as a matter of fact, Rabo never took any cattle from the McClain Debtors. Shortly before the bankruptcy filing the CRO of the McClain Debtors delivered cattle to auction houses in Texas and Kentucky and those cattle were liquidated. The proceeds were then turned over to Kent Ries, the Chapter 7 Trustee.

7

conversion claim must satisfy Rule 9(b)—a standard that the Petition clearly does not satisfy. In addition to the above-identified deficiencies, the Petition is virtually silent regarding the who, what, when, where, and how of Intervenors' conversion claim. Specifically, the Petition fails to identify what specific proceeds were converted or when or where such conversion took place. Likewise, it fails to differentiate which proceeds belonged to which Intervenor or even the *amount* of proceeds that each Intervenor allegedly possessed.

In short, Intervenors fail to allege facts supporting their claim for conversion and the claim should be dismissed.

## II. INTERVENORS HAVE FAILED TO ADEQUATELY ALLEGE COMMON LAW FRAUD.

To support their fraud claim, Intervenors generally allege that Defendants, collectively, made misrepresentations to Intervenors, Intervenors relied on such misrepresentations and suffered injury therefrom. (Petition at ¶ 31.) Intervenors' allegations are insufficient under Rule 9(b) for multiple reasons. As an initial matter, Intervenors lump together all the Defendants and fail to segregate out each Defendant's alleged wrongdoing. On this basis alone, Intervenors' common law fraud claim should be dismissed. Regardless, and despite generally alleging that Defendants, including Rabo, made misrepresentations, Intervenors never actually identify what the alleged misrepresentations were, who made them, when they were made, where they were

made, or how they were made. In other words, Intervenors' common law fraud claim contains *none* of the requisite allegations to satisfy Rule 9(b)'s heightened pleading standard.[2]

Although the Petition is unclear, to the extent Intervenors base their common law fraud claim on alleged fraudulent non-disclosure, it fails for precisely the same reasons. Moreover, to allege fraud by nondisclosure, Intervenors were required to plead the following elements:

> (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge.

*Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App. 2013). Not only do Intervenors fail to allege, specifically or generally, any of the foregoing elements, but Intervenors *cannot* allege that Rabo owed them a duty to disclose. A duty to disclose arises in the following circumstances:

> A party has an affirmative duty to disclose where there is a confidential or fiduciary relationship or where a party later learns that a previous affirmative representation was false or misleading. A duty to disclose also arises when one party knows that the other party is relying on the concealed fact, provided that he knows that the relying party is ignorant of the facts and does not have an equal opportunity to discover the truth. In addition, when one voluntarily discloses information, he has a duty to disclose the whole truth rather than making a partial disclosure that conveys a false impression.

---

[2] Intervenors may attempt to cite to Paragraphs 19-24 for the alleged specifics related to their fraud claim. Those paragraphs, however, fail to allege any misrepresentations purportedly made by Rabo such that they cannot save the deficient Petition as it relates to Rabo. (*See* Petition at ¶¶ 19-24.)

*World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. App. 1998) (citations omitted). None of the foregoing circumstances apply in this case. As a result, Intervenors' common law fraud claim against Rabo must be dismissed.

### III. INTERVENORS' NEGLIGENT LENDING, HIRING, AND SUPERVISION CLAIMS FAIL.

To state a claim for negligence generally, "a plaintiff must be able to prove three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach." *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App. 2012). "The threshold inquiry in a negligence case is duty. . . . If there is no duty, liability for negligence cannot exist." *Id.* Similarly, "[t]o successfully prosecute a claim of negligent hiring, supervision, or retention, a plaintiff is required to show that (1) the employer owed a legal duty to protect third parties from the employee's actions, and (2) the third party sustained damages proximately caused by the employer's breach of that legal duty." *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 655 (Tex. App. 2002). A "plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." *Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 384 (Tex. App. 2005). As to proximate cause, a plaintiff must demonstrate foreseeability—*i.e.*, "that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission." *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 648 (S.D. Tex. 2016).

In this case, Intervenors' negligence-based claims fail for several reasons. First, Intervenors once again fail to segregate the alleged acts of wrongdoing among each of the Defendants. As a

result, Rabo has no notice of the alleged wrongful acts purportedly giving rise to Intervenors' claims.

