John H. Lovell, SBN 12609300
john@lovell-law.net
LOVELL ISERN & FARABOUGH, LLP
112 SW 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Phone: (806) 373-1515
Fax:    (806) 379-7176

--and—

Matthew S. Merriott, SNB 24100846
mmerriott@mhba.com
MULLIN HOARD & BROWN, L.L.P.
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086

*Attorneys for First Bank & Trust, a
division of UMB Bank n.a., successor by
merger to HTLF Bank.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: McClain Feed Yard, Inc., et al, | § § § § | Case No. 23-20084-swe7 Jointly Administered |
| Debtors. | § | |
| | § § | |
| In re: 2B Farms, a Texas General Partnership, et al, | § § § | Case No. 23-50096-swe12 Jointly Administered |
| Debtors. | § § | |
| | § § | |
| AgTexas Farm Credit Services, AgTexas PCA, and Thorlakson Diamond T Feeders, LP, | § § § § | |
| Plaintiffs, | § § | |
| Edward Dufurrena, et al, | § § | |
| Intervenor-Plaintiffs, | § | Adversary No. 24-02007-swe |
| v. | § | Consolidated Adversary Proceeding |

Rabo AgriFinance, LLC, et al,                    §
                                                 §
 Defendants                                 §
                                                 §
          §
                                                 §
HTLF Bank, as successor to First Bank & Trust,   §
                                                 §
 Plaintiff, Counter-Defendant, and          §
 Cross-Claim Defendant,                     §
v.                                               §
                                                 §
2B Farms, a Texas General Partnership,           §
Terry M. Robinson, and Rebecca A. Robinson,      §
                                                 §
 Defendants, Counterclaim-Plaintiffs,       § Adversary No. 24-02007-swe
 Third-Party Counterclaim Defendants,       § Consolidated Adversary Proceeding
v.                                               §
                                                 §
Rabo AgriFinance, LLC and Mechanics Bank,        §
                                                 §
 Third-Party Defendants and, as to          §
 Rabo AgriFinance, LLC only, Third-         §
 Party Counterclaim Plaintiff and           §
 Cross-Claim Plaintiff.                     §
                                                 §
          §
HTLF Bank, as successor to First Bank & Trust,   §
                                                 §
 Plaintiff and Counter-Defendant,           §
v.                                               §
                                                 § Adversary No. 24-02007-swe
                                                 § Consolidated Adversary Proceeding
2B Farms, a Texas General Partnership,           §
Terry M. Robinson, and Angela Robinson,          §
                                                 §
 Defendants and Counter-Plaintiffs[1]       §

---

[1] These claims were originally pending as Adversary No. 23-05003-rlj but were previously consolidated under Adversary No. 23-05002-rlj.

**HTLF'S BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS
2B FARMS' SECOND AMENDED COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), made applicable to this Adversary Proceeding by Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure, *First Bank & Trust, a division of UMB Bank n.a., successor by merger to HTLF Bank* ("**HTLF**")[2] hereby submits this brief in support of its motion to dismiss certain claims in the Second Amended Complaint the ("**Complaint**") filed by 2B Farms, a Texas general partnership, Terry M. Robinson and Rebecca A. Robinson (collectively "**2B Farms**").

## I.    INTRODUCTION

1.    In almost every cause of action asserted against HTLF, 2B Farms' allegations against HTLF are either purely conclusory recitations of the elements of the cause of action at issue or state facts that would not satisfy those elements.  While 2B Farms has included detailed factual allegations about HTLF's actions, such allegations, even if true, fail to state would not satisfy the elements of the causes of action they assert. As a result, 2B Farms should be required to replead with sufficient facts or the Complaint should be dismissed as to HTLF.

## II.    SUMMARY OF 2B FARMS' FACTUAL ALLEGATIONS

2.    2B Farms claims to have been damaged during the course of and during the collapse of the cattle business operated by McClain Farms Inc., McClain Feedyards Inc., and 7M Cattle Feeders, Inc. (collectively "**McClain**"). [Doc. 104, ¶9]. In general, 2B Farms asserts that McClain

---

[2] UMB is a national bank chartered and regulated by the Office of the Comptroller of the Currency. UMB is located in Kansas City, Missouri, with its corporate headquarters and principal place of business at 1010 Grand Boulevard, Kansas City, Missouri. Heartland Financial USA, Inc. was a bank holding company whose wholly owned subsidiary was HTLF Bank, successor to First Bank & Trust. UMB Bank, n.a., acquired HTLF Bank via merger on January 31, 2025. HTLF Bank is now operating as UMB Bank, n.a., and First Bank & Trust is now operating as a division of UMB Bank, n.a.  UMB Bank n.a. is a wholly-owned subsidiary of UMB Financial Corporation, a publicly traded corporation. There is no publicly held corporation that holds 10% or more of UMB Financial Corporation stock.

provided feed and care for their cattle. [Doc. 104, ¶9]. 2B Farms asserts that they either delivered these cattle to McClain or paid McClain to purchase cattle on their behalf. [Doc. 104, ¶¶9, 34, 73].

