UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

   *and*

Michael R. Johnson (*Pro Hac Vice*)
Matthew M. Cannon (*Pro Hac Vice*)
Austin C. Nate (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: mcannon@rqn.com
Email: anate@rqn.com

*Attorneys for Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| In re:<br><br>MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.<br><br>    Debtors. | CASE NO. 23-20084-rlj7<br>Chapter No. 7<br><br>(Jointly Administered Cases) |
| In re:<br><br>2B FARMS, a Texas General Partnership, et al.,<br><br>    Debtors. | CASE NO. 23-50096-rlj12<br>Chapter No. 12<br><br>(Jointly Administered Cases) |

| | |
|---|---|
| AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA, and THORLAKSON DIAMOND T. FEEDERS, LP, | ADVERSARY NO. 24-02007-rlj |
|   Plaintiffs, | (Consolidated Adversary Proceeding) |
| EDWARD DUFURRENA et al., | |
|   Intervenor Plaintiffs, | |
| v. | |
| RABO AGRIFINANCE LLC et al., | |
|   Defendants. | |

| | |
|---|---|
| HTLF BANK, as successor to FIRST BANK & TRUST, | ADVERSARY NO. 24-02007-rlj |
|   Plaintiff, Counter-Defendant, and Cross-Claim Defendant, | (Consolidated Adversary Proceeding) |
| v. | |
| 2B FARMS, a Texas General Partnership, TERRY M. ROBINSON, and REBECCA A. ROBINSON, | |
|   Defendants, Counterclaim-Plaintiffs, Third-Party Plaintiffs, and Third-Party Counterclaim Defendants, | |
| v. | |
| RABO AGRIFINANCE LLC and MECHANICS BANK, | |
|   Third-Party Defendants and, as to Rabo AgriFinance LLC only, Third-Party Counterclaim Plaintiff, and Cross-Claim Plaintiff. | |

**RABO AGRIFINANCE LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT OF AGTEXAS, THORLAKSON, AND INTERVENORS**

2

Pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6), made applicable to this consolidated Adversary Proceeding by Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure, Defendant Rabo AgriFinance LLC ("**Rabo**"), through counsel, hereby submits this brief in support of its motion to dismiss the *Plaintiffs' and Intervenors' Original Federal Complaint Amending and Consolidating their State Court Petitions* (the "**Complaint**") filed by Plaintiffs AgTexas Farm Credit Services, AgTexas, PCA ("**AgTexas**"), Thorlakson Diamond T. Feeders, LP ("**Thorlakson**"), and Intervenors Dennis Buss, Buss Family Trust, Eddie Bryant, Robert E. Gray, Ronnie Gray, Gray Brothers, Steven Ryan, Janice Lawhon, AJ Jacques Living Trust, Gungoll Cattle, LLC, Leah Gungoll, Morrison Cafe, LLC, Gary Lesh, Jan Lesh, Lesh Family Trust, Jared Lesh, Jordan Lesh, LLC, Joel Brookshire, Gene Brookshire Family, LP, Douglas Finley, Scarlet and Black Cattle, LLC, Bryan Blackman, Steve T. Scott Farm, Inc., Scott Livestock Company, Inc., Arnold Braun Trust, Robert Braun, Jim Rininger, Robert Spring, Michael Evans, Miranda Evans, Charles Lockwood, Cole Lockwood, Sherle Lockwood, Nikki Lockwood, Lynda Van Buskirk, Janet Van Buskirk, Colby Van Buskirk, Susan Van Buskirk, Jimmy Greer, Dustin Johnson, and Dora Blackman (collectively, "**Intervenors**" and, together with AgTexas and Thorlakson, "**Plaintiffs**").

## TABLE OF CONTENTS

**SUMMARY OF THE ARGUMENT** ............................................................... 8

**ARGUMENT** ............................................................................................. 9

    **I.**    **THE SEVEN "INTENTIONAL" CLAIMS SHOULD BE DISMISSED.**............................................................................... 9

        **A.**    **Plaintiffs Have Failed to Adequately Allege Common Law Fraud.** ................................................................ 10

        **B.**    **The Complaint Fails to Allege Facts Supporting Conversion.** ........... 11

        **C.**    **Plaintiffs' Aiding and Abetting Fraud Claim Fails and Should be Dismissed.** .......................................... 14

        **D.**    **Plaintiffs Fail to State a Claim for Civil Conspiracy.** ......................... 15

        **E.**    **Plaintiffs' Tortious Interference Claim Fails.** .................................... 16

        **F.**    **Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claim Fails and Should be Dismissed.** .................................... 17

        **G.**    **The Court Should Dismiss the Fraudulent Transfer Claim.** .............. 19

    **II.**    **PLAINTIFFS' TWO NEGLIGENCE CLAIMS SHOULD BE DISMISSED.**............................................................................. 19

        **A.**    **The Negligent Lending, Hiring, and Supervision Claim Fails.**........... 19

        **B.**    **Plaintiffs' Negligent Undertaking Claim Fails.** ................................... 21

    **III.**    **THE TWO CONTRACT CLAIMS SHOULD BE DISMISSED.** .................. 22

        **A.**    **The Purported Claims Under the ICA Fail.**........................................ 22

        **B.**    **Priest's Claims Based on the LoU Fail.**............................................. 24

    **IV.**    **AT LEAST SIX OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT PLAINTIFFS FAIL TO DEMONSTRATE THEIR STANDING UNDER 11 U.S.C. § 541(a)(1) TO BRING THESE CLAIMS.**...................... 25

**CONCLUSION** ....................................................................................... 27

4

## TABLE OF AUTHORITIES

**Cases**

*Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228 (5th Cir. 2007) .............................. 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 25

*Bertrand v. White*, No. 1:09-CV-358, 2009 WL 10682257 (E.D. Tex. July 7, 2009) .................. 15

*Blankinship v. Brown*, 399 S.W.3d 303 (Tex. App. 2013) ........................................................ 11

*Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29 (Tex. App. 2015) ........................................ 24

*Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373 (Tex. App. 2005) .......................... 20

