Charity S. Bird, *Pro Hac Vice*
KY State Bar 92622
GA State Bar 153021
cbird@kaplanjohnsonlaw. com
**KAPLAN JOHNSON ABATE & BIRD, LLP**
710 W. Main Street, 4th Floor
Louisville, Kentucky 40202
Telephone: (502) 540-8285
*Counsel for Meagan Goad*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| IN RE:<br><br>McCLAIN FEED YARD, INC. , McCLAIN FARMS, INC. , AND 7M CATTLE FEEDERS, INC. ,<br><br>    Debtors. | Case 23-20084-rlj<br>Chapter 7<br><br>Jointly Administered |
| IN RE:<br><br>2B FARMS, a Texas General Partnership, et al. ,<br><br>    Debtors. | Case No. 23-50096-rlj<br>Chapter 12<br><br>Jointly Administered |
| IN RE:<br><br>AGTEXAS FARM CREDIT SERVICES; AGTEXAS, PCA; AND THORLAKSON DIAMOND T FEEDERS, LP<br><br>    Plaintiffs,<br><br>and<br><br>EDWARD DUFURRENA et al. ,<br>    Intervenor-Plaintiffs<br>v.<br><br>RABO AGRIFINANCE, LLC et al. , | ADV. PROC. NO. 24-02007-rlj<br><br>(Consolidated Adversary Proceeding) |

| | |
|---|---|
| Defendants | |
| IN RE:<br><br>HTLF BANK, as successor to FIRST BANK & TRUST,<br><br>    Plaintiffs, Counter-Defendant, and Cross-Claim Defendant,<br><br>v.<br><br>2B FARMS, a Texas General Partnership, et al. , TERRY M. ROBINSON, and REBECCA A. ROBINSON,<br><br>    Defendants, Counterclaim-Plaintiffs, Third-Party Plaintiffs and Third-Party Counterclaim Defendants,<br><br>v.<br><br>RABO AGRIFINANCE LLC and MECHANICS BANK,<br><br>    Third-Party Defendants, and as to Rabo AgriFinance LLC only, Third-Party Counterclaim Plaintiff and Cross-Claim Plaintiff. | ADV. PROC. NO. 24-02007-rlj<br><br>(Consolidated Adversary Proceeding) |

**MEAGAN B. GOAD'S MEMORANDUM OF LAW
 IN SUPPORT OF MOTION TO DISMISS**

Comes now, Meagan B. Goad ("Goad"), by and through undersigned counsel, and files this her *Memorandum of Law in Support of Motion to Dismiss* respectfully showing the Court as follows:

2

1.       On April 28, 2023 (the "Petition Date"), McClain Feed Yard, Inc. ("MFY"), McClain Farms, Inc. ("MFI"), and 7M Cattle Feeders, Inc. ("7M" and collectively with MFY and MFI, "McClain Entities") filed their voluntary petitions for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

2.       MFY was founded in 2009 and is a Texas corporation with its principal place of business located at 824 Mullins Lane, Benton, Kentucky 42025. The sole owner of MFY was Brian McClain. Brian McClain resided at 824 Mullins Lane, Benton, Kentucky 42025.

3.       MFI was founded in 2009 and is a Kentucky corporation with its principal place of business located at 824 Mullins Lane, Benton, Kentucky 42025. The sole owner of MFI was Brian McClain. Brian McClain resided at 824 Mullins Lane, Benton, Kentucky 42025.

4.       7M was founded in 2019 and is a Kentucky corporation with its principal place of business located at 824 Mullins Lane, Benton, Kentucky 42025.

5.       The sole owner of 7M was Brian McClain. Brian McClain resided at 824 Mullins Lane, Benton, Kentucky 42025.

6.       Goad has worked for the McClain Entities since 2005 working mainly as outside help. See, Deposition Transcript of Meagan Goad attached hereto as Exhibit "A" ("Goad Transcript") at p. 12, lns. 2-11.

