Timothy T. Pridmore; SBN: 00788224
Todd J. Johnston; SBN: 24050837
MCWHORTER, COBB & JOHNSON, LLP
1722 Broadway (79401)
P. O. Box 2547
Lubbock, Texas 79408
806/762-0214; 806/498-4808 (fax)
*Attorneys for Debtors/Defendants/Counter-Plaintiffs/Third-Party Plaintiffs/Third-Party
Defendants 2B Farms, a Texas General Partnership, Terry M. Robinson, Rebecca A. Robinson
and Non-Debtor, Angela Robinson*

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| McClain Feed Yard, Inc., et al., | § | Case No. 23-200-84-swe7 |
| *Debtors.* | § | Jointly Administered |
| | § | |

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| 2B Farms, a Texas General | § | Case No. 23-50096-swe12 |
| Partnership, et al., | § | Jointly Administered |
| *Debtors.* | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| AgTexas Farm Credit Services, Ag Texas PCA, | § | |
| Thorlakson Diamond T Feeders, LP, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Adversary Case No. 24-02007-swe |
| | § | Consolidated Adversary Proceeding |
| Edward Dufurrena, et al., | § | |
| *Intervenor-Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| Rabo AgriFinance, LLC, et al., | § | |
| *Defendants.* | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| HTLF Bank, as successor to | § | |
| First Bank & Trust, | § | |
| *Plaintiff, Counter-Defendant, and* | § | |

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                    Page **1** of **31**



|  |  |  |
|---|---|---|
| *Cross-Claim Defendant,* | § | |
| | § | |
| v. | § | |
| | § | |
| 2B Farms, a Texas General Partnership, | § | Adversary Case No. 24-02007-swe |
| Terry M. Robinson, and Rebecca A. Robinson, | § | Consolidated Adversary Proceeding |
| *Defendants, Counter-Plaintiffs,* | § | |
| *Third-Party Plaintiffs and Third-Party* | § | |
| *Counterclaim Defendants,* | § | |
| | § | |
| v. | § | |
| | § | |
| Rabo AgriFinance, LLC and Mechanics Bank, | § | |
| *Third-Party Defendants.* | § | |

---

## DEBTORS 2B FARMS, A TEXAS GENERAL PARTNERSHIP, TERRY M. ROBINSON AND REBECCA A. ROBINSON'S RESPONSE TO HTLF BANK'S PARTIAL MOTION TO DISMISS SECOND AMENDED THIRD-PARTY COMPLAINT

---

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                           Page **2** of 31

# TABLE OF CONTENTS

Page

I. Introduction......................................................................................................................6

II. Argument and Authorities...............................................................................................10

    A.  2B Farms Adequately Pled Its Conversion Claim Against HTLF Bank (Count One)......11

    B.  2B Farms Adequately Pled Its Fraud Claim Against HTLF Bank (Count One) ..............13

    C.  2B Farms Met Its Pleading Burden for Negligent Lending and Hiring Claim or
        Supervision or Management of Personnel (Count Two)....................................................16

    D.  2B Farms Met Its Pleading Burden for Negligent Undertaking (Count Three) ...............20

    E.  2B Farms' Claims Under the Texas Uniform Fraudulent Transfer Act (Count Four).....21

    F.  2B Farms Correctly Pled Aiding and Abetting Fraud Which is Recognized in Texas
        (Count Six).. ......................................................................................................................23

    G.  2B Farms Has State a Claim Objection Under 11 U.S.C. § 502(d) and a Claim for
        Equitable Subordination as to HTLF (Count Eleven)........................................................24

    H.  2B Farms Met Its Pleading Requirements for Negligence/Gross Negligence (Count
        Twelve)………………………………………………………………………………….24

    I.  2B Farms Withdraws Its Claim for Informal Breach of Fiduciary Duty (Count
      Fourteen)………………………………………………………………………………....28

    J.  2B Farms Wrongful Offset Claim (Count Fifteen) ...........................................................29

III.  Conclusion/Prayer.........................................................................................................30

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                                    Page 3 of 31

# INDEX OF AUTHORITIES

Page(s)

Other Authorities

*Ibe v. Jones,* 836 F.3d 516, 524 (5th Cir. 2016)……………………………………………………9

*Delta Fuel Co., Inc. v. Taylor,* No. MO:18-CV-00184-DC, 2019 WL 13159879, at *5 (W.D. Tex. Mar.22, 2019) …………………..………………………………………………11

*United States v. Boardwalk Motor Sports, Ltd.,* 692 F.3d 378, 381 (5th Cir. 2012)……………12

*Plotkin v. IP Axcess, Inc.,* 407 F.3d 690 696 (5th Cir. 2005)……………………………………...13

*Read v. Scott Fetzer Co.,* 990 S.W.2d 732, 736 (Tex.1998)……………………………………...16

*Avalos v. Brown Auto. Ctr., Inc.,* 63 S.W.3d 42, 47 (Tex.App.-San Antonio 2001, no pet.). ………………………………………………………………………16

*Lukasik v. San Antonio Blue Haven Pools, Inc.,* 21 S.W.3d 394, 403 (Tex.App.-San Antonio 2000, no pet.)…………………………………………………………………...16

*Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996)……………………………………….....16

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 551 (Tex.1985)……………………16

*Houston Area Safety Council, Inc v. Mendez,* 671 S.W.3d 580, 583 (Tex.2023)……………… 17

*Golden Spread Council, Inc. v. Akins,* 926 S.W.2d 287, 290-91 (Tex.1996)………………...17,28

*Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176–77 (Tex. 1997)…………........17,28

*David Fernea v. Merrill Lynch Pierce Fenner & Smith,* 559 S.W.3d 537 (Tex.App.-Austin July 12, 2011)……………………………………………………………17

*Capece v. Navisite, Inc.,* No. 03–02–00113–CV, 2002 WL 31769032, at *4 (Tex.App.-Austin Dec. 12, 2002, no pet.)………………………………………..……………………17

*Guidry v. National Freight, Inc.,* 944 S.W.2d 807, 809 (Tex.App.-Austin 1997, no writ)…...….17

*LaBella v. Charlie Thomas, Inc.,* 942 S.W.2d 127, 137 (Tex.App.-Amarillo 1997, writ denied)…………………………………………………………………...17

*Robertson v. Church of God, Int'l,* 978 S.W.2d 120, 125 (Tex.App.-Tyler 1997, pet. denied).....18

*Nall v. Plunkett,* 404 S.W.3d 552, 555 (Tex. 2013)…………………………………….….…20

*Torrington Co. v. Stutzman,* 46 S.W.3d 829, 838 (Tex. 2000)……………………………..20,25

*Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.,* 22 F.4th 450, 458 (5th Cir. 2022)…..21

*U.S. Metals, Inc. v. Liberty Mut. Group, Inc.,* 490 S.W.3d 20, 21-22 (Tex. 2015)……………..21

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                 Page **4** of 31

*In re MortgageAmerica Corp.* 714 F.2d 1266, 1275 (5th Cir. 1983)……………………………22

*Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 882
(Tex. App. 2017) …………………………………………………………………..…23

