THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

## DEPOSIT ACCOUNT CONTROL AGREEMENT

This Deposit Account Control Agreement ("Agreement") is entered into and made effective this 23 day of March, 2023, among McClain Farms, Inc. (collectively, the "Debtor"), Rabo AgriFinance LLC, (the "Secured Party") and Mechanics Bank (the "Deposit Bank").

### PRELIMINARY STATEMENTS:

(A) The Debtor and the Secured Party have entered into the Master Security Agreement ("Security Agreement") dated as of August 27, 2021 (as amended, modified, or supplemented from time to time, the "Security Agreement").

(B) It is a condition of the obligation to make the loans secured by the Security Agreement that the Debtor pledge certain collateral to the Secured Party.

(C) The Debtor has established with the Deposit Bank a checking account with account number 3070 in the name of McClain Farms, Inc. (the "Account");

(D) The Deposit Bank has agreed to act in such capacity.

NOW THEREFORE, in consideration of the premises, the parties hereto hereby agree as follows:

1. **Definitions.** Unless otherwise defined herein, all capitalized terms used herein and defined in the Security Agreement shall be used herein as therein defined.

2. **Pledge.** The Debtor hereby grants, pledges and assigns to the Secured Party, and hereby creates a continuing first priority lien and security interest in favor of the Secured Party in, and transfers to the Secured Party all dominion and control over, all of its right, title and interest in and to the following:

    (a) the Account, including, without limitation, all documents, passbooks, and similar evidence representing such Account, together with all deposits made from time to time therein and all funds and other property standing to the credit of such Account from time to time; and

    (b) all cash and non-cash Proceeds of any and all of the foregoing, including, without limitation, any and all Instruments and Investment Property constituting any such Proceeds.

All of the foregoing shall constitute "Collateral" hereunder and under the Security Agreement.

3. **Security for Obligations; Terms of Pledge.** The Collateral hereunder secures the payment and performance of the obligations in accordance with the Security Agreement. The rights and obligations of the Secured Party and the Debtor in respect of the Collateral hereunder shall be as provided in the Security Agreement.



**EXHIBIT**

**C**

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

4.    Representations and Warranties of Debtor. The Debtor represents and warrants as follows:

(a)    The Debtor is the sole beneficial owner of the Collateral subject to this Agreement and the Security Agreement, free and clear of any lien, option or other encumbrance except for the lien created by this Agreement and the Security Agreement. The Account is not a consumer deposit account.

(b)    The pledge of the Collateral pursuant to this Agreement and the Security Agreement creates a valid and perfected first priority lien in the Collateral, securing the payment and performance when due of the obligations.

(c)    McClain Farms, Inc. is a corporation duly organized under the Laws of the State of Kentucky and is in good standing in each jurisdiction where the failure to so would have a material adverse effect on its business or properties. 7M Cattle Feeders, Inc. is a corporation duly organized under the Laws of the State of Kentucky and is in good standing in each jurisdiction where the failure to so would have a material adverse effect on its business or properties. McClain Feed Yard, Inc. is a corporation duly organized under the Laws of the State of Texas and is in good standing in each jurisdiction where the failure to so would have a material adverse effect on its business or properties.

(d)    The Debtor has full power, authority and legal right to pledge all the Collateral pursuant to this Agreement and the Security Agreement.

(e)    This Agreement has been duly authorized, executed and delivered by the Debtor and constitutes a legal, valid and binding obligation of the Debtor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws generally affecting creditors' rights and subject to general equitable principles (regardless of whether such principles are considered in a proceeding in equity or at law).

(f)    No authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the pledge by the Debtor of the Collateral pursuant to this Agreement or the Security Agreement or for the execution, delivery or performance of this Agreement by the Debtor.

(g)    The execution, delivery and performance of this Agreement will not violate any provision of any applicable law or regulation or of any order, judgment, writ, award or decree of any court, arbitrator or governmental authority, domestic or foreign, applicable to the Debtor, or of the company documents of the Debtor.

