John H. Lovell, SBN 12609300
john@lovell-law.net
LOVELL ISERN & FARABOUGH, LLP
112 SW 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Phone: (806) 373-1515
Fax:     (806) 379-7176

--and--

Matthew S. Merriott, SNB 24100846
mmerriott@mhba.com
MULLIN HOARD & BROWN, L.L.P.
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086

*Attorneys for First Bank & Trust, a
division of UMB Bank n.a., successor by
merger to HTLF Bank.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: McClain Feed Yard, Inc., et al, | § | |
| | § | Case No. 23-20084-swe7 |
| Debtors. | § | Jointly Administered |
| | § | |
| | § | |
| In re: 2B Farms, a Texas General Partnership, et al, | § | Case No. 23-50096-swe12 |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | |
| | § | |
| AgTexas Farm Credit Services, AgTexas PCA, Thorlakson Diamond T Feeders, LP, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| Edward Dufurrena, et al, | § | |
| | § | |
| Intervenor-Plaintiffs, | § | Adversary No. 24-02007-swe |
| v. | § | Consolidated Adversary Proceeding |

HTLF's Reply – Motion to Dismiss 2B Farms Third Amended Complaint                    Page **1** of **14**

Rabo AgriFinance, LLC, et al,

    Defendants

---

Kent Ries, Chapter 7 Trustee for the Bankruptcy Estates of McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc.,

    Plaintiff,

v.

Community Financial Services Bank; HTLF Bank, Mechanics Bank, and Rabo AgriFinance, LLC,

    Defendants.

Adversary No. 24-02007-swe
Consolidated Adversary Proceeding

---

HTLF Bank, as successor to First Bank & Trust,

    Plaintiff, Counter-Defendant, and
    Cross-Claim Defendant,

v.

2B Farms, a Texas General Partnership,
Terry M. Robinson, and Rebecca A. Robinson,

    Defendants, Counterclaim-Plaintiffs,
    Third-Party Counterclaim Defendants,

v.

Rabo AgriFinance, LLC and Mechanics Bank,

    Third-Party Defendants and, as to
    Rabo AgriFinance, LLC only, Third-
    Party Counterclaim Plaintiff and
    Cross-Claim Plaintiff.

Adversary No. 24-02007-swe
Consolidated Adversary Proceeding

---

HTLF Bank, as successor to First Bank & Trust,

    Plaintiff and Counter-Defendant,

v.

2B Farms, a Texas General Partnership,

Adversary No. 24-02007-swe
Consolidated Adversary Proceeding

| Terry M. Robinson, and Angela Robinson, | § |
|---|---|
| | § |
| Defendants and Counter-Plaintiffs[1] | § |

**HTLF'S REPLY TO 2B FARMS' RESPONSE IN OPPOSITION TO HTLF'S MOTION TO DISMISS 2B FARMS' THIRD AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

HTLF Bank submits this reply ("Reply") to Debtors 2B Farms, a Texas General Partnership, Terry M. Robinson and Rebecca A. Robinson's Response [Doc. 305] to HTLF Bank's Motion to Dismiss their Third Amended Complaint [Doc. 257] and Brief in Support [Doc. 258].

## I.  INTRODUCTION

1.      HTLF agrees that, as 2B Farms' depository bank and lender, it owed 2B Farms duties under its contracts and relevant statutes governing the banking relationship. However, 2B Farms has not identified any duty owed by HTLF that HTLF breached. Rather, 2B Farms seeks to impose vague and overbroad extracontractual duties that are do not arise from the facts pled by 2B Farms. HTLF was 2B Farms' bank, not a guarantor of or participant in 2B Farms' business dealings with McClain.

## II.  ARGUMENT

**A.      2B Farms has not identified a contractual or statutory duty breached by HTLF.**

2.      Though it complains of HTLF's actions, 2B Farms has failed to identify any statute or contractual provision that prohibited HTLF from completing the McClain checks (as directed by 2B Farms and McClain), depositing them without endorsement, granting a provisional settlement credit on such checks, or wiring funds to McClain with 2B Farms' verbal authorization. [Doc. 305 ¶ 13]. Rather, as established in HTLF's prior briefing, such actions were permissible.

---

[1] These claims were originally pending as Adversary No. 23-05003-rlj but were previously consolidated under Adversary No. 23-05002-rlj.

