ALAN DABDOUB
LYNN PINKER HURST & SCHWEGMANN LLP
2100 ROSS AVENUE, SUITE 2700
DALLAS, TEXAS 75201

HUDSON M. JOBE
JOBE LAW PLLC
6060 NORTH CENTRAL EXPRESSWAY,
SUITE 500
DALLAS, TEXAS 75206

SPECIAL COUNSEL TO THE TRUSTEE


**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| In re:<br><br>MCCLAIN FEED YARD, INC., *et al.*,[1]<br><br>Debtors. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 23-20084-SWE<br><br>(Jointly Administered) |
| In re:<br><br>2B FARMS, a Texas General Partnership, *et al.*,[2]<br><br>Debtors. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Chapter 12<br><br>Case No. 23-50096-SWE<br><br>(Jointly Administered) |
| KENT RIES,<br>*Chapter 7 Trustee for the Bankruptcy Estates of McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc.*,<br><br>Plaintiff,<br>v. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adv. Proc. No. 24-2007-SWE<br><br>*Previously 25-2005* |

---

[1] The Debtors in the jointly administered chapter 7 cases, along with their case numbers, are: McClain Feed Yards, Inc. (Case No. 23-20084-SWE); McClain Farms, Inc. (Case No. 23-20085-SWE); and 7M Cattle Feeders, Inc. (Case No. 23-20086-SWE).

[2] The Debtors in the jointly administered chapter 12 cases, along with their case numbers, are: 2B Farms (Case No.23-50096-SWE) and co-debtors Terry M. Robinson and Rebecca A. Robinson (Case No. 23-50097-SWE).

COMMUNITY FINANCIAL SERVICES BANK, § 
HTLF BANK, MECHANICS BANK, AND RABO § 
AGRIFINANCE, LLC, §
                 Defendants.

AGTEXAS FARM CREDIT SERVICES, §
AGTEXAS, PCA, §
THORLAKSON DIAMOND T FEEDERS, LP, §
     Plaintiffs, §
 §
EDWARD DUFURRENA, *et al.*,[3] §  Adv. Proc. No. 24-2007-SWE
 §
     Intervenor-Plaintiffs, §  *Previously 23-5002 and 24-2002*
 §
v. §
 §
RABO AGRIFINANCE, LLC, *et al.*, §
 §
     Defendants. §

HTLF BANK, as successor to First Bank & Trust, §
 §
     Plaintiff, Counter-Defendant, and Cross-Claim §
     Defendant, §
 §
v. §
 §
2B FARMS, a Texas General Partnership, §  Adv. Proc. No. 24-2007-SWE
TERRY M. ROBINSON, and REBECCA A. §
ROBINSON, §  *Previously 23-5002 and 23-5003*
 §
     Defendants, Counterclaim- §
     Plaintiffs, Third-Party Plaintiffs §
     and Third-Party Counterclaim §
     Defendants, §

---

[3] Dennis Buss, Buss Family Trust, Eddie Bryant, Robert Gray, Ronnie Gray, Gray Brothers, Craig Sutton, Amy Sutton, Steve Ryan, AJ Jacques Living Trust, Gungoll Cattle Co., LLC, Leah Gungoll, Morrison Café, LLC, Lesh Family Trust, Gary Lesh, Jan Lesh, Jared Lesh, Joel Brookshire, Gene Brookshire Family Limited Partnership, Scarlet and Black Cattle, LLC, Janice Lawhon, Jordan Lesh, LLC, Bryan Blackman, Steve T Scott Farm, Inc. Scott Livestock Company, Inc., Arnold Braun Trust, Robert Braun, Jim Rininger, Robert Spring, Michael Evans, Miranda Evans, Charles Lockwood, Cole Lockwood, Sherle Lockwood, Nikki Lockwood, Lyndal Van Buskirk, Janet Van Buskirk, Colby Van Buskirk, Jimmy Greer, Dustin Johnson, Dora Blackman, Ridgefield Capital Asset Management, LP, Robert Ellis, Big Seven Capital Partners, LLC, Carraway Cattle, LLC, Richard Carraway, Drew Phillips, Barry Phillips, Priest Cattle Company, Ltd., Priest Victory Investment LLC, W. Robbie Russell Living Trust, and Eddie Stewart.

|  | § |
|---|---|

v.

