John H. Lovell, SBN 12609300
john@lovell-law.net
LOVELL ISERN & FARABOUGH, LLP
112 SW 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Phone: (806) 373-1515
Fax:    (806) 379-7176

—and—

Matthew S. Merriott, SNB 24100846
mmerriott@mhba.com
MULLIN HOARD & BROWN, L.L.P.
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone: (806) 372-5050
Facsimile: (806) 372-5086

*Attorneys for First Bank & Trust, a division of UMB Bank n.a., successor by merger to HTLF Bank.*

-and-

**Matthew Muckleroy**
State Bar No. 24066796
mmuckleroy@cwl.law
**Dallas Flick**
State Bar No. 24104675
dflick@cwl.law
CRAWFORD, WISHNEW & LANG, PLLC
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
Telephone: 214-817-4500
Facsimile: 214-602-6551

*Attorney for Defendant Shawn Ragland*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: McClain Feed Yard, Inc., et al, | § | |
| | § | Case No. 23-20084-swe7 |
| Debtors. | § | Jointly Administered |

| | § | |
|---|---|---|
| In re: 2B Farms, a Texas General Partnership, et al, | § § § | Case No. 23-50096-swe12 Jointly Administered |
| Debtors. | § § § | |
| AgTexas Farm Credit Services, AgTexas PCA, Thorlakson Diamond T Feeders, LP, | § § § § | |
| Plaintiffs, | § § | |
| Edward Dufurrena, et al, | § § § | |
| Intervenor-Plaintiffs, v. | § § § | Adversary No. 24-02007-swe Consolidated Adversary Proceeding |
| Rabo AgriFinance, LLC, et al, | § § § | |
| Defendants | § § | |
| Kent Ries, Chapter 7 Trustee for the Bankruptcy Estates of McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., | § § § § § | |
| Plaintiff, | § § | Adversary No. 24-02007-swe Consolidated Adversary Proceeding |
| v. | § § | |
| Community Financial Services Bank; HTLF Bank, Mechanics Bank, and Rabo AgriFinance, LLC, | § § § § | |
| Defendants. | § § | |
| HTLF Bank, as successor to First Bank & Trust, | § § § | |
| Plaintiff, Counter-Defendant, and Cross-Claim Defendant, | § § § | |
| v. | § § | |
| 2B Farms, a Texas General Partnership, Terry M. Robinson, and Rebecca A. Robinson, | § § § § | |
| Defendants, Counterclaim-Plaintiffs, | § | Adversary No. 24-02007-swe |

| | |
|---|---|
| Third-Party Counterclaim Defendants, § | Consolidated Adversary Proceeding |
| v. § | |
| § | |
| Rabo AgriFinance, LLC and Mechanics Bank, § | |
| § | |
| Third-Party Defendants and, as to Rabo AgriFinance, LLC only, Third-Party Counterclaim Plaintiff and Cross-Claim Plaintiff. | |

| | |
|---|---|
| HTLF Bank, as successor to First Bank & Trust, | |
| Plaintiff and Counter-Defendant, | |
| v. | Adversary No. 24-02007-swe |
| 2B Farms, a Texas General Partnership, Terry M. Robinson, and Angela Robinson, | Consolidated Adversary Proceeding |
| Defendants and Counter-Plaintiffs[1] | |

### REPLY IN SUPPORT OF DEFENDANTS HTLF'S AND SHAWN RAGLAND'S MOTION TO DISMISS PLAINTIFFS' AND INTERVENORS' FIRST AMENDED COMPLAINT

*First Bank & Trust, a division of UMB Bank n.a., successor by merger to HTLF Bank* ("**HTLF**") and Shawn Ragland hereby submit this Reply to Plaintiffs' and Intervenor-Plaintiffs' Amended Omnibus Response [Doc. 319] to HTLF and Ragland's Motion to Dismiss Plaintiffs' First Amended Federal Complaint (the "**Complaint**") filed by Plaintiffs AgTexas Farm Credit Services, AgTexas, PCA, and Thorlakson Diamond T Feeders, LP and Intervenor-Plaintiffs Edward Dufurrena *et al.* (collectively, "**Plaintiffs**").

