UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

    *and*

Michael R. Johnson (*Pro Hac Vice*)
Matthew M. Cannon (*Pro Hac Vice*)
Austin C. Nate (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: mcannon@rqn.com
Email: anate@rqn.com

*Attorneys for Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| In re:<br><br>MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.<br><br>     Debtors. | CASE NO. 23-20084-swe7<br>Chapter No. 7<br><br>(Jointly Administered Cases) |
| In re:<br><br>2B FARMS, a Texas General Partnership, et al.,<br><br>     Debtors. | CASE NO. 23-50096-swe12<br>Chapter No. 12<br><br>(Jointly Administered Cases) |

| | |
|---|---|
| HTLF BANK, as successor to FIRST BANK & TRUST, <br><br>     Plaintiff, Counter-Defendant, and Cross-Claim Defendant, <br><br> v. <br><br> 2B FARMS, a Texas General Partnership, TERRY M. ROBINSON, and REBECCA A. ROBINSON, <br><br>     Defendants, Counterclaim-Plaintiffs, Third-Party Plaintiffs and Third-Party Counterclaim Defendants, <br><br> v. <br><br><br> RABO AGRIFINANCE LLC and MECHANICS BANK, <br><br>     Third-Party Defendants and, as to Rabo AgriFinance LLC only, Third-Party Counterclaim Plaintiff and Cross-Claim Plaintiff. | ADVERSARY NO. 24-02007-swe <br><br> (Consolidated Adversary Proceeding) |
| AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA and THORLAKSON DIAMOND T FEEDERS, LP, <br><br>     Plaintiffs, <br><br> EDWARD DUFURRENA et al., <br><br>     Intervenor Plaintiffs, <br><br> v. <br><br> RABO AGRIFINANCE LLC et al., <br><br>     Defendants. | ADVERSARY NO. 24-02007-swe <br><br> (Consolidated Adversary Proceeding) |

| | |
|---|---|
| KENT RIES, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATES OF MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC. <br><br> Plaintiff, <br><br> v. <br><br> COMMUNITY FINANCIAL SERVICES BANK; HTLF BANK; MECHANICS BANK; and RABO AGRIFINANCE LLC, <br><br> Defendants. | ADVERSARY NO. 24-02007-swe <br><br> (Consolidated Adversary Proceeding) |

## RABO AGRIFINANCE LLC'S <u>REPLY</u> BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AND INTERVENORS' FIRST AMENDED FEDERAL COMPLAINT

Pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), made applicable to this consolidated Adversary Proceeding by Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure, Defendant Rabo AgriFinance LLC ("**Rabo**"), through counsel, hereby submits this reply brief in further support of its motion to dismiss the *Plaintiffs' and Intervenors' First Amended Federal Complaint* (Dkt. 213) (the "**FAC**") and in response to the opposition memorandum ("**Opp'n**"), filed by Plaintiffs AgTexas Farm Credit Services, AgTexas, PCA ("**AgTexas**"), Thorlakson Diamond T. Feeders, LP ("**Thorlakson**"), and Intervenors Dennis Buss, Buss Family Trust, Eddie Bryant, Robert E. Gray, Ronnie Gray, Gray Brothers, Steven Ryan, Janice Lawhon, AJ Jacques Living Trust, Gungoll Cattle, LLC, Leah Gungoll, Morrison Cafe, LLC, Gary Lesh, Jan Lesh, Lesh Family Trust, Jared Lesh, Jordan Lesh, LLC, Joel Brookshire, Gene Brookshire Family, LP, Douglas Finley, Scarlet and Black Cattle, LLC, Bryan Blackman, Steve T. Scott Farm, Inc., Scott Livestock Company, Inc., Arnold Braun Trust, Robert Braun, Jim Rininger, Robert Spring, Michael Evans, Miranda Evans, Charles Lockwood, Cole Lockwood,

Sherle Lockwood, Nikki Lockwood, Lynda Van Buskirk, Janet Van Buskirk, Colby Van Buskirk, Susan Van Buskirk, Jimmy Greer, Dustin Johnson, and Dora Blackman (collectively, "**Intervenors**" and, together with AgTexas and Thorlakson, "**Plaintiffs**").

# <u>TABLE OF CONTENTS</u>

INTRODUCTION.................................................................................................. 1

ARGUMENT ....................................................................................................... 2

**I.    PLAINTIFFS FAIL TO ALLEGE FACTS DEMONSTRATING ESSENTIAL ELEMENTS OF THEIR FRAUD CLAIMS (COUNTS 2 & 10).** ...................................................................................... 2

    **A.    Plaintiffs Fail to Plead with Particularity that Rabo Made Any Material Misrepresentation to Any Plaintiff.** ......................... 3

    **B.    Plaintiffs Fail to Plead Facts Showing that Rabo Can Be Held Vicariously Liable for McClain's Fraud.** .................................. 4

**II.   PLAINTIFFS' CIVIL CONSPIRACY CLAIM (COUNT 11) FAILS FOR LACK OF FACTS SHOWING THE SPECIFIC INTENT NECESSARY TO HAVE A MEETING OF THE MINDS.** ........................... 7

**III.  PLAINTIFFS FAIL TO ALLEGE CRITICAL ELEMENTS OF THEIR FIDUCIARY DUTY CLAIMS (COUNT 12).** ..................... 9

    **A.    Plaintiffs Fail to Allege Facts Showing that Rabo Owed Them Fiduciary Duties.** ................................................................. 9

    **B.    Plaintiffs Fail to Allege Facts Showing that Rabo Was Aware of Its Alleged Participation in McClain's Breach of Fiduciary Duty.** ................................................................................ 10

**IV.   PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM FAILS (COUNT 8).** ................................................................................. 11

**V.    PLAINTIFFS' NEGLIGENCE CLAIMS FAIL (COUNTS 3, 5 & 6).** .......... 12

    **A.    The Absence of a Legal Duty is Fatal to All Three Negligence Claims.** ................................................................................ 13

    **B.    Plaintiffs' Negligence Claims Fail for Additional, Independent Reasons.** .............................................................................. 15

**VI.   PLAINTIFFS' CONVERSION CLAIM (COUNT 1) REMAINS DEFICIENT AND UNCLEAR.** .......................................................... 17

**VII.  PLAINTIFFS' RICO CLAIM (COUNT 13) FAILS.** ...................................... 18

**VIII.    THE CONTRACT CLAIMS (COUNTS 15 & 16) SHOULD BE DISMISSED.**................................................................................................ 20

  **A.    Counts Fifteen and Sixteen Fail to Allege Plausible Claims for Breach of Contract.**.......................................................................... 20

  **B.    Plaintiffs' Tort Law Claims Based on the Subject Contracts Are Barred.**............................................................................................ 22

**IX.    THE COURT'S PRIOR ORDER WELCOMED FURTHER ARGUMENT ON WHETHER PLAINTIFFS' INJURIES WERE DERIVATIVE, AND PLAINTIFFS' INJURIES BASED ON LOST PROCEEDS MOST CERTAINLY ARE.**...................................................... 24

**CONCLUSION** .................................................................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*7X Cattle Co. v. Brandstadt*, No. 6:22-CV-396-JDK-KNM, 2025 WL 852624 (E.D. Tex. Feb. 28, 2025) ................................................................................................ 11

*Airport Blvd. Apts., Ltd. v. NE 40 Partners LP (In re NE 40 Partners, Ltd.)*, 411 B.R. 352 (Bankr. S.D. Tex. 2009) ..................................................................................... 6, 7

*Austin v. Brown & Fortunato, P.C. (In re Uplift RX, LLC)*, No. 17-32186, 2023 WL 5355353 (Bankr. S.D. Tex. Aug. 21, 2023) ................................................................ 5

*Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743 (5th Cir. 1995) ........................................ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 22

*Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444 (Tex. Ct. App. 2002) ...................... 18

*Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373 (Tex. Ct. App. 2005) ...................... 16

*Buccaneer Energy Ltd. v. Burton (In re Buccaneer Res., LLC)*, 912 F.3d 291 (5th Cir. 2019) ................................................................................................... 24

*Burroughs v. APS Int'l, Ltd.*, 93 S.W.3d 155 (Tex. Ct. App. 2002) ................................ 3