Second, Intervenors fail to allege that Rabo owed them any duty. Nor can they. As a matter of law, Rabo owed no legal duty to Intervenors related to its lending, hiring, or supervising practices because they were not Rabo's customers. *See Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 800 Fed. Appx. 239, 248 (5th Cir. 2020) (holding that "in the absence of a fiduciary or confidential relationship, a bank owes no duty to a person with whom the bank has not dealt and otherwise has no relationship"); *Marlin v. Moody Nat'l Bank, N.A.*, 248 Fed. Appx. 534, 550 (5th Cir. 2007) ("Further, a bank owes a duty of care to its customer but not third parties"); *Guerra v. Regions Bank*, 188 S.W.3d 744, 777 (Tex. App-Tyler 2006, no pet.) ("Because he was not a Regions customer and had no other relationship with Regions, as a matter of law Regions owed no duty to Appellant"). And this only makes sense. Otherwise, every lending institution would be on the hook for the fraudulent or unlawful conduct committed by its borrowers using loaned funds. Intervenors were not Rabo's borrowers, and Rabo owed them no duties with respect to the loans it made to the McClain Entities. Indeed, if Rabo owed Intervenors a duty (and it did not), then it likewise owed a duty to *everyone* that the McClain Entities had any business dealings with. That cannot possibly be the case.

Third, beyond Intervenors' failure to allege the existence of a duty, the Petition fails to allege that any Rabo employee committed an independent, actionable tort against Intervenors. To the extent Intervenors contend that Rabo employee's committed common law fraud against them, such claims fail for all the reasons set forth above.

11

Fourth, Intervenors fail to allege that their alleged injuries were foreseeable. While Intervenors claim that their alleged injuries were proximately caused by Rabo, they never contend that they were foreseeable. This is likely because such alleged injuries *were not* foreseeable as a matter of law. Simply put, it was not foreseeable that Brian McClain and his entities would use funds loaned for legitimate business purposes to perpetrate a multi-million-dollar fraud resulting in third parties, including Rabo, losing tens of millions of dollars.

Therefore, for each of these reasons, Intervenors' negligence-based claims must be dismissed.

### IV. INTERVENORS' AIDING AND ABETTING FRAUD CLAIM FAILS AND SHOULD BE DISMISSED.

To state a claim for aiding and abetting, a plaintiff must allege five elements:

> (1) the primary actor committed a tort; (2) the defendant had knowledge that the primary actor's conduct constituted a tort; (3) defendant had intent to assist the primary actor; (4) defendant gave the primary actor assistance or encouragement; and (5) defendant's conduct was a substantial factor in causing the tort.

*Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 882 (Tex. App. 2017). Importantly, Rule 9(b)'s heightened pleading standard applies to aiding and abetting fraud claims. *Ebert v. Gustin*, No. 4:15-CV-00225-O, 2016 WL 11663146, at *6 (N.D. Tex. May 19, 2016); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 539 (S.D. Tex. 2011).

Here, Intervenors simply incorporate AgTexas's allegations from the Third Amended Petition. (Petition at ¶¶ 40-41.) As set forth in Rabo's motion to dismiss AgTexas's Third Amended Petition [Dkt No. 19], those allegations do not adequately state a claim for aiding and abetting

12

fraud. Specifically, Intervenors fail to allege that Rabo (1) knew that the McClain Entities were committing fraud; (2) had intent to assist the McClain Entities in perpetrating the fraud; or (3) gave the McClain Entities assistance or encouragement in perpetrating the fraud. The exclusion of such allegations from the Petition makes perfect sense when viewed in context: it would defy any sense of reality for Rabo to actively participate or otherwise assist in a fraudulent scheme resulting in its own $50 million+ net loss. Instead, Intervenors merely allege that Rabo made legitimate loans to the McClain Entities, which the McClain Entities ultimately used along with the Intervenors' own money—all without Rabo's knowledge—to carry out their fraudulent scheme. Such allegations are insufficient to state a plausibly aiding and abetting fraud claim. Simply put, it is not plausible that Rabo would conspire with or aid and abet the McClain Debtors in their fraudulent conduct when the result of that would be that Rabo would lose over $50 million.

Additionally, Intervenors' claim fails for their failure to allege with any specificity how Rabo aided and abetted the McClain Entities in perpetrating their fraudulent scheme. Therefore, Intervenors have failed to adequately allege aiding and abetting fraud, and it should be dismissed.

V.  **INTERVENORS FAIL TO STATE A CLAIM FOR CIVIL CONSPIRACY.**

"A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose by unlawful means." *Hunt v. Baldwin*, 68 S.W.3d 117, 133 (Tex. App. 2001). A civil conspiracy claim has five elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages." *Id.* In pleading the foregoing elements, a plaintiff must satisfy Rule 9(b)'s

heightened pleading standard. *Bertrand v. White*, No. 1:09-CV-358, 2009 WL 10682257, at *3 (E.D. Tex. July 7, 2009).

Intervenors' civil conspiracy claim fails for several reasons. First, as with the majority of Intervenors' claims, the Petition fails to segregate the unlawful conduct allegedly committed by each Defendant. Instead, Intervenors merely lump Defendants together without providing any specificity as to their allegedly unlawful acts. As noted above, such allegations do not meet Rule 9(b)'s pleading standard such that dismissal is warranted. *See Busch*, 2007 WL 603385, at *6.