3. The Complaint alleges that McClain was operating a fraudulent scheme. [Doc. 104 ¶ 10]. Specifically, it alleges that McClain was (1) misrepresenting the quantity of cattle in his possession; (2) misrepresenting the ownership of cattle; and (3) misrepresenting the use of funds paid to McClain by 2B Farms. [*See, e.g.,* Doc. 104 ¶¶ 31, 77].

4. In February 2023, Rabo Agrifinance, LLC ("**Rabo**"), McClain's lender, conducted an inspection and discovered that McClain was grossly over-reporting the number of cattle in his possession. [Doc. 104, ¶31]. 2B Farms asserts that after this inspection, Rabo took control of McClain's operation. [Doc. 104, ¶33]. 2B Farms asserts that Rabo liquidated the remaining cattle, which belonged to 2B Farms and other third parties. *Id*. The Complaint asserts that under Rabo's control, McClain continued to receive 2B Farms' payments for cattle and feed. [Doc. 104, ¶34].

5. 2B Farms asserts that it was damaged by (1) the loss of cattle that they owned; (2) the loss of cattle proceeds, including the wrongful dishonor of 3 checks for cattle sales totaling $7,601,318.86; (3) the loss of the funds paid for cattle, including the 3 cattle purchase wires totaling $7,458,956.92. [*See, e.g.*, Doc. 104 ¶¶ 72-73, 93-94].

6. HTLF was a lender to 2B Farms. 2B Farms' essential factual allegations as to HTLF are:

   a. That HTLF processed banking transactions between McClain and 2B Farms. [Doc. 104 ¶ 70].

   b. That HTLF employees would complete McClain checks by filling in the amount of 2B Farm's share of cattle proceeds and deposit such checks in 2B Farms' account. [Doc. 104 ¶ 71]. (Notably, 2B Farms does not and cannot allege that such actions were taken without 2B Farms' consent).

   c. That HTLF gave 2B Farms a provisional credit for at least the Cattle Sales Checks prior to receiving a final settlement for the checks by the payor bank. [Doc. 104 ¶ 72].

d. That HTLF allowed 2B Farms to use the provisional credit to send the Cattle Purchase Wires to McClain. [Doc. 104 ¶ 73].

e. That HTLF should have identified the fraud and prevented 2B Farms from being injured. [Doc. 104 ¶ 77].

2B Farms alleges that, at least as to the Cattle Sales Checks, that those checks represent the proceeds of actual cattle owned by 2B Farms and sold by McClain. [Doc. 104 ¶ 72]. 2B Farms also alleges that McClain's bank account had a sufficient balance to satisfy the Cattle Purchase Checks. [Doc. 104 ¶¶ 72, 75].

## III.  STANDARD OF REVIEW

7.      Rule 12(b)(6) governs dismissals for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The question before the Court in considering a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) is whether a plaintiff has plead a plausible and legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

8.      In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and determine whether those facts, and the reasonable inferences from those facts, would entitle a plaintiff to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). However, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007). Even where the facts are adequately pleaded, "a complaint may be dismissed if it clearly lacks merit—for example, where there is 'an absence of law to support a claim of the sort made.'" *Thurman v. Med. Transportation Mgmt., Inc.*, 982 F.3d 953, 955–56 (5th Cir. 2020).

9.      Allegations of fraud are subject to the higher pleading standard of Rule 9(b). "At a minimum, Rule 9(b) requires that the plaintiff specify the particulars of "time, place, and contents of the false representations." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997). "Put

simply, Rule 9(b) requires the who, what, when, where, and how [of the alleged fraud] to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003).

## IV.    ARGUMENT

### A.  Count One (Conversion) - 2B Farms fails to state a claim for conversion as to HTLF.

10.      2B Farms' factual allegations of conversion are centered on Rabo's actions, even stating that it has a conversion claim "to the extent that Rabo and/or Mechanics Bank acquired cattle or proceeds belonging to Plaintiffs." [Doc. 104 ¶ 91]. Yet such allegations are directed at "Defendants" generally. *Id*. To the extent that 2B Farms intends to assert a conversion claim against HTLF, such an allegation is a conclusory statement with no factual support sufficient to state a cause of action. Under Texas law, "[c]onversion occurs when, wrongfully and without authorization, one assumes and exercises control and dominion over the personal property of another, either inconsistently with or to the exclusion of the owner's rights." *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012). The Complaint does not identify any improper act of dominion or control by HTLF over 2B Farms' cattle or proceeds. As a result, the conversion portion of Count One should be dismissed as to HTLF.