*Busch v. Basic Organics, Inc.*, No. CIVA 3:06CV2261 L, 2007 WL 603385 (N.D. Tex.
     Feb. 27, 2007) ................................................................................................................ 10, 15

*Campbell v. Fort Worth & W. R.R.*, No. 4:09-CV-037-Y, 2010 WL 11570869 (N.D. Tex.
     Mar. 24, 2010) ................................................................................................................... 12

*Chu v. Hong,* 249 S.W.3d 441 (Tex. 2008) .............................................................................. 16

*CPM Consulting LLC v. Capsugel* US, LLC, No. 3:17-CV-3059-S, 2019 WL 3769651
     (N.D. Tex. Aug. 9, 2019) ...................................................................................................... 17

*Ebert v. Gustin*, No. 4:15-CV-00225-O, 2016 WL 11663146 (N.D. Tex. May 19, 2016) .......... 14

*Elson v. Black*, 56 F.4th 1002 (5th Cir. 2023) ......................................................................... 10

*Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17–CV–444–RP, 2018 WL
     315753 (W.D. Tex. Jan. 5, 2018) ......................................................................................... 17

*Funes v. Villatoro*, 352 S.W.3d 200 (Tex. App. 2011) ............................................................. 16

*Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83 (Tex. App. 2012) .............................................. 19

*Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*,
     954 F.3d 804 (5th Cir. 2020) ............................................................................................... 23

*Houle v. Casillas*, 594 S.W.3d 524 (Tex. Ct. App. 2019) ......................................................... 20

*Hunt v. Baldwin*, 68 S.W.3d 117 (Tex. App. 2001) .................................................................. 15

*Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875 (Tex.
     App. 2017) ......................................................................................................................... 14

*In re Buccaneer Res., LLC*, 912 F.3d 291 (5th Cir. 2019) ..................................................... 25, 27

*In re Educators Grp. Health Tr.*, 25 F.3d 1281 (5th Cir. 1994) ................................................... 26

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504 (S.D. Tex. 2011) ....... 14

*In re Lothian Oil, Inc.*, 531 F. App'x 428 (5th Cir. 2013) ........................................................... 26

*In re R.E. Loans*, 2013 WL 1265205 (N.D. Tex. Mar. 28, 2013) ................................................... 26

*In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008) .................................................. 25

*In re TXNB Internal Case*, 483 F.3d 292 (5th Cir. 2007) ............................................................ 12

*Int'l Bankers Life Ins. Co. v. Holloway*, 268 S.W.2d 567 (Tex. 1963) ......................................... 16

*Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797 (5th Cir. 2017) ............................................. 18

*Jones v. Thompson*, 338 S.W.3d 573 (Tex. Ct. App. 2010) .......................................................... 20

*Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571 (Tex. App. 2007) .................................... 17

*LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234 (Tex. 2014) ........................................... 23

*Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 800 Fed. Appx. 239 (5th Cir. 2020).. 20, 21

*Mr. W Fireworks, Inc. v. NRZ Inv. Grp., LLC*, 677 S.W.3d 11 (Tex. App. 2023), *review
    denied* (Dec. 15, 2023) ........................................................................................................ 16

*Murray v. Nabors Well Serv.*, 622 S.W.3d 43 (Tex. App. 2020) .................................................. 22

*Pemex Exploracion y Produccion v. BASF Corp.*, 2013 WL 5514944 (S.D. Tex. Oct. 1,
    2013) ..................................................................................................................................... 13

*Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640 (S.D. Tex. 2016) .......................... 20

*Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643 (Tex. App. 2002) .................................... 20

*Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3d 878 (6th Cir. 2002) ........................................... 20

*Satterfield v. Knippel.*, 169 S.W.2d 795 (Tex. Ct. Civ. App., Amarillo 1943) ............................ 14

*Settlement Capital Corp., Inc. v. Pagan,* 649 F.Supp.2d 545 (N.D. Tex. 2009) ......................... 13

*Sgaliordich v. Lloyd's Asset Mgmt.*, No. 1:10-CV-03669 ERK, 2012 WL 4327283
    (E.D.N.Y. Sept. 20, 2012) ..................................................................................................... 12

*Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476 (Ky. 1991) ............................................. 20

*Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829 (Tex. App. 2017) .............. 19

6

*Thurman v. Med. Transportation Mgmt., Inc.*, 982 F.3d 953 (5th Cir. 2020) ................................ 9

*Travelers Cas. & Sur. Co. of Am. v. Nelms*, No. 3:16-CV-00080-DMB-RP, 2017 WL
1101099 (N.D. Miss. Mar. 22, 2017)................................................................................ 12

*United States ex rel. Colquitt v. Abbott Lab'ys*, 858 F.3d 365 (5th Cir. 2017)............................. 9

*United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378 (5th Cir. 2012) ........................... 11

*Vance v. Hurst Joint Venture LP*, 657 S.W.3d 141 (Tex. App. 2022)......................................... 22

*Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523 (S.D. Tex. 2011) ................................... 18

*Weltzin v. Cobank, ACB*, 633 N.W.2d 290 (Iowa 2001) ............................................................ 20

*World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662 (Tex. App. 1998) ................................. 11

*Zhu v. Lam*, 426 S.W.3d 333 (Tex. App. 2014)........................................................................... 18

**Statutes**

11 U.S.C. § 541(a)(1).............................................................................................. 8, 9, 25

**Rules**

Fed. R. Bankr. P. 7008 ............................................................................................... 3

Fed. R. Bankr. P. 7009 ............................................................................................ 3, 9

Fed. R. Bankr. P. 7012 ............................................................................................ 3, 9

Fed. R. Bankr. P. 7012(b) ........................................................................................... 9

Fed. R. Civ. P. 12(b)(1)............................................................................................... 3

Fed. R. Civ. P. 12(b)(6)............................................................................................ 3, 9

Fed. R. Civ. P. 8 ...................................................................................................... 3, 24

Fed. R. Civ. P. 9(b) ......................................................................... 3, 8, 9, 10, 13, 14, 15

## SUMMARY OF THE ARGUMENT

Plaintiffs purport to assert eleven claims against Rabo, which can be divided into three groups. First, Plaintiffs assert seven "intentional" claims: Fraud; Conversion; Aiding and Abetting Fraud; Civil Conspiracy; Tortious Interference; Aiding and Abetting Breach of Fiduciary Duty; and Fraudulent Transfer under the Texas Uniform Fraudulent Transfer Act ("**TUFTA**"). Second, Plaintiffs assert two "negligence" claims: Negligent Lending, Hiring, and/or Supervision, and Negligent Undertaking. Third, certain Plaintiffs assert two "contract" claims: Breach of Intercreditor Agreement ("**ICA**"), and Breach of Letter of Understanding ("**LoU**").[1] Each of these claims should be dismissed, with most claims subject to dismissal for numerous, independent grounds.