7.       Beginning around 2020, Goad became inside help full time "just doing basically anything he asked me to do: run errands, go pick up medicine, go get parts, make invoices for customers. Basically anything he told me to do, I would do. " *Id.* at p. 12, ln. 23 – p. 13, ln. 3. "He" means Brian McClain. *Id.* at p. 13, ln. 4-7.

8.      Goad's only interactions with investors were "giving them their invoices" and if they asked questions, she told them "you'll have to ask Dad because I don't know. " *Id*. at p. 14, lns. 17-22.

9.      Goad didn't know how the cattle were accounted for or segregated. *Id*. at p. 24, ln. 22-p. 25 ln. 4. Likewise, she didn't know why the McClain cattle weren't branded. *Id*. at p. 25, lns. 9-13.

10.     Goad didn't know how the company records were maintained regarding cattle ownership and number. *Id*. at p. 25, ln. 23 – p. 26, ln. 4. Goad further testified that her dad "kept all that" and she doesn't know whether "he kept in his head or what. " *Id*. at p. 26 lns. 6-7.

11.     Goad never had any dealings with investors other than making invoices off of information provided by Brian. *Id*. at p. 27, lns. 7-13. The only way Goad knew what to put on an invoice was what Brian would tell her. *Id*. at p. 27, lns. 20-22.

12.     Goad's father, Brian, told her what to put in cattle feeding agreements including number of cattle, price, party, and projected close out. *Id*. at p. 29, ln. 12 – p. 30, ln. 5. All inquiries regarding invoices were to be directed at her father and her father's email address was provided with all invoices. *Id*. at p. 30, lns. 6-20.

13.     Goad prepared the closeouts "with the numbers he would give me. . " *Id*. at p. 30, ln. 23.

14.     Only Brian kept track of the money coming and going, not Goad. *Id*. at p. 34, lns. 12-18. Goad likewise had no idea how Brian kept track of it. Id. at p. 34, ln. 23 – p. 35, ln. 6.

15.     Brian decided how the cattle feeding arrangements would be drafted and which entities would be a party thereto. *Id*. at p. 36, lns. 11-25.

16.     Investors were typically paid back out of McClain Farms. *Id*. at p. 37, lns. 1-5.

17.     Goad had no idea why parties would be in possession of blank checks as that decision was made solely by Brian. *Id*. at p. 38, ln. 3-20. Goad likewise didn't know what Brian's "deals" were with people because she was only doing what she was told. *Id*. at p. 39, ln. 24 – p. 40, ln. 1.

18.     Goad was not the sole signatory on the checks. There was a stamp with her signature that was utilized by Brian and others at the McClain Entities. *Id*. at p. 40, ln. 2-8.

19.     Brian told Goad what checks to write and in what amount. *Id*. at p. 40, ln. 20 – p. 41, ln. 7. When investors wanted blank checks, they would contact Brian and request them. *Id*. at p. 41, lns. 13-22. Goad was not even allowed to ask Brian questions about it. *Id*.

20.     Goad was never a part of any negotiations as Brian solely handled it. *Id*. at p. 42, lns. 4-11. She had no records of anything and solely relied on Brian for information. *Id*. at p. 43 lns. 3-13.

21.     Goad testified that she had no idea how someone would find out how many head of cattle the McClain Entities had other than by asking Brian. *Id*. at p. 43, ln. 24 – p. 44, ln. 4.

22.     All the information that went into borrowing base reports submitted to Rabo came from Brian. *Id*. at p. 44, lns. 8 -16.

23.     Goad testified "I don't know" fifty-three (53) times during the course of her deposition that only lasted a couple of hours.

24.     Goad testified repeatedly throughout her deposition that all information came from Brian, she did whatever she was told by Brian, and she otherwise had no records or understanding of how the operations worked.

25.     Goad went to the 7M or McClain Farm facilities in Texas one time to see her grandfather and has never walked through the feedyard at 7M. *Id*. at p. 120, lns. 2-6. The last time she ever worked at either of the Texas facilities was 2010. *Id*. at lns. 7-12.