*Renate Nixdorf GmbH & Co. KG v. TRA Midland Properties, LLC*, No. 05-17-00577-CV, 2019
WL 92038, at *5 (Tex. App. – Dallas 2019)………………………………………….23

*Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)…………………………………………23

*West Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex.
App.—Dallas 2014, pet. denied)………………………………………………………23

*Nguyen v. Watts*, 605 S.W.3d 761, 793 (Tex. App. – Houston [1ˢᵗ Dist.] 2020)………………...23

*Baxsto, LLC v. Roxo Energy Co., LLC*, 668 S.W.3d 912, 942 (Tex. App.- Eastland 2023)………23

*JPMorgan Chase Bank, N.A. v. Professional Pharmacy II*, 508 S.W.3d 391 (Tex. App.—Fort
Worth, 2014)………………………………………………………………………25,26,27

*Carson Energy, Inc. v. Riverway Bank,* 100 S.W.3d 591, 601 (Tex.App.–Texarkana 2003, pet.
denied)………………………………………………………………………………25

*Ortega v. City Nat'l Bank,* 97 S.W.3d 765, 777 (Tex.App.–Corpus Christi 2003, no pet.)……...25

*Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991)…………………………25,26

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.,* 445 S.W.3d 716, 718 (Tex.2014)…….26

*Lincoln Prop. Co. v. DeShazo,* 4 S.W.3d 55, 61 (Tex.App.–Fort Worth 1999, pet. denied)……27

*Caldwell v. Curioni,* 125 S.W.3d 784, 793 (Tex.App.–Dallas 2004, pet. denied)………………27

Statutes

Rule 12(b)(6) of the Federal Rules of Civil Procedure ...........................................................10,14
Rule 9(b) of the Federal Rules of Civil Procedure……………………………………....13,14
11 U.S.C. §§ 502(d) ...........................................................................................................24

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                              Page 5 of 31

TO THE HONORABLE JUDGE OF SAID COURT:

Debtors 2B Farms, a Texas General Partnership, Terry M. Robinson and Rebecca A. Robinson submit this response ("Response") to HTLF Bank's ("HTLF Bank") *Partial Motion to Dismiss 2B Farms' Second Amended Complaint* [Adv. Dkt. No. 121] and *Brief in Support* [Adv. Dkt. No. 122] (collectively, the "Motion").

# I.
# INTRODUCTION

1.      2B Farms, a Texas General Partnership, Terry M. Robinson and Rebecca A Robinson are a small family cattle ranching outfit located outside of Snyder, Texas (collectively, "2B Farms" and/or "Debtors").  Debtors filed for Chapter 12 bankruptcy on May 31, 2023 as a direct result of the collapse of the McClain fraudulent cattle scheme and their primary lender's, HTLF Bank, immediate and aggressive collection actions and lawsuit instigated against them as a result of same. The Debtors are currently operating under a confirmed Chapter 12 Plan of Reorganization under consolidated bankruptcy case # 23-50096-swe12, in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division.

2.      2B Farms' *Second Amended Third-Party Complaint Also Amending and Consolidating Removed State Court Counterclaims Against HTLF Bank* (the "Second Amended Complaint" or "Complaint") [Adv. Dkt. No. 104] asserts nearly identical claims and factual allegations against HTLF Bank as the approximately forty-seven (47) similarly situated plaintiffs and intervenor-plaintiffs have asserted against HTLF Bank in Adversary Case No. 24-02007, **as well as additional claims and factual allegations unique only to 2B Farms**. These unique additional claims derive from the bankruptcy causes of action available only to 2B Farms as a bankruptcy debtor as well as claims arising from it its direct lending relationship with HTLF Bank. In addition, HTLF Bank has asserted breach of contract and other claims against

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                    Page 6 of 31

2B Farms related to the lending relationship and defenses claimed by HTLF Bank. In these consolidated pleadings, 2B Farms truly is set apart and unique from other parties given they are the only party with direct claims and defenses against HTLF Bank made as a decade's long customer. In addition to this Response, 2B Farms hereby adopts and incorporates the arguments and authorities set forth in *Plaintiffs' and Intervener-Plaintiffs' Response to HTLF's Motion to Dismiss Plaintiffs' and Intervenor's' Original Federal Complaint* [Adv. Dkt. No. 143] as part of this Response to the Motion as if fully set forth herein, and asserts the following Response to the Motion at hand.

3.      This case arises from the fraudulent cattle feeding operations of entities owned by Brian McClain ("McClain"). This massive, multi-million-dollar enterprise that ultimately collapsed in April 2023 when it was discovered that McClain's operations were only feeding about 8,000 head of cattle—instead of 80,000 head of cattle that had been represented to banks and cattle purchasers like 2B Farms.

4.      As set forth in detail in 2B Farm's Second Amended Complaint (which is incorporated by refence herein), HTLF Bank, successor to First Bank & Trust and its predecessor, AimBank, handled most of the banking with 2B Farms, and was extremely active in, and participated with said buying and selling of cattle, including dealing directly with McClain. 2B Farms' wire transfers to purchase cattle from McClain and checks received and negotiated from McClain for the sale of 2B Farms' cattle were transacted through McClain's account(s) held at Mechanics Bank (collectively, the "McClain Account") and 2B Farms' account at HTLF Bank. Rabo Agrifiance, LLC ("Rabo") was McClain's lender and would generally sweep deposits for McClain from Mechanics Bank. The amounts HTLF Bank itself would write on the previously signed checks provided by McClain were based upon hand-written

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                Page 7 of 31

cattle sale statements prepared and forwarded by McClain to the parties. HTLF Bank held the McClain pre-signed checks in a bank "drawer" until needed, and would then fill them out and directly deposited them directly in into 2B Farms' account, giving instant credit for same to 2B Farms for millions of dollars, knowing that outgoing wires for similar amounts would be going out from the 2B Farms' account to the McClain Account often the same day, and generally doing the same without written authorization from 2B Farms.

5.      HTLF Bank generally did not require the deposited funds it was writing on the McClain Account <u>to clear prior to outbound wire transactions occurring</u> from 2B Farms' account, which was in direct violation of HTLF Bank's own policies and procedures and its account agreement with 2B Farms. HTLF Bank was in control of McClain Farms' checks, filled the same out, deposited the same (without endorsement) and gave instant credit for the deposited funds on its own direction and control, all of which injured and damaged 2B Farms in an amount of over $20,000,000.00.

6.      HTLF Bank's own designated corporate representative for this case and former Senior Ag Lender for HTLF Bank, Mr. Johnny Earp, gave his deposition on December 6, 2024, which deposition is generally referenced by 2B Farms in its Second Amended Complaint.  Mr. Earp testified to the following:

> Q:      And then you addressed that in your opinion Mr. Ragland [2B Farms' loan officer for HTLF Bank and Snyder bank branch president at the time] did not have the expertise [in cattle and the ag lending business].
>
> **A:      Shawn [Ragland] expressed it to me personally that he didn't have the expertise in lending money to – on livestock.**

*See* Earp Deposition, Ex. A, 62: 13-17.