5.    Covenants of the Deposit Bank. The Deposit Bank covenants and agrees as follows:

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

(a)    The Deposit Bank acknowledges the lien and security interest hereunder and under the Security Agreement. Until the Deposit Bank has received instructions from the Secured Party to the contrary, the Debtor shall be entitled to present items to be drawn on or otherwise to withdraw or direct the disposition of funds from the Account. The Deposit Bank waives any right to offset any claim which it might have against the Deposit Account or the Collateral hereunder and subordinates any security interest it may have in the Deposit Account and the Collateral hereunder to the lien and security interest granted to the Secured Party.

(b)    The Deposit Bank may resign from its obligations under this Agreement at any time after twenty (20) days prior written notice to the other parties hereto, but in no event shall the Deposit Bank be released of its obligations hereunder unless and until a substitute bank has been designated and assumed the obligations hereunder of the Deposit Bank and all monies in the Deposit Account and Collateral relating thereto have been transferred to the substitute bank in compliance with written instructions from the Secured Party. The Secured Party shall designate a substitute Deposit Bank, in its sole discretion, promptly after receipt of notice of resignation by the Deposit Bank and shall take all reasonable actions necessary to cause such designated successor promptly to assume the obligations of the Deposit Bank hereunder.

(c)    The Deposit Bank agrees that it shall take all actions reasonably necessary and shall cooperate with the Secured Party to facilitate any transfer of its obligations, duties and rights hereunder.

(d)    The Deposit Bank represents and warrants that it has no knowledge of any claim to, security interest in or lien upon any of the Collateral hereunder, other than the lien hereunder and under the Security Agreement.

(e)    The Deposit Bank has not entered into, nor will it enter into, any agreement with any third party regarding any of the Collateral hereunder or agreeing that it will comply with any instructions or orders concerning such Collateral originated by any such third party, nor has the Deposit Bank entered into, nor will it enter into, any arrangement with the Debtor or any third party by which the Deposit Bank agrees to limit or qualify its undertakings to comply with the instructions and orders of the Secured Party as set forth herein.

6.    Termination by Secured Party. The Secured Party may terminate this Agreement at any time after thirty (30) days prior written notice to the other parties hereto.

7.    Notices. All notices and other communications provided for hereunder shall be in writing addressed to the respective parties at their addresses as specified with their signatures below or as to any party at such other address as shall be designated by such party in a written notice to each other party. All such notices and other communications shall be effective upon receipt.

COPY

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

8.    Governing Law. This Agreement (including the establishment and maintenance of the Deposit Account and all interests, duties and obligations related thereto) shall be governed by and construed in accordance with the laws of the State of Iowa without reference to its conflicts of laws principles.

9.    Venue and Jurisdiction. Subject only to the exception in the next sentence, the parties hereto hereby agree to the jurisdiction of the federal court of the District of Northern District of Iowa and the state courts of Iowa located in Black Hawk County and waive any objection based on venue or forum non conveniens with respect to any action instituted therein, and agree that any dispute concerning the relationship between the parties or the conduct of any of them in connection with this Agreement or otherwise shall be heard only in the courts described above. Notwithstanding the foregoing: (1) Secured Party shall have the right to bring any action or proceeding against Debtor or its property in any courts of any other jurisdiction Secured Party deems necessary or appropriate in order to realize on the property, or other security for the loan obligations, and (2) each of the parties hereto acknowledges that any appeals from the courts described in the immediately preceding sentence may have to be heard by a court located outside those jurisdictions.

10.    Counterparts. This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument. The Debtor, Secured Party, and the Deposit Bank acknowledge and agree this Agreement may be electronically signed and such electronic signature shall have the same force and effect as a handwritten signature.

IN WITNESS WHEREOF, the Debtor, the Secured Party and the Deposit Bank have caused this Agreement to be duly executed and delivered as of the date first above written.

Address for notices:

824 Mullins Lane
Benton, KY 42025

MCCLAIN FARMS, INC.

By: _____
DocuSigned by:

Name:   Brian Keith McClain
Title    President

COPY

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

Address for notices:

14767 N. Outer 40 Rd
Suite 400
Chesterfield, MO 63017

**SECURED PARTY**
Rabo AgriFinance LLC

DocuSigned by:

By: W.B. Lawson III

Name: W.B. Lawson III

Title VP

Address for notices:

18400 Von Karman Ave
Suite 1100
Irvine, CA 92612

**DEPOSIT BANK:**
Mechanics Bank

DocuSigned by:

By: Jamie Rabatin

Name: Jamie Rabatin

Title SVP/Director of Commercial servicing

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

## DEPOSIT ACCOUNT CONTROL AGREEMENT

This Deposit Account Control Agreement ("Agreement") is entered into and made effective this 23 day of March, 2023, among McClain Feed Yard, Inc. (collectively, the "Debtor"), Rabo AgriFinance LLC, (the "Secured Party") and Mechanics Bank (the "Deposit Bank").