[Doc. 258 ¶¶ 17-19]. *See also Cadence Bank, N.A. v. Elizondo*, 642 S.W.3d 530, 535 (Tex. 2022) (bank did not violate applicable statute by sending a wire based on uncollected funds and later reversing a provisional settlement).

3.      Though complaining of HTLF's actions, 2B Farms makes no attempt to even identify a specific duty that was allegedly breached, such as a duty not to send a wire based on a provisional settlement credit (which duty does not exist). Instead, 2B Farms argues broadly that HTLF "owed a duty of ordinary care to 2B Farms at all relevant times" and a duty "to not act in the manner it did." [Doc. 305 ¶¶7, 14]. But such vague and undefined duties are improper: "Courts may not hold people to very general duties of exercising ordinary care in all circumstances." *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 145 (Tex. 2022).

4.      *Strobach*, relied on by 2B Farms, does not hold that banks owe their customers duties in all situations. *Strobach v. WesTex Cmty. Credit Union*, 621 S.W.3d 856, 873-74 (Tex. App.—El Paso 2021, no pet.). Rather, it holds that banks owe specific duties as set forth in their contracts as supplemented by the UCC. *Id.*, *esp. at* n.5. These duties apply to specific circumstances, such as the duty to use ordinary care to "only release funds in accordance with the terms of the agreement." *Id*. at 874. But 2B Farms has not identified any of those duties.

5.      Nor does the Deposit Agreement between 2B Farms and HTLF create a general duty of care. [Doc. 258, Ex. R]. Contrary to 2B Farms' assertion, Paragraph 28.a of the Deposit Agreement does not create a contractual ***duty*** of care but rather creates a ***standard*** of ordinary care for meeting duties enumerated elsewhere in the contract. It states: "We will exercise ordinary care ***in meeting our obligations under the Agreement***." [Doc. 258 p.60] (emphasis added). 2B Farms has not identified any obligations under the Agreement that it alleges HTLF did not meet, so this standard is irrelevant.

6.      Similarly, Paragraph 28.c sets a standard of following "customary banking practices" for processing items and transactions. [Doc. 258 p.60-61]. Paragraph 28.c specifically describes the circumstances in which it applies: "If we make a mistake in processing items or transactions and charge you more than we should have, or failed to give you credit you were due, we will correct the effort as long as you give us sufficient and timely notice and an opportunity to fix it." *Id*. 2B Farms has not alleged such circumstances here and so this standard is also irrelevant.

7.      While Johnny Earp[2] testified that the transactions were unusual, he did not testify that HTLF breached the duties it owed to 2B Farms under the relevant contracts or statutes. Whether or not HTLF used ordinary care or customary banking practices as defined in the Account Agreement is irrelevant if there is no duty to which the standard can attach.

8.      2B Farms has failed to allege sufficient facts to establish the existence and breach of any statutory or contractual duty owed by HTLF to 2B Farms. Indeed, 2B Farms has failed to even identify such a duty. As a result, 2B Farms' claims based on the breach of any contractual or statutory duties must be dismissed.

**B.      2B Farms has not identified an extra-contractual duty breached by HTLF.**

9.      2B Farms has not alleged any facts that "would give rise to liability independent of the fact that a contract exists between the parties…" *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Any liability for transfers of funds in and out of the 2B Farms accounts— the deposits, provisional settlement credits, wires, reversals, and any other transactions—is covered by the Deposit Agreement and cannot give rise to an extracontractual claim for the loss of those funds. *See McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015) (discussing the economic loss rule); [Doc. 258, Ex. R].

---

[2] Johnny Earp is a former employee of HTLF who was produced as a fact witness. He has never been designated as a corporate representative of HTLF.

HTLF's Reply – Motion to Dismiss 2B Farms Third Amended Complaint                    Page **5** of **14**

10.     2B Farms fails to identify any actions by Ragland or HTLF that went beyond the scope and subject matter of the Deposit Agreement. Through 2B Farms alleges that Ragland assisted 2B Farms and McClain in effectuating the transactions, there are no allegations that Ragland incorrectly filled out checks, made erroneous representations regarding McClain's business, or any potential breaches of an extracontractual duty.

11.     Indeed, 2B Farms fails to identify what extracontractual duty might exist. 2B Farms only argues that perhaps a new duty should be created by the Court after hearing all evidence and testimony. [Doc. 305 ¶ 18]. But there is no basis to proceed if 2B Farms cannot even articulate a duty or plead sufficient facts that would support its imposition. As a result, 2B Farms' claims based on the breach of any general extra-contractual duties must be dismissed.