RABO AGRIFINANCE, LLC and
MECHANICS BANK,

      Third-Party Defendants and, as to
      Rabo AgriFinance LLC only, Third-
      Party Counterclaim Plaintiff and
      Cross-Claim Plaintiff.


HTLF BANK, as successor to First Bank &
Trust,

      Plaintiff and Counter-Defendant,

v.

2B FARMS, a Texas General Partnership,
TERRY M. ROBINSON, and ANGELA
ROBINSON,

Defendants and Counter-Plaintiffs.

---

**Trustee's Brief in Support of Objection and Response to 2B Farms' Motion for Partial Summary Judgment**

---

Plaintiff-Intervenor Kent Ries, the Chapter 7 Trustee ("**Trustee**") of the bankruptcy estates of McClain Feed Yard, Inc. ("MFY") (Case No. 23-20084-swe), McClain Farms, Inc. ("McClain Farms") (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. ("7M") (Case No. 23-20086-swe) (collectively, the "**McClain Debtors**"), files this *Brief in Support* of its *Objection and Response to Third-Party Plaintiff 2B Farms' Motion for Partial Summary Judgment Against Third-Party Defendant Mechanics Bank* [ECF No. 298], as well as 2B Farms' *Brief in Support* [ECF No. 299] and *Appendix in Support* [ECF No. 300] (collectively, the "**MPSJ**"), and respectfully requests that the Court deny the MPSJ as follows:

## I.   OBJECTION TO MPSJ

1.      The Court should deny 2B Farms' ("**2B's**") MPSJ for three reasons. **First**, 2B is improperly seeking summary judgment to resolve the ownership of property that is part of the McClain Debtors' estates without acknowledging the McClain Debtors' claims to the funds. **Second**, neither the deposit account control agreement ("**DACA**") between McClain, Mechanics Bank ("**Mechanics**"), and Rabo Agrifinance, LLC ("**Rabo**"), nor the paper checks that were ultimately dishonored, alter the fact that the funds became and were the property of the McClain Debtors and were then paid to third parties. **Third**, once 2B's funds were deposited in the McClain Debtors' accounts, the cash became commingled with other fungible cash in the accounts, was subsequently transferred out of the account, and does not remain to be recovered. At best for 2B, then, 2B stands in the same shoes as every other investor-and-unsecured creditor in the McClain Debtors' bankruptcy cases, with the potential to recover on its allowed claims on a pro rata basis.

2.      The Trustee intervened in the adversary proceedings brought by non-McClain debtors, such as 2B, against non-debtor bank defendants, such as Mechanics, because the claims asserted by the parties concern the rights to property of the McClain Debtors' estates. *See* ECF Nos. 140, 192, 201. 2B's section 548 fraudulent transfer claim against Mechanics is a prime example: 2B seeks to recover from Mechanics millions of dollars that were, at one time, in the McClain Debtors' accounts and had become property of the McClain Debtors. By 2B's own admission, the funds were wired to the McClain Debtors' accounts as part of the parties' course of dealing–no different than many other investor-unsecured creditors of the McClain Debtors. Before the Court can render final judgment on the rightful owner of the disputed funds and determine how, to whom, and in what amount they should be distributed to creditors, the Court must first adjudicate, among other things, which estate's claim of ownership over the funds should prevail.

3.      2B's MPSJ improperly seeks to make an end run around the Trustee's claims to the funds by ignoring the disputed issues of material fact that support the McClain Debtors' right to recover from Mechanics the very same cash 2B seeks to recover in its MPSJ. But the Court may not ignore these disputes when ruling on the MPSJ. As an initial matter, there is a genuine dispute of

material fact concerning whether the DACA operated to exclude the McClain Debtors from ever owning the cash deposited into their accounts at Mechanics. Though 2B urges otherwise, the DACA had no such effect, and the McClain Debtors' owned the funds. The McClain Debtors can therefore recover the funds from Mechanics as fraudulently transferred–which the Trustee seeks to do pursuant to his fraudulent transfer claim against Mechanics, for pro rata distribution to the McClain Debtors' unsecured creditors.