---

[1] These claims were originally pending as Adversary No. 23-05003-rlj but were previously consolidated under Adversary No. 23-05002-rlj.

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 1

    A. The Court should dismiss Plaintiffs' fraud and knowing participation claims ................................................................................................................... 1

        i. Plaintiffs seemingly abandon their direct fraud claims against HTLF ................................................................................................... 1

        ii. Plaintiffs abandon their third-party fraud claims concerning McClain's fraud ........................................................................................ 2

        iii. The alleged check kite was not a fraud on Plaintiffs .................................. 3

        iv. Alternatively, Plaintiffs have not plausibly alleged that HTLF or Ragland knew that they were participating in a check kite ......................... 4

    B. The Court should dismiss Plaintiffs' negligence claims ......................................... 5

        i. Plaintiffs' negligence theories fail because HTLF and Ragland owed them no duty as a matter of law (Counts 3, 5, and 6) .................................. 5

        ii. Plaintiffs' theory of proximate cause is foreclosed by controlling authority ..................................................................................................... 7

    C. The Fifth Circuit has already rejected aiding and abetting as a cause of action .................................................................................................................... 9

    D. As to HTLF and Ragland, Plaintiffs' conspiracy claim is a conspiracy theory .................................................................................................................... 9

    E. Plaintiffs' RICO claims against HTLF and Ragland fail as a matter of law ........................................................................................................................ 10

III. CONCLUSION ............................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Durant*,
 550 S.W.3d 605, 614 (Tex. 2018) ............................................................................................ 3

*Corpus Christi Area Tchrs. Credit Union v. Hernandez*,
 814 S.W.2d 195 (Tex. App.—San Antonio 1991, no writ) ................................................... 2

*Daughtry v. Silver Fern Chem., Inc.*,
 138 F.4th 210 (5th Cir. 2025) ................................................................................................. 6

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
 907 S.W.2d 472 (Tex. 1995) ............................................................................................. 7, 8

*El Camino Res., LTD. v. Huntington Nat. Bank*,
 722 F. Supp. 2d 875 (W.D. Mich. 2010), aff'd, 712 F.3d 917 (6th Cir. 2013) .................... 3

*Endeavor Energy Res., L.P. v. Cuevas*,
 593 S.W.3d 307 (Tex. 2019) ................................................................................................. 7

*First United Pentecostal Church of Beaumont v. Parker*,
 514 S.W.3d 214 (Tex. 2017) ................................................................................................. 9

*Greater Houston Transp. Co. v. Phillips*,
 801 S.W.2d 523 (Tex. 1990) ................................................................................................. 6

*IHS Cedars Treatment Ctr. of DeSoto v. Mason*,
 143 S.W.3d 794 (Tex. 2004) ................................................................................................. 8

*In re Able Body Temp. Servs., Inc.*,
 626 B.R. 643 (Bankr. M.D. Fla. 2020) ................................................................................. 3

*In re Chris Pettit & Associates, P.C.*,
 670 B.R. 602 (Bankr. W.D. Tex. 2025) ................................................................................ 5

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
 888 F.3d 753 (5th Cir. 2018) ................................................................................................. 9

*In re NE 40 Partners, Ltd.*,
 411 B.R. 352 (Bankr. S.D. Tex. 2009) ................................................................................. 2

*Kinnie Ma Individual Ret. Acct. v. Ascendant Cap.*,
 No. 1:19-CV-1050-LY, 2021 WL 11963131 (W.D. Tex. Aug. 25, 2021) ........................... 2

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*,
 800 F. App'x 239 (5th Cir. 2020) ................................................................................. 3, 4, 6

*NationsBank, N.A. v. Dilling*,
 922 S.W.2d 950 (Tex. 1996) ......................................................................................... 3, 7, 8