*Campbell v. Fort Worth & W. R.R.*, No. 4:09-CV-037-Y, 2010 WL 11570869 (N.D. Tex. Mar. 24, 2010) ............................................................................................ 17

*Centennial Bank v. Holmes*, 717 F. Supp. 3d 542 (N.D. Tex. 2024) ............................ 11

*Chang v. JP Morgan Chase Bank, N.A.*, 845 F.3d 1087 (2017) ................................ 14

Chapman Custom Homes, Inc. v. Dallas Plumbing Co., 445 S.W.3d 716 (Tex. 2014) .............. 23

*Christopher v. Depuy Orthopaedics, Inc. (In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.)*, 888 F.3d 753 (5th Cir. 2018) .................................... 4, 10

*CPM Consulting LLC v. Capsugel US, LLC*, No. 3:17-CV-3059-S, 2019 WL 3769651 (N.D. Tex. Aug. 9, 2019) ....................................................................... 11, 12

*Crisp v. Sw. Bancshares Leasing Co.*, 586 S.W.2d 610 (Tex. Ct. App. 1979) ...................... 5, 7

*Env'tl Barrier Co. v. Slurry Sys., Inc.*, 540 F.3d 598 ............................................. 25

*Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex. 2001) ...................... 3

*Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608 (Tex. 1996) ............................ 7, 8

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214 (Tex. 2017) .............. 6

*Foix v. Moeller*, 159 S.W. 1048 (Tex. Ct. App. 1913 ......................................................... 2, 4, 6, 7

*Funes v. Villatoro*, 352 S.W.3d 200 (Tex. Ct. App. 2011) ...................................................... 11, 12

*Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83 (Tex. Ct. App. 2012) ......................................... 13

*Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*,
   954 F.3d 804 (5th Cir. 2020) ................................................................................. 23

*Grede v. Bank of New York Mellon*, 598 F.3d 899 (7th Cir. 2010) ........................................ 25

*Grossman v. Belridge Grp. (In re Lothian Oil, Inc.)*, 531 F. App'x 428 (5th Cir. 2013)............. 24

*Houston Nat'l Bank v. Biber*, 613 S.W.2d 771 (Tex. Civ. App. 1981) ...................................... 18

*In re TXNB Internal Case, 483 F.3d 292 (5th Cir. 2007)* .......................................................... 18

*Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996) ....................................................................... 8

*King v. Shawver*, 30 S.W.2d 930 (Tex. Ct. App. 1930) ............................................................ 6

*Lewis v. Danos*, 83 F.4th 948 (5th Cir. 2023) ......................................................................... 19

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634 (5th Cir. 2007) ........................................ 10, 11

*Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507 (5th Cir. 2018)............................ 13, 14

*Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 800 F. App'x 239 (5th Cir. 2020) ............. 4

*Mr. W Fireworks, Inc. v. NRZ Inv. Grp., LLC*, 677 S.W.3d 11 (Tex. Ct. App. 2023) ........... 11, 12

*Murray v. Nabors Well Serv.*, 622 S.W.3d 43 (Tex. Ct. App. 2020) ........................................ 16

*Ogle v. Comcast Corp., Inc. (In re Houston Reg'l Sports Network, LP)*, 547 B.R. 717
   (Bankr. S.D. Tex. 2016) ......................................................................................... 5

*Osherow v. Dundon (In re Legendary Field Exhibitions, LLC)*, No. 19-50900-cag, 2023
   WL 7852657 (Bankr. W.D. Tex. Nov. 13, 2023) ....................................................... 5

*Retina & Vitreous of La., Inc. v. Mason*, No. 23-158-JWD-SDJ, 2024 WL 3307848 (M.D.
   La. Mar. 1, 2024) ................................................................................................. 21

*Reynolds v. Sanchez Oil & Gas Corp.*, No. 1-18-940-CV, 2023 WL 8262764 (Tex. Ct.
   App. Nov. 30, 2023) ........................................................................................... 4, 6

*S. Cent. Livestock Dealers, Inc. v. Sec. State Bank of Hedley*, 551 F.2d 1346 (5th Cir.
   1977) .................................................................................................................. 10

*Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347 (5th Cir. 1999)............... 26

*SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351 (6th Cir. 2014) .......................................... 13

*Shandong Yinguang Chem. Indus. Joint Stock Co v. Potter*, 607 F.3d 1029 (5th Cir. 2010) ......... 3

*Sols. v. State Bank of Brownsboro*, No. 6:19-CV-329-JDK, 2020 WL 12991132 (E.D.
   Tex. Apr. 16, 2020) ........................................................................................................ 18

*Spinosa v. Foremost Ins. Co.*, No. 24-30472, 2025 WL 304530 (5th Cir. Jan. 27, 2025) ........... 21

*Steere v. Stockyards Nat'l Bank*, 256 S.W. 586 (Tex. Comm'n App. 1923) ................................. 9

*Taylor v. Allen (In re THEAG N. Arlington LLC)*, No. 19-41108-ELM, 2020 WL
   7330055 (Bankr. N.D. Tex. Dec. 11, 2020) .................................................................. 5

*Terry v. Tex. Partners Bank (In re Chris Pettit & Assocs., P.C.)*, 670 B.R. 602 (W.D.
   Tex. 2025) ........................................................................................................................ 2

*Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636 (5th Cir. 1999) .............................................. 5, 6

*Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716 (Tex. 1995) .............................................. 7, 8

*Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763 (5th Cir. 2016) ......................................... 21

*Wackman v. Rubsamen*, 602 F.3d 391 (5th Cir. 2010) ............................................................. 7

*Wilton Armetale, Inc.*, 968 F.3d 273 (3d Cir. 2020) ............................................................... 25

**Rules**

Fed. R. Bankr. P. 7008 ............................................................................................................ iii

Fed. R. Bankr. P. 7009 ............................................................................................................ iii

Fed. R. Bankr. P. 7012 ............................................................................................................ iii

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... iii

Fed. R. Civ. P. 8 ...................................................................................................................... iii

Fed. R. Civ. P. 9(b) ................................................................................................................. iii

## **INTRODUCTION**

Plaintiffs' FAC fails to allege facts supporting cognizable claims against Rabo, and their 144-page opposition memorandum does not (and could not) change that reality. Indeed, no amount of paper can mask the numerous deficiencies undermining Plaintiffs' claims. Two fatal flaws permeating the complaint include the absence of factual allegations demonstrating Rabo's knowledge of Debtors' fraudulent scheme, and the absence of factual allegations demonstrating Rabo's statements to, interactions with, or even knowledge of each of the Plaintiffs. A close analysis of each claim reveals additional factual and legal shortcomings.

Plaintiffs' failure to assert cognizable claims is unsurprising, given Rabo's role and actions as the commercial lender for Debtors' multi-state cattle operations. Rabo provided funds pursuant to the written loan agreements and Debtors' sworn representations concerning their assets securing the loan, such as cattle. When inspections at one of Debtors' cattle operations in early 2023 raised concerns, and with Debtors owing Rabo over $50 million on their loan, Rabo took steps to have a receiver appointed. Shortly thereafter, Mr. McClain died by suicide. In the following weeks, dozens of dealer trust claims were filed with the USDA. Over the next few months, Rabo and others began to learn about the Debtors' Ponzi scheme—a scheme the USDA referenced and relied on in denying approximately $120 million in dealer trust claims submitted by Plaintiffs and others.

Despite Rabo's appointment of the receiver and subsequent loss of $50 million, and despite Plaintiffs' numerous allegations and claims concerning Rabo's failure to sooner discover Debtors' scheme, Plaintiffs continue to assert claims based on the theory that Rabo not only knowingly and intentionally operated a fraudulent scheme that undermined its loan security and provided no benefit, but also, at the height of its exposure, took the steps that ultimately caused the scheme's collapse. Again, the absence of facts supporting the theory is predictable. Plaintiffs' failure to

1

allege facts supporting the knowledge or relationships necessary to support the existence of a duty owed by Rabo to Plaintiffs is likewise predictable given the parties' respective roles and relationships. The FAC simply fails to contain cognizable claims against Rabo, and the claims should be dismissed with prejudice.