Second, although Intervenors generally assert that Rabo committed "unlawful and overt acts," they never identify any "unlawful and overt acts" allegedly committed by Rabo. Indeed, the Petition fails to allege when such acts allegedly occurred, who committed them, and how they occurred. Similarly, the Petition does not even identify who was involved in the alleged conspiracy, alleging only that it included "Defendants and their agents, employees and/or representatives." (Petition at ¶ 44.)

Lastly, Intervenors include no allegations regarding an object to be accomplished. Nor can they because, if they did, Intervenors would be required to allege that Rabo agreed to participate in a civil conspiracy with the purpose of defrauding itself and causing itself a loss of over $50 million. Of course, such allegations would make no sense and would not be close to plausible. Accordingly, Intervenors have failed to adequately allege their civil conspiracy claim such that the Motion should be granted.

### VI. THE COURT SHOULD DISMISS PRIEST'S LOU CLAIM(S).

As one of the final "claims," Priest includes various allegations related to the LoU. (*See* Petition at ¶¶ 47-50.) As an initial matter, it appears that Priest's LoU claim is a duplicate of Intervenors' conversion claim. (*See* Petition at ¶ 50 ("Priest is entitled to and seeks recovery of judgment for breach of contract and *conversion* against Rabo for its acquiring and sale of cattle belonging to Priest.") (emphasis added).) For all the reasons set forth above, Intervenors, including Priest, have failed to adequately allege a conversion claim, and this claim must likewise be dismissed.

Regardless, by asserting a conversion claim based on the LoU, Priest concedes that such claim is barred by the economic loss rule. "Under Texas law, the economic loss rule generally prevents recovery in tort for purely economic damage unaccompanied by injury to persons or property." *Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804, 808 (5th Cir. 2020). "The rule is based on the proposition that commercial parties may negotiate for whatever warranty or liability limits they choose, and adjust their price accordingly." *Id.* The rule also "performs a critical boundary-line function, separating the law of torts from the law of contracts. More specifically, [t]he underlying purpose of the economic loss rule is to preserve the distinction between contract and tort theories in circumstances where both theories could apply." *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 240 (Tex. 2014) (cleaned up). By basing its conversion claim on the LoU, Priest concedes that its "claim" sounds in contract, not tort. As a result, Priest's conversion claim based on the LoU is barred by the economic loss rule as a matter of law and should be dismissed.

Priest also contends that Rabo somehow breached the LoU. (Petition at ¶ 50.) Under Texas law, the elements of a breach of contract claim are "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App. 2015) (internal quotation marks omitted).

Here, the Petition fails to satisfy even the bare bones pleadings standards of Civil Procedure Rule 8 as it is devoid of the threshold allegations necessary for a breach of contract claim. First, Priest does not allege whether it performed under the LoU. Second, Priest fails to identify any particular provisions of the LoU that Rabo supposedly breached. While Priest contends that the LoU generally acknowledged that Priest owned certain cattle, Priest fails to allege any provisions, duties, obligations, warranties, or covenants that Rabo owed and/or breached in the LoU. (*See* Petition at ¶¶ 48-50.) Fourth, Priest does not identify the specific cattle or proceeds that Priest claims Rabo took in violation of the LoU. As such, Priest has failed to adequately allege a breach of contract claim, and such claim should be dismissed.[3]

## VII. THE COURT SHOULD DISMISS INTERVENORS' DECLARATORY JUDGMENT CLAIMS.

At the very end of the Petition, "Intervenors seek declaratory judgment as to priority of their claims to cattle and sales proceeds." (Petition at ¶ 52.) Again, however, Intervenors fail to

---

[3] While not directly germane to Rabo's Motion, Rabo finds Priest's argument ironic given the undisputed fact that, on April 18, 2023, Priest removed from the McClain Debtors' facility in Friona, Texas 523 head of yearling cattle. Those cattle were apparently marked with a "Double Slash" brand belonging to Priest. In short, to the extent Priest had cattle at the McClain Debtors' facilities it appears that Priest removed them. In any event, they clearly were not taken by Rabo.

provide any allegations related to this claim or what "priority of their claims to cattle and sales proceeds" even means. Therefore, the Court should dismiss this claim for being inadequately pled.

## CONCLUSION

WHEREFORE, Rabo prays that the Motion be granted in its entirety and that all of Intervenors' claims against Rabo be dismissed.

DATED: January 17, 2025.

                                                UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

--and--

RAY QUINNEY & NEBEKER P.C.
Michael R. Johnson *(Pro Hac Vice)*
Matthew M. Cannon *(Pro Hac Vice)*
Austin C. Nate *(Pro Hac Vice)*
36 South State, Suite 1400
Salt Lake City, UT 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: mcannon@rqn.com
Email: anate@rqn.com


*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

17

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2025, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in this case.

>                               */s/ Michael R. Johnson*
>                               Michael R. Johnson

1693490