### B.  Count One (Fraud) - 2B Farms fails to state a claim for fraud as to HTLF.

11.      2B Farm's allegations of fraud are purely conclusory as to HTLF. The elements of fraud are "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). In alleging fraud, 2B Farms is required to plead the fraud with particularity. Fed. R. Civ. P. 9(b).

12.     Instead of identifying any misrepresentations from HTLF to 2B Farms, the Complaint makes general and conclusory allegations that merely recite the elements of fraud:

> The Defendants made misrepresentations to Plaintiffs recklessly without any knowledge of the truth and as a positive assertion. Moreover, the misrepresentations were made with the intention that they should be acted on by Plaintiffs, and Plaintiffs in fact relied upon those misrepresentations, suffering injury and damage as a result thereof. Thus, the misrepresentations and reliance so described were a proximate cause of injury and damage to Plaintiffs for which they now sue in a sum within the jurisdictional limits of the Court.

[Doc. 104 ¶ 94]. The Complaint fail to identify any specific representations that HTLF made to 2B Farms. "When multiple defendants are alleged to have committed fraudulent acts, a party claiming fraud 'must plead with sufficient particularity attribution of the alleged misrepresentations or omissions to each defendant…'" *Hidden Values, Inc. v. Wade*, No. 3:11-CV-1917-L, 2012 WL 1836087, at *4 (N.D. Tex. May 18, 2012) *quoting Coates v. Heartland Wireless Comms., Inc.*, 26 F.Supp.2d 910, 915 (N.D.Tex.1998). Nor does the Complaint state how 2B Farms relied on any representations or that those representations were false.  Having failed to identify any misrepresentations by HTLF, 2B Farms has failed to adequately plead a cause of action for fraud, either under Rule 12(b)(6) or under Rule 9(b). As a result, the fraud portion of Count One should be dismissed as to HTLF.

## C. Negligence

13.     The Complaint asserts various theories of negligence. 2B Farms asserts ordinary negligence and gross negligence in Count Twelve. 2B Farms' second cause of action is captioned "negligence of Defendants in lending and hiring or supervision or management personnel." [Doc. 104, at IV.B]. 2B Farms' third cause of action is for negligent undertaking.

> **i. Count Twelve - 2B Farms fails to state a claim for negligence or gross negligence.**

14.    The elements of negligence are (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach." *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App.—El Paso 2012, no pet.).

15.    The Complaint fails to state a claim for negligence due to the absence of a common law duty. 2B Farms alleges that HTLF breached duties arising under "its own loan agreement, policies, procedures, and state/federal regulations…" [Doc. 104 ¶ 149]. Such allegations are insufficient to allege a duty that can support a claim for negligence or gross negligence.

16.    While 2B and HTLF have a contractual relationship, a breach of such contractual duties cannot give rise to a claim for negligence unless the breach "would give rise to liability independent of the fact that a contract exists between the parties…" *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Absent a special relationship,[3] banks do not owe extra-contractual common law duties to their customers. *Bank of America, N.A. v. Stanley*, 728 F.Supp.2d 883 (2010); *Davis v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 870, 888 (S.D. Tex. 2013)(*on reconsideration* 2014 WL 585403 (S.D. Tex. Feb. 14, 2014)); *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990); *Carson Energy, Inc. v. Riverway Bank*, 100 S.W.3d 591, 601 (Tex. App.—Texarkana 2003, pet. denied); *Ortega v. City Nat. Bank*, 97 S.W.3d 765, 777 (Tex. App.—Corpus Christi 2003, no pet.)(op. on reh'g).

17.    Nor do HTLF's internal policies create a standard of care. "The Texas Supreme Court has refused to create a standard of care or duty based upon internal policies, and the failure to follow such policies does not give rise to a cause of action in favor of customers or others." *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.) (*citing FFE*

---

[3] As discussed in Section IV.G, 2B Farms has not alleged sufficient facts to give rise to such a special relationship.

*Transp. Servs., Inc. v. Fulgham,* 154 S.W.3d 84, 92 (Tex.2006); *Guerra v. Regions Bank*, 188 S.W.3d 744, 747 (Tex. App.—Tyler 2006, no pet.). Texas does not impose a broad, indeterminate duty on banks founded upon general "industry standards" related to another third-party's wrongful actions. *Id*.