A fatal flaw running through the Complaint is Plaintiffs' failure to meet even the basic pleading requirements for each claim. This failure is particularly evident with respect to certain "intentional" claims where Plaintiffs must satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. The Complaint, however, is glaringly void of the "who," "what," "when," "where," and "how" allegedly giving rise to such claims, with Plaintiffs consistently lumping the Defendants together and otherwise failing to segregate the unlawful conduct allegedly committed by each Defendant. In any event, and with respect to all of Plaintiffs' claims against Rabo, the Complaint fails to set forth factual allegations supporting the necessary elements for each of the claims asserted. Furthermore, at least six of Plaintiffs' claims should be dismissed for the additional and independent reason that Plaintiffs have failed to allege facts supporting their standing under 11 U.S.C. § 541(a)(1) to assert the claims.

---

[1] Plaintiffs also include some unnumbered "claims" which are not recognized causes of action (attorney's fees, damages, exemplary/punitive damages) or otherwise fail to contain any detail as to the alleged claim (declaratory judgment).

For these reasons, and those more fully set forth below, the Motion should be granted, and Plaintiffs' Complaint should be dismissed in its entirety.

## ARGUMENT

Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure apply to adversary proceedings pursuant to Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure. *See* Fed. Bank. R. 7009, 7012(b). Rule 12(b)(6) governs dismissals for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Although courts accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff" in analyzing a Rule 12(b)(6) motion, "a complaint may be dismissed if it clearly lacks merit—for example, where there is 'an absence of law to support a claim of the sort made.'" *Thurman v. Med. Transportation Mgmt., Inc.*, 982 F.3d 953, 955–56 (5th Cir. 2020). Moreover, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007). This standard applies to all claims, and due to Plaintiffs' failure to satisfy this standard, Rule 12(b)(6) dictates dismissal of the entire Complaint. The additional standards and requirements of Federal Rule of Civil Procedure 9(b) and of 11 U.S.C. § 541(a)(1) also apply to most of Plaintiffs' claims and further dictate dismissal.

## I.   THE SEVEN "INTENTIONAL" CLAIMS SHOULD BE DISMISSED.

Certain claims, such as fraud and other intentional torts, must meet the heightened pleading standard under Rule 9(b), which requires that the circumstances constituting the claim be stated with particularity. *See* Fed. R. Civ. P. 9(b). "This requires, at a minimum, that a plaintiff plead the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Colquitt v. Abbott Labs*, 858 F.3d 365, 371 (5th Cir. 2017). Moreover, "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another do

9

not meet the requirements of Rule 9(b)." *Busch v. Basic Organics, Inc.*, No. CIVA 3:06CV2261 L, 2007 WL 603385, at *6 (N.D. Tex. Feb. 27, 2007). And if a plaintiff fails to satisfy this pleading standard, "[t]he application of Rule 9(b) is ... fatal" to the claims, and they must be dismissed. *Elson v. Black*, 56 F.4th 1002, 1008 (5th Cir. 2023). Plaintiffs fail to allege facts supporting the required elements for each of their seven intentional claims. This failure is especially 'fatal' for those claims and elements that require particularized pleading under Rule 9(b).

A.   **Plaintiffs Have Failed to Adequately Allege Common Law Fraud.**

To support their fraud claim, Plaintiffs generally allege that Defendants, collectively, made misrepresentations to Plaintiffs, Plaintiffs relied on such misrepresentations, and suffered injury therefrom. (Compl. ¶ 148.) Plaintiffs' allegations are insufficient under Rule 9(b) for multiple reasons. As an initial matter, Plaintiffs lump together all the Defendants and fail to segregate out each Defendant's alleged actions and wrongdoing. On this basis alone, Plaintiffs' common law fraud claim should be dismissed. *Busch*, 2007 WL 603385, at *6. Regardless, and despite generally alleging that Defendants, including Rabo, made misrepresentations, Plaintiffs never actually identify what the alleged misrepresentations were, who made them, when they were made, where they were made, or how they were made. In other words, Plaintiffs' common law fraud claim contains *none* of the requisite allegations to satisfy Rule 9(b)'s heightened pleading standard.[2]

In fact, the Complaint does not allege that Rabo made *any* statements to Plaintiffs, let alone demonstrate how such statements were not true. Although the Complaint is unclear, to the extent Plaintiffs intended to base their common law fraud claim on alleged fraudulent nondisclosure, their

---

[2] Plaintiffs may attempt to cite generally to Paragraphs 68-125 for the alleged specifics related to their fraud claim. Those paragraphs, however, fail to allege any misrepresentations purportedly made by Rabo such that they cannot save the claim against Rabo. (*See* Compl. at ¶¶ 68-125.)

claims still fail to meet the pleading standards for precisely the same reasons. To allege fraud by nondisclosure, Plaintiffs were required to plead the following elements:

> (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge.

*Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App. 2013). Not only do Plaintiffs fail to allege, specifically or generally, any of the foregoing elements, but they *cannot* allege that Rabo owed them a duty to disclose. A duty to disclose arises only in the following limited circumstances:

> A party has an affirmative duty to disclose where there is a confidential or fiduciary relationship or where a party later learns that a previous affirmative representation was false or misleading. A duty to disclose also arises when one party knows that the other party is relying on the concealed fact, provided that he knows that the relying party is ignorant of the facts and does not have an equal opportunity to discover the truth. In addition, when one voluntarily discloses information, he has a duty to disclose the whole truth rather than making a partial disclosure that conveys a false impression.