## I.     Procedural History

26.     On March 21, 2024, Plaintiffs and Intervenors (collectively, the "Plaintiffs") filed not their first, nor their second, but their Third Amended Complaint in the 222nd Judicial District Court of Deaf Smith County, Texas, naming Goad as a defendant. Adversary Case No. 24-02002-rlj, Docket No. 1, Exhibit B.

27.     This proceeding was one of two state court proceedings filed against defendants in the instant case.

28.     On March 28, 2024, the case was removed by Defendant Rabo AgriFinance LLC ("**RAF**"). *Id*. So too was the other state court proceeding.

29.     This Court entered an order granting a motion by the Chapter 7 trustee of the bankruptcy estates of the McClain Entities, Kent Ries, to further consolidate and abate the two adversary proceedings. *Id*. at p. 3.

30.     This order resulted in the instant Adversary Case No. 24-2007-rlj (the "Consolidated Adversary Proceeding"). *Id*. at p. 13.

31.     This Court also stayed the Consolidated Adversary Proceeding, save for discovery, for 120 days. *Id*.

32.    Goad filed her original motion to dismiss on November 15, 2024, alleging the facts as provided above. *Consolidated Adversary Proceeding*, Docket No. 33-1.

33.    Plaintiffs responded to Plaintiffs' motion to dismiss, *id*. at Docket No. 58, arguing that the inclusion of the Goad Transcript should result in Goad's motion to dismiss being treated as motion for summary judgment, or in the alternative, to exclude the evidence. *Id*. at 7.

34.    After the various parties in the Consolidated Adversary Proceeding agreed to grant Plaintiffs leave to amend its complaint, Docket No. 102, Plaintiffs inflated their allegations to include numerous other counts. See *Consolidated Adversary Proceeding*, Docket No. 103 (the "Amended Complaint").

35.    Plaintiffs relied heavily on the Goad Transcript in its allegations against Goad and repeatedly summarized incorrectly, misstated the transcript, and omitted information intentionally. See *id*. at p. 33, ¶¶ 133-138.

36.    Still, Plaintiffs failed to cure certain pleading defects identified by Goad and other defendants despite the numerous opportunities, as discussed below:

## II.    Legal Standard

Goad seeks relief pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. " *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [counterclaim] defendant has acted unlawfully. " *Id*. (quoting *Bell Atlantic v. Twombly*, 550 U. S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Allegations that are "merely consistent with" a party's liability "stops short of the line between possibility

and plausibility. " *Id.* (quoting *Twombly*, 550 U. S. at 557, 127 S. Ct. 1955). Merely conclusory allegations cannot survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U. S. at 680-82, 129 S. Ct. 1937. Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

### III.   Argument and Citation of Authority

The Court should dismiss with prejudice all claims against Meagan B. Goad under Rule 12(b)(6) because the plaintiffs either: (A) lack standing with respect to some or all of the claims; or (B) have failed to plead with particularity under heightened pleading requirements for fraud claims.

### A. The Plaintiffs lack standing to plead any and all of the causes of action raised against Goad.

If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim. *Matter of Educators Grp. Health Tr.* , 25 F. 3d 1281, 1283 (5th Cir. 1994) (citations omitted). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case. " 11 U. S. C. § 541(a)(1). This includes state law causes of action. *Id.* (collecting cases). The Fifth Circuit's legal framework for determining whether the trustee or an individual creditor is the appropriate actor provides that there are three kinds of action: (1) actions by the estate belonging to the estate; (2) actions by individual creditors asserting a generalized injury to the debtor's estate, which ultimately affects all creditors; and (3) actions by individual creditors that affect only that creditor personally. *In re Schimmelpennink*, 183 F. 3d 347, 359-60 (5th Cir. 1999) (citations omitted) (cited in Docket No. 68). Standing vests in the trustee for the first two categories. *Id.* at 360.