. . . .

> Q:      So, in that case, under the bank's policy, it should not have given immediate credit for those checks; is that right?
>
> **A:      That's right.**

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                    Page 8 of 31

*See* Earp Deposition, Ex. A, 83: 19-22

. . . .

Q:    And so if McClain Farms, Inc. is sending a pre-signed blank check to First Bank & Trust to hold in a desk drawer, that's unusual; is it not?

**A:    Very unusual.  I mean, I wouldn't send any forms like that.  That just –**

Q:    That's not normal?

**A:    Normal course of business, no.**

Q:    What about if the bank employee filled out the pay to the order of and the amount of the check?  That would not be normal either; would it?

**A:    That would not be normal.  How would – How would they know?**

*See* Earp Deposition, Ex. A,107:25 – 108: 1- 11.

. . . .

Q:    That is not what a similarly situated bank would do traditionally; is it?

**A:    No.**

*See* Earp Deposition, Ex. A,108:24 – 109:1.

. . . .

Q.    Basically, would you – would you agree that Shawn Ragland had the ability to oversee the Bo Robinson and McClain transaction and do other – other things to protect the bank and Bo Robinson than what he did?

**A:    He [Shawn Ragland] had the – As far as I know, Shawn had the ability to not give immediate credit to a deposit coming in and he did not have to wire the funds out because there was basically no funds in the account to wire out so he was wiring uncollected funds.**

*See* Earp Deposition, Ex. A, 125:9 – 21.

7.    As HTLF's own corporate representative testified, HTLF Bank's own branch president and 2B Farms' long time loan officer did not follow their own policies and procedures and this was an improper handling of the accounts and not in the normal course and scope of banking operations. 2B Farms relied upon HTLF Bank's expertise and longstanding relationship on this matter, and HTLF Bank had a special relationship and duty to not act in the manner it did – all as testified to by Mr. Johnny Earp, former Senior Ag Lender for the HTLF Bank. Those same policies and procedures related to "instant credit" are in effect to protect a bank customer in the event the check being deposited bounces or is returned, and no funds are then available.

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                          Page 9 of 31

That is exactly what happened on April 4th, 5th, and 6th, 2023, when HTLF Bank gave 2B Farms instant credit (without 2B Farms requesting same) on approximately $7,500,000.00 and wired out a similar amount on the same days, but unfortunately, the three (3) checks deposited were not honored by Mechanics Bank and 2B Farms "lost" all of said deposited funds, and lost a like amount by HTLF Bank wiring out similar amounts. This caused a huge negative balance in 2B Farms account which it could not pay back to HTLF Bank.

8.    In reviewing this Motion and Response, it is important to note that despite HTLF Bank having a similar motion to dismiss against the claims of Rabo AgriFinance, LLC already denied by Judge Jones [Adv. Dkt. No. 100], HTLF Bank now urges this Court to dismiss the claims made by 2B Farms against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The claims asserted by 2B Farms are direct claims related to a customer/bank special relationship, thus even stronger than Rabo's claims which Judge Jones already upheld. 2B Farms pleaded each of their causes of action against HTLF Bank with sufficient particularity to survive the Motion. However, to the extent that the Court is inclined to grant any portion of the Motion, 2B Farms respectfully requests leave to amend the Second Amended Compliant to address any such deficiencies. 2B Farms would further note that HTLF Bank is not seeking dismissal of its Count Thirteen, which is 2B Farms' claims for HTLF Bank's breach of contract, including its loan documents and Agreements, Disclosures and Account Terms (Business Deposit Accounts) dated effective February 22, 2021.

## II.
## ARGUMENT AND AUTHORITIES

9.    Rule 12(b)(6) of the Federal Rules of Civil Procedure applies to adversary proceedings pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure. *See* Fed. Bank. R. 7012(b). "To survive a motion to dismiss, a complaint must contain sufficient factual

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                  Page 10 of 31

matter, <u>accepted as true</u>, to 'state a claim to relief that is plausible on its face." *Ibe v. Jones*, 836

F.3d 516, 524 (5th Cir. 2016) (emphasis added). In conducting this analysis, courts must "accept

[] all well-pleaded facts as true and view [] those facts in the light most favorable to the

plaintiff." *Id.*  Moreover, "a plaintiff need not detail in [its] complaint *every* fact on which they

may eventually rely to prove their claim." *Delta Fuel Co., Inc. v. Taylor*, No. MO:18-CV-00184-

DC, 2019 WL 13159879, at *5 (W.D. Tex. Mar.22, 2019) (emphasis added) (internal quotation

marks omitted). 2B Farms refers to and incorporates by reference herein its Second Amended

Complaint [Adv. Dkt No. 97].  The facts, allegations and claims made therein clearly warrant

the denial of HTLF Bank's Motion.  Notwithstanding, 2B Farms hereby responds below to each

issue raised in the Motion.

### A. 2B FARMS ADEQUATELY PLED ITS CONVERSION CLAIM AGAINST HTLF BANK (COUNT ONE).

10.    HTLF Bank contends in its Motion that 2B Farms' conversion claim against it fails

because its Second Amended Complaint does no identify any improper act of dominion or

control by HTLF over 2B Farms' cattle or proceeds.  In response to this assertion, 2B Farms

claims that it devotes approximately three (3) pages in its Second Amended Complaint [Adv.

Dkt. No. 104, p. 25 – 27] specifically detailing factual allegations of HTLF Bank's unauthorized

control over its funds (including requiring 2B Farms to sell cattle, equipment and real estate)

regarding the transactions with McClain, which actions were inconsistent with or to the

exclusion of 2B Farms' rights. In fact, HTLF Bank is currently holding approximately

$750,000.00 of cattle proceeds from 2B Farms.

11.    Conversion occurs under Texas law "when, wrongfully and without

authorization, one assumes and exercises control and dominion over the personal property of

another, either inconsistently with or to the exclusion of the owner's rights." *United States v.*

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                  Page 11 of 31

*Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012). 2B Farms has pled that HTLF Bank held a large number of pre-signed checks from McClain on a McClain account at Mechanics Bank, and which a McClain representative would periodically hand-deliver or overnight mail to HTLF Bank to hold in trust in order to do business with 2B Farms and HTLF Bank. Whenever 2B Farms sold cattle through one of the McClain Feedyards, HTLF Bank would typically take one of the pre-signed and delivered checks on the McClain Account it was holding in the HTLF Bank representative's desk, and it (HTLF) would then directly fill in the name of the payor (*i.e.* "2B Farms") and fill in the amount of the check for McClain, often totaling millions of dollars, and then HTLF Bank would directly deposit the check into the 2B Farms' account at HTLF Bank, generally <u>without</u> 2B Farms' endorsement, giving instant credit. By way of example, on April 4th, 5th and 6th, 2023, a HTLF Bank representative filled out the three (3) separate checks based upon sale statements prepared by McClain Feedyard, and then HTLF Bank directly deposited them into 2B Farms' account <u>without</u> 2B Farms' endorsement giving instant and unauthorized credit on said deposits in the combined total amount of **<u>$7,601,318.86</u>**.