### PRELIMINARY STATEMENTS:

(A) The Debtor and the Secured Party have entered into the Master Security Agreement ("Security Agreement") dated as of August 27, 2021 (as amended, modified, or supplemented from time to time, the "Security Agreement").

(B) It is a condition of the obligation to make the loans secured by the Security Agreement that the Debtor pledge certain collateral to the Secured Party.

(C) The Debtor has established with the Deposit Bank a checking account with account number 0197 in the name of McClain Feedyard, Inc. (the "Account");

(D) The Deposit Bank has agreed to act in such capacity.

NOW THEREFORE, in consideration of the premises, the parties hereto hereby agree as follows:

1.    Definitions. Unless otherwise defined herein all capitalized terms used herein and defined in the Security Agreement shall be used herein as therein defined.

2.    Pledge. The Debtor hereby grants, pledges and assigns to the Secured Party, and hereby creates a continuing first priority lien and security interest in favor of the Secured Party in, and transfers to the Secured Party all dominion and control over, all of its right, title and interest in and to the following:

(a)    the Account, including, without limitation, all documents, passbooks, and similar evidence representing such Account, together with all deposits made from time to time therein and all funds and other property standing to the credit of such Account from time to time; and

(b)    all cash and non-cash Proceeds of any and all of the foregoing, including, without limitation, any and all Instruments and Investment Property constituting any such Proceeds.

All of the foregoing shall constitute "Collateral" hereunder and under the Security Agreement.

3.    Security for Obligations: Terms of Pledge. The Collateral hereunder secures the payment and performance of the obligations in accordance with the Security Agreement. The rights and obligations of the Secured Party and the Debtor in respect of the Collateral hereunder shall be as provided in the Security Agreement.

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

4. . . Representations and Warranties of Debtor. The Debtor represents and warrants as follows:

(a) The Debtor is the sole beneficial owner of the Collateral subject to this Agreement and the Security Agreement, free and clear of any lien, option or other encumbrance except for the lien created by this Agreement and the Security Agreement. The Account is not a consumer deposit account.

(b) The pledge of the Collateral pursuant to this Agreement and the Security Agreement creates a valid and perfected first priority lien in the Collateral, securing the payment and performance when due of the obligations.

(c) McClain Farms, Inc. is a corporation duly organized under the Laws of the State of Kentucky and is in good standing in each jurisdiction where the failure to do would have a material adverse effect on its business or properties. 7M Cattle Feeders, Inc. is a corporation duly organized under the Laws of the State of Kentucky and is in good standing in each jurisdiction where the failure to so would have a material adverse effect on its business or properties. McClain Feed Yard, Inc. is a corporation duly organized under the Laws of the State of Texas and is in good standing in each jurisdiction where the failure to so would have a material adverse effect on its business or properties.

(d) The Debtor has full power, authority and legal right to pledge all the Collateral pursuant to this Agreement and the Security Agreement.

(e) This Agreement has been duly authorized, executed and delivered by the Debtor and constitutes a legal, valid and binding obligation of the Debtor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws generally affecting creditors' rights and subject to general equitable principles (regardless of whether such principles are considered in a proceeding in equity or at law).

(f) No authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the pledge by the Debtor of the Collateral pursuant to this Agreement or the Security Agreement or for the execution, delivery or performance of this Agreement by the Debtor.

(g) The execution, delivery and performance of this Agreement will not violate any provision of any applicable law or regulation or of any order, judgment, writ, award or decree of any court, arbitrator or governmental authority, domestic or foreign, applicable to the Debtor, or of the company documents of the Debtor.