**C.     2B Farms has not plausibly alleged a negligence or breach of contract claim for overextension of its line of credit.**

12.     Though not alleged in its live pleadings, 2B Farms now argues that HTLF's grant of a provisional settlement credit under the Account Agreement is a breach of the Loan Agreement and is negligence because the provisional settlement credit exceeded the line of credit authorized by the Loan Agreement. This argument fails utterly because a provisional settlement credit is not an advance on the line of credit. These are separate debts established by separate contracts. [Doc. 258, Ex. A, Ex. R]. The line of credit limit under the Loan Agreement is facially not a limit on the provisional settlement credit. *Id*.

13.     Further, 2B Farms can identify no authority for the proposition that the overextension of credit breaches any duty sounding in negligence.  Any duties related to such loans are purely contractual duties that cannot support a cause of action in negligence. *See* § B, supra. As a result, such claims must be dismissed.

**D.**   **2B Farms' pleadings fail to meet the standard for a negligent hiring claim.**

14.   A claim for negligent hiring, supervision, or retention must be based on an underlying tort committed by the employee. Such a claim cannot be based on a breach of contractual duties committed by the employee because such claims sound in contract. *Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) (negligent hiring claim failed because the damages were the subject of a contract). As a result, to the extent 2B Farms complains of duties that arise under the parties' contracts, its negligent hiring, supervision and management claim must be dismissed.

15.   As addressed elsewhere, 2B Farms has failed to allege sufficient facts to establish that Ragland breached any extra-contractual negligence duty that he personally owed to 2B Farms. Further, 2B Farms has failed to plausibly allege that Ragland committed any intentional tort. As a result, 2B Farms' negligent hiring, supervision and management claim must be dismissed.

16.   However, even assuming that Ragland engaged in tortious behavior, that is not enough for a negligent hiring claim. Contrary to 2B Farms' argument, negligent hiring is not *res ipsa loquitur* when an employee engages in a tort. [See Doc. 305 ¶ 24]. Rather, it requires that the employer knew or should have known that the employee is so dangerous or incompetent that the employee is an unreasonable risk to third parties. *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.). Further, the risk must be such that the risk-utility test justifies imposing a direct duty on the employer. *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996).[3]

17.   In its Third Amended Complaint, the only basis 2B Farms alleged for its negligent hiring, supervision, or management claim was that Ragland was inexperienced as a cattle

---

[3] 2B Farms also alleges a special relationship with Ragland. Such duty does not exist. *See* § F. Regardless, such a special relationship with Ragland would not create a direct duty owed by HTLF in its hiring retention, or supervision of Ragland.

lender.[Doc. 205 ¶ 106]. But 2B Farms makes no allegations regarding how that inexperience contributed to any injury. 2B Farms' complaints about completing checks, providing provisional credit, and sending wires are not unique to the cattle industry. There are no allegations that Ragland would not have committed a particular tort if he had been more experienced or that the lack of experience should have put HTLF on notice that Ragland would commit a tort. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (Criminal record of DWIs would not have caused club to reasonably anticipate sexual assault of young boys).

18.     For the first time in its response, 2B Farms adds allegations that HTLF should have known Ragland was incompetent due to his supposed role in the checky kiting scheme operated by the Reagor Dykes entities prior to their bankruptcy in 2018.[4]  Such new allegations are not properly before the Court. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Hicks v. Ashworth,* No. CV H-23-2234, 2024 WL 3243474, at *6 (S.D. Tex. June 26, 2024).

19.     Regardless, 2B Farms' new allegations do not even plausibly allege that Ragland had any involvement in the Reagor-Dykes check kite. He is not even identified in the Liquidating Trust's Third Amended Complaint referenced by 2B Farms. [Doc. 213-1]. Ragland's only connection appears to be that he was employed at one of the branches of Aim Bank that was involved in the alleged kite.