4.      There are also undisputed facts that preclude 2B from obtaining summary judgment on its § 548 claims against Mechanics. It cannot be disputed that the cash from 2B's April 4, 5, and 6 wire transfers to MFY's account was commingled with other cash in the account and subsequently transferred out to third parties, all consistent with MFY, not Mechanics, being the initial transferee from 2B of the three wire transfers. 2B has therefore not established as a matter of undisputed fact that Mechanics was a transferee–initial, mediate, intermediate, or otherwise–of $7,458,956.62 in traceable proceeds from 2B's wire transfers.

5.      Likewise, it is undisputed that while three paper checks written against McClain Farms' Mechanics' account were transferred to 2B, no cash corresponding to those three checks was ever transferred out of the McClain Debtors' accounts to 2B. Those funds were thus never the property of 2B. Any transfer of those funds is therefore not a "transfer . . . of an interest of" 2B, and 2B has therefore failed to establish a requisite element of its fraudulent transfer claim as to those funds.

6.      All the cash 2B seeks to recover via its MPSJ is cash that was formerly in the McClain Debtors' deposit accounts at Mechanics, where it was commingled with other cash. 2B admits that following the contested transactions, there was over $46 million combined in MFY's and McClain Farms' accounts. At most, 2B's wired cash represented only 16-percent of the McClain Debtors' cash on deposit at that time. By April 28, 2023, when the McClain Debtors filed their bankruptcy petitions, only $1,414,714.60–or just *three-percent*–of that amount remained in the accounts, and that was after the MFY account had been overdrawn by $8.7 million and the McClain Farms Account depleted to less than $366,000 by April 7, 2023. There is no traceable cash for 2B to recover from the McClain Debtors, Mechanics, or anyone else. To the extent 2B has a claim against the McClain Debtors for

the wire transfers, unpaid checks, or otherwise, it should have no more or less priority to recover on its claim than do all other McClain investor-creditors. 2B should not be permitted to end-run an equitable distribution to the McClain Debtors' creditors simply because it has asserted a fraudulent transfer claim as opposed to any other contract or tort claim. Its MPSJ should be denied.

## II.    SUMMARY JUDGMENT EVIDENCE

7.    The Trustee relies upon all of the pleadings and documents filed of record in this adversary proceeding and the McClain Debtors' bankruptcy cases, Case No. 23-20084-swe, Case No. 23-20085-swe, and Case No. 23-20086-swe, including the Claims Registers in those cases. To the extent referenced herein, each filing is incorporated by reference for all purposes as if recited verbatim herein.

8.    The Trustee also specifically relies upon the evidence cited by 2B in its MPSJ and filed contemporaneously with the Court. Contrary to 2B's contention, that evidence demonstrates that material facts are either disputed or are indisputably resolved against 2B's favor such that summary judgment is improper.

## III.    STATEMENT OF FACTS
### A.    McClain Used the Mechanics Accounts to Perpetrate His Scheme.

9.    As the parties have by now extensively briefed to the Court, Brian McClain, through the McClain Debtors, operated a massive, ghost-cattle, Ponzi- and check-kiting scheme that rendered the McClain Debtors insolvent and only ended when the McClain Debtors petitioned for bankruptcy on April 28, 2023 (the "**Petition Date**"). *See, e.g.*, MPSJ ¶ 4; *see generally* ECF No. 205 (*2B's Third Amended Third-Party and Consolidated Complaint*, or "2B's Compl."); Adv. Proc. No. 25-02005, ECF No. 48 (*Trustee's Second Amended Adversary Complaint*, or "Trustee's Compl.").

10.    Pursuant to McClain's scheme, the McClain Debtors would receive cash from investors for the purported purchase of cattle with the promise of receiving a high rate of return on investment when the McClain Debtors would purportedly resell the cattle in two-to-three months' time. The McClain Debtors,  however, never actually purchased and sold cattle in sufficient quantities

to fulfill each of the purported cattle investments. Instead, McClain used new investor funds, financing from Rabo, credit extensions from Mechanics and Defendant Community Financial Services Bank ("**CFSB**"), and floated funds fabricated through McClain check-kiting activities, to pay old investors their principle and purported profits and keep the scheme afloat. *See generally* 2B's Compl.; Trustee's Compl.