*Quikcash, LLC v. Blackhawk Network Holdings, Inc.*,
 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020) ..................................................................... 5

*Smith v. Ayres*,
    845 F.2d 1360 (5th Cir. 1988) ................................................................................. 10

*Smith v. Buffalo Wild Wings*,
    2021 WL 4265849 (N.D. Tex. Sept. 20, 2021) (Fitzwater, J.) ........................................... 9

*Torrington Co. v. Stutzman*,
    46 S.W.3d 829 (Tex. 2000) ................................................................................................ 6

*Triplex Commc'ns, Inc. v. Riley*,
    900 S.W.2d 716 (Tex. 1995) .............................................................................................. 9

*United States v. Dadi*,
    235 F.3d 945 (5th Cir. 2000) ............................................................................................ 10

*United States v. Frydenlund*,
    990 F.2d 822 (5th Cir. 1993) ......................................................................................... 3, 4

*Werner Enters., Inc. v. Blake*,
    719 S.W.3d 525 (Tex. 2025) .............................................................................................. 7

*Whelan v. Winchester Prod. Co.*,
    319 F.3d 225 (5th Cir. 2003) ............................................................................................ 10

**Statutes**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 11

Fed. R. Civ. P. 8(a)(2) .............................................................................................................. 1

**Other Authorities**

RESTATEMENT (Second) of Torts § 323 (1965) ............................................................................ 6

I. **INTRODUCTION**

1. The Federal Rules of Civil Procedure require a short plain statement of the facts entitling a party to relief. FED. R. CIV. P. 8(a)(2). Plaintiffs have filed a 129-page Amended Complaint and a 144-page response brief that are neither short nor plain, nor do they state facts entitling Plaintiffs to any relief from HTLF or Ragland.

2. In these hundreds of pages, Plaintiffs fail to include the most fundamental facts that would support their claims:

   a. What relationship do Plaintiffs have with HTLF or Ragland that would support imposition of a negligence-based duty?

   b. How could Plaintiffs be defrauded by an alleged check kite to which they were not parties and about which they received no representations?

   c. How could HTLF and Ragland have known what representations McClain made to Plaintiffs or the falsity of those representations?

   d. What part of McClain's transactions did HTLF or Ragland participate in?

3. Instead of answering these factual questions and addressing HTLF and Ragland's legal arguments, the Response regurgitates the Complaint. As a result, the Complaint should be dismissed as to HTLF and Ragland with prejudice and without opportunity to replead.

II. **ARGUMENT**

   A. **The Court should dismiss Plaintiffs' fraud and knowing participation claims.**

4. Plaintiffs originally pled their claims for fraud and for Aiding and Abetting as Counts Two and Ten, respectively. Because Plaintiffs cannot adequately plead a direct fraud claim, they seek to combine the claim with knowing participation. Regardless, Plaintiffs have not adequately alleged that HTLF or Ragland had knowledge of or participated in McClain's fraud.

   i. **Plaintiffs seemingly abandon their direct fraud claims against HTLF.**

5. In their Brief, HTLF and Ragland point out that Plaintiffs had not identified any misrepresentations by HTLF or Ragland. [Doc. 260 ¶¶ 20-22]. In their Response, Plaintiffs make

Document    Page 8 of 18

no attempt to defend this allegation. Rather, Plaintiffs seek to establish "third-party fraud" based on knowing participation in the fraudulent transaction. [Doc. 319 ¶41]. As a result, the Court should dismiss Plaintiffs' claims for direct fraud against HTLF and Ragland.

### ii. Plaintiffs abandon their third-party fraud claims concerning McClain's fraud.

6. In their Brief, HTLF and Ragland note that Plaintiffs had not alleged that HTLF and Ragland had actual knowledge of or participated in McClain's cattle transactions with Plaintiffs. [Doc. 260 ¶¶39-49]. Plaintiffs make no effort in the Response to argue for such knowledge or participation. Rather, Plaintiffs allege that HTLF and Ragland participated in a check kiting fraud that made McClain's operation appear viable and enabled McClain to conduct his cattle fraud on Plaintiffs. [Doc. 319 ¶¶ 58-60, 69].