## ARGUMENT

**I.    PLAINTIFFS FAIL TO ALLEGE FACTS DEMONSTRATING ESSENTIAL ELEMENTS OF THEIR FRAUD CLAIMS (COUNTS 2 & 10).**

As explained in the opening motion, Plaintiffs' claims for fraud (count 2) and "aiding and abetting and/or knowing participation of fraud" (count 10), fail to state a claim to relief. The fraud claim fails for lack of particularity, and to the extent Plaintiffs seek to hold Rabo liable for its alleged role in McClain's fraud, the claim fails because Plaintiffs allege only "that Rabo acted with 'willful blindness'" and not "with 'mutual understanding or in furtherance of a common plan.'" (Br. Supporting MTD ("**MTD**") (ECF No. 265) 27 (quoting *Terry v. Tex. Partners Bank (In re Chris Pettit & Assocs., P.C.)*, 670 B.R. 602, 628–29 (W.D. Tex. 2025), and *Foix v. Moeller*, 159 S.W. 1048, 1052 (Tex. Ct. App. 1913)).) In their opposition, Plaintiffs point to numerous allegations of fraudulent conduct. But none of those allegations describes a material misrepresentation that Rabo made to any Plaintiff, as required for a fraud claim. On count ten, Plaintiffs ask the Court to recognize a novel cause of action under Texas law for aiding and abetting fraud, despite overwhelming authority to the contrary. While Texas law does allow Plaintiffs to pursue a vicarious liability theory of fraud against Rabo, Plaintiffs fail to direct the Court to allegations establishing that theory, i.e., that Rabo acted with "mutual understanding or in furtherance of a common plan" with McClain. *Foix*, 159 S.W. at 1052. The claims must be dismissed.

### A.     Plaintiffs Fail to Plead with Particularity that Rabo Made Any Material Misrepresentation to Any Plaintiff.

Among other things, a fraud claim under Texas law requires the plaintiff to show that "the defendant made a material representation that was false" and that "the plaintiff actually and justifiably relied upon the representation and suffered harm as a result."[1] *Burroughs v. APS Int'l, Ltd.*, 93 S.W.3d 155, 161 (Tex. Ct. App. 2002). Consequently, a fraud claim requires that the defendant either have "directly made" the misrepresentation to the plaintiff, or that the defendant "intended or expected [the misrepresentation] to reach" them. *Id.* at 162; *see Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 580 (Tex. 2001) (explaining that if a defendant did not directly make the misrepresentations to the plaintiff, the plaintiff can prevail only if the defendant had reason to "conclude that there is an especial likelihood" that it would reach the plaintiff and "influence their conduct" (cleaned up)). In other words, simply because a defendant makes misrepresentations to *someone* does not mean that *anyone* can sue for fraud.

Nowhere in Plaintiffs' thirteen pages on their fraud claim do they cite any allegation of Rabo having made a material misrepresentation to them—let alone each of them. (*See* Opp'n 29–42.) Rather, Plaintiffs focus on the complaint's allegations of "systematic fraudulent banking practices" by Rabo and its co-defendants. (*Id.* at 31; *see id.* at 32–39.) Even assuming that those allegations are true, Plaintiffs fail to show that Rabo ever made any misrepresentation to any Plaintiff. This is fatal to their claim. *See Shandong Yinguang Chem. Indus. Joint Stock Co v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010).

---

[1] The plaintiff must also show that the defendant made the representation with the requisite mens rea and "intend[ing] to induce the plaintiff to act upon the representation." *Burroughs v. APS Int'l, Ltd.* 93 S.W.3d 155, 161 (Tex. Ct. App. 2002).

The only misrepresentations that Plaintiffs allege Rabo made to them are those discussed in the opening motion—(1) Rabo's "statements to Plaintiff S&B's lender on which S&B relied, and (2) statements to Plaintiffs AgTexas and Thorlakson made to induce the Intercreditor Agreement." (MTD 23.) Rabo showed that neither of those statements was alleged with the particularity required, and Plaintiffs make no effort in their opposition memorandum to argue otherwise. The Court should dismiss Plaintiffs' fraud claim.

### B. Plaintiffs Fail to Plead Facts Showing that Rabo Can Be Held Vicariously Liable for McClain's Fraud.

Turning to count ten, Plaintiffs argue that they adequately allege a claim for aiding and abetting fraud. While "Texas law does not currently recognize [that] cause of action," *Reynolds v. Sanchez Oil & Gas Corp.*, No. 1-18-940-CV, 2023 WL 8262764, at *9 (Tex. Ct. App. Nov. 30, 2023), Plaintiffs invite the Court to "make an *Erie* guess" as to its availability in Texas. (Opp'n 76.) Alternatively, Plaintiffs dispute Rabo's assertion that they fail to allege facts showing that Rabo acted with "mutual understanding or in furtherance of [a] common plan" with McClain, necessary to hold Rabo vicariously liable. *See Foix*, 159 S.W. at 1052. The Court should decline Plaintiffs' invitation and dismiss Plaintiffs' vicarious liability theory of fraud against Rabo.

### 1. The Court should not recognize an aiding and abetting claim.

The Fifth Circuit has twice held that, under its view of state law, no "aiding-and-abetting claim . . . exists in Texas." *Christopher v. Depuy Orthopaedics, Inc. (In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.)*, 888 F.3d 753, 782 (5th Cir. 2018); *see id.* at 781–82; *see also Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 800 F. App'x 239, 250 (5th Cir. 2020) (same). The Texas Supreme Court has not controverted those decisions since, and lower courts are "bound by [Fifth Circuit] interpretation[s] of state law absent a subsequent state court decision or statutory amendment that renders . . . [the] decision clearly wrong." *Batts v. Tow-Motor*

*Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995). Bankruptcy courts in this circuit have consistently

adhered to that precedent and have declined to recognize aiding and abetting claims under Texas

law.[2] *See Taylor v. Allen (In re THEAG N. Arlington LLC)*, No. 19-41108-ELM, 2020 WL

7330055, at *26 (Bankr. N.D. Tex. Dec. 11, 2020) ("[B]ased upon controlling Fifth Circuit

authority, the Court will dismiss the new aiding and abetting claims for failure to state a cognizable

claim."); *Austin v. Brown & Fortunato, P.C. (In re Uplift RX, LLC)*, No. 17-32186, 2023 WL

5355353, at *13 (Bankr. S.D. Tex. Aug. 21, 2023) (same); *Osherow v. Dundon (In re Legendary*

*Field Exhibitions, LLC)*, No. 19-50900-cag, 2023 WL 7852657, at *17 n.5 (Bankr. W.D. Tex.

Nov. 13, 2023) (same). This Court must follow suit.

Despite this authority, Plaintiffs would have the Court believe that "Texas courts have

upheld judgments for aiding and abetting fraud." (Opp'n 76.) But the Fifth Circuit has an answer

for Plaintiffs' cited authority too. Although Plaintiffs rely on *Crisp*, the Fifth Circuit has construed

that case as endorsing "a theory of vicarious liability" for fraud—not a standalone cause of action

for aiding and abetting. *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 647 (5th Cir. 1999) (citing

*Crisp v. Sw. Bancshares Leasing Co.*, 586 S.W.2d 610, 615 (Tex. Ct. App. 1979)). And the *King*

case Plaintiffs cite does not recognize an aiding and abetting claim either;[3] if it did, then the Texas

---

[2] The lone bankruptcy court decision Plaintiffs rely on was decided before the Fifth Circuit's *Erie*
analysis; so its reasoning is obsolete. (*See* Opp'n 76–77 (citing *See Ogle v. Comcast Corp., Inc.*
*(In re Houston Reg'l Sports Network, LP)*, 547 B.R. 717, 758–60 (Bankr. S.D. Tex. 2016)).)