18.    Nor do state or federal regulations create a tort duty. To the extent that a statute or regulation gives rise to a private right of action or create a statutory duty to support a claim for negligence per se, such a cause of action is distinct from a common law negligence claim. *Perry v. S.N.*, 973 S.W.2d 301, 303 (Tex. 1998).[4] The Complaint therefore fails to allege a tort duty that can support a common-law negligence claim and Count Twelve should be dismissed.

### ii.  Count Two - Plaintiffs fail to state a claim for negligent lending.

19.    HTLF has found no authority referencing a cause of action for "negligent lending" except for one state court case noting the lack of authority cited for such a cause of action and two federal courts dismissing such a cause of action for failure to allege any facts on which it might be based. *Baskin v. Mortg. & Tr., Inc.,* 837 S.W.2d 743, 747 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Applin v. Deutsche Bank Nat. Tr.,* No. CIV.A. H-13-2831, 2014 WL 1024006, at *7 (S.D. Tex. Mar. 17, 2014); *Moffit v. HSBC Mortg. Servs., Inc.*, No. 3:14-CV-0348-L, 2014 WL 4468223, at *3 (N.D. Tex. Sept. 10, 2014). As a result, it does not appear such a cause of action exists. As a result, Plaintiffs' cause of action for negligent lending should be dismissed.

### iii.  Count Two - 2B Farms fails to state a claim for negligent lending or hiring as to HTLF.

20.    A negligent hiring, supervision, or management claim is a direct claim against an employer but must be based on an underlying tort committed by an employee. *Endeavor Energy*

---

[4] Regardless, 2B Farms failed to identify any statute or allege facts regarding its violation and has therefore failed to state a claim for a statutory private right of action or breach of a statutory duty.

*Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019). As discussed in other sections of this Brief, the Complaint fails to state a cause of action for any of the claims against HTLF. For the same reasons, the Complaint fails to state a cause of action against HTLF's employees, and such claims cannot support a negligent hiring, management, or supervision claim.

21.   An employer can ordinarily be held liable for an employee's negligence through the vicarious liability doctrine of *respondeat superior*. *Williams v. McCollister*, 671 F. Supp. 2d 884, 888 (S.D. Tex. 2009). "Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability. *Morris v. JTM Materials, Inc.,* 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.). Such a claim can only arise where an employer owes a third party a duty of care in hiring, retaining, supervising, or managing its employees due to the nature of the activity. *Id*. ("A motor carrier has a duty to take steps to prevent injury to the driving public by determining the competency of a job applicant to drive one of its trucks."); *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 291 (Tex. 1996) (Local scout council owed duty of care in recommending scoutmaster who later engaged in misconduct). Counsel for HTLF has located no authority holding that banks owe a duty to third parties (or their customers) in hiring, retaining, supervising, or managing their employees.  Nor has 2B Farms alleged such a duty or facts that might justify its imposition.

22.   When such a duty exists, an employer breaches the duty "if it hires an incompetent or unfit employee whom the employer knows, or reasonably should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *Cox v. City of Ft. Worth, Tex.*, 762 F. Supp. 2d 926, 940 (N.D. Tex. 2010). "The plaintiff must also prove that the risk that caused the entrustment or hiring to be negligent caused the accident at issue." *TXI Transp. Co. v. Hughes*,

306 S.W.3d 230, 240 (Tex. 2010). At most, 2B Farms has stated the allegedly wrongful acts of

Ragland.  Such facts are not sufficient to allege that HTLF knew or should have known that

Ragland was unfit or incompetent and that he was an unreasonable risk to others. McClain's fraud

was not a foreseeable risk of HTLF's hiring, management, or supervision of Ragland. 2B Farms'

cause of action for negligent hiring, supervision and management should therefore be dismissed.

#### iv. Count Three - 2B Farms fails to state a claim for negligent undertaking as to HTLF.

23.     Negligent undertaking is an alternative negligence theory for imposing a duty of

care:

> One who undertakes, gratuitously or for consideration, to render
> services to another which he should recognize as necessary for the
> protection of the other's person or things, is subject to liability to the
> other for physical harm resulting from his failure to exercise
> reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm,
> or
>
> (b) the harm is suffered because of the other's reliance upon the
> undertaking.

*Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000) (*quoting* RESTATEMENT (Second)

of Torts § 323 (1965)). The critical inquiry concerning the duty element of a negligent-undertaking

theory is whether a defendant acted in a way that requires the imposition of a duty where one

otherwise would not exist.