*World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. App. 1998) (citations omitted). None of the foregoing circumstances apply in this case. (*See generally* Compl.) As a result, Plaintiffs' common law fraud claim against Rabo must be dismissed.

### B.   The Complaint Fails to Allege Facts Supporting Conversion.

Under Texas law, "[c]onversion occurs when, wrongfully and without authorization, one assumes and exercises control and dominion over the personal property of another, either inconsistently with or to the exclusion of the owner's rights." *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012). When the alleged conversion relates to money (proceeds), however, the plaintiff must satisfy additional requirements. *See id.* "It is well settled

11

that money can be a subject of conversion *only* if it can be described or identified as a specific chattel." *Campbell v. Fort Worth & W. R.R.*, No. 4:09-CV-037-Y, 2010 WL 11570869, at *5 (N.D. Tex. Mar. 24, 2010) (emphasis added). Specifically, "[a]ctions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (cleaned up). And, critically, "when a claim, such as conversion, is based on allegations of fraud, the heightened pleading standard of Rule 9(b) must be satisfied." *Travelers Cas. & Sur. Co. of Am. v. Nelms*, No. 3:16-CV-00080-DMB-RP, 2017 WL 1101099, at *7 (N.D. Miss. Mar. 22, 2017); *Sgaliordich v. Lloyd's Asset Mgmt.*, No. 1:10-CV-03669 ERK, 2012 WL 4327283, at *5 (E.D.N.Y. Sept. 20, 2012) (explaining that Rule 9(b)'s heightened standard applies to conversion claims "when the underlying acts are allegedly fraudulent").

Here, Plaintiffs fail to allege facts supporting their conversion claim. First, Plaintiffs do not allege that Rabo converted any actual cattle.[3] Instead, it appears that Plaintiffs base their claim on Rabo allegedly converting proceeds of cattle that would have been sold by the McClain Entities. However, Plaintiffs fail to identify what specific proceeds Rabo allegedly converted, or who, among the Plaintiffs, such proceeds belonged to. Indeed, Plaintiffs provide *no* specificity or identification of the proceeds that Rabo allegedly converted, instead contending that Rabo

---

[3] Plaintiffs fail to provide *any* specificity related to that alleged conversion of cattle, including the dates of the alleged conversion, how many head were converted, who the cattle were sold to, etc. Simply put, they fail to allege which cattle were allegedly converted, or when, where, or how such conversion took place. And, in point of fact, Rabo never sold any cattle belonging to the McClain Debtors. Indeed, the cattle sold in April of 2023 after Mr. McClain's suicide were sold by the CRO of the McClain Debtors, and all funds were turned over to Kent Ries, the Chapter 7 Trustee. Thus, if Plaintiffs believe their cattle were liquidated and they are entitled to the proceeds of those cattle, they should address those claims with Mr. Ries.

generally converted proceeds belonging to Plaintiffs because it loaned money to the McClain Entities and received payments from them. Such vague and ambiguous allegations fail to provide Rabo with adequate notice regarding the basis of Plaintiffs' claims.

Second, and relatedly, Plaintiffs fail to include any allegations (nor could they) that they delivered proceeds to Rabo for safekeeping that were intended to be segregated in a particular form or intact fund. Thus, Plaintiffs have failed to advance the very allegations necessary to support a claim for conversion of money, which is a second and independent basis for dismissing the claim.

Third, the Complaint makes clear that Rabo's alleged conversion of proceeds is based entirely on the McClain Entities' fraudulent scheme. (*See* Compl. ¶¶ 68-125.) As a result, Plaintiffs' conversion claim must satisfy Rule 9(b)—a standard that the Complaint clearly does not meet. In addition to the above-identified deficiencies, the Complaint is virtually silent regarding the who, what, when, where, and how of Plaintiffs' conversion claim. Specifically, the Complaint fails to identify what specific proceeds were converted, when, or where such conversion took place. Likewise, it fails to differentiate which proceeds belonged to which Plaintiff or even the *amount* of proceeds that each Plaintiff allegedly possessed.

Fourth, under Texas law, two of the elements of a conversion claim are that (a) the plaintiff demanded return of the property, and (b) the defendant refused to return the property. *See, e.g., Settlement Capital Corp., Inc. v. Pagan,* 649 F.Supp.2d 545, 558 (N.D. Tex. 2009). No such allegations are set forth in Plaintiffs' Complaint. (*See generally* Compl.)

Fifth, "[t]he plaintiff in a conversion case also bears the burden of establishing the identity of the property converted." *Pemex Exploracion y Produccion v. BASF Corp.*, 2013 WL 5514944, at *4 (S.D. Tex. Oct. 1, 2013). When it comes to cattle, "the plaintiff must allege his ownership and by competent testimony establish the fact of his ownership and right to possession of the

13

identical property alleged to have been converted." *Satterfield v. Knippel.*, 169 S.W.2d 795 (Tex. Ct. Civ. App., Amarillo 1943). The Complaint fails to identify any specific property allegedly owned by any of the Plaintiffs that was converted by Rabo.

In short, Plaintiffs fail to allege facts supporting their claims for conversion, and the claim should be dismissed.

### C.    Plaintiffs' Aiding and Abetting Fraud Claim Fails and Should be Dismissed.

To state a claim for aiding and abetting, a plaintiff must allege five elements:

(1) the primary actor committed a tort; (2) the defendant had knowledge that the primary actor's conduct constituted a tort; (3) defendant had intent to assist the primary actor; (4) defendant gave the primary actor assistance or encouragement; and (5) defendant's conduct was a substantial factor in causing the tort.

*Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 882 (Tex. App. 2017). Importantly, Rule 9(b)'s heightened pleading standard applies to aiding and abetting fraud claims, as Plaintiffs allege here. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 539 (S.D. Tex. 2011); *Ebert v. Gustin*, No. 4:15-CV-00225-O, 2016 WL 11663146, at *6 (N.D. Tex. May 19, 2016).