Count 4 of the complaint falls squarely within the scope of the first category, as it alleges voidable transfers under the Texas Uniform Fraudulent Transfer Act. This cause of action is vested by statute in the trustee. See 11 U.S.C. § 544 (the "strong-arm" power). Allegations of fraud against Goad in Counts 5, 7, and 8 fall within the second category, which consists of those cases which are "merely derivative of an injury to the debtor." See *In re Seven Seas Petroleum, Inc.* , 522 F. 3d 575, 585 (5th Cir. 2008). Plaintiffs appear to allege that Goad "directed and allowed the Defendant-entities to keep and use the proceeds of [her] wrongdoing for [her] own purposes." See *Amended Complaint*, ¶ 161(d). Plaintiffs also allege that Goad "transferred money into and out of Company bank accounts and her personal account." *Id*. at ¶ 160. The alleged conduct upon which these claims are predicated are abuses of the McClain entities facilities, properties, and contractual relationships. See *id*. They are therefore plainly derivative of an injury to the debtor.

In *Schimmelpenninck*, a creditor of the Debtor filed a suit in a Texas state court against a wholly-owned subsidiary of the Debtor, alleging, *inter alia*, that under theories of alter ego and single business enterprise, the subsidiary is responsible for the Debtor's obligation to the Creditor. See 183 F.3d at 350. The "Curators" (foreign equivalent to the trustee in the foreign main proceeding) requested an injunction prohibiting the creditor's suit from proceeding, but were denied by the bankruptcy and district courts. *Id*. the Fifth Circuit, however, overturned these decisions. *Id*. Standing was vested in the Curators because the corporate veil piercing action was based "entirely on [the creditor's] relationship with [the Debtor]" and recovery set of creditors could "disadvantage . . . other similarly situated creditors." See *id*. at 360. Likewise, here, standing should also be denied to Plaintiffs because they seek to recover under fraud theories against Goad—alleging that Goad is a principal of the McClain Entities. The

9

fraud claims alleged against Goad are exactly the kind of claims that a trustee would ordinarily be entitled to recover under, if proven to be true.

These reasons alone warrant dismissal of Counts 4, 5, 7, and 8. However, there are additional reasons to grant dismissal, as provided below:

**B. Plaintiffs failed to plead fraud allegations (Counts 5, 7, and 8) with particularity as required by Federal Rule of Civil Procedure 9(b).**

Under Federal Rule 9(b) a complaint must specify the "who, what, when, where, and how" of the alleged fraud. *U. S. ex rel. Williams v. Bell Helicopter Textron Inc.* , 417 F. 3d 450, 453 (5th Cir. 2005). A fraud allegation must identify the "specific representations" were made and "how the representations were false. " See *Sharifan v. NeoGenis Labs, Inc.* , 622 F. Supp. 3d 478 (S. D. Tex. 2022) (citations omitted). A plaintiff cannot simply refer to an amorphous scheme and then claim that an unspecified representation, which the plaintiff viewed at an unspecified time, caused the plaintiff financial loss. See *Id.* (dismissing common law fraud claims with prejudice) (citing *Corbett v. Pharmacare U. S. , Inc.* , 544 F. Supp. 3d 996, 1007 (S. D. Cal. 2021)). Because Counts 5, 7, and 8 are all based on fraud claims, they should be held to this heightened pleading standard. See *Castillo v. First City Bancorp of Texas, Inc.* , 43 F. 3d 953, 961 (5th Cir. 1994) (applying Rule 9(b) to civil conspiracy to commit fraud).

The Plaintiffs alleged, in as generic a fashion as in the previous complaint, that Goad would send HTFL and other parties batches of blank checks, *Amended Complaint* at ¶ 135; see ¶ 169-171, and instruct counterparties as to the amount of checks such that they were "approximately the same amount as McClain invoices" to said parties, *id*. at ¶ 137; see ¶ 169-171. Plaintiffs alleged that "[t]he monthly borrowing base reports and certificates were often submitted and signed by Goad[,]" ¶ 160, that "Goad signed the litany of daily million dollar-plus **checks** on behalf of all McClain[,]" *id.* , that Goad would prepare the invoices on which

HTFL relied in making withdraws from the McClain entities, *id*. at ¶ 171, and that "Goad often turned to 2B Farms to fill in gaps" because of the lack of limitations on wire transactions. *Id*.