12.    As further pled in 2B Farms' Second Amended Complaint, during the exact same time period (April 4th, 5th and 6th, 2023), the above-referenced checks were being filled out and deposited into 2B Farms' account by HTLF Bank, three (3) unauthorized (<u>no written authorization from 2B Farms</u>) wire transfers were also initiated and sent out by HTLF Bank to the McClain Account at Mechanics Bank to purchase additional cattle on behalf of 2B Farms based upon cattle offered for sale by McClain. Again, these three (3) wires were sent out to the McClain Account by HTLF Bank <u>without</u> 2B Farms' written authorization in the combined total amount of **<u>$7,458,956.92</u>**. After giving nearly $7.5 million in instant credit to 2B Farms that it

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                          Page 12 of 31

never sought or requested and, unilaterally sending these funds to a third-party (i.e. McClain) without 2B Farms' written authorization, HTLF Bank now seeks to recover these funds from 2B Farms itself, as after the McClain "bust" occurred there was not enough money in the 2B Farms' account to cover the three (3) wires as the instant credit vanished when the checks were not honored by Mechanic's Bank. All of this was done in violation of bank policies and procedures and without written endorsement or authorization. In addition, HTLF Bank has wrongfully taken as an offset 2B Farms' cattle, proceeds thereof, equipment and real estate.

13.     2B Farms claims that HTLF Bank's actions as detailed above satisfies the elements of conversion under Texas law due to the wrongful control exercised by HTLF Bank's representative over 2B Farms' funds and assets, which were inconsistent with the rights of 2B Farms, and, therefore, the Court should deny HTLF Bank's Motion with regard to is claim for conversion.

## B.  2B FARMS ADEQUATELY PLED ITS FRAUD CLAIM AGAINST HTLF BANK (COUNT ONE).

14.     HTLF Bank contends that 2B Farms' fraud claim against HTLF Bank failed to plead the claim with particularity as required by Fed. R. Civ. P. 9(b).  "[T]o satisfy Rule 9(b), a plaintiff must allege with specificity the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they are fraudulent." *See Plotkin v. IP Axcess, Inc.*, 407 F.3d 690 696 (5th Cir. 2005).

15.     Based upon the above, 2B Farms contends that it sufficiently pled, with specificity, facts establishing 'the who, what, when, where, and how' of HTLF Bank's fraud in this matter both as it relates to 2B Farms' transactions involving the McClain Accounts at Mechanics Bank in April 2023, and prior to this time frame. There was no policy or procedure of HTLF Bank, as plead in the Second Amended Complaint and as detailed by Mr. Earp in his

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                          Page 13 of 31

testimony referenced above, for giving instant and immediate credit for millions of dollars on checks prepared and deposited by one or more HTLF Bank representatives into 2B Farms' account. 2B Farms has specifically pled three (3) specific transactions of this type occurring on April 4th, 5th and 6th, 2023, which satisfies the heightened pleading standard under Fed. R. Civ. P. 12(b) and 9(b) and details, with specificity, facts establishing 'the who, what, when, where, and how' of HTLF Bank's fraud in this matter both as it relates to 2B Farms' transactions involving the McClain Accounts in April 2023, and prior to this time frame. HTLF knew of the extreme danger and risk of doing this, but knowingly proceeded anyway, and, in fact, said actions and/or inactions caused significant damage to 2B Farms when Mechanics Bank refused to honor the three (3) McClain checks HTLF Bank wrote, deposited and provided instant credit for. HTLF Bank wanted to keep this "cash cow" going securing fees and deposits on its books.

16.     Further, and contrary to HTLF Bank's assertions in its Motion, 2B Farms specifically pled that it, 2B Farms, relied upon Ragland's and HTLF's experience, relationship, and training to protect its interests as it relates to the McClain transactions, from which they wholeheartedly failed to protect 2B Farms (Second Amended Complaint, p. 37, para. 110).

17.     Still further, as set forth above, this Court has already looked to the sufficiency of allegations of fraud against HTLF Bank resulting from the check kite, albeit from other parties (Rabo), and found them to be sufficient. As this Court's March Order states: "[a] kiting scheme is a different kind of fraud, but it still reveals a pattern of misrepresentations within the scheme." (Adv. Dkt. 100, pp. 4-5). The Court analyzed the check kite allegations in Rabo's pleading, which describes the same check kite as described in 2B Farms' Second Amended Complaint, and concluded "the described kiting scheme is itself a fraudulent enterprise" and that "the irregular practice of using signed-but-otherwise blank checks for the benefit of the 2B parties

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                    Page 14 of 31

and [HTLF] . . . potentially implicate [HTLF] in the scheme." (Adv. Dkt. 100, p. 4). As such the

Court found that HTLF Bank's motion to dismiss Rabo's fraud claim should be denied, and this

Motion should be denied here with regard to 2B Farms' claim for fraud.

### C.  2B Farms Met its Pleading Burden for Negligent Lending and Hiring Claim or Supervision or Management of Personnel (COUNT TWO).

18.     HTLF Bank states the following in its Motion as to 2B Farms' allegations that

the bank was negligent in its hiring, supervision and management of Shawn Ragland, 2B Farms'

loan officer and branch bank president in Snyder, Texas, and other personnel:

> At most, 2B Farms has stated the allegedly wrongful acts of Ragland. Such facts
> are not sufficient to allege that HTLF knew or should have known that Ragland
> was unfit or incompetent and that he was an unreasonable risk to others.
> McClain's fraud was not a foreseeable risk of HTLF's hiring, management, or
> supervision of Ragland. 2B Farms' cause of action for negligent hiring,
> supervision and management should therefore be dismissed. . . .

(*See* Motion at p. 11, para. 21).  The Trustee has alleged in its *Original Complaint for (1)*

*Avoidance and Recovery of Preferences and Fraudulent Transfers; (2) Disallowance and*

*Subordination of Claims; and (3) Other Relief* that **$104,354,798.76** was transferred from the

McClain Account at Mechanics Bank to 2B Farms' account at HTLF Bank between January 28,

2023 and April 28, 2023, which account was overseen by Ragland and other HTLF Bank

representatives. *See* Trustee's *Original Complaint*, Adv. Case No. 23-02003-swe, Dkt. No. 1, p.

10.  HTLF Bank's own corporate representative (Johnny Earp) confirmed in his deposition that

"Shawn [Ragland] expressed it to [him] personally that he didn't have the expertise in lending

money to – on livestock."  *See* Earp Deposition, Ex. A, 62:13-17. Despite this clear admission as

to negligent hiring, supervision and management, and the fact that HTLF Bank was giving

instant and unauthorized credit to 2B Farms for millions of dollars daily on checks it was

writing and then wiring millions of dollars out, often on the same day, without 2B Farms'

written authorization, HTLF Bank  claims that the Complaint fails to state a cause of against

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                      Page 15 of 31

HTLF Bank for negligent hiring and supervision, and management as it alleges to have found "no authority holding that banks owe a duty to third parties (or their customers) in hiring, retaining, supervising or managing their employees." (*See* Motion at p. 10, para. 21). This is false, and HTLF Bank owed a duty to its customer, 2B Farms.