5. Covenants of the Deposit Bank. The Deposit Bank covenants and agrees as follows:

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

(a)    The Deposit Bank acknowledges the lien and security interest hereunder and under the Security Agreement. Until the Deposit Bank has received instructions from the Secured Party to the contrary, the Debtor shall be entitled to present items to be drawn on or otherwise to withdraw or direct the disposition of funds from the Account. The Deposit Bank waives any right to offset any claim which it might have against the Deposit Account or the Collateral hereunder and subordinates any security interest it may have in the Deposit Account and the Collateral hereunder to the lien and security interest granted to the Secured Party.

(b)    The Deposit Bank may resign from its obligations under this Agreement at any time after twenty (20) days prior written notice to the other parties hereto, but in no event shall the Deposit Bank be released of its obligations hereunder unless and until a substitute bank has been designated and assumed the obligations hereunder of the Deposit Bank and all monies in the Deposit Account and Collateral relating thereto have been transferred to the substitute bank in compliance with written instructions from the Secured Party. The Secured Party shall designate a substitute Deposit Bank, in its sole discretion, promptly after receipt of notice of resignation by the Deposit Bank and shall take all reasonable actions necessary to cause such designated successor promptly to assume the obligations of the Deposit Bank hereunder.

(c)    The Deposit Bank agrees that it shall take all actions reasonably necessary and shall cooperate with the Secured Party to facilitate any transfer of its obligations, duties and rights hereunder.

(d)    The Deposit Bank represents and warrants that it has no knowledge of any claim to, security interest in or lien upon any of the Collateral hereunder, other than the lien hereunder and under the Security Agreement.

(e)    The Deposit Bank has not entered into, nor will it enter into, any agreement with any third party regarding any of the Collateral hereunder or agreeing that it will comply with any instructions or orders concerning such Collateral originated by any such third party, nor has the Deposit Bank entered into, nor will it enter into, any arrangement with the Debtor or any third party by which the Deposit Bank agrees to limit or qualify its undertakings to comply with the instructions and orders of the Secured Party as set forth herein.

6.    Termination by Secured Party. The Secured Party may terminate this Agreement at any time after thirty (30) days prior written notice to the other parties hereto.

7.    Notices. All notices and other communications provided for hereunder shall be in writing addressed to the respective parties at their addresses as specified with their signatures below or as to any party at such other address as shall be designated by such party in a written notice to each other party. All such notices and other communications shall be effective upon receipt.

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

8.    Governing Law. This Agreement (including the establishment and maintenance of the Deposit Account and all interests, duties and obligations related thereto) shall be governed by and construed in accordance with the laws of the State of Iowa without reference to its conflicts of laws principles.

9.    Venue and Jurisdiction. Subject only to the exception in the next sentence, the parties hereto hereby agree to the jurisdiction of the federal court of the District of Northern District of Iowa and the state courts of Iowa located in Black Hawk County and waive any objection based on venue or forum non conveniens with respect to any action instituted therein, and agree that any dispute concerning the relationship between the parties or the conduct of any of them in connection with this Agreement or otherwise shall be heard only in the courts described above. Notwithstanding the foregoing: (1) Secured Party shall have the right to bring any action or proceeding against Debtor or its property in any courts of any other jurisdiction Secured Party deems necessary or appropriate in order to realize on the property, or other security for the loan obligations, and (2) each of the parties hereto acknowledges that any appeals from the courts described in the immediately preceding sentence may have to be heard by a court located outside those jurisdictions.

10.    Counterparts. This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument. The Debtor, Secured Party, and the Deposit Bank acknowledge and agree this Agreement may be electronically signed and such electronic signature shall have the same force and effect as a handwritten signature.

IN WITNESS WHEREOF, the Debtor, the Secured Party and the Deposit Bank have caused this Agreement to be duly executed and delivered as of the date first above written.

Address for notices:

824 Mullins Lane
Benton, KY 42025

MCLAIN FEED YARD, INC.

By: _____
Name:  Brian Keith McClain
Title  President

COPY

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

Address for notices:

14767 N. Outer 40 Rd
Suite 400
Chesterfield, MO 63017

**SECURED PARTY**
Rabo AgriFinance LLC

By: W.B. Lawson III

Name: W.B. Lawson III

Title  VP

Address for notices:

18400 Von Karman Ave
Suite 1100
Irvine, CA 92612

**DEPOSIT BANK:**
Mechanics Bank

By: Jamie Rabadeh

Name: Jamie Rabadeh

Title  SVP Director of commercial servicing

COPY VIEW

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

## DEPOSIT ACCOUNT CONTROL AGREEMENT

This Deposit Account Control Agreement ("Agreement") is entered into and made effective this 23 day of March, 2023, among 7M Cattle Feeders, Inc. (collectively, the "Debtor"), Rabo AgriFinance LLC, (the "Secured Party") and Mechanics Bank (the "Deposit Bank").