20.     However, even assuming that Ragland had previously managed an account that Reagor-Dykes used for check kiting, that does not mean that HTLF owed a duty to 2B Farms with respect to his employment. 2B Farms was not injured by a check kite. Check kiting is a fraud

---

[4] 2B Farms improperly asks the Court to take judicial notice of the Trustee of Reagor-Dykes Auto Group Creditors Liquidating Trust's Third Amended Complaint. Such a document is neither referred to in 2B Farms' complaint nor central to its claims and therefore cannot be considered by the Court. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) *approved by Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

against the injured bank. *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239, 241 (5th Cir. 2020). 2B Farms was not injured by the checks being deposited, by immediate provisional credit being given, or by wires being sent. HTLF suffered that injury and now seeks to recover its losses from 2B Farms under the terms of the Deposit Agreement. Any injury to 2B Farms was from McClain's false representations regarding cattle supposedly being purchased. If anything, a prior check kite would have indicated a risk to HTLF, not to 2B Farms. Allegations or a prior check kite committed by Reagor-Dykes are not sufficient to establish that Ragland posed an unreasonable risk to 2B Farms.

21.     2B Farms has failed to plausibly allege that Ragland committed a tort against 2B Farms. Nor has 2B Farms plausibly alleged that HTLF knew or should have known that Ragland posed an unreasonable risk to others. As a result, 2B Farms' negligent hiring, supervision, or management claim must be dismissed.

**E.     2B Farms' Negligent Undertaking Claim is a re-labeled version of its other negligence and breach of contract claims.**

22.     As addressed in HTLF's brief, a negligent undertaking claim must be based on malfeasance or nonfeasance of services that are "necessary for the protection of the other's person or things." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000) (*quoting* RESTATEMENT (Second) of Torts § 323 (1965)).  2B Farms does not identify any services undertaken by HTLF that were necessary for its protection.

23.     The "undertaking" complained of was the completion and deposit of McClain checks and the wiring of funds based on provisional credit. 2B Farms does not allege that these services were necessary for its protection. Rather, 2B Farms alleged that by providing these services, "HTLF Bank was violating its own agreements with 2B Farms, its own internal policies and procedures and customary banking practices." [Doc. 305 ¶30]. Even if such facts supported a

breach of contract or ordinary negligence claim (which they do not) they do not support a claim for negligent undertaking because the services at issue were not necessary for 2B Farms' protection.

24.     Further, 2B Farms has failed to address its lack of a direct physical injury. 2B Farms relies on insurance coverage cases, not negligent undertaking cases, to argue that a "physical injury" is "one that is tangible." [Doc. 305 ¶ 31] *citing U.S. Metals, Inc. v. Liberty Mut. Group, Inc.*, 490 S.W.3d 20, 21-22 (Tex. 2015) and *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 458 (5th Cir. 2022). However, 2B Farms does not allege a tangible injury. It alleges the loss of funds. And an indirect loss of physical business assets from a financial injury (such as foreclosure and sale of assets during bankruptcy alleged by 2B Farms) does not satisfy the physical loss requirement of a negligent entrustment claim. *Daughtry v. Silver Fern Chem., Inc.*, 138 F.4th 210, 219 (5th Cir. 2025).

> **F.     2B Farms has not alleged control or a personal relationship sufficient to impose a fiduciary duty on HTLF.**

25.     In its response, 2B Farms makes no effort to support the imposition of a formal fiduciary duty or a duty of good faith and fair dealing. 2B Farms only argues that an informal fiduciary duty arose based on HTLF's control over 2B Farms and because of 2B Farms' alleged special relationship with Ragland.

26.     However, the Account Agreement specifically forecloses the possibility of such a relationship: "Our relationship to you concerning your Account is that of debtor and creditor. No fiduciary, quasi-fiduciary or special relationship exists between you and us." [Doc. 258 p.64 (Ex. R, §37(l))]. The Texas Supreme Court has recently held that such a disclaimer is effective to prevent a fiduciary relationship from arising. *Pitts v. Rivas*, 709 S.W.3d 517, 529 (Tex. 2025). As a result, no fiduciary relationship can exist.

27.     Further, control over 2B Farms' accounts is not sufficient to create a fiduciary duty. Cases discussing the possibility of an informal fiduciary duty looked for "excessive lender control over, or influence in, the borrower's business activities." *Greater Sw. Off. Park, Ltd. v. Texas Com. Bank Nat. Ass'n* 786 S.W.2d 391 (Tex. App.—Houston [14th Dist.] 1990, writ denied). 2B Farms has made no allegations that HTLF made any decisions for 2B Farms or exercised any influence over 2B Farms' business decisions. As a result, 2B Farms has failed to allege sufficient facts to state a claim for breach of an informal fiduciary duty based on control.