11.     Specifically, with regard to Mechanics, the McClain Debtors' each maintained a deposit account there, including account ending 0197 ("**MFY's Account**") and ending 3070 ("**McClain Farms' Account**") (the "**McClain Accounts**"). *See, e.g.*, 2B_034 (account statement for #1097 addressed to MFY); 2B_049 (account statement for #3070 addressed to McClain Farms). Among other things, McClain deposited investor funds in the McClain Accounts, transferred funds between and among them including kiting checks to create float, and paid third-parties with the funds in the accounts. *See id.* (account statements reflecting intercompany transfers and deposits from and payments to third parties); *see generally* 2B's Compl. ¶¶ 21-23, 45, 51, 57, 60, 65 & 68; Trustee's Compl. ¶¶ 38-45.

### B.     Rabo Extracts Deposit Account Control Agreements from McClain for the McClain Accounts.

12.     As the Trustee alleges in his complaint, after Rabo decided to cease extending further credit to the McClain Debtors in early 2023, McClain failed to comply with Rabo's directions to pay down the McClain Debtors' collective loan balance. Trustee's Compl. ¶¶ 71-73. Whether in response to McClain's failure to pay down the loan balance or otherwise, Rabo subsequently leveraged its control over the McClain Debtors to force McClain to execute deposit account control agreements ("**DACAs**") with Mechanics and Rabo for the McClain Accounts, in or around March 23, 2023. *See* 2B_007-011 (DACA for McClain Farms Account); 2B_012-016 (DACA for MFY Account); and 2B_017-021 (DACA for 7M's account at Mechanics). The Trustee further alleges that by early April 2023, Rabo had exerted such control as to force McClain to relinquish management of the McClain Debtors and install a "chief restructuring officer" selected by Rabo. Trustee' Compl. ¶¶ 35, 73, 93.

13.     The DACAs purport to give *Rabo*, not Mechanics, "a first priority lien and security interest" in, as well as transfer to Rabo "all dominion and control over" the cash in the McClain Accounts. MPSJ ¶ 11; 2B_007; 2B_012; 2B_016.

14.     Critically, however, the DACAs also declare that the McClain Debtors maintained control over the funds in their respective accounts unless and until Rabo notified Mechanics to the contrary. 2B_009; 2B_014; 2B_018.

> (a)   The Deposit Bank acknowledges the lien and security interest hereunder and under the Security Agreement. Until the Deposit Bank has received instructions from the Secured Party to the contrary, the Debtor shall be entitled to present items to be drawn on or otherwise to withdraw or direct the disposition of funds from the Account. The Deposit Bank waives any right to offset any claim which it might have against the Deposit Account or the Collateral hereunder and subordinates any security interest it may have in the Deposit Account and the Collateral hereunder to the lien and security interest granted to the Secured Party.

15.     Moreover, as McClain was forced to grant the DACAs, which purport to transfer and grant security interests in the McClain Debtors' property, within the pre-petition preference period and in exchange for no or less than reasonably equivalent value, the Trustee is seeking to avoid the DACAs under 11 U.S.C. §§ 547, 548 and 550. *See* Trustee's Compl. at Counts VII-IX.

**C.     2B's April 4-6 Wires Transferred the Disputed Cash To the McClain Debtors, and the McClain Debtors In Turn Transferred *All* the Disputed Cash To Various Third Parties.**

16.     2B is one of more than 100 parties, comprised mostly of similarly situated unsecured creditor-investors, that have asserted claims against the McClain Debtors arising from the McClain Debtors' purported failure to return investment principles and pay purported and promised profits. MPSJ ¶ 4; *see also* Claims Registers in Case Nos. 23-20084-swe, 23-20085-swe, and 23-20086-swe.

17.     2B's MPSJ concerns three investment payments 2B transferred to the McClain Debtors on April 4, 5 and 6, 2023, in the amounts of $2,473,847.58, $2,499,037.72, and $2,486,071.62, respectively (the "**Wire Transfers**"), MPSJ ¶ 8, as well as three dishonored checks written against

McClain Farms' account at Mechanics for payment to 2B on April 4, 5, and 6, 2023, for the respective amounts of $2,530,920.39, $2,559,407.02, and $2,510,991.45 (the "**Unpaid Checks**"), MPSJ ¶ 10. Per 2B's allegations, 2B transferred the approximately $7.5 million to MFY to purportedly purchase cattle, and McClain Farms provided 2B checks payable to 2B equaling approximately $7.6 million over the same three-day period to pay 2B the purported principle and profits from 2B's prior purported investments. *Id.* ¶¶ 8, 10. And per 2B's record evidence, the Unpaid Checks appear to have been dishonored by Mechanics no earlier than April 10, 2023, and potentially as late as April 17, 2023. *See* 2B_25-26 (reflecting processing date stamps of April 10, 2023, on the check's front and April 13, 2023, on the check's back); 2B_028-029 (same); and 2B_031-32 (reflecting dates stamps of April 12 and 17, 2023).