7. Unlike with respect to Rabo and Mechanics Bank, Plaintiffs do not attempt to show that HTLF and Ragland knowingly participated in McClain's underlying cattle fraud. All Plaintiffs arguments and allegations regarding knowledge and participation of HTLF and Ragland relate to the alleged check kite. [Doc. 319 ¶¶ 58-60, 63, 64].

8. But knowing participation in fraud requires knowledge of and participation in the fraudulent transaction at issue—not knowledge and participation in a different scheme that enabled the fraud at issue. *See, e.g.*, *Corpus Christi Area Tchrs. Credit Union v. Hernandez*, 814 S.W.2d 195, 198-200 (Tex. App.—San Antonio 1991, no writ) (Credit union was a party to real estate transaction that fraudulently granted a security interest on the victims land, on which the credit union foreclosed); *Kinnie Ma Individual Ret. Acct. v. Ascendant Cap.*, No. 1:19-CV-1050-LY, 2021 WL 11963131, at *2 (W.D. Tex. Aug. 25, 2021) (Third-party was alleged to own and receive part of the profits from Ponzi scheme); *In re NE 40 Partners, Ltd.*, 411 B.R. 352, 362 (Bankr. S.D. Tex. 2009) (Third-party was insider who received half of the proceeds of the fraud). Plaintiffs' fraud claims should be dismissed to the extent they are based on knowing participation in the cattle fraud.

### iii. The alleged check kite was not a fraud on Plaintiffs.

9. While Plaintiffs insist the 2B Farms transactions constituted a fraudulent check kite, they have failed to allege facts showing that they were the victims of the check kite. Check kites are generally a fraud committed against banks.[2] Other parties to the transaction might also be victimized, such as a counterparty who did not know that his checks were being used in a check kite. *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239, 241 (5th Cir. 2020). But Plaintiffs were not parties to these transactions—they are merely creditors of McClain. As a result, they were not the victims of the alleged check kite. *See In re Able Body Temp. Servs., Inc.*, 626 B.R. 643, 681 (Bankr. M.D. Fla. 2020) ("The victim in a check kiting scheme is the check kiter's bank that honored checks for which the check kiter did not make covering deposits, not the check kiter and not the check kiter's creditors."); *see also El Camino Res., LTD. v. Huntington Nat. Bank*, 722 F. Supp. 2d 875, 919 (W.D. Mich. 2010), aff'd, 712 F.3d 917 (6th Cir. 2013).

10. Plaintiffs claim that the check kite helped make McClain's business appear viable. [*See, e.g.*, Doc. 213 ¶ 279; Doc. 319 ¶¶ 109, 434]. But the same was true of all of the transactions that McClain conducted—including Plaintiffs own transactions. Doing business with McClain or 2B Farms is not the equivalent of endorsing McClain's operation to any third party that might choose to invest with him. *See NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 954 (Tex. 1996) (bank could not have anticipated third party's investments based on fraudulent cashier's check).

11. Rather, to state a claim that the alleged check kite constituted a fraud, Plaintiffs must identify a misrepresentation or a partial disclosure that created a duty to speak. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Plaintiffs fail to identify any specific fraudulent

---

[2] A check kite takes advantage of the ordinary banking practice of granting provisional credit on checks to trick two banks into honoring checks deposited at the other bank with uncleared funds. *United States v. Frydenlund*, 990 F.2d 822, 824 (5th Cir. 1993).

representations made to them as part of the alleged check kite. The transfers of checks and funds between 2B Farms, HTLF, McClain, and Mechanics Bank do not include any communications to Plaintiffs. Nor do Plaintiffs even allege that they were aware of the 2B Farms transactions or that anyone made any representations about them. Because the 2B Farms transactions did not include any misrepresentations to Plaintiffs, Plaintiffs have failed to state a claim for fraud.