[3] In *King v. Shawver*, the appellant, King, challenged a jury verdict entered against him for his role
in fraud perpetrated on the plaintiff—i.e., introducing her to the fraudster and "vouch[ing] for the
truth of all [his] representations." 30 S.W.2d 930, 931 (Tex. Ct. App. 1930). King appealed an
issue with how the jury instructions were worded, arguing that the trial court should have
"define[d] the words 'aid' and 'abet'" appearing in one instruction. *Id.* at 932. The appellate court
rejected that argument on the ground that "those terms are words of common use" and that,
regardless, the preceding jury instruction clarified the issue. *Id.* The appellate court also rejected
King's argument that the jury should have been asked to decide whether King financially benefited
from the fraud, whether he knowingly vouched for the fraudster's misrepresentations, and whether
King himself made any misrepresentations about the fraudulent deal. *Id.* at 933. Accordingly, *King*

Supreme Court would not have later said that whether such claims exist in Texas remains an open

question. *Compare King v. Shawver*, 30 S.W.2d 930, 931–32 (Tex. Ct. App. 1930), *with First*

*United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017).

In sum, this Court must abide by the Fifth Circuit's *Erie* analysis on whether an aiding and

abetting claim exists in Texas. Because Plaintiffs' cited authority is inapposite, the Court should

conclude, simply, that "Texas law does not currently recognize [that] cause of action," *Reynolds*,

2023 WL 8262764, at *9.

### 2.    To the extent the Court construes Plaintiffs' claim as one for vicarious liability, Plaintiffs still fail to state a claim to relief.

As explained above (and in the opening motion), Texas does recognize a theory of

"vicarious liability" for another's fraud. *Thomas*, 174 F.3d at 647; *see also Airport Blvd. Apts.,*

*Ltd. v. NE 40 Partners LP (In re NE 40 Partners, Ltd.)*, 411 B.R. 352, 361 (Bankr. S.D. Tex. 2009)

(calling it "[t]hird-party common law fraud"). To the extent the Court were to construe count ten

of Plaintiffs' complaint as alleging such a claim, Rabo argued that "Plaintiffs fail[ed] to allege

facts showing that Rabo acted with 'mutual understanding or in furtherance of [a] common plan'

[with McClain] to defraud them"—as required for a theory of vicarious liability for fraud. (MTD

25 (quoting *Foix*, 159 S.W. at 1052).) Plaintiffs fail to meaningfully respond to that argument.

While Plaintiffs point to allegations of "extensive coordination between Rabo" and its co-

defendants (Opp'n 31), they fail to direct the Court to any facts alleged in the complaint

establishing a "common plan" with *McClain* to defraud them (*see* FAC ¶ 258 (alleging that the

basis for count ten is that "Rabo . . . actively facilitated, enabled, and supported the fraud

orchestrated by McClain")). *Foix*, 159 S.W. at 1052. Nor do they point to alleged facts showing

---

did not acknowledge a claim for aiding and abetting fraud, as Plaintiffs suggest. Rather, like the
Fifth Circuit's interpretation of *Crisp*, *King* appears explainable as a "vicarious liability" case. *See*
*Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 647 (5th Cir. 1999).

Rabo's "knowing participation in [such a] scheme." *In re NE 40 Partners, Ltd.*, 411 B.R. at 361. That is, while Plaintiffs certainly allege extensive actions by Rabo, what is missing is any allegation that Rabo knowingly took those actions in coordination with McClain's efforts to defraud Plaintiffs. Even if Rabo had reason to know of McClains' fraud, even if Rabo's conduct facilitated McClain's fraud, and even if Rabo benefitted from the fraud—the claim fails unless Rabo acted with "mutual understanding or in furtherance of [a] common plan" with McClain. *Foix*, 159 S.W. at 1052; *see, e.g. Crisp*, 586 S.W.2d at 612, 615 (holding third party liable for another's fraud where the two parties entered a "clandestine deal" to defraud the plaintiff).

Plaintiffs do not allege such facts. Accordingly, in the event the Court construes count ten as a claim for vicarious liability for McClain's fraud, Plaintiffs fail to state a claim to relief.

## II.   PLAINTIFFS' CIVIL CONSPIRACY CLAIM (COUNT 11) FAILS FOR LACK OF FACTS SHOWING THE SPECIFIC INTENT NECESSARY TO HAVE A MEETING OF THE MINDS.

Rabo argued in the opening motion that Plaintiffs failed to state a claim for civil conspiracy for two primary reasons: (1) the lack of an underlying tort, and (2) the absence of allegations showing that Rabo had knowledge of the object to be accomplished, which among other things, means that Plaintiffs failed to allege facts establishing a meeting of the minds. (*See* MTD 29–30.) Plaintiffs address only the second reason. (*See* Opp'n 80–83.)

"Proof of intent to participate in the conspiracy is necessary to [establish] the meeting of the minds element" of a civil conspiracy claim. *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010). In particular, Texas law "requires specific intent," i.e., "the parties must be aware of the harm or the wrongful conduct at the beginning of the *combination* or *agreement*." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996) (emphasis added); *see also Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995) ("For a civil conspiracy to arise, the

parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement."). For comparison, mere "joint intent to engage in the *conduct* that resulted in the injury is not sufficient." *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (emphasis added). Thus, the relevant question is not whether the defendant had "joint intent to engage in the conduct" at issue, *id.*, but whether they agreed "at the inception" to a "combination or agreement" to harm the plaintiff, *Triplex Commc'ns*, 900 S.W.2d at 719.

Plaintiffs point exclusively to allegations suggesting that Rabo and its co-defendants had joint intent to engage in wrongful conduct. They direct the Court to allegations in the complaint "demonstrat[ing] a pattern of collaborative conduct" to maintain McClain's fraudulent operation, and to check-kiting that "could not have functioned without coordination between the banks." (Opp'n 80–84.) But while Plaintiffs' allegations may demonstrate collaboration among the bank defendants, they fail to show that Rabo agreed to some "combination or agreement" at the outset to harm the Plaintiffs. (*Id.*) Under Texas law, a civil conspiracy claim without such facts fails. Accordingly, Plaintiffs fail to show that they have alleged a plausible claim against Rabo.

Plaintiffs appear to argue that the analysis comes out differently where, as they put it, the plaintiff "allege[s] an ongoing conspiracy that evolved" over time—not just "a single conspiracy that began at one defined moment." (*Id.* at 88.) In their view, a defendant can be liable for "join[ing] an ongoing conspiracy." (*Id.* at 89.) Plaintiffs draw a distinction without a difference. Even if it's true that a newcomer to a conspiracy can be liable if they join with the "specific intent" required, *Barajas*, 927 S.W.2d at 614, Plaintiffs fail to allege facts showing that Rabo ever had a meeting of the minds with its co-defendants, i.e., that it knowingly agreed to a "combination or agreement" to harm the Plaintiffs, at *whatever* point it joined the alleged conspiracy.

Accordingly, whether for lack of an underlying tort or for lack of allegations showing Rabo had the required meeting of the minds, Plaintiffs fail to state a claim for civil conspiracy.

## III. PLAINTIFFS FAIL TO ALLEGE CRITICAL ELEMENTS OF THEIR FIDUCIARY DUTY CLAIMS (COUNT 12).

Count twelve of Plaintiffs' FAC appears to allege both that Rabo breached its own fiduciary duties and knowingly participated in McClain's breach of fiduciary duty. (FAC ¶¶ 283–92.) Rabo moved to dismiss Plaintiffs' claim that it breached its fiduciary duties on the ground that Plaintiffs failed to allege facts showing that Rabo owed any such duty to any Plaintiff. (MTD 16–17.) Rabo also moved to dismiss the knowing participation claim, too, on several grounds. (*Id.* at 18–19.) Plaintiffs fail to point to any cognizable basis for Rabo having owed fiduciary duties to any Plaintiff, and they inadequately respond to Rabo's arguments on the knowing participation claim. The Court should dismiss count twelve in its entirety.

### A. Plaintiffs Fail to Allege Facts Showing that Rabo Owed Them Fiduciary Duties.

Plaintiffs cite a number of bases for imposing fiduciary duties based on the facts alleged in the complaint—but only one of them actually relates to Rabo. As set forth in the complaint, Plaintiffs allege only that Rabo was a fiduciary because, under their view of Texas law, a bank owes fiduciary duties if it "seeks to 'benefit from a fund held in trust by a depositor.'" (FAC ¶ 285.) All the other grounds for fiduciary obligations mentioned in the opposition memo relate to McClain, not Rabo. (*See* Opp'n 92–93.)