24.     In their Complaint, 2B Farms make only a conclusory statement that (mostly) tracks

the elements of a claim for negligent undertaking:

> All Defendants undertook to perform services for Plaintiffs that it
> knew or should have known were necessary for Plaintiffs protection.
> Defendants did not exercise reasonable care in performing those
> services. Plaintiffs relied on Defendants' performance or
> Defendants' performance increased Plaintiffs' risk of harm. As a

> proximate result of the Defendants' failure to use reasonable care, Plaintiffs suffered damages exceeding the minimum jurisdictional limits of this Court. Plaintiffs seek judgment against Defendants for these damages.

[Doc. 104 ¶100]. However, 2B Farms has failed to allege all the requirements of a negligent undertaking claim and has alleged insufficient facts to support its claim.

25.    First, 2B Farms failed to alleged that it suffered a ***physical*** loss. An economic injury is insufficient to support a negligent undertaking claim. *James v. Wells Fargo Bank, N.A.,* 533 F. App'x 444, 448 (5th Cir. 2013) ("plaintiffs' claim for negligent undertaking fails as a matter of law because plaintiffs allege no physical harm resulting from [bank's] voluntary undertaking of services."). Count Three must be dismissed on this ground alone.

26.    Second, the Complaint does not even state what alleged services are the subject of the negligent undertaking claim. The only factual allegation of "reliance" in the Complaint is that "2B Farms relied upon Ragland's and HTLF's experience and training to protect its interests." [Doc. 104 ¶110]. The Complaint does not allege any facts of how HTLF undertook to "protect [2B Farms'] interests" with respect to McClain. While 2B Farms and HTLF have a contractual banking relationship, 2B does not (and cannot) allege that such a contract includes a general duty to protect 2B Farms' interests in their business dealings.[5] As a result, 2B Farms has failed to allege sufficient facts supporting any of the elements of a claim for negligent undertaking and Count Three must be dismissed.

---

[5] Additionally, when services are provided under a contract, the economic loss rule bars a claim for negligent undertaking for the economic loss from the failure to perform contractual duties. *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015). A banking relationship ordinarily does not give rise to a negligent undertaking claim. *Longmire v. Wells Fargo Bank, N.A.*, 2017 WL 4075187, at *5-7 (N.D. Tex. Aug. 16, 2017) (Horan, J.), *rec. adopted*, 2017 WL 4022888 (N.D. Tex. Sept. 13, 2017) (Lynn, C.J.).

**D.  Count Four - 2B Farms' fraudulent transfer claim is property of the McClain Estate.**

27.    2B Farms explicitly seek to assert fraudulent transfer claims under the Texas Uniform Fraudulent Transfer Act as to transfers from McClain to Defendants. [Doc. 104 ¶ 101]. Such claims are the property of the McClain Estates. *In re MortgageAmerica Corp.,* 714 F.2d 1266, 1275 (5th Cir. 1983).  2B Farms therefore lack standing to assert such claims and fail to state a claim for which relief can be granted to 2B Farms. Further, as to 2B Farms, the Court lacks jurisdiction over such claims because of the lack of standing, warranting dismissal under Rule 12(b)(1). Count Four should therefore be dismissed as to HTLF.

**E.  Count Six - 2B Farms fails to state a claim for aiding and abetting or knowing participation in fraud.**

28.    The Fifth Circuit has recognized that Texas Courts have not adopted a cause of action for aiding and abetting and has refused to create such a doctrine for Federal courts applying Texas law. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018). As a result, 2B Farms' aiding and abetting claim must be dismissed.[6]

29.    Texas does recognize a cause of action for knowing participation in fraud. *Robertson v. ADJ P'ship, Ltd.,* 204 S.W.3d 484, 494 (Tex. App.—Beaumont 2006, pet. denied); *In re Arthur Andersen LLP,* 121 S.W.3d 471, 481 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding, mandamus denied). In addition to establishing the traditional elements for the underlying fraud claim,[7] a plaintiff must establish that the Defendant had actual knowledge of the fraud and participated in the fraud. *Id*. Participation in fraud involves either making the misrepresentations at issue or the misrepresentations being made at one's direction or agreement.

---

[6] Alternatively, a claim for aiding and abetting would require HTLF having actual knowledge of the fraud, which, as addressed below, is not alleged or plausible.

[7] Because such a claim is based on a fraud claim, Plaintiffs' allegations must meet the heightened pleading requirements of Rule 9(b).

*Id*. Knowing participation claims have sometimes been used in the context of corporate fraud to hold individual actors responsible. *See, e.g., In re Arthur Andersen LLP*, 121 S.W.3d at 481; *United Healthcare Sevices, Inc. v. Next Health, LLC*, No. 3:17-CV-00243-E-BT, 2021 WL 764035, at *5-6 (N.D. Tex. Feb. 26, 2021).