In this case, Plaintiffs' allegations do not adequately state a claim for aiding and abetting fraud. Specifically, Plaintiffs fail to allege that Rabo (1) knew that the McClain Entities were committing fraud; (2) had intent to assist the McClain Entities in perpetrating the fraud; or (3) gave the McClain Entities assistance or encouragement in perpetrating the fraud. The exclusion of such allegations from the Complaint makes perfect sense when viewed in context: it would defy any sense of reality or plausibility for Rabo to actively participate or otherwise assist in a fraudulent scheme resulting in its own $50 million+ net loss; a loss that likewise resulted from the McClain Entities' fraud. Instead, Plaintiffs merely allege that Rabo made legitimate loans to the McClain Entities, which the McClain Entities ultimately used along with Plaintiffs' own money—all

without Rabo's knowledge—to carry out their fraudulent scheme. (*See* Compl. ¶¶ 167-68.) Such allegations are insufficient to state a plausible aiding and abetting fraud claim. Simply put, it is not plausible that Rabo would conspire with or aid and abet the McClain Entities in their fraudulent conduct when the result of that would be that Rabo would lose over $50 million.

Additionally, Plaintiffs' claim fails for their failure to allege with any specificity how Rabo aided and abetted the McClain Entities in perpetrating their fraudulent scheme. Therefore, Plaintiffs have failed to adequately allege aiding and abetting fraud, and it should be dismissed.

### D. Plaintiffs Fail to State a Claim for Civil Conspiracy.

"A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose by unlawful means." *Hunt v. Baldwin*, 68 S.W.3d 117, 133 (Tex. App. 2001). A civil conspiracy claim has five elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages." *Id.* In pleading the foregoing elements, a plaintiff must satisfy Rule 9(b)'s heightened pleading standard. *Bertrand v. White*, No. 1:09-CV-358, 2009 WL 10682257, at *3 (E.D. Tex. July 7, 2009).

Plaintiffs' civil conspiracy claim fails for several reasons. First, the Complaint fails to segregate the unlawful conduct allegedly committed by each Defendant. Instead, Plaintiffs merely lump Defendants together without providing any specificity as to each of their allegedly unlawful acts. As noted above, such allegations do not meet Rule 9(b)'s pleading standard and dismissal is warranted. *See Busch*, 2007 WL 603385, at *6.

Second, Plaintiffs' conclusory statement that Rabo committed "unlawful and overt acts" is insufficient to support this element of their claim. Plaintiffs never identify any "unlawful and overt acts" allegedly committed by Rabo, let alone provide facts concerning when such acts allegedly

occurred, who committed them, and how they occurred. Similarly, the Complaint does not even identify who was involved in the alleged conspiracy, alleging only that it included "Defendants and their agents, employees and/or representatives." (Compl. ¶ 178.)

Lastly, Plaintiffs include no allegations regarding an object to be accomplished. Nor can they because, if they did, Plaintiffs would be required to allege that Rabo agreed to participate in a civil conspiracy with the purpose of defrauding itself and causing itself a loss of over $50 million. Of course, such allegations are illogical and would not be plausible.

Plaintiffs have failed to adequately allege their civil conspiracy claim, such that the Motion should be granted. *See, e.g., Chu v. Hong,* 249 S.W.3d 441, 447 (Tex. 2008) ("[I]nferring an agreement to the ultimate injury generally arises 'from joint participation in the transactions and from enjoyment of the fruits of the transaction.'") (quoting *Int'l Bankers Life Ins. Co. v. Holloway*, 268 S.W.2d 567, 582 (Tex. 1963)).

### E.    Plaintiffs' Tortious Interference Claim Fails.

"The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. In evaluating a claim for tortious interference with a contract, a threshold question is whether the contract itself was 'subject to the alleged interference.'" *Mr. W Fireworks, Inc. v. NRZ Inv. Grp., LLC*, 677 S.W.3d 11, 26 (Tex. App. 2023), *review denied* (Dec. 15, 2023) (citations omitted). "[T]o establish the element of a willful and intentional act of interference, a plaintiff must produce some evidence that the defendant was more than a willing participant and knowingly induced one of the contracting parties to breach its obligations under a contract." *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App. 2011). Moreover, the intentional and willful element requires that "[t]he interfering

party . . . [knew] of the existence of a contract between the plaintiff and a third party." *CPM Consulting LLC v. Capsugel* US, LLC, No. 3:17-CV-3059-S, 2019 WL 3769651, at *2 (N.D. Tex. Aug. 9, 2019).

Here, the Complaint fails to allege a plausible tortious interference claim. Plaintiffs contend that Rabo interfered with their contracts with McClain by accepting payments from McClain and his entities. (Compl. ¶ 164.) Such allegations are insufficient to allege tortious interference. Merely accepting payments from the McClain Entities does not render Rabo a willing participant that knowingly induced the McClain Entities to breach their obligations to Plaintiffs. Furthermore, Plaintiffs cannot plausibly argue that Rabo accepting payments from the McClain Entities was the proximate cause of Plaintiffs' purported damages. Rather, the proximate cause of Plaintiffs' damages is obvious: the multi-million-dollar fraudulent scheme run by Brian McClain and his entities. For each of these reasons, Plaintiffs have failed to state a claim for tortious interference, and it should be dismissed.

F.    **Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claim Fails and Should be Dismissed.**

"When a third party knowingly participates in the breach of a fiduciary duty, the third party becomes a joint tortfeasor and is liable as such. A cause of action premised on a contribution to a breach of fiduciary duty must involve the knowing participation in such a breach." *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App. 2007) (citations omitted). Critically, a claim "for aiding and abetting a breach of fiduciary duty is derivative of [a] breach of fiduciary duty claim." *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17–CV–444–RP, 2018 WL 315753, at *4 (W.D. Tex. Jan. 5, 2018). "To prevail in a breach-of-fiduciary-duty claim, a plaintiff must prove that (1) there is a fiduciary relationship between the plaintiff and defendant, (2) the defendant breached his fiduciary duty to the plaintiff, and (3) the breach resulted in an

injury to the plaintiff or benefit to the defendant." *Zhu v. Lam*, 426 S.W.3d 333, 339 (Tex. App. 2014).