The Amended Complaint also alleges that "Goad directed . . . McClain [entities]" to "a. . . . misrepresent[] the existence of cattle in their possession; b. . . . promise[] and agree[] to purchase individual lots of cattle for customers, but sen[d] false yard sheets to the customers for whom they promised and agreed to purchase cattle, although there were far fewer lots of cattle than were represented, such that multiple customers were being informed they were owners of the same cattle; c. . . . use[] the yard sheets, and other means, such as verbal reports and inspections, to report to Plaintiffs and Intervenors that cattle delivered to Defendants were in their possession and under their control when in fact they were not; [and] d. . . . direct[] and allow[] the Defendant entities to keep and use the proceeds of their wrongdoing for their own purposes. . . " (emphasis added). Plaintiffs explicitly declined to provide any specific instances of the alleged fraud because they would be 'too voluminous.' See *Amended Complaint*, ¶ 68.

Consistent in these allegations are high-level descriptions of the "how" of the alleged fraud and the absence of even one example of "when" Goad's alleged acts of misrepresentation, or exercises of control took place. See *Sharifan*, 622 F. Supp. 3d at 488 (dismissing fraud allegations with prejudice because they did not identify which advertisements in an allegedly fraudulent marketing campaign were relied upon by plaintiffs or when they were relied upon). The Amended Complaint only asserts vague summaries of Goad's alleged participation, identifying the years 2020 and 2022 as dates on which Goad began certain activities. See *Amended Complaint* at ¶ 160. There is no way to distinguish any

11

ordinary, lawful action Goad took on behalf of the McClain Entities from the alleged acts of fraud summarized in this Amended Complaint. This open-ended time-frame and lack of specificity renders the Amended Complaint insufficient under the Rule 9(b) standard. *Sharifan*, 622 F. Supp. 3d at 489-90 ("the only mention of when the advertising campaign took place is sometime 'in 2020'") (citations to the record omitted).

Counts 5, 7, and 8 of the Amended Complaint should therefore be dismissed as against Goad under the heightened pleading standard of Rule 9(b).

### IV.    <u>Conclusion</u>

Based upon the above and foregoing, Goad respectfully requests that the Court dismiss with prejudice the claims addressed herein pursuant to Rule 12(b)(6) for failure to state a claim, and grant any such other and further relief as the Court deems appropriate. Goad reiterates that she does not consent to the jurisdiction or the entry of final orders or judgment by the United States Bankruptcy Court for the Northern District of Texas in this proceeding and she retains her right to a jury trial. Goad reserves her right to file an additional motion to dismiss for any and all additional counts asserted against her in the Amended Complaint.

DATED: June 5, 2025.

By: */s/ Charity S. Bird*
Charity S. Bird, KYBAR 92622
Kaplan Johnson Abate & Bird LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
Phone: (502) 540-8285
Email: cbird@kaplanjohnsonlaw. com

Todd A Farmer, KYBAR 86214
Farmer & Wright, PLLC
4978 Alben Barkley Drive, Suite 1
Paducah, KY 42001
Phone: (270) 443-4431
Email: tfarmer@farmerwright. com

William A. Franklin, SBN: 24007200
Boerner, Dennis & Franklin, PLLC
P. O. Box 1738
Lubbock, TX 79408-1738
Phone: (806) 763-0044
Email: bfranklin@bdflawfirm.com

**ATTORNEYS FOR MEAGAN GOAD**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2025, a true and correct copy of the foregoing was served via the Court's ECF system on all parties that have appeared and requested notice via the Court's ECF system.

*/s/ Charity S. Bird*
Charity S. Bird

13