19.     There are two (2) ways a Court can determine if a common law duty arises in a negligence-based case – "the risk utility test" and by a "special relationship". Courts apply a risk-utility balancing test in determining whether a duty exists under common law. *See Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 736 (Tex.1998). In determining whether a common law duty exists, a court considers the risk, foreseeability, and likelihood of injury, and then weighs these factors "against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Id.*; accord *Avalos v. Brown Auto. Ctr., Inc.*, 63 S.W.3d 42, 47 (Tex.App.-San Antonio 2001, no pet.). Ultimately, the test boils down to "what a person should, under the circumstances, reasonably anticipate as the consequences of one's action or failure to act." *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 403 (Tex.App.-San Antonio 2000, no pet.). "[F]oreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable." *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); *see also Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 551 (Tex.1985). In *Nixon*, the court commented that it frequently has stated the following a two-prong test for foreseeability:

> [1] "that the injury be of such a general character as might reasonably have been anticipated; and
> [2] that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen."

*Id.* at 551.

Courts also consider "[w]hether one party would generally have superior knowledge of the risk

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                    Page 16 of 31

or a right to control the actor who caused the harm." *Houston Area Safety Council, Inc v. Mendez*, 671 S.W.3d 580, 583 (Tex.2023). Here, all factors affirms that HTLF Bank owed duty to 2B Farms. A Special Relationship can also be used to establish a common law duty: In deciding whether to impose a common law duty, courts consider the parties' relationship. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 290-91 (Tex.1996). For the reasons stated above and due to the decades long business relationship between HTLF Bank's Ragland and 2B Farms, the relationship clearly falls under this category as well. We have held in the past that an informal fiduciary relationship can arise from personal relationships of special trust and confidence. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997). Here 2B Farms relied upon Ragland due to their longstanding relationship, business dealings and perceived expertise in the cattle lending business.

20.     Still further, in the case of *David Fernea v. Merrill Lynch Pierce Fenner & Smith*, 559 S.W.3d 537 (Tex.App.-Austin July 12, 2011), the Court held that "[w]hile the employee need not be acting in the scope of his employment to impose liability on the employer, the theory of negligent hiring and supervision does require that a plaintiff's harm be the result of the employment." *Id.* Stated another way, "**[t]he employer-employee relationship ... may create a duty to a third party only if the third party's harm is brought about by reason of the employment and is, in some manner, job-related**." *Capece v. Navisite, Inc.,* No. 03–02–00113–CV, 2002 WL 31769032, at *4 (Tex.App.-Austin Dec. 12, 2002, no pet.) (mem. op.); *see also Guidry v. National Freight, Inc.,* 944 S.W.2d 807, 809 (Tex.App.-Austin 1997, no writ). This "nexus" requirement has also been stated in terms of proximate cause. *See LaBella v. Charlie Thomas, Inc.,* 942 S.W.2d 127, 137 (Tex.App.-Amarillo 1997, writ denied) ("[T]he negligence in [hiring, training, or supervising] must be the proximate cause of the injuries to the

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                    Page 17 of 31

plaintiff."); *Robertson v. Church of God, Int'l,* 978 S.W.2d 120, 125 (Tex.App.-Tyler 1997, pet. denied). Certainly, failing to ask questions in the face of highly suspicious activity and knowingly violating its own bank's policies and procedures may be enough, in some situations, to satisfy the purposeful contrivance. Moreover, the ever increasing amount and frequency of funds coming in and out of the account should have raised a red flag as to McClain's bad acts, for which a prudent bank would question. *United States v. Nguyen,* 493 F.3d 613, 622 (5th Cir.2007) ("Not asking questions can be considered a purposeful contrivance to avoid guilty knowledge.")

21.      Here, McClain's fraud and other bad acts was a foreseeable risk of HTLF Bank's hiring, management, or supervision of Ragland and other HTLF Bank employees, for no other reason than the sheer number and the amount of the transactions run through the account on a near daily basis which Ragland and/or his assistant provided direct assistance in the form of check writing, depositing and wiring of funds.  Once more, 2B Farms is informed and believes that Ragland and HTLF Bank, through its predecessor Aim Bank, were involved in another check kiting scheme ***immediately prior to*** the matter before this Court, which should have made HTLF Bank aware that Ragland and its other bank personnel were unfit or incompetent and that McClain was an unreasonable risk to others.  *See Reagor -Dykes Motors, LP et al. vs. Dennis Faulkner, Trustee of Reagor-Dykes Auto Group Creditors Liquidating Trust vs. Aimbank*; Adv. Case # 20-05039-rlj; In the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division. In that prior check kiting case centered in the **same Snyder, Texas, branch bank used by 2B Farms and supervised by Ragland at the time**, the Plaintiffs' Second Amended Complaint therein stated in relevant part:

> 13. **In the year leading up to the [Reagor Dykes'] bankruptcy, over $449 million dollars went in-and-out of the AimBank business checking**

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                              Page 18 of 31

**accounts of the Debtors Snyder and Lamesa dealerships**. *See Exhibit C.* The overwhelming majority of this money was in the form of intercompany transfers and was, in fact, kited funds. This amount of money would have been equivalent to approximately 32.8% of AimBank's approximate asset size as of the petition date, 318.8% of AimBank's total equity capital, and 3,989.6% of AimBank's loan loss reserve. *Id.* **The sheer amount of intercompany transfers was staggering in relation to the relevant bank metrics, and the existence of the massive kite would or should have been obvious to a bank**. It also would or should have been obvious to AimBank that the volume and amount of transactions were due to kiting or fraudulent activity, given that Reagor Dykes' chief financial officer provided AimBank with financial statements for the Reagor Dykes entities that showed the amounts being deposited bore no rational relationship to the companies' business activity. On information and belief, AimBank's own computer system likewise notified bank officers and employees of the kiting from a very early stage.

*See Trustee of Reagor-Dykes Auto Group Creditors Liquidating Trust's Second Amended Complaint*; Adv. Case No. 20-05039-rlj, Dkt. 39, para. 13. p. 7 (emphasis added). 2B Farms asks the Court to take judicial notice of this pleading on its docket in reference to this Response by 2B Farms to the Motion, as the same bank (predecessor) and loan officer and staff are involved in the present matter. AimBank, now known as HTLF Bank, presumably settled this matter as shown by the Court's docket. In this case, Johnny Earp's own testimony said Ragland did not have the experience to handle ag/cattle loans, that Ragland failed to follow policy and procedures of the bank, and that said actions were not "normal" and prudent banking actions. HTLF Bank's Johnny Earp and others knew of Ragland's cattle inexperience, and his actions and inactions but chose to do nothing. Each of these negligence claims have been properly pled and supported.