### PRELIMINARY STATEMENTS:

(A) The Debtor and the Secured Party have entered into the Master Security Agreement ("Security Agreement") dated as of August 27, 2021 (as amended, modified, or supplemented from time to time, the "Security Agreement").

(B) It is a condition of the obligation to make the loans secured by the Security Agreement that the Debtor pledge certain collateral to the Secured Party.

(C) The Debtor has established with the Deposit Bank a checking account with account number .0423 in the name of 7M Cattle Feeders, Inc. (the "Account");

(D) The Deposit Bank has agreed to act in such capacity.

NOW THEREFORE, in consideration of the premises, the parties hereto hereby agree as follows:

1. **Definitions.** Unless otherwise defined herein, all capitalized terms used herein and defined in the Security Agreement shall be used herein as therein defined.

2. **Pledge.** The Debtor hereby grants, pledges and assigns to the Secured Party, and hereby creates a continuing first priority lien and security interest in favor of the Secured Party in, and transfers to the Secured Party all dominion and control over, all of its right, title and interest in and to the following:

    (a) the Account, including, without limitation, all documents, passbooks, and similar evidence representing such Account, together with all deposits made from time to time therein and all funds and other property standing to the credit of such Account from time to time; and

    (b) all cash and non-cash Proceeds of any and all of the foregoing, including, without limitation, any and all Instruments and Investment Property constituting any such Proceeds.

All of the foregoing shall constitute "Collateral" hereunder and under the Security Agreement.

3. **Security for Obligations; Terms of Pledge.** The Collateral hereunder secures the payment and performance of the obligations in accordance with the Security Agreement. The rights and obligations of the Secured Party and the Debtor in respect of the Collateral hereunder shall be as provided in the Security Agreement.

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

4.     Representations and Warranties of Debtor. The Debtor represents and warrants as follows:

(a)     The Debtor is the sole beneficial owner of the Collateral subject to this Agreement and the Security Agreement, free and clear of any lien, option or other encumbrance except for the lien created by this Agreement and the Security Agreement. The Account is not a consumer deposit account.

(b)     The pledge of the Collateral pursuant to this Agreement and the Security Agreement creates a valid and perfected first priority lien in the Collateral, securing the payment and performance when due of the obligations.

(c)     McClain Farms, Inc. is a corporation duly organized under the Laws of the State of Kentucky and is in good standing in each jurisdiction where the failure to so would have a material adverse effect on its business or properties. 7M Cattle Feeders, Inc. is a corporation duly organized under the Laws of the State of Kentucky and is in good standing in each jurisdiction where the failure to so would have a material adverse effect on its business or properties. McClain Feed Yard, Inc. is a corporation duly organized under the Laws of the State of Texas and is in good standing in each jurisdiction where the failure to so would have a material adverse effect on its business or properties.

(d)     The Debtor has full power, authority and legal right to pledge all the Collateral pursuant to this Agreement and the Security Agreement.

(e)     This Agreement has been duly authorized, executed and delivered by the Debtor and constitutes a legal, valid and binding obligation of the Debtor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws generally affecting creditors' rights and subject to general equitable principles (regardless of whether such principles are considered in a proceeding in equity or at law).

(f)     No authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the pledge by the Debtor of the Collateral pursuant to this Agreement or the Security Agreement or for the execution, delivery or performance of this Agreement by the Debtor.

(g)     The execution, delivery and performance of this Agreement will not violate any provision of any applicable law or regulation or of any order, judgment, writ, award or decree of any court, arbitrator or governmental authority, domestic or foreign, applicable to the Debtor, or of the company documents of the Debtor.

5.     Covenants of the Deposit Bank. The Deposit Bank covenants and agrees as follows:

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

(a)    . The Deposit Bank acknowledges the lien and security interest hereunder and under the Security Agreement. Until the Deposit Bank has received instructions from the Secured Party to the contrary, the Debtor shall be entitled to present items to be drawn on or otherwise to withdraw or direct the disposition of funds from the Account. The Deposit Bank waives any right to offset any claim which it might have against the Deposit Account or the Collateral hereunder and subordinates any security interest it may have in the Deposit Account and the Collateral hereunder to the lien and security interest granted to the Secured Party.