28.     2B Farms has made no allegations whatsoever about a pre-existing personal relationship with Ragland. Rather, 2B Farms describes a long-standing business relationship with Ragland. Such a relationship—even if it becomes a close friendship—is not sufficient to impose a fiduciary duty. *Pitts v. Rivas*, 709 S.W.3d 517, 529 (Tex. 2025); *Thigpen v. Locke*, 363 S.W.2d 247 (Tex. 1962). 2B Farms unilateral reliance on Ragland's expertise is not enough to impose a duty on Ragland or his employer. *Id*. As a result, 2B Farms has failed to allege sufficient facts to state a claim for breach of an informal fiduciary duty based on a special relationship.

**G.     2B Farms makes no attempt to show actual knowledge of McClain's Fraud.**

29.     HTLF moved to dismiss Count 6 and 8 for aiding and abetting or knowing participation in fraud or breach of fiduciary duty on the basis that "[t]he Complaint fails to state sufficient facts to plausibly allege that HTLF had actual knowledge of McClain's fraud and breach of fiduciary duty." [Doc. 258 ¶ 42]. 2B Farms does not dispute that it is required to plausibly allege actual knowledge of McClain's fraud to support these causes of action. However, 2B Farms makes no effort to point out in any pleadings that HTLF had actual knowledge of the fraud. [Doc. 305 ¶¶ 33-35]. Nor does 2B Farms point to allegations showing how HTLF might have even obtained knowledge of McClain's fraud. *Id*. Rather, 2B Farms only seeks to establish that the cause of action

of aiding and abetting has been recognized in Texas. *Id.*[5] As a result, 2B Farms' claims for aiding and abetting or knowing participation in fraud or breach of fiduciary duty must be dismissed.

        **H.**      **11 U.S.C. 502(d) - 2B Farms makes no allegations of voidable transfers.**

30.      In its Motion to Dismiss, HTLF argued that 2B Farms could not assert a claim objection under 11 U.S.C. 502(d) because 2B Farms had not asserted that HTLF holds any property of the estate and has not made a claim for the return of any such property. [Doc. 258 ¶47], *citing* 11 U.S.C. § 502(d).  In its Response, 2B Farms does not dispute this fact. 2B Farms asserts that HTLF "received significant funds from 2B Farms" but does not assert that those payments were a fraudulent or preferential transfer. [Doc. 305 ¶ 37]. As a result, 2B Farms' claim objection under 11 U.S.C. 502(d) must be dismissed.

        **I.**      **Equitable Subordination – 2B Farms fails to assert that HTLF injured its other creditors.**

31.      In its Motion to Dismiss, HTLF argued that 2B Farms could not assert a claim for equitable subordination because, among other grounds, 2B Farms has not asserted an injury to other creditors. [Doc. 258 ¶49], *citing Matter of CTS Truss, Inc.*, 868 F.2d 146, 148–49 (5th Cir. 1989).  In its Response, 2B Farms does not dispute this fact. 2B Farms merely asserts that HTLF damaged 2B Farms, not its other creditors. [Doc. 305 ¶¶ 36-38]. As a result, 2B Farms' claim for equitable subordination should be dismissed.

      Dated this 5th day of December 2025.

---

[5] This Court is bound by the Fifth Circuit's holding declining to recognize aiding and abetting as a Texas cause of action based on the Texas Supreme Court's lack of recognition for that cause of action. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018). Aiding and abetting and knowing participation are similar but distinct causes of action. *Milligan, Tr. for Westech Cap. Corp. v. Salamone*, No. 1:18-CV-327-RP, 2019 WL 4003093, at *2 (W.D. Tex. Aug. 23, 2019).

Respectfully submitted,

**LOVELL ISERN & FARABOUGH, LLP**
John H. Lovell, SBN 12609300
112 SW 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Phone: (806) 373-1515
Fax:    (806) 379-7176
Email:  john@lovell-law.net

**MULLIN HOARD & BROWN, L.L.P.**
Matthew S. Merriott, SBN 24100846
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone:  (806) 372-5050
Facsimile:  (806) 372-5086
Email:   mmerriott@mhba.com


By:___/s/ *Matthew S. Merriott*_____
Matthew S. Merriott

*Attorneys for HTLF Bank, as Successor to
First Bank & Trust*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this 5th day of December 2025, I electronically filed the foregoing document with the Northern District of Texas through its filing system through and that a true and correct copy was served on the parties listed through the electronic case filing system by email as registered with the electronic case filing system:

/s/ *Matthew S. Merriott*
Matthew S. Merriott