 

Snips from 2B_028-29: Reflecting check processing dates of April 10 and 13, 2023

18.     By April 10, 2023, the McClain Farms' Account had a balance of only $365,206.99. *See* 2B_052 (showing the daily balance for 04/10/2023). The balance never increased above that amount prior to the Petition Date. *Id.*

19.     There is no evidence in the summary judgment record showing that any cash was ever transferred to 2B from the McClain Farms' Account or any other of the McClain Debtors after the Unpaid Checks were provided to 2B. Thus, while McClain Farms issued three paper checks to 2B on April 4-6, 2023, indicating the McClain Debtors owed 2B money, none of McClain Farms' cash or any other McClain Debtors' cash was ever transferred to 2B such that 2B ever possessed much less owned it to then itself transfer it to Mechanics.

20.     Additionally, as 2B alleges in its MPSJ, the Wire Transfers to the McClain Debtors did not comprise the total balance of MFY's account specifically, much less the McClain Accounts collectively. Rather, following receipt of 2B's April 6, 2023 wire, the balance in MFY's Account was approximately $20.8 million, nearly three-times the total balance of 2B's Wire Transfers. MPSJ ¶ 14 (citing 2B_062). Moreover, the cash from 2B's April 4, 2023 wire, commingled with another $13 million in cash, had been transferred out of MFY's Account and into McClain Farms' Account that same day, and then again immediately transferred out to various third parties. *See* 2B_039 (reflecting a $0.00 end-of-day balance on April 4, 2023, for MFY Account (#0197)); 2B_051 (reflecting a $15,428,784.45 transfer from MFY (#0197) to McClain Farms (#3070) on April 4, 2024); 2B_052 (showing a $0.00 end-of-day balance for McClain Farms Account); and 2B_051-059 (reflecting April 4, 2024, as the date numerous checks, identified by check number, cleared the account and presenting images of those checks reflecting named and redacted third-party payees).

**ANALYZED CHECKING-XXXXXXX0197** (continued)

**Daily Balances**

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 04/03/2023 | $0.00 | 04/06/2023 | $20,872,962.34 | 04/11/2023 | -$7,403,948.45 |
| 04/04/2023 | $0.00 | 04/07/2023 | -$8,763,776.21 | 04/17/2023 | $500,000.00 |
| 04/05/2023 | $17,743,974.61 | 04/10/2023 | -$7,421,192.32 | 04/18/2023 | $0.00 |

2B_039: Showing $0 balance in MFY Account at end of day, April 4, 2023



**ANALYZED CHECKING-XXXXXXX3070**

**Account Summary**

| Date | Description | Amount |
|---|---|---|
| 04/01/2023 | Beginning Balance | -$163,062.91 |
| | 4 Credit(s) This Period | $26,086,170.32 |
| | 73 Debit(s) This Period | $25,923,107.41 |
| 04/28/2023 | Ending Balance | $0.00 |

**Electronic Credits**

| Date | Description | Amount |
|---|---|---|
| 04/03/2023 | 118422708 Online Transfer from XXXXXX197 on 4/03/23 at 10:56 | $163,062.91 |
| 04/05/2023 | Remote Deposit | $368,615.96 |

**Other Credits**

| Date | Description | Amount |
|---|---|---|
| 04/03/2023 | TRANSFER FROM ANALYZED CHECKING ACCOUNT XXXXXXXXXXXXXXXXXXXXX0197 | $10,125,707.00 |
| 04/04/2023 | TRANSFER FROM ANALYZED CHECKING ACCOUNT XXXXXXXXXXXXXXXXXXXXX0197 | $15,428,784.45 |

2B_051: Showing $15,428,784.45 transfer from MFY's Account to McClain Farms' Account on April 4, 2023.