> **iv. Alternatively, Plaintiffs have not plausibly alleged that HTLF or Ragland knew that they were participating in a check kite.**

12. Plaintiffs assert the 2B Farms transactions were a "classic check kite" because they involved rapid transactions and provisional settlement credit. But the key ingredient for any check kite is that a bank honors checks based on provisional credit from checks that are themselves honored based on a provisional credit from another check. *Frydenlund*, 990 F.2d at 824. Here, while HTLF was granting an immediate settlement credit on McClain checks, Mechanics Bank required already-cleared funds, such as a wire from 2B Farms, to avoid returning items as overdrafts. [*See* Doc. 213 ¶ 92]. Thus, the 2B Farms transactions were not a check kite. *Compare Midwestern Cattle Mktg.*, 800 Fed.Appx. at 243 ("Tony Lyon would have this Legend check issued with the full understanding that the Lyons' account had insufficient funds to cover the check.").

13. Further, even assuming the 2B Farms transactions were a check kite, HTLF could not have known that it was participating in a check kite without knowing that the McClain checks were being honored based on a provisional credit. *See Midwestern Cattle*, 800 Fed. Appx. at 243; *Frydenlund*, 990 F.2d at 824-25 (intention of artificially inflating an account balance to be accessible to the account holder was sufficient to establish intent to create a check kite). HTLF could not know this fact without access to McClain account information. Moreover, HTLF could not have known whether or not the checks had sufficient funds when written and whether they were being honored based on a provisional credit. Indeed, Plaintiffs' allegation is that Ragland

obtained the information necessary to fill out the pre-signed checks only from 2B Farms, not Goad or McClain directly. [*See* Doc. 214 ¶ 165]. Without access to the Debtors' internal information, HTLF could have had no actual knowledge of the scheme. Plaintiffs have made no allegations of such access or knowledge. The alleged "red flags" related to the volume of cattle transactions are not enough. "Knowing means *knowing*." *In re Chris Pettit & Associates, P.C.*, 670 B.R. 602, 627-28 (Bankr. W.D. Tex. 2025). As a result, Counts 10 and 11 should be dismissed.

14. Plaintiffs also make contradictory allegations regarding the extent of Ragland's knowledge concerning McClain's and 2B Farms' alleged scheme. First, Plaintiffs allege—with conjecture, at best—that HTLF and Ragland should have known the funds transferred in the check kite did not match with the actual amount of cattle held by 2B Farms based on his longtime relationship with the Robinsons. [*See* Doc. 213 ¶ 166-67]. But then they allege Ragland had "no prior experience in financing cattle operations," and they cite to Johnny Earp's deposition testimony that Ragland had "no fundamental understanding of how to analyze the financial condition of a cattle feeding operation"—indicating he lacked a fraudulent intent based on any knowledge of 2B Farms' operations. These allegations cannot coexist as alternative theories of liability—they are mutually exclusive concepts that undercut Plaintiffs' fraud theory and mandates dismissal. *See Quikcash, LLC v. Blackhawk Network Holdings, Inc.*, 2020 WL 6781566, at *3 (E.D. Tex. Nov. 17, 2020) ("While the 'fair notice' standard is lenient, litigants may nonetheless plead themselves out of court by alleging facts that establish defendants' entitlement to prevail.").

**B. The Court should dismiss Plaintiffs' negligence claims.**

    **i. Plaintiffs' negligence theories fail because HTLF and Ragland owed them no duty as a matter of law. (Counts 3, 5, and 6)**

15. Plaintiffs allege that HTLF and Ragland negligently allowed McClain to operate a check-kite, giving him the liquidity needed to continued defrauding Plaintiffs. [*See, e.g.*, Doc. 319

¶ 108]. Yet even in a case where the victim's checks were deposited into the fraudster's account at the bank as part of the kite, the Fifth Circuit has already held that a bank owed no duty:

> MCM asserts Legend owed it a duty because "if a bank knows or has reason to know that its customer is perpetrating a fraud, the bank has a duty not to continue to enable the fraud".
>
> MCM's position is foreclosed by Texas law, which maintains that, in the absence of a fiduciary or confidential relationship, a bank owes no duty to a person with whom the bank has not dealt and otherwise has no relationship.