With respect to the one purported basis for imposing fiduciary duties on Rabo, Plaintiffs misconstrue the law. As explained in the opening motion, the cases that Plaintiffs cite in support of their assertion that Rabo owed them "common-law fiduciary duties" as a bank holding funds held in trust by McClain say no such thing. (*Id.* at 94; *see* MTD 16–17 (distinguishing *Steere v. Stockyards Nat'l Bank*, 256 S.W. 586, 590 (Tex. Comm'n App. 1923)).) Rather, the cases provide

only "that the bank 'stands as any other person *dealing with*' a fiduciary"—the depositor—
meaning that the bank "may not apply such funds to the individual indebtedness of the debtor."
(MTD at 17 (quoting *S. Cent. Livestock Dealers, Inc. v. Sec. State Bank of Hedley*, 551 F.2d 1346,
1349 (5th Cir. 1977)).) They do not support the assertion that the bank has its own fiduciary
obligations to the party who entrusted the funds to the depositor. And even if that were true,
Plaintiffs fail to allege facts showing that McClain was holding their funds in trust.

### B. Plaintiffs Fail to Allege Facts Showing that Rabo Was Aware of Its Alleged Participation in McClain's Breach of Fiduciary Duty.

Rabo moved to dismiss Plaintiffs' knowing participation[4] on two grounds: (1) Plaintiffs
fail to allege an underlying claim for breach of fiduciary duty by McClain, and (2) Plaintiffs fail
to allege facts showing that Rabo was "aware that it was participating in [McClain's] breach" of
fiduciary duty. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007). (*See* MTD
18–19.) Plaintiffs fail to show otherwise.

They fail to allege the first ground, i.e., that because a knowing participation claim is a
derivative claim, the plaintiff must separately allege a claim for the "underlying tort" against the
primary tortfeasor. *Meadows*, 492 F.3d at 639. In other words, because Plaintiffs have not named
McClain as a defendant and have not alleged an underlying claim for breach of fiduciary duty
against him, their knowing participation claim fails at the starting line.

On the second ground, Plaintiffs do not meaningfully respond. Indeed, they appear to copy
their exact allegations in the complaint regarding Rabo's alleged knowing participation in

---

[4] Plaintiffs again misrepresent that aiding and abetting claims are viable under Texas law. (*See* Opp'n 92 ("Texas courts recognize causes of action for aiding and abetting . . . a breach of fiduciary duty.").) For the reasons discussed above, *see supra* Section I.B., the Court is bound by the Fifth Circuit's conclusion that no aiding and abetting claim exists under Texas law. *See Christopher v. Depuy Orthopaedics, Inc. (In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.)*, 888 F.3d 753, 782 (5th Cir. 2018).

McClain's breach of fiduciary duty. (*Compare* Opp'n 95–96, *with* FAC ¶¶ 288–292.) Accordingly, they do not address the deficiencies in the pleading identified in the opening motion—namely, the absence of facts showing that Rabo "took a specific action that aided [McClain's] breach" and "had '*actual* awareness, at the time of the conduct," that "it was participating in [McClain's] breach." (MTD 19 (quoting *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 573 (N.D. Tex. 2024); *7X Cattle Co. v. Brandstadt*, No. 6:22-CV-396-JDK-KNM, 2025 WL 852624, at *13 (E.D. Tex. Feb. 28, 2025) (cleaned up), *report and recommendation adopted* 2025 WL 848446 (E.D. Tex. Mar. 18, 2025); *Meadows*, 492 F.3d at 639).) Plaintiffs' allegations that Rabo had knowledge of McClain's fiduciary duties and that there were "red flags" with McClain's operations do not suffice. (*See* Opp'n 19.)

Because Plaintiffs fail to allege facts supporting either a claim for breach of fiduciary duty or for knowing participation in breach of fiduciary duty, the Court should dismiss count 12.

## IV.   PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM FAILS (COUNT 8).

As outlined in Rabo's motion, a tortious interference claim requires a willful and intentional act of interference with the contract. (MTD 30 (citing *Mr. W Fireworks, Inc. v. NRZ Inv. Grp., LLC*, 677 S.W.3d 11, 26 (Tex. Ct. App. 2023).) For a plaintiff to establish this element, the plaintiff must allege facts demonstrating "that the defendant was more than a willing participant and knowingly induced one of the contracting parties to breach its obligations under a contract." *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. Ct. App. 2011). Additionally, the intentional and willful element requires that "[t]he interfering party . . . [knew] of the existence of a contract between the plaintiff and a third party." *CPM Consulting LLC v. Capsugel US, LLC*, No. 3:17-CV-3059-S, 2019 WL 3769651, at *2 (N.D. Tex. Aug. 9, 2019) (cleaned up).

Plaintiffs have not and cannot point to factual allegations satisfying this requirement. The FAC falls far short of providing factual allegations demonstrating that Rabo knew of their contracts

with Debtors, let alone that it knew of each of the Plaintiffs' contracts. "Know" means "know," and Plaintiffs' repeated and numerous attempts to argue that the allegations support the proposition that Rabo should have known about Plaintiffs and should have known about their agreements, are simply insufficient to support this and their other claims. *See, e.g., CPM Consulting LLC*, 2019 WL 3769651, at *2. The lack of allegations supporting actual knowledge creates additional problems for Plaintiffs' claim, as they cannot demonstrate that Rabo knowingly interfered with each of those contracts and that Rabo knowingly induced McClain to breach the contract. *See Funes*, 352 S.W.3d at 213.

Finally, Rabo quoted in its opening brief a recent Texas Court of Appeals decision stating that with a tortious interference claim, "a threshold question is whether the contract itself was subject to the alleged interference." *Mr. W Fireworks,* 677 S.W.3d at 26. As the Plaintiffs continue to allege and argue that Rabo should have done more to stop the Debtors' fraudulent scheme perpetuated through the cattle feeding agreements, this "threshold question" is pushed even more into the spotlight and raises the question of whether such a contract *could* even support a tortious interference claim as a matter of law.

## V.    PLAINTIFFS' NEGLIGENCE CLAIMS FAIL (COUNTS 3, 5 & 6).

Rabo moved to dismiss the three negligence claims asserted by Plaintiffs: Negligence and Gross Negligence of Defendants in Lending (Count 3); Negligence and Gross Negligence of Defendants in Hiring or Supervision of Management of Personnel (Count 5); and Negligent Undertaking (Count 6). (*See generally* MTD.) Plaintiffs have failed in their opposition memorandum to cite the allegations and caselaw necessary to demonstrate that these claims are cognizable. (*See generally* Opp'n.)

### A.    The Absence of a Legal Duty is Fatal to All Three Negligence Claims.

It is axiomatic that the "threshold inquiry in a negligence case is duty," and "[i]f there is no duty, liability for negligence cannot exist." *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. Ct. App. 2012). As outlined in the opening motion, the general and "almost-universal law in this country" is that banks/lenders do not owe a duty of care to non-customers. (MTD 12 (citing *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 357 (6th Cir. 2014) and *Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 800 Fed. App'x 239, 248 (5th Cir. 2020) (per curiam) (explaining that "in the absence of a fiduciary or confidential relationship, a bank owes no duty to a person with whom the bank has not dealt and otherwise has no relationship")).)

In their opposition memorandum, Plaintiffs point to and rely on a Fifth Circuit decision where the court engaged in an *Erie* analysis of whether Mississippi would recognize an exception to this general rule of no duty to non-customers. (Opp'n 43 (citing *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 518 (5th Cir. 2018).) Plaintiffs argue that the "Fifth Circuit has recognized that a bank may owe a duty to a non-customer where 'a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation.'" (*Id.* (quoting *Midwest Feeders, Inc.*, 886 F.3d at 518.) Plaintiffs presumably contend that the Fifth Circuit would likewise conclude that Texas would also recognize this exception, with Texas courts heretofore having not authoritatively addressed the question. Even if the Fifth Circuit and/or Texas were to recognize this exception, Plaintiffs have failed to allege facts that would support application of the exception in this case. (*See generally* FAC.)

First, Plaintiffs have failed to allege facts that Plaintiffs had "actual knowledge" of Debtors' fraud—let alone Debtors' fraud/misappropriation with respect to each of the Plaintiffs.