30.     The fraud alleged by 2B Farms is that "Brian McClain solicited and accepted payment from Plaintiffs for the purchase and sale of cattle" but "did not tell Plaintiffs that their purchase money was being used to make payments other than for the purchase of cattle." [Doc. 104 ¶ 107].

31.      2B Farms' allegations of knowledge are essentially drawn from an inference that HTLF's involvement in and knowledge of the 2B Farms cattle transactions was sufficient to raise red flags that McClain was engaging in fraud. [Doc. 104 ¶¶ 108-115]. Such an allegation is insufficient to state a claim for knowing participation in McClain's fraud. Rather, 2B Farms must allege facts that establish HTLF had actual knowledge that 2B Farms' funds were not being used to purchase cattle, as represented by both 2B Farms and McClain. There are no such allegations. Nor is there any allegation that HTLF knew about any misrepresentations being made by McClain. Absent any factual allegations of actual knowledge by HTLF, 2B Farms' knowing participation claim, Count Six, must be dismissed.

32.     Even if the Complaint were to assert that HTLF had actual knowledge of the fraud, such an allegation would not be plausible. It is not conceivable that HTLF would have actual knowledge that funds from cattle buyers were not being used to purchase cattle but would still continue to advance funds to 2B Farms for that purpose. Unlike the allegations against Rabo, the Complaint does not identify a point when HTLF became aware of the fraud but allowed it to

continue in an attempt to recover its losses. Absent such underlying factual assertions, even allegations of actual knowledge would be conclusory and insufficient to state a claim.

33. Further, 2B Farms fails to allege that HTLF participated in the fraud at issue. As noted in Section IV.B, the Complaint does not identify any alleged misrepresentation that HTLF made to 2B Farms. And the Complaint does not allege that the transactions between 2B Farms and McClain were themselves a fraudulent "check kite," as alleged by the other Plaintiffs and Intervenors. Rather, 2B Farms asserts that the Cattle Sales Checks were the proceeds of actual cattle and that McClains' bank account had sufficient funds to pay those checks. [Doc. 104 ¶ 72]. As a result, allegations that HTLF participated in those transactions is insufficient to state a claim for participation in McClain's fraudulent representations regarding the use of 2B Farms' funds. Count Six should therefore be dismissed as to HTLF.

**F. Count Eleven - 2B Farms fails to state a claim objection under 11 U.S.C. § 502(d) or a claim for equitable subordination as to HTLF.**

34. 2B Farms originally objected to HTLFs' proofs of claim in "Debtors' Objections to Proofs of Claim Filed by HTLF Bank," filed as Document 48 in Case No. 23-50096-rlj12 (the "**Objection**") and in "Defendants' Original Answer and Counterclaims," filed as Document 7 in Adversary No. 23-05003-rlj (the "**Answer and Counterclaim**"). The Objection and Answer and Counterclaim were consolidated into Adversary No. 23-05002-rlj in Document 10 filed under that cause number. In the Objection and Answer and Counterclaim, 2B Farms asserts that it is not liable for HTLF's claims and asserts its own counterclaims. Presumably, 2B Farms also objects to HTLFs' claims to the extent it is offset by any liability of HTLF to 2B Farms. HTLF does not seek to dismiss 2B Farms' claim objection based on a lack of liability or based on offset (to the extent that there are underlying claims to offset) for failure to state a claim.

35.     However, in the Complaint, 2B Farms also asserts a new objection under 11 U.S.C. § 502(d) for disallowance of claims of parties holding property of the estate or who received transfers or setoffs that may be avoided. [Doc. 104 at IV.K]. The Complaint only describes such transfers as to Rabo. [Doc. 104 ¶¶ 145-46]. To the extent that the Complaint includes an objection to HTLF's proofs of claim under 11 U.S.C. § 502(d), it fails to identify the basis of such claim and therefore fails to state a claim on which relief can be granted.

36.     The Complaint additionally asserts that 2B Farms' objection to HTLF's proof of claim includes a request to equitably subordinate such claim. [Doc. 104 ¶ 144]. It does not appear that 2B Farms has previously requested equitable subordination as to HTLF. To the extent that 2B Farms has sought equitable subordination, 2B Farms has failed to state a claim for which relief can be granted. Equitable subordination requires (1) inequitable conduct; (2) resulting injury to other creditors or unfair advantage to the claimant; and (3) that subordination is not inconsistent with the provisions of the Bankruptcy Act. *Matter of Mobile Steel Co.*, 563 F.2d 692, 699-700 (5th Cir. 1977). "If the claimant is not an insider, then evidence of more egregious conduct such as fraud, spoliation or overreaching is necessary." *Matter of Fabricators, Inc.*, 926 F.2d 1458, 1465 (5th Cir. 1991). "The courts have actually confined equitable subordination of claims to three general categories of cases: those in which a fiduciary of the debtor misuses his position to the disadvantage of other creditors; those in which a third party, in effect, controls the debtor to the disadvantage of others; and those in which a third-party defrauds other creditors." *Matter of CTS Truss, Inc.*, 868 F.2d 146, 148–49 (5th Cir. 1989).