"Texas law recognizes two types of fiduciary relationships. The first, a formal fiduciary relationship, arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers. The second, an informal fiduciary relationship, may arise in the context of informal moral, social, domestic, or personal relationships in which one person trusts and relies on another." *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 544 (S.D. Tex. 2011) (citations and internal quotation marks omitted). "But Texas law does not recognize a fiduciary relationship lightly, especially in the commercial context. To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 809 (5th Cir. 2017) (cleaned up). To that end, "mere subjective trust alone is not enough to transform arm's-length dealing into a fiduciary relationship." *Id.*

In this case, Plaintiffs advance no allegations that they had a formal fiduciary relationship with Brian McClain and/or his entities. In fact, in litigation responses filed by many, if not all, of the Plaintiffs in Adversary No. 23-02005, Plaintiffs have clearly and unequivocally taken the position that they were *not* partners with the McClain Entities. (*See* Adv. No. 23-02005, Dkt. 205, at 6-7.) Instead, Plaintiffs appear to allege that they only had an informal fiduciary relationship, given that they claim they "had business transactions with McClain." (Compl. ¶ 68.) As a result, and because Plaintiffs acknowledge that their relationship with McClain was merely a commercial "business transaction," they were required to allege a "special relationship of trust and confidence" that existed prior to *and* apart from their business agreements with McClain. *Jacked Up*, 854 F.3d at 809. The Complaint contains no such allegations. Instead, Plaintiffs rely on the conclusory

18

allegation that they "had a fiduciary relationship with McClain." (Compl. ¶ 182.) This bald allegation falls far short of supporting a fiduciary relationship. Because Plaintiffs have failed to allege the existence of a fiduciary relationship, they have necessarily failed to allege aiding and abetting the breach of a fiduciary duty. *See, e.g.*, *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 847 (Tex. App. 2017) ("[W]hen a breach of fiduciary duty claim fails, so should an aiding and abetting in the breach of fiduciary duty claim.").

### G. The Court Should Dismiss the Fraudulent Transfer Claim.

Plaintiffs contend that McClain made transfers to Defendants that violated TUFTA. (Compl. ¶¶ 155-158.) However, Plaintiffs fail to allege any specifics regarding the alleged transfers. Instead, Plaintiffs allege that all transfers were "made by McClain to Defendants" without alleging which transfers were made to each Defendant. (Compl. ¶ 156.) They have also failed to allege facts supporting some of the other essential elements of a TUFTA claim, including any intent to hinder, delay, or defraud creditors, or facts concerning reasonably equivalent value. (*See generally id.*) This bare-bones claim should be dismissed.

## II. PLAINTIFFS' TWO NEGLIGENCE CLAIMS SHOULD BE DISMISSED.

### A. The Negligent Lending, Hiring, and Supervision Claim Fails.

To state a claim for negligence generally, "a plaintiff must be able to prove three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach." *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App. 2012). "The threshold inquiry in a negligence case is duty ... If there is no duty, liability for negligence cannot exist." *Id.* Similarly, "[t]o successfully prosecute a claim of negligent hiring, supervision, or retention, a plaintiff is required to show that (1) the employer owed a legal duty to protect third parties from the employee's actions, and (2) the third party sustained damages

19

proximately caused by the employer's breach of that legal duty." *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 655 (Tex. App. 2002). A "plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." *Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 384 (Tex. App. 2005). As to proximate cause, a plaintiff must demonstrate foreseeability—*i.e.*, "that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission." *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 648 (S.D. Tex. 2016).

In this case, Plaintiffs' negligence-based claims fail for several reasons. First, Plaintiffs once again fail to segregate the alleged acts of wrongdoing among each of the Defendants. As a result, Rabo has no notice of the alleged wrongful acts purportedly giving rise to Plaintiffs' claims.

Second, Plaintiffs allege no facts supporting the proposition that Rabo owed a legal duty to Plaintiffs related to its lending, hiring, or supervising practices. Nor can they. As the Fifth Circuit explained: "in the absence of a fiduciary or confidential relationship, a bank owes no duty to a person with whom the bank has not dealt and otherwise has no relationship." *Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 800 Fed. Appx. 239, 248 (5th Cir. 2020).[4] And this only makes sense. Otherwise, every lending institution would be on the hook for the fraudulent or unlawful

---

[4] In fact, even if the Plaintiffs *had been* Rabo's borrowers or customers, Rabo *still* would not have owed Plaintiffs duties—fiduciary, special, or otherwise. *See Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3d 878, 891 (6th Cir. 2002) (stating that no fiduciary duty arises in an arm-length transaction and that such a duty is the "highest order of duty imposed by law"); *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 485 (Ky. 1991) (recognizing that banks do not owe fiduciary duties to their customers or debtors); *Houle v. Casillas*, 594 S.W.3d 524 (Tex. Ct. App. 2019) (stating that a fiduciary relationship does not exist in an ordinary lender-borrower relationship); *Jones v. Thompson*, 338 S.W.3d 573, 583 (Tex. Ct. App. 2010) (recognizing that "no fiduciary relationship exists between a lender and a borrower"); *Weltzin v. Cobank, ACB*, 633 N.W.2d 290, 293 (Iowa 2001) (stating that "this court has made clear that fiduciary duties are not automatically implicated in a banker-borrower relationship").

conduct committed by its borrowers using loaned funds. There was no confidential or fiduciary relationship between Rabo and Plaintiffs, and Rabo owed them no duties with respect to the loans it made to the McClain Entities. *Midwestern Cattle Mktg., LLC*, 800 Fed. Appx. At 248. Indeed, if Rabo owed Plaintiffs a duty (and it did not), then it likewise owed a duty to *everyone* with whom the McClain Entities had business dealings. That cannot possibly be the case.

Third, beyond Plaintiffs' failure to allege the existence of a duty, the Complaint fails to allege that any Rabo employee committed an independent, actionable tort against Plaintiffs. To the extent Plaintiffs contend that Rabo employees committed common law fraud against them, such claims fail for all the reasons set forth above.