22.     It was the breach of this duty to its customer, 2B Farms, by HTLF Bank in the negligent hiring, retaining, supervision and/or management of Ragland and other bank representatives, which was foreseeable, that caused 2B Farms' damages identified in the Second Amended Complaint. For these reasons, the Motion should be denied as to Count Two. 2B

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                      Page 19 of 31

Farms concedes there is no specific claim for negligent lending, and instead argues such acts

related thereto apply to its other negligence claims.

### D. 2B Farms Met its Pleading Burden for Negligent Undertaking (COUNT THREE).

23.     A claim for negligent undertaking asserts a duty where one otherwise would not

lie. *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013). The critical inquiry concerning the duty

element of a negligent-undertaking theory is whether a defendant acted in a way that requires

the imposition of a duty where one otherwise would not exist. *Id.* In the unlikely event this

lawsuit finds no duty under the pled negligence theories, this cause of action would apply.

24.     The Second Amended Complaint states and it is an undisputed fact that HTLF

Bank was in control of McClain Farms' pre-signed checks which it kept in a desk drawer, filled

the same out for millions of dollars daily, deposited the same (without endorsement) into 2B

Farms' account and then gave instant credit for the deposited funds on its own direction and

control. The Second Amended Complaint further states and it is an undisputed fact, that HTLF

Bank would then wire millions of dollars in funds from the 2B Farms' account to the McClain

Account often without written authorization and prior to the availability of funds in the account

in direct contravention to its bank policies and regulations. These facts were pled and testified to

by the bank's own corporate representative.

25.     Negligent undertaking is an alternative negligence theory for imposing a duty of

care:

> One who undertakes, gratuitously or for consideration, to render services to another
> which he should recognize as necessary for the protection of the other's person or things,
> is subject to liability to the other for physical harm resulting from his failure to exercise
> reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000) (*quoting* RESTATEMENT

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                              Page 20 of 31

(Second) of Torts § 323 (1965)). Here both elements are easily met as addressed in this Response. HTLF Bank's personnel's extraordinary actions and inactions referenced herein and in 2B Farms' Complaint was an undertaking that increased the risk of harm to 2B Farms and/or 2B Farms suffered because its reliance on its banker's actions.

26.     HTLF Bank asserts that an economic injury is insufficient to support a negligent undertaking claim. *James v. Wells Fargo Bank, N.A.,* 533 F. App'x 444, 448 (5th Cir. 2013) ("plaintiffs' claim for negligent undertaking fails as a matter of law because plaintiffs allege no physical harm resulting from [bank's] voluntary undertaking of services."). However, the Supreme Court of Texas addressed the meaning of "physical injury" in a commercial general liability policy when determining whether the installation of a defective product at a refinery resulted in physical injury to tangible property. *U.S. Metals, Inc. v. Liberty Mut. Group, Inc.*, 490 S.W.3d 20, 21-22 (Tex. 2015). Relying on dictionary definitions of "physical" and "injury," with the latter defined as "[a]ny harm or damage," the court reasoned that a "physical" injury had to be "one that is tangible." *Id.* at 24–25; *see also id.* at 27 (holding that "physical injury requires tangible, manifest harm"). In reaching this conclusion, the federal courts have relied on Texas case law. *See, Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 458 (5th Cir. 2022) ("We conclude the Texas Supreme Court would interpret a direct **physical loss** of property to require a **tangible** alteration or deprivation of property.") In the matter before this Court, HTLF Bank has deprived 2B Farms of its cattle, funds, equipment and real estate thus satisfying the "physical injury" requirement of the negligent undertaking cause of action.

### E. 2B FARMS' CLAIMS UNDER THE TEXAS UNIFORM FRAUDULENT TRANSFER ACT (COUNT FOUR).

27.     HTLF Bank states that 2B Farms seeks to assert fraudulent transfer claims under

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                    Page 21 of 31

the Texas Uniform Fraudulent Transfer Act and that such claims are the property of the McClain Estates. Citing the Fifth Circuit case of *In re MortgageAmerica Corp.,* HTLF Bank wrongly asserts that 2B Farms lacks standing to assert such claims.  714 F.2d 1266, 1275 (5th Cir. 1983).

28.    In *MortgageAmerica Corp.*, the Fifth Circuit stated: "We think that when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a "legal or equitable interest []" in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code."  In response, 2B Farms agrees with HTLF Bank's reference to this holding in *MortgageAmerica Corp.* and asserts that 2B Farms, Terry M. Robinson and Rebecca A. Robinson **_are_** currently Debtors in a Chapter 12 Bankruptcy under consolidated case # 23-50096-swe12, in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division.  As such, the Texas Uniform Fraudulent Transfer Claims asserted by 2B Farms are claims of <u>their</u> estates, and not those of the McClain Estate, for which the 2B Farms debtors now seek recovery for its creditors. As the Court did with HTLF Bank's identical argument in its Motion to Dismiss Rabo's complaint, the Court should also reject HTLF's argument here as it relates to 2B Farms' TUFTA claims. *See Adv.* Dkt. No. 100.

29.    2B Farms would also note for the Court that this matter involving the Trustee's alleged right to claims of the McClain Estates is currently pending before the Court pursuant to the Trustee's *Motion to Intervene and Motion to Enforce Automatic Stay* [Adv. Dkt. No. 140] and has yet to be heard or decided. To the extent the Court will hear and decide this matter on a later date, 2B Farms respectfully requests the Court deny HTLF Bank's Motion as to Count Four at this time. But again, 2B Farms has direct claims against HTLF Bank, and further has a customer/bank relationship. As such, it clearly has its own direct claims for which it can assert herein.

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                    Page **22** of 31

**F. 2B FARMS CORRECTLY PLED AIDING AND ABETTING OR KNOWING PARTICIPATION IN FRAUD WHICH IS RECOGNIZED IN TEXAS (COUNT SIX).**

30.     Despite HTLF Bank's contentions to the contrary, Texas courts have recognized "aiding and abetting" and "assisting and encouraging" type claims. *See, e.g.*, *Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 882 (Tex. App.- Houston [14th Dist.] 2017) (identifying the elements of an aiding and abetting claim); *Renate Nixdorf GmbH & Co. KG v. TRA Midland Properties, LLC*, No. 05-17-00577-CV, 2019 WL 92038, at *5 (Tex. App. – Dallas 2019). To prevail on an aiding and abetting claim, a plaintiff must prove a defendant, with unlawful intent, gave substantial assistance and encouragement to a wrongdoer in a tortious act. *See Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996); *West Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex. App.—Dallas 2014, pet. denied).

31.     Under Texas law, "aiding and abetting" type claims are derivative claims that rely on the commission of an underlying tort. *See Nguyen v. Watts*, 605 S.W.3d 761, 793 (Tex. App. – Houston [1st Dist.] 2020). Here, HTLF Bank contends that 2B Farms' aiding and participating claim fails because it failed to adequately plead an underlying tort claim sounding in fraud. First, there exists a common law duty to not commit fraud. *See Baxsto, LLC v. Roxo Energy Co., LLC*, 668 S.W.3d 912, 942 (Tex. App.- Eastland 2023) ("[T]he duty to not commit fraud is an independent duty that is separate and distinct from any duty to comply with a contract."). Such a duty naturally includes an obligation to refrain from perpetuating or otherwise facilitating another in committing fraud.