(b)    The Deposit Bank may resign from its obligations under this Agreement at any time after twenty (20) days prior written notice to the other parties hereto, but in no event shall the Deposit Bank be released of its obligations hereunder unless and until a substitute bank has been designated and assumed the obligations hereunder of the Deposit Bank and all monies in the Deposit Account and Collateral relating thereto have been transferred to the substitute bank in compliance with written instructions from the Secured Party. The Secured Party shall designate a substitute Deposit Bank, in its sole discretion, promptly after receipt of notice of resignation by the Deposit Bank and shall take all reasonable actions necessary to cause such designated successor promptly to assume the obligations of the Deposit Bank hereunder.

(c)    The Deposit Bank agrees that it shall take all actions reasonably necessary and shall cooperate with the Secured Party to facilitate any transfer of its obligations, duties and rights hereunder.

(d)    The Deposit Bank represents and warrants that it has no knowledge of any claim to, security interest in or lien upon any of the Collateral hereunder, other than the lien hereunder and under the Security Agreement.

(e)    The Deposit Bank has not entered into, nor will it enter into, any agreement with any third party regarding any of the Collateral hereunder or agreeing that it will comply with any instructions or orders concerning such Collateral originated by any such third party, nor has the Deposit Bank entered into, nor will it enter into, any arrangement with the Debtor or any third party by which the Deposit Bank agrees to limit or qualify its undertakings to comply with the instructions and orders of the Secured Party as set forth herein.

6.    Termination by Secured Party. The Secured Party may terminate this Agreement at any time after thirty (30) days prior written notice to the other parties hereto.

7.    Notices. All notices and other communications provided for hereunder shall be in writing addressed to the respective parties at their addresses as specified with their signatures below or as to any party at such other address as shall be designated by such party in a written notice to each other party. All such notices and other communications shall be effective upon receipt.

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

8.    Governing Law. This Agreement (including the establishment and maintenance of the Deposit Account and all interests, duties and obligations related thereto) shall be governed by and construed in accordance with the laws of the State of Iowa without reference to its conflicts of laws principles.

9.    Venue and Jurisdiction. Subject only to the exception in the next sentence, the parties hereto hereby agree to the jurisdiction of the federal court of the District of Northern District of Iowa and the state courts of Iowa located in Black Hawk County and waive any objection based on venue or forum non conveniens with respect to any action instituted therein, and agree that any dispute concerning the relationship between the parties or the conduct of any of them in connection with this Agreement or otherwise shall be heard only in the courts described above. Notwithstanding the foregoing: (1) Secured Party shall have the right to bring any action or proceeding against Debtor or its property in any courts of any other jurisdiction Secured Party deems necessary or appropriate in order to realize on the property, or other security for the loan obligations, and (2) each of the parties hereto acknowledges that any appeals from the courts described in the immediately preceding sentence may have to be heard by a court located outside those jurisdictions.

10.    Counterparts. This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument. The Debtor, Secured Party, and the Deposit Bank acknowledge and agree this Agreement may be electronically signed and such electronic signature shall have the same force and effect as a handwritten signature.

IN WITNESS WHEREOF, the Debtor, the Secured Party and the Deposit Bank have caused this Agreement to be duly executed and delivered as of the date first above written.

Address for notices:

824 Mullins Lane
Benton, KY 42025

7M CATTLE FEEDERS, INC.

By: _____
Name:    Brian Keith McClain
Title    President

COPY

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian.

Address for notices:

14767 N. Outer 40 Rd
Suite 400
Chesterfield, MO 63017

**SECURED PARTY**
Rabo AgriFinance LLC

By:  _W.B. Lawson III_
Name:  W.B. Lawson III
Title  VP

Address for notices:

18400 Von Karman Ave
Suite 1100
Irvine, CA 92612

**DEPOSIT BANK:**
Mechanics Bank

By:  _Jamie Rabatin_
Name:  Jamie Rabatin
Title  SVP director of commercial servicing

COPY VIEW