**ANALYZED CHECKING-XXXXXXX3070** (continued)

**Checks Cleared (continued)**

| Check Nbr | Date | Amount | Check Nbr | Date | Amount | Check Nbr | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 7519 | 04/04/2023 | $347,781.73 | 7528 | 04/04/2023 | $359,326.39 | 7536 | 04/04/2023 | $427,257.05 |
| 7520 | 04/04/2023 | $564,038.96 | 7529 | 04/04/2023 | $428,832.46 | 7630* | 04/07/2023 | $922.93 |
| 7521 | 04/04/2023 | $595,366.29 | 7530 | 04/04/2023 | $419,601.45 | 7632* | 04/07/2023 | $439.53 |
| 7523* | 04/04/2023 | $167,004.60 | 7531 | 04/04/2023 | $502,196.09 | 7635* | 04/07/2023 | $886.78 |
| 7524 | 04/04/2023 | $118,617.39 | 7532 | 04/04/2023 | $501,946.93 | 7636 | 04/07/2023 | $631.54 |
| 7525 | 04/04/2023 | $418,176.27 | 7533 | 04/04/2023 | $534,651.69 | 7639* | 04/07/2023 | $425.46 |
| 7526 | 04/04/2023 | $532,299.54 | 7534 | 04/04/2023 | $376,811.20 | | | |
| 7527 | 04/04/2023 | $418,927.56 | 7535 | 04/04/2023 | $427,105.07 | | | |

* Indicates skipped check number

**Daily Balances**

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 04/03/2023 | $0.00 | 04/05/2023 | $368,615.96 | 04/10/2023 | $365,208.99 |
| 04/04/2023 | $0.00 | 04/07/2023 | $365,309.72 | 04/20/2023 | $0.00 |

2B_052: Showing $0 balance in McClain Farms Account at end of day, April 4, 2023 (yellow highlighting) & Some of the checks that cleared McClain Farms Account on April 4, 2023 (blue highlighting)

2B_058: Showing two of the checks that cleared McClain Farms' Account on April 4, 2023, were paid to third-party creditors (*e.g.*, MAP Enterprises) of the McClain Debtors

21.    Thus, by the close of business on April 6, 2023, the McClain Debtors had transferred the full amount of 2B's April 4 wire to third-parties, and at most, only $4,985,109.34 of the $20.8 million end-of-day balance in MFY's Account was even arguably traceable to 2B's April 5 and 6 wires.

PAGE 11

22.     Fatal to 2B's requested summary judgment, on April 7, 2023, a series of "charge backs" were recorded against MFY's Account such that the entire $20.8 million was consumed and paid to third-parties, and the MFY Account was overdrawn by an additional $8.7 million. *See* 2B_039.



2B_039: Showing -$8.7 million balance in MFY Account at end of day, April 7, 2023

### D.     Rabo's April 5, 2023 Instruction to Mechanics to Freeze Transfers Out of the McClain Accounts Arrived Too Late for 2B To Prevail.

23.     On April 5, 2023, Rabo instructed Mechanics to freeze all outgoing transfers from the McClain Accounts and remit all sums to Rabo. MPSJ ¶ 12; 2B_022-024.

24.     Those instructions clearly arrived too late to have any impact on either the treatment of the cash 2B had transferred to MFY's Account on April 4-6, 2023, or the determination that the McClain Debtors, and specifically MFY, was the transferee of the Wire Transfers from 2B and *not Mechanics*. All the cash that was in MFY's Account as of April 6 was paid or returned not to Rabo, Mechanics, the McClain Debtors, or 2B, but rather to other parties by April 7. Only the McClain Debtors, and not Rabo or Mechanics, would have desired such a result; Rabo instructed Mechanics to freeze transfers to third-parties and remit sums to Mechanics, and Mechanics agreed to do so. MPSJ ¶ 15.

25.     2B correctly points out in its MPSJ that Mechanics did not remit all sums to Rabo but instead remitted the balance of what remained on the Petition Date to the Trustee, who received it while standing in the shoes of the McClain Debtors. MPSJ ¶ 17.