*Midwestern Cattle,* 800 F. App'x at 247-48. Likewise, Plaintiffs' alleged new duty based on HTLF and Ragland's alleged knowledge of and enabling the check kite is "foreclosed by Texas law."[3]

16. Plaintiffs do not allege any special or fiduciary relationship that would create a duty under the exception noted in *Midwestern Cattle.* McClain was not a depositor at HTLF at all, let alone in a fiduciary capacity. Plaintiffs do not allege any special relationship between HTLF or Ragland and McClain that would give HTLF or Ragland control over McClain and create a duty to control his actions. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Nor do Plaintiffs allege any relationship whatsoever between themselves and HTLF or Ragland. As a result, HTLF and Ragland did not owe Plaintiffs a duty.

17. Nor did HTLF or Ragland undertake to provide services "necessary for the protection of [Plaintiffs'] person or things." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000) (*quoting* RESTATEMENT (Second) of Torts § 323 (1965)). The alleged undertaking, the processing of 2B Farms' transactions, was not necessary for Plaintiffs' protection. Further, Plaintiffs' allegations do not satisfy the physical loss requirement of a negligent undertaking claim. *Daughtry v. Silver Fern Chem., Inc.*, 138 F.4th 210, 219 (5th Cir. 2025).

---

[3] Plaintiffs improperly cite to *Midwest Feeders* for the proposition that "Texas courts have recognized that a bank's duty may extend to non-customers where the bank has actual knowledge of fraud and continues to facilitate it." [Doc. 319 ¶82 citing *Midwest Feeders*, 886 F.3d at 518]. This case applying an Erie guess to Mississippi law based on New York state precedent.

18.     Because Ragland did not commit any underlying torts against Plaintiffs (as addressed throughout), there is no basis for a direct negligence claim against HTLF for its hiring, retention, or management of Ragland. *Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019). Further, even assuming Ragland engaged in a check kite and even assuming that HTLF should have anticipated Ragland's involvement in a check kite,[4] HTLF could not have anticipated that Plaintiffs would rely on the transactions to make investments in McClain or anticipated that McClain would defraud Plaintiffs. *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 954 (Tex. 1996) (bank could not have anticipated third party's investment decisions).

19.     Plaintiffs have failed to allege any legally cognizable claims for negligence against HTLF or Ragland, whose actions were not a breach of any duty owed to Plaintiffs. Nor did they have a duty to prevent McClain from harming Plaintiffs. Counts 3, 5, and 6 should be dismissed.

### ii.   Plaintiffs' theory of proximate cause is foreclosed by controlling authority.

20.     "The components of proximate cause are cause in fact and foreseeability." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). The Complaint's factual allegations are insufficient to establish either that HTLF and Ragland's actions were the cause in fact or foreseeably resulted in McClain's fraud and Plaintiffs' resulting damages.

21.     Contrary to Plaintiffs' assertion, "but for" causation alone does not satisfy the "cause in fact" requirement.[5] "Cause in fact has two components: (1) 'but-for' causation, and (2) 'substantial-factor' causation." *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 532 (Tex. 2025). To be a substantial factor, the injury must be the "natural and probable result" of the prior event. *Boys Clubs of Greater Dallas*, 907 S.W.2d at 477. The first event must be the "active and efficient cause

---

[4] Moreover, the allegations of Ragland's involvement in the Reagor-Dykes check kite are conclusory, speculative, and implausible. Plaintiffs' allegations are based entirely on the Liquidating Trust's Third Amended Complaint, which does not even mention Ragland. [Doc. 213-1].