(*See generally* FAC; *Midwest Feeders*, 886 F.3d at 518.) Again, this failure is wholly unsurprising considering Rabo's secured loan, its appointment of a receiver, its loss of $50 million, and the numerous and repeated allegations concerning Rabo's purported failure to identify and take earlier steps to address the scheme. (*See generally* FAC.) The lack of "actual knowledge" is fatal to all of Plaintiffs' negligence claims because actual knowledge is required for this exceptional duty to arise. *See Midwest Feeders,* 886 F.3d at 518.

The FAC is likewise deficient of factual allegations supporting the other two elements of the standard cited by Plaintiffs. There are no factual allegations supporting the conclusion that prior to the bankruptcy proceedings (and aside from two or three of them) Rabo had even heard of the dozens of Plaintiffs, nor that Rabo should have somehow known each of the Plaintiffs, and that each Plaintiff had a purported "fiduciary relationship" with Debtors. (*See generally* FAC.) And as to any purported fiduciary relationship between Debtors and each of the Plaintiffs, the Plaintiffs uniformly point to their contracts/cattle feeding agreements with Debtors as the basis for their relationship and otherwise fail to allege facts specific to each Plaintiff that would give rise to a fiduciary relationship outside of those agreements.

The facts alleged in this case stand in stark contrast to the facts alleged by the plaintiff in *Chang*, the Eleventh Circuit case from which the Fifth Circuit obtained this standard. *See Chang v. JP Morgan Chase Bank, N.A.*, 845 F.3d 1087 (11th Cir. 2017). In *Chang*, the plaintiff provided funds to a business owner who claimed that the funds would be deposited in an escrow account to show the liquidity of a client who was seeking a multi-million-dollar loan for the construction of a Caribbean resort. *Id.* at 1092. However, after the business owner deposited plaintiff's funds in the "OPT Escrow Account" at the bank, the owner subsequently transferred the funds to another account at the bank and used those funds for his personal use. *Id.* at 1092—94. Mr. Chang sued

the bank and the district court dismissed the complaint and denied Mr. Chang's request to file his proposed second amended complaint containing negligence and other claims because of the lack of any duty owed to Mr. Chang by the bank. *See id.* Mr. Chang had alleged in the second amended complaint that, among other things, that the bank vice president: (1) set up the OPT Escrow Account, (2) had not complied with the bank's procedures when doing so, (3) "wrote a letter on bank letterhead representing that OPT Title's 'escrow account' had 'deposits in a business checking and savings account in the seven digit amounts' when in fact the total balance in all OPT Title's accounts with the Bank was less than $100,000"; (4) received in exchange a $100,000 payment from the business owner. *Id.* Based on these and other facts that are nonexistent in the case before this Court, the Eleventh Circuit held that Chang had alleged facts that triggered a potential duty owed by the bank to plaintiff. *See id.* at 1094-95.

Plaintiffs' allegations here are a far cry from the allegations in *Chang*, further demonstrating their failure to allege a duty—especially considering the fact that Rabo was not even the depository of Plaintiffs' funds. This failure to allege a duty is fatal to all of Plaintiffs' negligence claims and the claims should be dismissed with prejudice.

### B.    Plaintiffs' Negligence Claims Fail for Additional, Independent Reasons.

In addition to a lack of duty, Rabo raised and argued in its motion additional, independent grounds for dismissing Plaintiffs' negligence claims. (*See* MTD.) Plaintiffs' arguments on these issues are likewise unpersuasive.

### 1.    Proximate cause and injury.

Plaintiffs fail to point to facts or law demonstrating that Rabo's alleged negligence was the proximate cause for their purported injuries. Their "foreseeability" analysis is glaringly void of any legal precedent of a "negligent" lender being held responsible for losses suffered by third

parties who invested with and were defrauded by the lender's borrower. (Opp'n 48–49.) Concluding that a lender should anticipate this danger is unprecedented and unreasonable. Plaintiffs also continue to ignore their failure to allege in the FAC that their total stated losses/injuries that were purportedly caused by the Debtors' scheme (and Rabo's alleged actions in connection therewith) account for the "winnings" they received from the fraudulent scheme. This failure is particularly egregious given that Plaintiffs expressly admit in the FAC that they had consistently and repeatedly received payments/profits back from the Debtors under the very fraudulent cattle feeding agreements/arrangements that Plaintiffs complain should have been discovered and stopped earlier by Rabo.

### 2.    Not for benefit of Plaintiffs and no actionable tort.

Plaintiffs' fail to point to facts concerning an actionable tort against them—and each of them—committed by a Rabo employee, which is an essential element for any negligent claims based on hiring or supervising. *See Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. Ct. App. 2005) (stating that a "plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff"). They also fail to point to any facts demonstrating that the alleged services undertaken by Rabo were for the benefit of the Plaintiffs, a requirement for any negligent undertaking claim. *See Murray v. Nabors Well Serv.*, 622 S.W.3d 43, 54 (Tex. Ct. App. 2020) ("Texas law is clear that to succeed in a negligent undertaking claim, the services the defendant undertakes to perform are for the benefit of the plaintiff, whether the plaintiff is the person being assisted or a third party."). The three negligence claims must be dismissed.

## VI.   PLAINTIFFS' CONVERSION CLAIM (COUNT 1) REMAINS DEFICIENT AND UNCLEAR.

Plaintiffs' opposition provides little clarification concerning the specific factual allegations supporting each of the sixty-plus Plaintiffs' conversion claims, with Plaintiffs' continuing to contend that both cattle and/or funds were converted. In addition to raising concerns about serious conflicts of interest among the individual Plaintiffs, this claim (along with others) also highlights major conflicts and inconsistencies with the Plaintiffs' legal positions. The Plaintiffs devote the overwhelming majority of their Complaint to allegations and claims concerning the Debtors' fraudulent scheme—which scheme provides the foundation for all the McClain cases before the Court. Plaintiffs then abruptly and implicitly ask the Court to entirely ignore the fraudulent scheme they've alleged to imagine a world where the approximately $100 million that the investor creditors (including the Plaintiffs) provided to Debtors pursuant to their cattle feeding agreements, at the height of scheme, and shortly before Debtors' bankruptcies, were somehow legitimate transactions involving real cattle. Without specific facts concerning actual cattle, the Court need not and should not entertain Plaintiffs' arguments on the issue, especially in light of the USDA Report and the thousands of documents, depositions, and other discovery that has brought the scheme to light over the past two years.

Plaintiffs' continued insistence on including "cattle" in each of their claims may be out of recognition of the numerous legal obstacles to their conversion claims based on money, such as the requirement "that money can be a subject of conversion only if it can be described or identified as a specific chattel . . . ." *Campbell v. Fort Worth & W. R.R.*, No. 4:09-CV-037-Y, 2010 WL 11570869, at *5 (N.D. Tex. Mar. 24, 2010) (emphasis added). The money must also be "intended to be kept segregated"; "substantially in the form in which it is received or an intact fund"; and "not the subject of a title claim by the keeper." *Edge Petrol. Operating Co., Inc. v. GPR Holdings,*

*LLC (In re TXNB Internal Case)*, 483 F.3d 292, 308 (5th Cir. 2007) (cleaned up). A conversion

claim is thus appropriate, for instance, where the funds were deposited in escrow, *see, e.g., Blanche*

*v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 453–54 (Tex. Ct. App. 2002); or where the

funds were deposited per something of "a bailment contract," *see Houston Nat'l Bank v. Biber*,

613 S.W.2d 771, 775 (Tex. Civ. App. 1981). Funds do not qualify as chattel where, as here, a party

merely "directed that the funds be deposited into someone else's account for their use." *Sols. v.

State Bank of Brownsboro*, No. 6:19-CV-329-JDK, 2020 WL 12991132, at *7 (E.D. Tex. Apr. 16,

2020). Try as they must to dress up and describe their payments to Debtors, the reality remains

that the payments consisted of checks and/or wire transfers that resulted in funds being deposited

in Debtors' bank accounts along with all other deposited funds. Such transactions and accounts

understandably fall far short of satisfying the requirements for a potential conversion claim.

Again, Rabo readily recognizes that if it had gone onto Debtors' property and

taken/removed cattle that were not owned by Debtors but were owned by a specific plaintiff, and

that plaintiff had requested Rabo to deliver/provide those cattle to plaintiff, and Rabo refused, such

a plaintiff would likely have a claim against Rabo for conversion. The FAC, however, falls far

short of including any such allegations.  And any conversion claim based on money cannot stand.