37.     2B Farms' pleadings fail to state a claim for equitable subordination. First, as addressed in Section IV.B, 2B Farms has failed to adequately state a claim for fraud and therefore fails to state a claim for inequitable conduct. Second, 2B Farms seeks to assert its own damages,

not protest an injury that HTLF inflicted on other creditors. To the extent HTLF is liable to 2B Farms (which it is not), the remedy is damages—not subordination. Third, subordination would be punitive in nature and would be inconsistent with the purposes of the Bankruptcy Code if granted in addition to such damages. As a result, the Complaint fails to state a claim for equitable subordination and such claim should be dismissed.

**G.  Count Fourteen - 2B Farms fails to state a claim for breach of informal fiduciary duty.**

38.    Texas law recognizes multiple types of close relationships that may give rise to duties, including (1) formal fiduciary relationships, (2) "special" relationships imposing a common law duty of good faith and fair dealing, and (3) informal fiduciary or "confidential" relationships. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992) (*superseded by statute on other grounds*). 2B Farms alleges that HTLF was its fiduciary based on the "extreme confidential and special relationship of the parties…" [Doc. 104 ¶ 159]. The Complaint's allegations, even if taken as true, fail to state a claim for breach of fiduciary duty or any other special or confidential relationship.

39.    HTLF did not owe a formal fiduciary duty to 2B Farms. "Lenders and their agents ordinarily have no fiduciary duty to borrowers or putative borrowers." *Cogan v. Triad American Energy,* 944 F.Supp. 1325, 1329 (S.D.Tex.1996) (citing *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962)). As a result, 2B Farms cannot state a claim for breach of a formal fiduciary duty.

40.    A "borrower-lender" relationship is not one of the special relationships giving rise to a duty of good faith and fair dealing. *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708–09 (Tex. 1990) (declining to find duty); *Herndon v. First Nat. Bank of Tulia*, 802 S.W.2d 396, 399 (Tex. App.—Amarillo 1991, writ denied). As noted by the Fifth Circuit:

> The Texas Courts of Appeals have restricted the special-relationship
> doctrine to narrow and carefully circumscribed situations. Indeed,

> those courts recognize only one special relationship—that between an insurer and an insured. Texas courts have refused to impose a tort duty of good faith and fair dealing on any of the following relationships: employer-employee, lender-borrower, medical provider-patient, mortgagor-mortgagee, supplier-distributor, franchisor-franchisee, creditor-guarantor, issuer and beneficiary of a letter of credit, or insurance company-third-party claimant.

*Hux v. S. Methodist Univ.*, 819 F.3d 776, 781–82 (5th Cir. 2016) (internal citations omitted). As a result, 2B Farms cannot state a claim for breach of the common law duty of good faith and fair dealing based on a special relationship.

41.    Nor does 2B Farms allege sufficient facts to establish an informal fiduciary relationship. "[T]he law recognizes the existence of confidential relationships in those cases 'in which influence has been acquired and abused, in which confidence has been reposed and betrayed.'" *Crim Truck*, 823 S.W.2d at 594 (*quoting Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980)). Such a relationship can only arise when the parties are clearly not dealing at arm's length. In *Texas Bank & Trust Co. v. Moore*, a 90-year-old woman broke her hip, was hospitalized for three months, and then lived in a convalescent center until her death at age 96. 595 S.W.2d at 505. During this time, she was severely incapacitated and her nephew, Moore, assisted her in her financial affairs. *Id*. Moore received various transfers of property during her life and at her death. *Id*. Based on these facts, the parties were clearly not dealing at arm's length and the Court imposed on Moore "the fiducial obligation of establishing the fairness of the transaction to his principal." *Id*. at 508-09. 2B Farms' allegations describe a business relationship, not a close, confidential, and non-arm's length relationship like the one at issue in *Moore*.