Fourth, Plaintiffs fail to allege that their alleged injuries were foreseeable. While Plaintiffs claim that their alleged injuries were proximately caused by Rabo, they never contend that they were foreseeable. This is likely because such alleged injuries *were not* foreseeable as a matter of law. Simply put, it was not foreseeable that Brian McClain and his entities would use funds loaned for legitimate business purposes to perpetrate a multi-million-dollar fraud resulting in third parties, including Rabo, losing tens of millions of dollars. Further, Rabo had not even heard of the great majority of the Plaintiffs until after the bankruptcy cases were filed. Therefore, for each of these four reasons, Plaintiffs' claim must be dismissed.

**B.      Plaintiffs' Negligent Undertaking Claim Fails.**

To state a claim for negligent undertaking, a plaintiff must allege: "(1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and either (a) the plaintiff relied upon the defendant's performance, or (b) the defendant's performance increased the plaintiff's risk of harm." *Vance v. Hurst Joint Venture LP*, 657 S.W.3d 141, 156

21

(Tex. App. 2022). "The critical inquiry in a negligent-undertaking theory is whether the defendant undertook to protect another individual, which requires the imposition of a duty where one otherwise would not exist." *Id.* (internal quotations marks omitted). Moreover, "Texas law is clear that to succeed in a negligent undertaking claim, the services the defendant undertakes to perform are for the benefit of the plaintiff, whether the plaintiff is the person being assisted or a third party." *Murray v. Nabors Well Serv.*, 622 S.W.3d 43, 54 (Tex. App. 2020).

Here, the Complaint's negligent undertaking claim fails as a matter of law. First, Plaintiffs once again fail to segregate the alleged acts of wrongdoing among each of the Defendants. As a result, Rabo has no notice of the alleged wrongful acts purportedly giving rise to Plaintiffs' claims. Similarly, Plaintiffs fail to allege what purported services Rabo undertook to perform for Plaintiffs. That is not surprising because Rabo did not undertake any such services for them.

Second, Plaintiffs have not—and cannot—allege that Rabo undertook to protect them, that Rabo undertook to perform services for them, or that Rabo's undertaking was for the benefit of Plaintiffs. As explained above, Plaintiffs were never Rabo's customers; they were merely third parties who also dealt with the McClain Entities. Indeed, Plaintiffs have not alleged that Rabo even knew that they existed or had business with the McClain Entities when Rabo extended credit to the McClain Entities. As such, Plaintiffs cannot allege the imposition of any duty that Rabo could have owed to them. Nor can they allege that Rabo's provision of loan funds to the McClain Entities were for Plaintiffs' benefit. Therefore, Plaintiffs' negligent undertaking claim must be dismissed.

## III.    THE TWO CONTRACT CLAIMS SHOULD BE DISMISSED.

### A.    The Purported Claims Under the ICA Fail.

Thorlakson and AgTexas advance various allegations in the Complaint related to an Intercreditor Agreement between Rabo, Brian McClain d/b/a McClain Feed Yard, AgTexas, and

Thorlakson (the "**ICA**"). (*See* Compl. ¶¶ 189-197.) Specifically, they contend that they are entitled to judgment on the ICA for breach of contract, conversion, and fraud. (Compl. ¶ 196.) Thorlakson and AgTexas's ICA claims fail for several reasons.

First, although they identify various provisions in the ICA, Thorlakson and AgTexas fail to allege which specific provision(s) Rabo purportedly breached. (*See* Compl. ¶¶ 190-97.) On this basis alone, their breach of contract claim fails.

Second, by asserting a conversion claim based on the ICA, Thorlakson and AgTexas concede that such claim is barred by the economic loss rule. "Under Texas law, the economic loss rule generally prevents recovery in tort for purely economic damage unaccompanied by injury to persons or property." *Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804, 808 (5th Cir. 2020). "The rule is based on the proposition that commercial parties may negotiate for whatever warranty or liability limits they choose, and adjust their price accordingly." *Id.* The rule also "performs a critical boundary-line function, separating the law of torts from the law of contracts. More specifically, [t]he underlying purpose of the economic loss rule is to preserve the distinction between contract and tort theories in circumstances where both theories could apply." *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 240 (Tex. 2014) (cleaned up). By basing their conversion claim on the ICA, Thorlakson and AgTexas concede that their "claims" sound in contract, not tort. As a result, their conversion claim based on the ICA is barred by the economic loss rule as a matter of law and should be dismissed.

Third, for all the reasons explained *supra* in Section II, any claim for fraud related to the ICA fails because Thorlakson and AgTexas have failed to allege that Rabo made any misrepresentations to them or owed them any duty of disclosures. (*See* Section II, *supra*.) Therefore, Thorlakson and AgTexas's fraud claim based on the ICA likewise fails.

### B.   Priest's Claims Based on the LoU Fail.

Similar to Thorlakson and AgTexas's ICA claims, Plaintiff Priest advances claims against Rabo related to the LoU. (*See* Compl. ¶¶ 199-201.) It appears, however, that Priest's LoU claim is a duplicate of his conversion claim. (*See* Compl. ¶ 201 ("Priest is entitled to and seeks recovery of judgment for breach of contract and *conversion* against Rabo for its acquiring and sale of cattle belonging to Priest.") (emphasis added).) This claim fails for the reasons outlined above. Furthermore, by asserting a conversion claim based on the LoU, Priest concedes that such claim is barred by the economic loss rule.

Priest also contends that Rabo somehow breached the LoU. (Compl. ¶ 201.) Under Texas law, the elements of a breach of contract claim are "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App. 2015) (internal quotation marks omitted).