32.     As set forth in the Second Amended Complaint and outlined in detail above regarding Count One (Section B) in this response, HTLF Bank breached this common law duty by engaging in and assisting the McClain Entities' commission of fraud, which was specifically

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                   Page 23 of 31

pled. (*See* Second Amended Complaint, Adv. Dkt. No. 104 at ¶¶ 32-33). Second, as noted above, aiding and abetting is an independent tort that derives from another independent tort committed by another actor. Because 2B Farms alleges that HTLF Bank aided and abetted (*i.e.*, an independent tort) the McClain Entities in committing fraud (*i.e.*, an underlying, independent tort), 2B Farms has satisfied the required pleading standard. Likewise, facts were pled to the knowing participation of fraud, as set forth herein and in their Complaint. Therefore, 2B Farms has adequately alleged its aiding and abetting, and participating claim, and the Motion should be denied.

### G. 2B FARMS HAS STATED A CLAIM OBJECTION UNDER 11 U.S.C. SEC 502(D) AND A CLAIM FOR EQUITABLE SUBORDINATION AS TO HTLF BANK (COUNT ELEVEN).

33.     2B Farms agrees with HTLF Bank's assertion that its objections to its proofs of claim are based on lack of liability and/or based on offset. However, as for 2B Farms' "new objection" under 11 U.S.C. Sec. 502(d), 2B Farms has also asserted claims against HTLF Bank under the Texas Uniform Fraudulent Transfer Act (Count Four), which Section 502(d) specifically references as a basis for the disallowance of a claim.

34.     Still further, 2B Farms has specifically pled multiple fraud-based tort claims against HTLF Bank as well as for breach of contract.  The facts of this case are so extraordinary that HTLF Bank, a federally regulated lending institution, ignored its own policies and procedures to such an extent that it was either complicit at best, or actively facilitated at worst, one of the largest cattle fraud schemes in U.S. history.  To the extent the Court finds HTLF Bank liable on the causes of action pled by 2B Farms, it respectfully requests that the Court deny the bank's Motion as to Count Eleven until such time as the Court can consider whether equitable subordination is warranted of any claim it is allowed in the 2B Farms' bankruptcy case.

### H. 2B FARMS MET ITS PLEADING REQUIREMENTS FOR NEGLIGENCE/GROSS NEGLIGENCE (COUNT TWELVE).

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                    Page 24 of 31

35.     As addressed above, 2B Farms has adequately plead its claim for negligence/gross negligence against HTLF Bank to include establishing a common law duty which the bank breached under both the "risk-utility test" and/or having a "special relationship" (*See Section C above*). Here, there was clearly a "special relationship" between HTLF Bank and 2B Farms which requires the imposition of a duty as they were parties to a contract and had a longstanding personal and business relationship, for which 2B Farms relied upon. A duty arises as to HTLF Bank under both a "special relationship" as well as under the "risk-utility test". Both tests are satisfied by facts pled by 2B Farms. Moreover, as the Plaintiffs and Intervenor Plaintiffs have stated in their response to HTLF's motion to dismiss, the general rule that a bank does not owe a duty to a customer (or someone who is not in a prior relationship with the bank) is not without exception. Plaintiffs and Intervenor Plaintiffs have cited the Texas Supreme Court where it held,

> [I]f a party negligently creates a dangerous situation it then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby.

*The Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000), citing *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995).

36.     Still further, in the alternative, in the case of *JPMorgan Chase Bank, N.A. v. Professional Pharmacy II*, 508 S.W.3d 391 (Tex. App.—Fort Worth, 2014), the Court found the existence of a duty independent of a contractual relationship when the violation is independent of any contract. In *Pharmacy II*, the Fort Worth Court of Appeals began by stating the general rule that "a prerequisite to asserting a claim of negligence, there must be a violation of a duty imposed by law independent of any contract." *Carson Energy, Inc. v. Riverway Bank,* 100 S.W.3d 591, 601 (Tex.App.–Texarkana 2003, pet. denied) (citing *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991); *Ortega v. City Nat'l Bank,* 97 S.W.3d 765, 777

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                    Page 25 of 31

(Tex.App.–Corpus Christi 2003, no pet.)). If the only duty between parties arises from a contract, a breach of this duty ordinarily sounds only in contract, not in tort. *DeLanney,* 809 S.W.2d at 494.

37.    JP Morgan argued that because Pharmacy II had failed to plead a violation of a duty imposed by law independent of the parties' Master Account Agreement, that Pharmacy II's claim sounded in contract, not tort.   *JPMorgan Chase Bank, N.A. v. Professional Pharmacy II*, 508 S.W.3d 391,416 (Tex. App.—Fort Worth, 2014).   Pharmacy II pled that WaMu was negligent in opening the 3775 Account and that WaMu owed Pharmacy II a duty when opening the account and responding to the writ of garnishment. *Id.* at 421. The Court in *Pharmacy II* held that "[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.* at 421; *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co.,* 445 S.W.3d 716, 718 (Tex.2014).

38.    2B Farms contends that this exception to the general rule applies here given HTLF Bank's direct involvement in the McClain scheme by facilitating the preparation and negotiation of pre-signed checks delivered to it directly by McClain, which were further outside of its contractual agreements with 2B Farms. 2B Farms has asserted that HTLF Bank breached its duty independent of its contract and loan agreements with 2B Farms' by communicating directly with McClain, filling out the three (3) separate checks based upon sale statements prepared by McClain, and then directly depositing checks into 2B Farms' account without 2B Farms' endorsement and giving instant and unauthorized credit on said deposits, often totaling millions of dollars. Still further, HTLF Bank failed to notice or ask questions about the McClain business dealings despite the many red flags raised. Their own check kiting software program

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                              Page 26 of 31

failed to alert them of the scheme and/or they failed to follow-up on the same. These claims and facts are not based upon the contracts, but rather are independent torts that HTLF Bank breached as to 2B Farms, causing damage. It is these actions which 2B Farms contends constitute a violation of a duty independent of the parties' contract.

39.     To establish breach of duty, a plaintiff must show either that the defendant did something that an ordinarily prudent person exercising ordinary care would not have done under those circumstances, or that the defendant failed to do that which an ordinarily prudent person would have done in the exercise of ordinary care. *Lincoln Prop. Co. v. DeShazo,* 4 S.W.3d 55, 61 (Tex.App.–Fort Worth 1999, pet. denied) (op. on reh'g). Whether a defendant breached a duty ordinarily presents a question of fact. *Caldwell v. Curioni,* 125 S.W.3d 784, 793 (Tex.App.–Dallas 2004, pet. denied) (citing *Rudolph v. ABC Pest Control, Inc.,* 763 S.W.2d 930, 933 (Tex.App.–San Antonio 1989, writ denied)). Clearly, HTLF Bank failed to do what an ordinarily prudent banker (person) would have done in this case as its actions with regards to 2B Farms was so far outside the bounds of ordinary care, just as HTLF Bank's corporate representative Johnny Earp testified.