### IV.     ARGUMENT

26.     A plaintiff moving for summary judgment must satisfy its burden by submitting summary-judgment proof that establishes all elements of its claim as a matter of law. *See Tolan v. Cotton*,

572 U.S. 650, 656–57 (2014); *see* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This burden is satisfied only if, after viewing the evidence in the light most favorable to and resolving all doubts about the facts in favor of the non-moving parties, no genuine disputes of material fact exist and no reasonable trier of fact could find against Plaintiff. *Tolan*, 572 U.S. at 656-57. 2B failed to meet this burden.

27.      To prevail on its § 548 fraudulent transfer claims against Mechanics, 2B is required to establish each of six requisite elements: (1) there was a transfer, (2) to Mechanics, (3) of an interest of the debtor, (4) within two years' of the debtor's petition date; (4) the debtor received less than reasonably equivalent value in exchange; and (5) the debtor was insolvent on the date of the transfer or was rendered insolvent as a result of the transfer. 11 U.S.C. § 548(a)(1)(B).

28.      The summary judgment evidence, as described above, precludes 2B from ever being able to establish Mechanics was a transferee of cash that constituted "an interest" or property of 2B and thus precludes 2B from ever recovering on its § 548 claims against Mechanics. At minimum, the record evidence raises genuine disputes of material fact that prevent 2B from prevailing on its motion for summary judgment. And because 2B cannot plausibly allege a § 548 claim against Mechanics given the indisputable record facts, the Trustee has exclusive standing to bring such claims against Mechanics. At the very least, 2B should not be permitted to circumvent an orderly and equitable distribution in the McClain Debtors' bankruptcy cases without first addressing the Trustee's competing fraudulent transfer claims against Mechanics. The Court should therefore deny the MPSJ.

### A.  The Court Must Resolve the Trustee's Claim to Exclusive Standing to Bring These § 548 Claims Against Mechanics Before Granting on 2B's MPSJ.

29.      If the Court denies the MPSJ, the Trustee's claim to exclusive standing to bring these § 548 claims need not be resolved first, as the Trustee's rights and claims to the funds would not be impaired. The opposite, however, is not true. If the Court were to grant the MPSJ without first resolving the Trustee's longstanding claim to exclusive standing to bring the § 548 claims at issue, the Trustee's rights and claims to the property might be impaired completely (*e.g.*, the single recovery rule would bar the Trustee from also recovering against Mechanics for the same funds that were

fraudulently transferred out of the McClain Debtors' accounts). The Court must therefore first resolve the Trustee's standing claim before granting the MPSJ.

30.     As the facts described above demonstrate, 2B cannot possibly trace the cash from its April 4-6 Wire Transfers to cash that Mechanics or Rabo ultimately received. Every single dollar of that cash was paid to and received by MFY, and subsequently paid to third parties at the McClain Debtors' direction, or returned to third parties by virtue of "stop payment" demands, by no later than April 7, 2023. *See* 2B_039; 2B_043; 2B_052. There is no evidence that either Mechanics or Rabo controlled those transfers to third parties or ultimately benefited from those transfers.

31.     As 2B cannot trace its cash to cash that was received, possessed, and controlled by Mechanics (because it was instead transferred to the McClain Debtors), it does not have standing to bring a fraudulent transfer claim against Mechanics (only the Trustee of the McClain Debtors does).

32.     Rather, as the facts demonstrate, 2B's § 548 claim for these wires is an attempt to derivatively pursue  the Trustee's claim. The funds may have been fraudulently transferred by 2B, but they were transferred to and became the property of the McClain Debtors, before they were again fraudulently transferred *piecemeal* from the McClain Debtors to third-parties. The Trustee is seeking to claw back the fraudulently transferred funds from Mechanics and approximately 140 other parties. Those fraudulently transferred funds surely include, but are not limited to, 2B's investment payments on April 4-6, 2023. 2B is no differently situated than every other investor-creditor of the McClain Debtors with regard to these April 4-6 payments to the McClain Debtors that disappeared from the McClain Debtors' accounts prior to the Petition Date.

33.     As only the McClain Debtors, and not 2B, can plausibly trace transfers of cash received by the McClain Debtors, commingled with other cash, and then transferred piecemeal to Mechanics or third-parties, 2B lacks standing to bring its fraudulent transfer claims against Mechanics.