[5] [Doc. 319 ¶93].

of plaintiffs' injuries" and not merely create a condition where a second event occurs and causes the injuries. *IHS Cedars Treatment Ctr. of DeSoto v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004).

22. Even assuming the alleged check kite was a "but for" cause of McClain's fraud,[6] Plaintiffs' allegations cannot satisfy the substantial factor test. The natural and probable result of a check kite is an injury to the bank and other parties to the kite. *See* ¶ 9, *supra*. While it is possible for a check kiter to commit other fraudulent acts against third parties, one does not necessarily follow from the other. Indeed, Plaintiffs never once state the check kite "caused" the cattle fraud. Rather, they allege that Ragland and HTLF "enabled" McClain's check fraud [*See* Doc. 213 ¶ 162], which in turn enabled the cattle fraud by creating a positive cash flow condition that allowed McClain to commit the cattle fraud. But the check kite did not proximately cause McClain's fraud.

23. Further, Plaintiffs' injury was not foreseeable as a matter of law. "Foreseeability, the other aspect of proximate cause, requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Boys Clubs* , 907 S.W.2d at 478. Plaintiffs allege the check kite enabled McClain's fraud because they relied on his operation's apparent viability. [Doc. 319 ¶¶ 58-60, 69]. But such reliance is not foreseeable as a matter of law:

> The fact that it may have been foreseeable that a negligently employed teller would improperly issue checks does not make it foreseeable that a third party who never came into direct contact with the teller would rely on the issuance of cashier's checks to make investment decisions.

*NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 954 (Tex. 1996). Like in *Dilling*, Plaintiffs are third parties who were not directly part of the allegedly fraudulent transactions and whose separate, subsequent reliance could not be foreseen.

---

[6] It is pure speculation to assume that McClain would not have been able to defraud Plaintiffs without the alleged check kite. But for the 2B Farms transactions, McClain would have found additional victims to make up his cash flow deficiencies.

24.     As a matter of law, Plaintiffs fail to allege sufficient facts to establish the check kite proximately caused their damages. Because Plaintiffs' claims are solely based on alleged negligent and intentional actions regarding the supposed check kite, their claims must be dismissed.

### C. The Fifth Circuit has already rejected aiding and abetting as a cause of action.

25.     The Court need not make an Erie guess on an aiding and abetting claim because the Fifth Circuit already refused to recognize it under Texas law. *In re DePuy Orthopaedics*, 888 F.3d 753, 781 (5th Cir. 2018); *Smith v. Buffalo Wild Wings*, 2021 WL 4265849, at *3 (N.D. Tex. Sept. 20, 2021) (Fitzwater, J.) (affirming the same). The aiding and abetting claims must be dismissed.[7]

### D. As to HTLF and Ragland, Plaintiffs' conspiracy claim is a conspiracy theory.

26.     Like their fraud claims, Plaintiffs' conspiracy claim is based on the alleged check kite. [Doc. 319 ¶ 233]. As addressed previously, the alleged check kite was not a fraud against Plaintiffs. *See* § II.A.iii, *supra*. Even if the alleged check kite proximately caused McClain's cattle fraud,[8] a conspiracy requires specific intent to cause the alleged harm. *Tri v. J.T.T.*, 162 S.W.3d 552, 557 (Tex. 2005). Thus, the alleged check kite cannot form the basis of a conspiracy claim.

27.     But Plaintiffs' conspiracy claim goes beyond their fraud claims by alleging not only that HTLF and Ragland participated in a check kite, but they did so as part of a conspiracy to assist McClain's fraud. [Doc. 319 ¶233]. To support that claim, Plaintiffs must plausibly allege HTLF and Ragland knew about McClain's fraud and agreed to conspire with the intent to accomplish the same. *Tri*, 162 S.W.3d at 557; *Triplex Commc'ns v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995).

28.     In their Brief, HTLF and Ragland argue Plaintiffs have made no allegations of knowledge about their transactions with McClain. [Doc. 260 ¶¶ 44-47]. Plaintiffs allege Rabo and Mechanics Bank explicitly communicated and coordinated their actions with respect to the

---

[7] Alternatively, if such a claim is recognized, it fails as a matter of law for the same reasons discussed herein.
[8] Which it did not. See § II.B.ii.