## VII.   PLAINTIFFS' RICO CLAIM (COUNT 13) FAILS.

In their Opposition, Plaintiffs attempt to expand the RICO claims made in the FAC.

Plaintiffs credit Rabo and its alleged co-racketeer, Mechanics, with a purpose—"collecting the

assets of non-borrowers and the collateral of their respective lenders in order to repay Rabo's loan

and Mechanics' overdrafts by unlawful means"—and a "deliberate, repeatable seven-step

methodology" to accomplish it comprising (1) making an imprudent loan, (2) establishing control

infrastructure, (3) facilitating a check kite, (4) installing a fixer, (5) looting trust accounts, (6)

concealing and continuing, and (7) conducting a final liquidation. (*See* Opp'n 103-04.) Neither the purpose nor alleged methodology hold up to scrutiny.

First, to validate the purpose, Plaintiffs must demonstrate that Rabo collected *their* assets, not the Debtors, and illegally took said assets to repay Rabo's loan. Plaintiffs cannot do so. The cash assets in Debtors' accounts were not held in trust for Plaintiffs—Rabo could not seize trust accounts which did not exist—and, other than Priest, Plaintiffs have not proffered any evidence that the Debtors held any of their cattle. Even had Rabo taken funds from Debtors' accounts to go towards Debtors' obligations, any such funds were Debtors' and not Plaintiffs'.

Second, to accuse Rabo of facilitating a check kite strains credulity. After claiming Rabo and Mechanics somehow actively managed a coordinated check-kiting scheme of Debtors and 2B Farms, Plaintiffs claim that "Mechanics would contact Rabo asking 'how they should proceed' with overdrafts, and 'the two banks would work together to keep the kite afloat.'" Plaintiffs conveniently fail to note that the purported coordination regarding overdrafts occurred *years* prior to the 2023 check-kiting for which Plaintiffs seek to blame Rabo. (*See* FAC ¶¶ 43-44.). Plaintiffs also conveniently ignore that Rabo, upon executing DACAs with McClain, *stopped* the check-kiting by Debtors and certain investors (whereby, in a sad irony that continues to permeate this case, Rabo has been sued for uncovering and stopping Debtors' scheme).

The claim fails for the additional ground that Plaintiffs have not alleged facts demonstrating that Rabo proximately caused Plaintiffs' injuries. *See Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023) ("[A] civil RICO plaintiff must show (1) a violation of § 1962 [of the RICO Act], (2) an injury to his or her business or property, and (3) that such injury was proximately caused by a RICO violation.").

Neither the timing nor the economics of the alleged racket support a plausible claim. This, however, is not surprising. Sadly, the salacious claim appears to fit the adage of "the best defense is a good offense," as Plaintiffs ask the Court to completely ignore: that Rabo was defrauded out of more money than anybody else; that Rabo's investigation and actions (which Plaintiffs argue elsewhere came too late) helped uncover Debtors' fraud; that Rabo's commercial loan was secured only by Debtors' assets (yet Rabo's scheme/racket was for Debtors to use loan funds not for cattle or business operations but to pay "returns" for fictitious cattle sales); and that the Plaintiffs' were the admitted recipients of numerous profit "payouts" under these cattle feeding agreements.

In any event, Plaintiffs do not plead facts sufficient to support their RICO Act claims on any applicable standard, and their claims should therefore be dismissed.

## VIII.    THE CONTRACT CLAIMS (COUNTS 15 & 16) SHOULD BE DISMISSED.

Counts fifteen and sixteen—"claims . . . based on [the] intercreditor agreement" and "claims . . . based on [the] letter of understanding"—should be dismissed because (1) these claims fail to state a plausible claim for breach of contract, and (2) to the extent Plaintiffs purport to allege tort claims based on either agreement, those claims are duplicative and otherwise barred by the economic loss rule. (*See* MTD 20–22.) Plaintiffs argue only that they *have* alleged plausible claims for breach of contract; they do not respond to Rabo's second argument. Accordingly, the Court should dismiss counts fifteen and sixteen.

### A.    Counts Fifteen and Sixteen Fail to Allege Plausible Claims for Breach of Contract.

Plaintiffs do assert that counts fifteen and sixteen adequately allege claims for breach of contract, but they fail to meaningfully explain how. Rabo moved to dismiss count fifteen—AgTexas and Thorlakson's claim based on the intercreditor agreement—on the ground that the agreement applied only to "cattle subject at any time to a Cattle Feeding Agreement"; and Plaintiffs

failed to allege "facts showing that any 'cattle in McClain's possession' were subject to a Cattle Feeding Agreement." (MTD 20.) Rabo also moved to dismiss that claim on the ground that Plaintiffs failed to "allege facts showing that AgTexas and Thorlakson performed their own obligations" under the agreement, as required to establish a breach of contract claim. (*Id.* (citing *Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016)).)

Plaintiffs respond by parroting the allegations in the complaint, none of which establish that they had cattle in McClain's possession subject to a cattle feeding agreement, nor that AgTexas and Thorlakson performed their own obligations under the agreement. They therefore fail to show why dismissal is not appropriate on the grounds identified in Rabo's opening motion.

Plaintiffs make more of an effort on count sixteen, but their arguments still fail. Rabo argued that count sixteen—Priest's claim based on the letter of understanding—failed for three reasons: (1) Plaintiffs failed to point to any provision of the letter Rabo breached by allegedly taking possession of Priest's cattle, (2) Plaintiffs failed to allege facts showing their own performance under the contract, and (3) "even if Priest could show that Priest's [cattle] were sold at auction, the proceeds . . . are held by the Chapter 7 Trustee[,] not Rabo." (MTD 21.) On point one, Plaintiffs allege baldly that "Rabo breached the Letter of Understanding by taking possession of Priest's cattle and selling them to a third party." (Opp'n 138.) But again, Plaintiffs' allegations fail to explain how Rabo's alleged actions amounted to a breach of the letter. While Plaintiffs need not have cited "the exact specific provision" of the contract to state a claim to relief, they need to have alleged "more than [just a] conclusory comment[]" that Rabo breached the agreement. *Spinosa v. Foremost Ins. Co.*, No. 24-30472, 2025 WL 304530, at *1 n.2 (5th Cir. Jan. 27, 2025) (per curiam); *see, e.g.*, *Retina & Vitreous of La., Inc. v. Mason*, No. 23-158-JWD-SDJ, 2024 WL 3307848, at *7 (M.D. La. Mar. 1, 2024) (acknowledging that under federal pleading standards,

while a plaintiff does not always have to point to specific provisions, they must still "plead sufficient facts upon which breach of contract relief may be granted"; and dismissing contract claims where "[t]here [was] no mention of" the allegedly breached obligation in the complaint).

On point two, Plaintiffs assert that "Priest performed by providing its branded cattle to be fed at McClain's yards." (Opp'n 138.) The FAC alleges no facts, however, establishing that Priest had such an obligation. Thus, Plaintiffs fail to allege facts crossing "the line between possibility and plausibility," as required for a federal pleading. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Point three Plaintiffs leave unanswered. The claims should be dismissed.

### B.    Plaintiffs' Tort Law Claims Based on the Subject Contracts Are Barred.

The substantive allegations of count fifteen assert that "AgTexas and Thorlakson are therefore entitled to and seek recovery of judgment for fraud, conversion, breach of contract and breach of fiduciary duty against Rabo to the extent that Rabo acquired cattle or proceeds belonging to Plaintiffs." To the extent AgTexas/Thorlakson are trying to include fraud, conversion or breach of fiduciary duty claims under count fifteen, those portions fail for several reasons.

First, these tort claims are already included as other counts of the operative complaint and, even if they were not subject to dismissal (they are, as explained elsewhere) are entirely duplicative. Count one, for example, is a claim for "conversion." (*See* FAC ¶¶ 187-95.) Similarly, count two is a claim for "common law fraud" (*id.* ¶¶ 196-202), and count twelve is a claim for, among other things, "breach of fiduciary duty" (*id.* ¶¶ 196-202). If for no other reason, the portions of count fifteen which are based upon allegations of conversion, fraud and breach of fiduciary duty should be dismissed as entirely duplicative of other standalone claims in the operative complaint.