42.    Rather, the Complaint's allegations are more comparable to (but still do not approach) the facts in *Thigpen v. Locke*, 363 S.W.2d 247 (Tex. 1962). Thigpen was Locke's banker and they became close friends. *Id*. at 249. Thigpen assisted with other loans, including acting as a

guarantor and as a lender. *Id*. Thigpen advised Locke on business matters, formed a corporation for him, kept the books of the business, and was a shareholder, director, and officer. *Id*. Yet even taken in the light most favorable to Locke, the Texas Supreme Court held that "there is not such evidence of justifiable trust and confidence as will create a fiduciary relationship." *Id*. at 253. A personal relationship that gives rise to a fiduciary duty must predate and exist apart from the business dealings at issue. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998). Because the Complaint describes only a business relationship and no prior personal relationship, it fails to allege facts sufficient to create a fiduciary relationship.

43.     The Complaint also alleges that "HTLF exercised excessive lender control over, or influence in, 2B Farm's cattle business activities." [Doc. 104 ¶ 159]. Counsel for HTLF has found no authority holding that such control can actually give rise to an informal fiduciary duty in the absence of the facts discussed above. Various courts have cited to *Greater Sw. Off. Park, Ltd. v. Texas Com. Bank Nat. Ass'n,* for the proposition that a special relationship between a borrower and lender that gives rise to a fiduciary duty can be based on "excessive lender control over, or influence in, the borrower's business activities." 786 S.W.2d at 391 (*citing State Nat'l Bank v. Farah Mfg. Co.*, 678 S.W.2d 661 (Tex.App.—El Paso 1984, writ dism'd by agr.)). However, the Houston Court of Appeals did not find a special fiduciary relationship on that basis. *Id*. at 391. And *Farah*, the case cited for the proposition, involves claims for "fraud, duress, and interference with business relations" not a claim for breach of fiduciary duty. 678 S.W.2d at 661. While control is undoubtedly an aspect of a finding of an informal fiduciary duty, the Texas Supreme Court has not found such a duty on that basis alone. As a result, the allegation of excessive control is not sufficient to state a claim.

44.     Regardless, the Complaint does not allege that HTLF exercised the type of control involved in *Farah*. In *Farah*, various lenders used false threats of default to coerce the company into appointing a CEO and additional directors that were loyal to the lenders. 678 S.W.2d at 667-70. The lenders then mismanaged the company in a manner that benefited themselves and harmed the company. *Id*. In contrast, 2B Farms does not allege that HTLF made any decisions for 2B Farms. 2B Farms does not allege that HTLF coerced it in any way. The Complaint does not allege that HTLF was buying or selling cattle other than as directed by 2B Farms – and then only in the context of transferring funds at 2B Farms' direction. In fact, 2B Farms' allegations are primarily that HTLF should have asserted ***more*** control and prevented 2B Farms from transacting business with McClain. Therefore, even if excessive control did give rise to a fiduciary duty, 2B Farms has failed to allege sufficient facts to state a claim for excessive control. Count Fourteen should therefore be dismissed.

## H. Count Fifteen - 2B Farms fails to state a claim for wrongful offset as to HTLF.

45.     2B Farms' allegations of wrongful offset do not identify any offsets made by HTLF. The Complaint only describes the offset of 2B Farms' funds held in McClain's accounts by Mechanics Bank and/or Rabo. [Doc. 104 ¶ 162].  To the extent that 2B Farms intends to assert a wrongful offset claim against HTLF, such an allegation is a conclusory statement with no factual support sufficient to state a cause of action. As a result, Count Fifteen should be dismissed as to HTLF.

### CONCLUSION

Counter-Defendant, HTLF, respectfully requests that, pursuant to Federal Rule of Civil Procedure 12(b)(6) this Court dismiss Second Amended Complaint filed by 2B Farms, a Texas

general partnership, Terry M. Robinson and Rebecca A. Robinson to the extent requested herein

and grant all other relief to which HTLF might show itself justly entitled.

Dated this 2nd day of May 2025.

Respectfully submitted,

**LOVELL ISERN & FARABOUGH, LLP**
John H. Lovell, SBN 12609300
112 SW 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Phone: (806) 373-1515
Fax:    (806) 379-7176
Email:  john@lovell-law.net

**MULLIN HOARD & BROWN, L.L.P.**
Matthew S. Merriott, SBN 24100846
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086
Email:   mmerriott@mhba.com

By:____/s/ *Matthew S. Merriott*_____
Matthew S. Merriott

*Attorneys for HTLF Bank, as Successor to
First Bank & Trust*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 2nd day of May 2025, I electronically filed the foregoing document with the Northern District of Texas through its filing system through and that a true and correct copy was served on the parties listed through the electronic case filing system by email as registered with the electronic case filing system:

/s/ *Matthew S. Merriott*_____
Matthew S. Merriott