Here, the Complaint fails to satisfy even the bare bones pleadings standards of Rule 8 as it is devoid of the threshold allegations necessary for a breach of contract claim. First, Priest does not allege whether it performed under the LoU. Second, Priest fails to identify any particular provisions of the LoU that Rabo supposedly breached. While Priest contends that the LoU generally acknowledged that Priest owned certain cattle, Priest fails to allege any provisions, duties, obligations, warranties, or covenants that Rabo owed and/or breached in the LoU. (*See* Compl. ¶¶ 199-201.) Third, Priest does not identify the specific cattle or proceeds that Priest claims Rabo took in violation of the LoU. As such, the claim should be dismissed.[5]

---

[5] While not directly germane to Rabo's Motion, Rabo finds Priest's argument ironic given that, on April 18, 2023, Priest removed from the McClain Debtors' facility in Friona, Texas, 523 head of

IV.    **AT LEAST SIX OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT PLAINTIFFS FAIL TO DEMONSTRATE THEIR STANDING UNDER 11 U.S.C. § 541(a)(1) TO BRING THESE CLAIMS.**

Under the Bankruptcy Code, the estate includes "all legal or equitable interest of the debtor," 11 U.S.C. § 541(a)(1)—including the right to bring claims against third parties "so that all creditors will share in any recovery." *In re Buccaneer Res., LLC*, 912 F.3d 291, 293 (5th Cir. 2019). Those claims are "vested exclusively in the trustee." *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 589 (5th Cir. 2008). Accordingly, when a creditor alleges a claim against a third party in a bankruptcy proceeding, the creditor necessarily bears the burden of alleging facts "that allow[] the court to draw the reasonable inference" that the claim is theirs, not the trustee's. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding "[w]hether the bankruptcy estate or a creditor can pursue a claim against third parties," courts "focus on whether the creditor has suffered a direct injury or one that is derivative of an injury to the debtor." *In re Buccaneer Res., LLC*, 912 F.3d 291, 293 (5th Cir. 2019). "If the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate." *Id.* But if a claim "does not flow from injury to the debtor," then it belongs to the creditor. *Id.* This is so even where the creditor alleges a claim that "could be brought by a number of creditors," *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 588 (5th Cir. 2008), and even where the same unlawful conduct alleged also harmed the debtor itself, *see In re Buccaneer Res.*, 912 F.3d at 293 (explaining that, in some instances, "the estate and a creditor may have separate claims against a third party arising out of the same events"). What matters is whether the alleged injury "stem[s] from the depletion of estate assets." *In re Buccaneer Res.*, 912 F.3d at 295. If it does, then the claim belongs to the estate.

---

yearling cattle. Accordingly, to the extent Priest had cattle at the McClain Debtors' facilities, it appears that Priest removed them. In any event, they clearly were not taken by Rabo.

The case law is replete with examples of estate-exclusive claims. Where a third party lured a debtor into transferring its assets, injured creditors could not sue even though they had "reduced bankruptcy recovery"; only the estate could sue. *Id.* at 294 (discussing *In re Lothian Oil, Inc.*, 531 F. App'x 428, 439–40 (5th Cir. 2013)). Where a third party conspired with "the debtor's managers to encumber the debtor's assets with new liens," only the estate could sue. *Id.* (discussing *In re R.E. Loans*, 2013 WL 1265205, at *5 (N.D. Tex. Mar. 28, 2013)). And where third parties were alleged to have mismanaged the debtor to the creditor's detriment—again, the claim against the third parties "belong[ed] exclusively to the estate." *In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1284–85 (5th Cir. 1994).

Here, Plaintiffs fail to allege facts showing that their second, third, sixth, seventh, eighth, and ninth causes of action are not exclusively controlled by Kent Ries, the Chapter 7 Trustee of the McClain Entities. This is because the alleged injury supporting each of those claims is the alleged loss of Plaintiffs' investment in McClain. (*See* Compl. ¶¶ 151–52 (alleging that Rabo's negligent "banking and lending practices" caused Plaintiffs' investment losses); ¶ 154 (alleging that Rabo's failure to take reasonable care in undertaking to perform services caused Plaintiffs' investment loss); ¶ 164 (alleging that Rabo tortiously interfered with Plaintiffs' investment contracts with McClain by "taking proceeds from McClain" and "applying those proceeds against debts owed to Rabo"); ¶¶ 167, 176 (alleging that Rabo's abetting of McClain's fraud caused Plaintiffs' investment loss); ¶ 178 (alleging that Rabo and co-defendants' conspiracy to commit unlawful acts caused Plaintiffs' investment loss); ¶ 187 (alleging that Rabo's "substantial assistance" in McClain's breaches of fiduciary duty caused Plaintiffs' investment loss).)

In other words, Plaintiffs do not allege facts showing that Rabo caused any injury independent of Plaintiffs' loss of investment money promised by McClain. Rather, Plaintiffs'

injury "stem[s] from the depletion of [McClain's] assets." *In re Buccaneer Res.*, 912 F.3d at 295.

While they are rightfully upset that they will not likely recoup what was promised by McClain

based on the purported actions of third parties, Plaintiffs' injury is ultimately "derivative of [the]

injury to the debtor" itself. *Id.* at 293. And that means they must allow the trustee to pursue the

parties responsible "so that all creditors," not just Plaintiffs, "will share in any recovery." *Id.*

Plaintiffs accordingly fail to allege facts allowing a reasonable inference that their second,

third, sixth, seventh, eighth, and ninth causes of action are not trustee-exclusive claims. These

causes of action necessarily fail to state a claim upon which relief can be granted.[6]

## **CONCLUSION**

WHEREFORE, Rabo prays that its Motion be granted in its entirety, and that all of the

claims against Rabo be dismissed.

DATED: May 27, 2025.

UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

--and--

RAY QUINNEY & NEBEKER P.C.
Michael R. Johnson *(Pro Hac Vice)*
Matthew M. Cannon *(Pro Hac Vice)*
Austin C. Nate *(Pro Hac Vice)*
36 South State, Suite 1400

---

[6] At the very end of the Complaint, Plaintiffs include a Claim "O" wherein "Plaintiffs and Intervenors seek declaratory judgment as to priority of their claims to cattle and sales proceeds." (Compl. ¶ 211.) Plaintiffs fail to provide any allegations related to this claim or what "priority of their claims to cattle and sales proceeds" even means. Therefore, the Court should dismiss this claim for being inadequately pled (or alternatively direct that Plaintiffs re-plead this claim with more particularity).

27

Salt Lake City, UT 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: mcannon@rqn.com
Email: anate@rqn.com


*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in this case.

/s/ Michael R. Johnson
Michael R. Johnson

1710261

29