40.     In *Pharmacy II,* the Court also addressed JP Morgan's assertion of the economic loss rule as a defense to Pharmacy II from recovering damages under its negligence claim. JP Morgan claimed there was no negligence cause of action available to Pharmacy II because Pharmacy II's loss, was purely economic loss that is the subject of the Master Account Agreement.    *JPMorgan Chase Bank, N.A. v. Professional Pharmacy II*, 508 S.W.3d 391,422(Tex. App.—Fort Worth, 2014).  Therefore, JP Morgan argued, any tort claim arising from the opening of the 3775 Account or paying money out of the 3775 Account was barred by the economic loss rule. *Id.* Here, 2B Farms was damaged in addition to contractual losses, but

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                    Page 27 of 31

also under negligence, by the loss of reputation, borrowing base, ability to borrow money, ability to operate and other non-economic damages that are clearly present. Moreover, many of the claims herein are an independent tort pled as to HTLF Bank. As such, the Economic Loss Rule does not bar this Negligence/Gross Negligence claims.

### I. 2B FARMS WITHDRAWS ITS CLAIM FOR INFORMAL BREACH OF FIDUCIARY DUTY (COUNT FOURTEEN).

41.    We believe we have pled the facts necessary to support a claim for an informal fiduciary relationship.  In this case, given there was a "special relationship" and an extreme amount of control by HTLF Bank over the accounts at issue,  this would elevate the duty of HTLF Bank as to 2BFarms to invoke an informal fiduciary relationship.  The same analysis used in Sections C and H above (various negligence claims) to determine if a special relationship exists, is incorporated herein this claim.  In deciding whether to impose a common law duty, the courts consider the parties' relationships.  *Golden Spread Council, Inc. v Akins,* 926 S.W.2d 287, 290—91 (Tex. 1996).  Further, the Texas Supreme Court has held that an informal fiduciary relationship can arise from a personal relationship involved with a special trust and confidence.  *Schlumberger Tech. Corp v. Swanson*, 959 S.W.2d 171, 176-77 (Tex.1997).  As set forth above in detail, the decades long personal and professional relationship that Bo Robinson (2B Farms) had with HTLF Bank's branch president Shawn Ragland at AIM Bank, First Bank and Trust and HTLF Bank was significant.  2B Farms relied upon the perceived expertise of Ragland to handle all aspects of its business, including the way Ragland handled the McClain Account business.  Because of this special relationship, 2B Farms did not question the increased frequency and amounts of the McClain checks/wires,  instead relying upon Ragland to advise, question and stop any improper actions—which he NEVER did nor questioned until the bubble burst.  He expected and relied upon Ragland and his alleged expertise to identify any such

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                                                    Page 28 of 31

improper or fraudulent behavior. Still further, the Court held that in order for there to be any possibility that the parties to a business relationship owed each other informal fiduciary duties arising under or from the special relationship of trust and confidence, the special relationship must have existed "prior to, and apart from, the agreement made the basis of the suit." *Id.* Again here, Ragland and 2B Farms had a decades long customer/banking relationship that covered many non-McClain loans and other business relations—way before the line of credit made the basis of this lawsuit was put in place. 2B Farms held a high degree of trust and confidence in Ragland, unfortunately to its detriment. These basic facts have been pled and warrant the denial of the Motion as to this claim.

### J.   2B Farms Wrongful Offset Claim (COUNT FIFTEEN).

42.     2B Farms generally asserts its right to recover all wrongful offsets HTLF Bank has made and/or taken against 2B Farms which have been taken and which may be found during the course of discovery in this proceeding. 2B Farms would note that in May 2023 and immediately prior to the Debtors' petition date, that 2B Farms sold approximately 1128 head of cattle for a combined total amount of $1,590,730.89. Of these 1128 head of cattle sold, the proceeds of 589 head, involving cattle sale transactions of $326,872.58 (251 head) and 398,588.37 (338 head), totaling $725,460.95, are currently being held in separate escrow account with HTLF Bank under an agreement with Kent D. Ries, the Chapter 7 Bankruptcy Trustee for the McClain Entities ("Trustee") until such time as the Bankruptcy Court can consider and direct the ultimate disposition of these cattle proceeds pursuant to its Order. HTLF Bank therefore received the balance, or $865,269.94, as well as other payments 2B Farms has paid to HTLF since the filing of this lawsuit by forcing the sale of equipment and real estate owned by 2B Farms. To the extent that HTLF Bank is found liable to 2B Farms on any of the counts pled in its

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                                    Page 29 of 31

Second Amended Complaint, 2B Farms preserves its right to recover these funds to the extent
HTLF Bank has offset the funds.

## III.
## CONCLUSION AND PRAYER

43. HTLF Bank is asking this Court to take actions now which would protect it from
its own negligence, breaches, and fraudulent actions. Such actions have been timely and
properly pled by 2B Farms in its Second Amended Complaint. We believe that additional facts
will be developed in discovery to further support these claims. Given this Response, the facts
and claims set forth in its Second Amended Complaint, and the response of the other
Plaintiffs/Intervenors incorporated hereto, we believe HTLF Bank's Motion to Dismiss should
be denied in all things.

WHEREFORE, 2B Farms, a Texas General Partnership, Terry M. Robinson and
Rebecca A. Robinson pray that the Motion be denied in its entirety, or, if the Court is inclined to
grant the Motion in any respect, that they be granted leave to amend their Complaint.

DATED: June 6, 2025.

Respectfully submitted,

**McWhorter, Cobb & Johnson, L.L.P.**
1722 Broadway (79401)
P.O. Box 2547
Lubbock, Texas 79408
(806) 762-0214 - Telephone
(806) 498-4808– Facsimile

Timothy T. Pridmore
SBN: 00788224
*tpridmore@mcjllp.com*
Todd J. Johnston
SBN: 24050837
*tjohnston@mcjllp.com*

By: */s/ Timothy T. Pridmore*
Timothy T. Pridmore

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver} Page 30 of 31

*ATTORNEYS FOR DEFENDANTS, COUNTER-PLAINTIFFS, THIRD-PARTY PLAINTIFFS AND THIRD-PARTY DEFENDANTS 2B FARMS, A GENERAL TEXAS PARTNERSHIP, TERRY ROBINSON, REBECCA ROBINSON, AND ANGELA ROBINSON*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2025, the foregoing document was filed with the Clerk of the Court in the foregoing case using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in this case.

*/s/ Timothy T. Pridmore*
Timothy T. Pridmore

HTLF Bank, as successor to First Bank & Trust vs. 2B Farms, a Texas General Partnership, Terry and Rebecca Robinson
2B Farms' Response to HTLF Bank's Partial Motion to Dismiss Second Amended Complaint
{00855254.DOCX - ver}                                                          Page 31 of 31