34.     At minimum, there are genuine issues of material fact that preclude the Court from granting the MPSJ, which would necessarily imply that 2B could actually trace its cash to cash that Mechanics ever exercised dominion and control over. As such, the Court cannot grant 2B its requested summary judgment.

**B.**    <u>**The DACAs Do Not Allow 2B to Usurp the Trustee's Avoidance Claims.**</u>

35.    The Trustee has sued Mechanics in connection with the deposit accounts alleging that certain deposits and disposition of those funds constituted, among other things, avoidable transfers to Mechanics given the check kiting scheme and overdrawn bank balances in the McClain Debtor's deposit accounts with Mechanics. *See* Trustee's Compl. at Counts XIV-XV. 2B argues that the DACAs allow 2B to bypass the McCain Debtors and sue Mechanics for the funds transferred by 2B to the McClain Debtors. This argument fails in several respects.

36.    *First*, no caselaw cited by 2B or otherwise located allows a debtor's creditors to sue the debtor's lender or depository bank directly for transfers from the debtor regardless of any alleged "dominion and control" of that lender or depository bank, including an industry-norm Deposit Account and Control Agreement. *Second*, and relatedly, the DACA did not change ownership of the funds deposited into the McClain Debtors' bank accounts – the "control" argument does not alter ownership of those funds by the McClain Debtors. *Third*, regardless of the terms of the DACA,[4] the actual summary judgment evidence does not prove that the funds were transferred to Mechanics or Rabo at either of their directions. Rather, 2B's evidence suggests the funds were paid to MFY and then paid or returned to other third-parties.

**C.**    <u>**2B Cannot Establish Mechanics Received Property of 2B.**</u>

37.    Likewise, the Court should also deny the MPSJ because 2B cannot establish the requisite element that Mechanics was a recipient or transferee of "an interest" or property of 2B.

38.    As set forth above, the summary judgment evidence suggests that the $7.5 million 2B wired to MFY on April 4-6, 2023 was distributed to other parties.

39.    2B cannot possibly trace any money that was subsequently deposited in the MFY Account or any other Mechanics account to the cash from its wire transfers, as there is no record evidence of where the money went once it was fraudulently transferred from the McClain Debtors to the third parties.

---

[4] The Trustee has asserted preference and fraudulent transfer claims to avoid the DACAs. *See* Trustee's Compl. at Counts VII-IX.

40.     Nor does 2B's fraudulent transfer claim to "recover" funds that it never possessed or owned but that may have been in the McClain Farms Account when the Unpaid Checks were written, but which funds did not exist in the McClain Farms Account when the Unpaid Checks were presented for payment (because they were transferred to other parties), fare any better.

41.     2B cites no precedent in support of its argument that cash that was in McClain Farms' Account somehow became its property by mere virtue of 2B possessing checks made out against the McClain Farms' Account. Regardless of who ultimately controlled or received the funds in McClain Farms' Account, the funds surely were not owned by, and did not constitute an interest of, 2B.

42.     As such, 2B cannot establish Mechanics received an interest or property of 2B's, much less as part of a fraudulent transfer initiated by 2B. At most, 2B can allege a derivative claim that it fraudulently transferred cash to the McClain Debtors, who commingled it and fraudulently transferred it to third parties. That is not enough.

43.     Because the facts preclude 2B from showing Mechanics ever received cash from 2B as a direct or intermediate transferee (rather than a mere depository bank), 2B cannot plausibly allege a § 548 claim against Mechanics. Only the Trustee can. The Court should therefore deny 2B's MPSJ.

## V.    CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court:

- Deny 2B's MPSJ; and

- Grant the Trustee all other relief to which he is entitled under law or at equity.

Respectfully submitted,

*/s/ Alan Dabdoub*
Alan Dabdoub
State Bar No. 24056836
adabdoub@lynnllp.com
Campbell Sode
State Nar No. 24134507
csode@lynnllp.com
Farsheed Fozouni
State Bar No. 24097705
ffozouni@lynnllp.com

Steven G. Gersten
State Bar No. 24087579
sgersten@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:      214-981-3800
Facsimile:      214-981-3839

Hudson M. Jobe
Texas Bar No. 24041189
**JOBE LAW PLLC**
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
(214) 807-0563
hjobe@jobelawpllc.com

**SPECIAL COUNSEL TO THE TRUSTEE**