McClain accounts and his transactions with Plaintiffs. [Doc. 319 ¶¶ 235-241]. But the same is not true for HTLF and Ragland. Plaintiffs only allege HTLF and Ragland's "coordination" on the check kiting transactions. *Id*. at ¶¶ 242-43. But Goad enabled this coordination by "identifying the amounts McClain needed from 2B Farms and other customers to keep the kite afloat." *Id*. at ¶ 242. Plaintiffs have not argued HTLF or Ragland had knowledge beyond communicating with the Robinsons and processing the requested transactions.

29.    While facially alleging that HTLF and Rabo conspired to accomplish the cattle fraud, Plaintiffs have simply alleged no facts to support this allegation. Plaintiffs' conspiracy claim should therefore be dismissed as to HTLF and Ragland.

**E. Plaintiffs' RICO claims against HTLF and Ragland fail as a matter of law.**

30.    First, Plaintiffs have not asserted any RICO predicate acts have been committed. Indeed, Plaintiffs do not dispute that mail fraud and wire fraud each require that HTLF and Ragland participated in a fraud committed ***against the Plaintiffs***.[9] *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993); *see United States v. Dadi*, 235 F.3d 945, 950 (5th Cir. 2000); *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988). While Plaintiffs argue the 2B Farms transactions were fraudulent, the alleged fraud was not committed against Plaintiffs. *See* § II.A.iii, *supra*; Doc. 260 at 20, ¶¶ 55-56.

31.    Second, Plaintiffs fail to establish the alleged "Enterprise" exists separate and apart from the alleged pattern of racketeering activity. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). Plaintiffs insist the Enterprise "existed to operate an ongoing criminal business." *See* Doc. 316 ¶ 404. But the allegations of Enterprise's alleged criminal business—even if purportedly expansive—are still contained to a scheme to benefit McClain and to Plaintiffs' detriment. Without more, there is no Enterprise adequate for a plausible RICO claim.

---

[9]    Plaintiffs ostensibly concede they cannot allege bank fraud as a predicate act. *See* Brief, Doc. 260 at 21, ¶ 57.

### III.   CONCLUSION

Defendants HTLF and Ragland respectfully request that, pursuant to Fed. R. Civ. P. 12(b)(6), this Court dismiss Plaintiffs' and Intervenors' First Amended Federal Complaint and grant all other relief to which HTLF and Ragland might show themselves justly entitled.

Dated this 22nd day of December 2025.

<div style="margin-left: 40%;">

Respectfully submitted,

**LOVELL ISERN & FARABOUGH, LLP**
John H. Lovell, SBN 12609300
112 SW 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Phone: (806) 373-1515
Fax:    (806) 379-7176
Email: john@lovell-law.net

**MULLIN HOARD & BROWN, L.L.P.**
Matthew S. Merriott, SBN 24100846
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone: (806) 372-5050
Facsimile: (806) 372-5086
Email:  mmerriott@mhba.com

By:    /s/ *Matthew S. Merriott*
Matthew S. Merriott

*Attorneys for HTLF Bank, as Successor to First Bank & Trust*

-and-

**Crawford, Wishnew & Lang PLLC**

By:    /s/ *Dallas Flick*
**Matthew S. Muckleroy**
State Bar No. 24066796
mmuckleroy@cwl.law
**Dallas Flick**
State Bar No. 24104675
dflick@cwl.law

</div>

1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500
Facsimile: (214) 602-6551

**ATTORNEY FOR DEFENDANT SHAWN RAGLAND**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of December 2025, I electronically filed the foregoing document with the Northern District of Texas through its filing system through and that a true and correct copy was served on the parties listed through the electronic case filing system by email as registered with the electronic case filing system:

/s/ *Dallas Flick*
Dallas Flick