Second, to the extent count fifteen purports to assert tort claims based upon the intercreditor agreement between AgTexas/Thorlakson and Rabo, the claims should be dismissed as barred by

the economic loss rule. Paragraph 367 of the FAC purports to set out the various contractual duties that AgTexas/Thorlakson claim Rabo had under the agreement. Count fifteen then asserts that Rabo's failure to fulfill these duties constituted conversion, fraud, and breach of fiduciary duty. But because the duties alleged to have been breached are duties established by contract and the damages alleged are purely economic in nature, AgTexas/Thorlakson are limited to suing Rabo for breach of contract and cannot also sue Rabo in tort.

"The application of the economic loss rule is a question of law for the court to decide." *Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804, 807 (5th Cir. 2020). Under Texas common law, the economic loss rule "precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718–19 (Tex. 2014) (per curiam).  Because count fifteen alleges only economic harm based on Rabo's alleged failure to abide by the promises in the intercreditor agreement, the portion of the claim asserting conversion, fraud and breach of fiduciary duty is barred.

Priest's claims set forth in count sixteen fare no better. Like count fifteen, this count includes allegations of conversion as part of a breach of contract claim. Those allegations are duplicative of count one, and, in any event, the economic loss rule bars a conversion claim because Priest is alleging that Rabo violated contractual duties which caused only economic harm.

Finally, the entirety of the claim is not plausible. Paragraph 380 alleges that Rabo caused certain Priest cattle to be auctioned and then, on April 1, 2023, the Debtors sent Priest checks for the cattle that were ultimately dishonored. Priest claims that these alleged facts support both a claim for breach of contract and a claim for conversion. They do not. As an initial matter, there is

*no allegation* that Rabo received funds from these cattle. The reason there is no such allegation is because Priest knows that Rabo *did not* receive the funds from any auctioned cattle; those funds are in the possession of the Trustee. Further, paragraph 152 makes clear that Rabo *did not* auction off any cattle belonging to Priest. If that happened, it was the Debtors' doing.  (*See* FAC ¶ 152 (alleging on information and belief that "McClain . . . sold over 10 loads of cattle," including cattle "owned outright by Priest Cattle Company, Ltd. . .").) And there is *no allegation* in paragraph 152 that Rabo received any cattle proceeds belonging to Priest. Rather, that paragraph alleges only that checks written to Priest for its alleged cattle were dishonored. Accordingly, Priest has failed to allege a plausible claim in count sixteen, and that claim must be dismissed.

## IX.   THE COURT'S PRIOR ORDER WELCOMED FURTHER ARGUMENT ON WHETHER PLAINTIFFS' INJURIES WERE DERIVATIVE, AND PLAINTIFFS' INJURIES BASED ON LOST PROCEEDS MOST CERTAINLY ARE.

In its opening motion, Rabo showed that except for Plaintiffs' alleged loss of actual cattle, their claims seek relief only for derivative harms—injuries "contingent upon" harm to the Debtors. *Grossman v. Belridge Grp. (In re Lothian Oil, Inc.)*, 531 F. App'x 428, 430 (5th Cir. 2013). Plaintiffs' unpaid proceeds are derivative harms, not because those losses are not individualized, but because they "stem from the depletion of [McClain's] assets." *Buccaneer Energy Ltd. v. Burton (In re Buccaneer Res., LLC)*, 912 F.3d 291, 293 (5th Cir. 2019). As Plaintiffs allege, Rabo's conduct caused McClain to be unable to pay Plaintiffs their proceeds. Because Plaintiffs' losses "flow from injury to the debtor," only the Trustee can pursue claims to recover those losses "so that all creditors will share in any recovery." *Id.*

In response, Plaintiffs argue only that this Court has already "determined" the issue of whether Plaintiffs' claims were for direct vs. derivative harms—pointing to the Court's July 29, 2025 decision granting in part the Trustee's request to intervene. (*See* Opp'n 139.) Given their

view of the prior order, "Plaintiffs [do] not address [the issue of whether they have alleged derivative harms] further."[5] (*Id.*)

Plaintiffs misconstrue the Court's prior order. The Trustee moved to intervene on the ground that because Plaintiffs had alleged claims for derivative injuries, the claims properly belonged to the estate under Section 541(a)(1). (*See generally* Tr.'s Mot. to Intervene and Enforce Automatic Stay (ECF No. 140).) The Court agreed that the Trustee alone could pursue some, but not all of Plaintiffs' claims. (*See* Order Granting in Part and Denying in Part the Trustee's Mot. to Intervene and Enforce the Automatic Stay (ECF No. 201), at 3–4.) But the Court otherwise denied the Trustee's motion "without prejudice to any . . . argument or dispute on [claim] ownership or standing in the future, including following further amended pleadings, motion practice, fact discovery, or consideration on the merits." (*Id.* at 4.) And the Court then directed the Plaintiffs to file an amended complaint by August 19, 2025—the Plaintiffs now being on notice of the potential claim ownership issue. (*See id.*) Accordingly, the Court's prior order did not conclusively resolve the issue of whether Plaintiffs' claims were assertable only by the Trustee, as Plaintiffs contend;

---

[5] As in their response to the Trustee's motion to intervene, Plaintiffs characterize the claim-ownership issue as whether they "have *standing* to assert the claims asserted in the complaint." (Opp'n 139 (emphasis added); *see generally* Pls.' Response to Trustee's Mot. to Intervene (ECF No. 177), at 26–39.) To clarify, as explained in Rabo's own response, a trustee's "standing to pursue causes of action that become the estate's property means [his] *statutory* authority under the Bankruptcy Code, not [his] *constitutional* standing to invoke the federal judicial power." (Rabo's Response to Capacity/Claim Ownership Brief (ECF No. 187), at 18 (quoting *In re Wilton Armetale, Inc.*, 968 F.3d 273, 280–81 (3d Cir. 2020)).) Accordingly, while courts sometimes use the term "standing" to refer to a trustee vs. creditors' capacity to bring a particular claim, that analysis "is a question on the merits rather than one of justiciability." *Grede v. Bank of New York Mellon*, 598 F.3d 899, 900 (7th Cir. 2010); *see also Env'tl Barrier Co. v. Slurry Sys., Inc.*, 540 F.3d 598, 605 (7th Cir. 2008) (observing that "standing" "is a word of many, too many, meanings"). The distinction is crucial for purposes of the direct vs. derivative harm analysis: the question is not whether the creditor has suffered injury sufficient to have constitutional standing, but whether the creditor's injury is derivative—such that any claim for that injury is swept into the bankruptcy estate under Section 541(a)(1).

rather, the Court contemplated further "argument or dispute" on the issue after Plaintiffs had the opportunity to amend. (*Id.*)

Plaintiffs have now had that opportunity, and as explained, the operative complaint now alleges some direct harms (lost cattle), but significant derivative ones (lost proceeds). Because only the Trustee can seek relief for derivative harms, Plaintiffs cannot "annex[] assets of the estate" by bringing their own claims for lost proceeds. *See Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 360 (5th Cir. 1999). The Court should therefore dismiss this facet of Plaintiffs' claims, i.e., all claims for injuries based on lost proceeds.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons stated herein and in Rabo's opening brief, Rabo prays that its Motion be granted in its entirety, and that all of the claims against Rabo be dismissed, with prejudice.

DATED: December 22, 2025.

<div style="margin-left:40%">

UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

--and--

RAY QUINNEY & NEBEKER P.C.
Michael R. Johnson *(Pro Hac Vice)*
Matthew M. Cannon *(Pro Hac Vice)*
Austin C. Nate *(Pro Hac Vice)*
36 South State, Suite 1400
Salt Lake City, UT 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: mcannon@rqn.com

</div>

Email: anate@rqn.com


/s/ Michael R. Johnson
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2025, the foregoing document was filed with the

Clerk of the Court using the CM/ECF system, which sent notice of electronic filing to all electronic

filing users in this case.

<div style="text-align:right">

<u>*/s/ Michael R. Johnson*</u>

Michael R. Johnson

</div>

1730769