UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

   *and*

Michael R. Johnson (*Pro Hac Vice*)
Matthew M. Cannon (*Pro Hac Vice*)
Austin C. Nate (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com
Email:  mcannon@rqn.com
Email:  anate@rqn.com

*Attorneys for Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| In re:<br><br>MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.<br><br>    Debtors. | CASE NO. 23-20084-swe7<br>Chapter No. 7<br><br>(Jointly Administered Cases) |
| In re:<br><br>2B FARMS, a Texas General Partnership, et al.,<br><br>    Debtors. | CASE NO. 23-50096-swe12<br>Chapter No. 12<br><br>(Jointly Administered Cases) |

| | |
|---|---|
| HTLF BANK, as successor to FIRST BANK & TRUST, <br><br>     Plaintiff, Counter-Defendant, and Cross-Claim Defendant, <br><br> v. <br><br> 2B FARMS, a Texas General Partnership, TERRY M. ROBINSON, and REBECCA A. ROBINSON, <br><br>     Defendants, Counterclaim-Plaintiffs, Third-Party Plaintiffs and Third-Party Counterclaim Defendants, <br><br> v. <br><br><br> RABO AGRIFINANCE LLC and MECHANICS BANK, <br><br>     Third-Party Defendants and, as to Rabo AgriFinance LLC only, Third-Party Counterclaim Plaintiff and Cross-Claim Plaintiff. | ADVERSARY NO. 24-02007-swe <br><br> (Consolidated Adversary Proceeding) |
| AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA and THORLAKSON DIAMOND T FEEDERS, LP, <br><br>     Plaintiffs, <br><br> EDWARD DUFURRENA et al., <br><br>     Intervenor Plaintiffs, <br><br> v. <br><br> RABO AGRIFINANCE LLC et al., <br><br>     Defendants. | ADVERSARY NO. 24-02007-swe <br><br> (Consolidated Adversary Proceeding) |

| | |
|---|---|
| KENT RIES, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATES OF MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.<br><br>       Plaintiff,<br><br>v.<br><br>COMMUNITY FINANCIAL SERVICES BANK; HTLF BANK; MECHANICS BANK; and RABO AGRIFINANCE LLC,<br><br>       Defendants. | ADVERSARY NO. 24-02007-swe<br><br>(Consolidated Adversary Proceeding) |

**RABO AGRIFINANCE LLC'S <u>REPLY</u> BRIEF IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED THIRD-PARTY COMPLAINT OF 2B FARMS, A TEXAS GENERAL PARTNERSHIP, TERRY M. ROBINSON, AND REBECCA A. ROBINSON**

Pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6), made applicable to this consolidated Adversary Proceeding by Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure, Defendant Rabo AgriFinance LLC ("**Rabo**"), through counsel, hereby submits this reply brief in further support of its motion to dismiss the *Third Amended Third-Party Complaint* (the "**Complaint**" or "**TAC**") filed by Third-Party Plaintiffs 2B Farms, a Texas General Partnership ("**2B Farms**"), and Terry M. and Rebecca A. Robinson (the "**Robinsons**" and, together with 2B Farms, "**Plaintiffs**").

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 1

I.     PLAINTIFFS' RECENT ADMISSION ABOUT FUNDS *NOT* GOING TO RABO IS FATAL TO NUMEROUS CLAIMS. ........................... 1

II.     COUNT ONE CONTAINS NO COGNIZABLE CLAIM FOR CONVERSION OR FRAUD. ........................................................................ 3

      A.     The Conversion Claim Fails for Numerous Reasons. ........................... 3

      B.     There Are No Facts Supporting Fraud. .................................................. 4

III.     PLAINTIFFS FAIL TO ALLEGE FACTS ESTABLISHING RABO'S VICARIOUS LIABILITY FOR MCCLAIN'S FRAUD (COUNT 6). ................................................................................................... 6

IV.     PLAINTIFFS' NEGLIGENCE CLAIM (COUNT 3) SHOULD BE DISMISSED. ................................................................................................... 7

V.     COUNT FIVE FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR TORTIOUS INTERFERENCE. ............................................................... 8

VI.     PLAINTIFFS DO NOT MEANINGFULLY RESPOND TO RABO'S ARGUMENT THAT THE CIVIL CONSPIRACY CLAIM (COUNT 7) FAILS. ................................................................................................... 9

VII.     PLAINTIFFS' KNOWING PARTICIPATION CLAIM (COUNT 8) FAILS TO ALLEGE THAT RABO TOOK ANY ACT IN FURTHERANCE OF MCCLAIN'S BREACH OF FIDUCIARY DUTY, WITH ACTUAL AWARENESS OF SAME. ...................................... 10

VIII.     PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS (COUNTS 4 & 9) AND BANKRUPTCY CODE CLAIMS (COUNTS 9, 10, & 11) SHOULD BE DISMISSED. .............................................................. 12

      A.     The McClain Farms Checks. .............................................................. 12

      B.     The 2B Wires. .................................................................................... 14

IX.     PLAINTIFFS FAIL TO EXPLAIN WHY MOST OF THEIR CLAIMS DO NOT BELONG EXCLUSIVELY TO THE TRUSTEE. ......... 15

      A.     2B Farms' TUFTA Claim Is Derivative. ............................................ 16

      B.     The Chapter 12 Plan Confirmation Order Is Irrelevant. .................... 18

**CONCLUSION** ...................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*7X Cattle Co. v. Brandstadt*, No. 6:22-CV-396-JDK-KNM, 2025 WL 852624 (E.D. Tex. Feb. 28, 2025), *report and recommendation adopted* 2025 WL 848446 (E.D. Tex. Mar. 18, 2025) ............................................................................................... 11, 12

*Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266 (5th Cir. 1983) ............................................................... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................... 2, 9

*Boozer v. Fischer*, 674 S.W.3d 314 (Tex. 2023) ............................................ 4

*Buccaneer Energy Ltd. v. Burton (In re Buccaneer Res., LLC)*, 912 F.3d 291 (5th Cir. 2019) ...................................................................................... 17, 18

*Burroughs v. APS Int'l, Ltd.*, 93 S.W.3d 155 (Tex. Ct. App. 2002) ......................... 4, 5

*Centennial Bank v. Holmes*, 717 F. Supp. 3d 542 (N.D. Tex. 2024) ..................... 11, 12

*Christopher v. Depuy Orthopaedics, Inc. (In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.)*, 888 F.3d 753 (5th Cir. 2018) ......................... 11

*Edge Petrol. Operating Co. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292 (5th Cir. 2007) ................................................................................. 3, 4

*Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex. 2001) .......... 5

*Foix v. Moeller*, 159 S.W. 1048 (Tex. Ct. App. 1913) ...................................... 6, 7

*Highland Cap. Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petrol., Inc.)*, 522 F.3d 575 (5th Cir. 2008) ................................................................. 17

*Homoki v. Conversion Servs., Inc.*, 717 F.3d 388 (5th Cir. 2013) ......................... 10

*Hunt v. Baldwin*, 68 S.W.3d 117 (Tex. App. 2001) ......................................... 10

*In re Bowen Indus., Inc.*, 48 B.R. 3 (Bankr. W.D. Tex. 1984) ............................. 13

*Inwood Nat'l Bank v. Fagin*, 706 S.W.3d 342 (Tex. 2025) .................................. 8, 9

*Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736 (5th Cir. 1993) ..................... 19

*McDonald Oilfield Ops., LLC v. 3B Inspection, LLC*, 582 S.W.3d 732 (Tex. Ct. App. 2019) ................................................................................................. 8

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634 (5th Cir. 2007) ......................... 11

*Murray v. Nabors Well Serv.*, 622 S.W.3d 43 (Tex. App. 2020) ................................................ 7, 8

*Reynolds v. Sanchez Oil & Gas Corp.*, No. 1-18-940-CV, 2023 WL 8262764 (Tex. Ct. App. Nov. 30, 2023) ................................................................. 11

*Schertz-Cibolo-Universal City, Independent Sch. Dist. v. Wright (In re Educators Grp. Health Tr.)*, 25 F.3d 1281 (5th Cir. 1994) .................................................. 17, 18

*Sols. v. State Bank of Brownsboro*, No. 6:19-CV-329-JDK, 2020 WL 12991132 (E.D. Tex. Apr. 16, 2020)......................................................................... 3

*Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795 (Tex. Ct. App. 2020) ................................. 11

*Terry v. Tex. Partners Bank (In re Chris Pettit & Assocs., P.C.)*, 670 B.R. 602 (Bankr. W.D. Tex. 2025) ................................................................. 7

*Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636 (5th Cir. 1999)...................................................... 6

*Unsecured Claim Pool Sub-Tr. of Liquid. Tr. of Lilis Energy, Inc. v. Ormand*, No. 4:22-CV-2084, 2023 WL 3006699 (S.D. Tex. Apr. 17, 2023) ........................................... 20

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001) ...................................................... 9

*Weinman v. Simons (In re Slack-Horner Foundries Co.)*, 971 F.2d 577 (10th Cir. 1992)........... 15

**Statutes**

11 U.S.C. § 101(54)                                                                            13

11 U.S.C. § 502                                                                               12

11 U.S.C. § 548(a)(1)                                                                         13

11 U.S.C. § 548(a)(1)(B)                                                                    12, 14

11 U.S.C. § 548(d)(2)(A)                                                                      15

11 U.S.C. § 550                                                                               12

11 U.S.C. § 551                                                                               12

Tex. Bus. & Comm. Code § 3.408                                                             13, 14

**Rules**

Fed. R. Bankr. P. 7009                                                                       iii

Fed. R. Bankr. P. 7012                                                                       iii

Fed. R. Civ. P. 12(b)(1)                                                                     iii

Fed. R. Civ. P. 12(b)(6)                                          iii

Fed. R. Civ. P. 8                                                 iii

Fed. R. Civ. P. 9(b)                                              iii

## INTRODUCTION

Plaintiffs' TAC fails to contain any cognizable claim against Rabo. This reality is unsurprising, given Rabo's role as the commercial lender who is owed over $50 million and whose appointment of a receiver led to the demise and eventual discovery of Debtors' Ponzi scheme. Accordingly, Plaintiffs predictably point to no facts supporting Rabo's knowing or willing participation in the fraudulent scheme that injured Rabo and Plaintiffs. Furthermore, Plaintiffs fail to allege any duty owed by Rabo, with the TAC devoid of allegations supporting the knowledge, actions, and relationships necessary to trigger the extremely rare situations where a lender/bank may owe duties to a non-customer. The TAC, which is at least Plaintiffs' *third* attempt to assert cognizable claims against Rabo, should be dismissed with prejudice.

## ARGUMENT

## I.   PLAINTIFFS' RECENT ADMISSION ABOUT FUNDS *NOT* GOING TO RABO IS FATAL TO NUMEROUS CLAIMS.

Rabo has repeatedly reminded the Plaintiffs that Rabo *did not* receive any of the funds that 2B wired to Debtors' accounts at Mechanics Bank on April 4, 5 and 6, 2023 (the "**Wired Funds**"), but that all such funds were either retained by Mechanics Bank or provided to the Trustee. (*See, e.g.,* Opp'n 30.) More than two years ago, the Trustee filed a Notice with the Court expressly providing that he, not Rabo, had received the remaining funds in the Mechanics Bank accounts. (*See* McClain Chapter 7 Trustee's *Notice of USDA Approved Trust Claims*, Bankr. Case No. 23-20084-swe7, Dkt. No. 126, 4 ¶ 10.) Nevertheless, Plaintiffs continue to assert claims based on the allegations that Rabo received these funds:

- "As pled in its Third Amended Complaint, Rabo and Mechanics Bank were in control of the McClain Accounts at this time pursuant to the DACAs and Rabo potentially the immediate/mediate transferee of the initial transferee (Mechanics Bank) of these fraudulent transfers." (Opp'n 41.)

- "Rabo directed Mechanics Bank that it may accept deposits . . . including the Wire Funds of 2B Farms, to capture as much money as possible to eventually and allegedly turnover to Rabo . . . ." (*Id.*)

- "Rabo contends it did not receive any of 2B Farms' funds. However, Mechanics Bank has alluded to the fact that it did and further discovery is needed to confirm same. (*Id.* 30.)

Plaintiffs' conclusory allegations and arguments that "Rabo potentially" received these funds and that "Mechanics Bank alluded to the fact that" Rabo received funds are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Any doubt on this insufficiency is erased by Plaintiffs' recent admission in their motion for partial summary judgment filed on November 10, 2025, wherein they include the following statement of material *undisputed* fact:

> Having uncovered McClain's scheme, Mechanics Bank was only accepting deposits from ranchers and cattle producers, such as 2B Farms, in early April 2023, including the Wire Funds of 2B Farms, to capture as much money as possible to cover its overdrawn account and/or eventually, and allegedly, to turnover to Rabo, but, at the same time, not allowing any funds to be withdrawn from the McClain account by the same ranchers and cattle producers upon their presentation of checks upon the sale of their cattle [Deposit Account Control Agreement, App'x., p. 2B 007 - 021; Rabo's Account Instruction Letter dated April 5, 2023, App'x., p. 2B 022 - 024; Mechanics Bank's Acknowledgment of Rabo's Correspondence dated April 5, 2023, App'x., p. 2B 061]. ***Mechanics Bank ultimately did not turn over any funds during this April 2023 time period to Rabo*** despite the Deposit Account Control Agreements in place and correspondence as further described below, ***but instead delivered $1,414,714.60, the final net balance on the McClain Accounts that it had on hand, to the McClain Chapter 7 Trustee on May 30, 2023.*** *See* McClain Chapter 7 Trustee's *Notice of USDA Approved Trust Claims*, Bankr. Case No. 23-20084-swe7, Dkt. No. 126, p. 4, para. 10 (… "MFY received the turnover of $1,414,714.60 on May 30, 2021, from Mechanics [Bank]. Although Rabo asserts a perfected lien on the Debtors' accounts at Mechanics [Bank], these funds come from a bank-controlled account, not on account of the Debtors. . . ") (emphasis added). Needless to say, 2B Farms did not receive reasonably equivalent value for its Wire Funds it delivered to Mechanics Bank during this time period (April 4th, 5th and 6th, 2023).

(Pls' Mot. Partial SJ, SOMF ¶ 9, ECF No. 299 (emphasis added).) Plaintiffs cite the Trustee's filing from two years ago and readily admit that Rabo *did not* receive any funds during this April 2023 time period when Plaintiffs wired their funds into the McClain accounts at Mechanics Bank.

(*Id.*) Accordingly, any claim based on Rabo's alleged receipt of these funds—such as Plaintiffs' conversion claim, fraudulent transfer claims, and others—fails as a matter of law and should be dismissed with prejudice.

## II.  COUNT ONE CONTAINS NO COGNIZABLE CLAIM FOR CONVERSION OR FRAUD.

### A.    The Conversion Claim Fails for Numerous Reasons.

Count one alleges that Rabo converted (1) certain of Plaintiffs' cattle and (2) funds tied to deposits and attempted withdrawals from McClain's accounts by 2B Farms in April 2023. (*See* TAC ¶¶ 99–101.) Rabo argued that Plaintiffs failed to state a conversion claim in either respect. (*See* Br. Supporting MTD ("**MTD**") (ECF No. 265) 4–6.) In response, Plaintiffs appear to abandon their theory that Rabo converted cattle, defending only their claim that Rabo converted 2B Farms' purported funds. (*See* Opp'n Mem. ("**Opp'n**") (ECF No. 322) 11–15.) Plaintiffs, however, fail to address Rabo's arguments and the claim should be dismissed.

First, as outlined immediately above, Plaintiffs have admitted that Rabo *never received* the funds complained of by Plaintiffs. (*See supra*, Section I.) This is fatal to the claim.

Second, even if Rabo obtained the funds, the claim fails because the funds are not "chattel" capable of being converted. (*See* MTD 6 (quoting *Edge Petrol. Operating Co. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292, 308 (5th Cir. 2007)).) Texas law allows a claim for conversion of money "only where the money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *In re TXNB Internal Case*, 483 F.3d at 308. Funds do not qualify as chattel where, as here, a party merely "directed that the funds be deposited into someone else's account for their use." *Sols. v. State Bank of Brownsboro*, No. 6:19-CV-329-JDK, 2020 WL 12991132, at *7 (E.D. Tex. Apr. 16, 2020).

Plaintiffs fail to address this deficiency, instead relying exclusively on their allegations of Rabo's knowledge of McClain's fraud and "the process of exercising direct control over the McClain Accounts pursuant to the three" DACAs. (*See* Opp'n 13-14.) Plaintiffs do not point to any allegations in the TAC showing that the funds at issue were "delivered [to Rabo or anybody else] for safekeeping" with the intention that the funds remain "segregated" and an "intact fund." *In re TXNB Internal Case*, 483 F.3d at 308. Indeed, they concede that the funds were deposited in, and that the subject checks authorized withdrawals from, bank accounts held generally for the McClain entities' use. (*See* Opp'n 11.) Mechanics Bank (let alone Rabo) never functioned as an escrow agent for purposes of a transaction between 2B Farms and McClain. *See Boozer v. Fischer*, 674 S.W.3d 314, 323–24 (Tex. 2023) (setting out elements of an escrow, including that the agent must "hold [the] property outside the depositor's control," then later "deliver that property to the other party upon the performance of a certain condition or the happening of a certain event"). The TAC alleges no facts establishing that the funds at issue are properly considered chattel susceptible to conversion, which is a second and independent basis for dismissing the claim.

### B.     There Are No Facts Supporting Fraud.

Like in their TAC, Plaintiffs conflate their conversion and fraud claims and argue that Rabo "is liable for common law fraud and/or conversion in its dealings with 2B Farms and its funds." (Opp'n 11.) Plaintiffs, however, fail to point any alleged fraudulent statement that Rabo made to Plaintiffs, nor that Plaintiffs actually and justifiably relied upon the representation. (*See generally* Opp'n; *Burroughs v. APS Int'l, Ltd.*, 93 S.W.3d 155, 161 (Tex. Ct. App. 2002) (Texas law requires the plaintiff to show that "the defendant made a material representation that was false" and that "the plaintiff actually and justifiably relied upon the representation and suffered harm as a

result")[1]; *Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 580 (Tex. 2001) (explaining that if a defendant did not directly make the misrepresentations to the plaintiff, the plaintiff can prevail only if the defendant had reason to "conclude that there is an especial likelihood" that it would reach the plaintiff and "influence their conduct" (cleaned up)). In fact, Plaintiffs fail to cite any caselaw or otherwise explain *how* Rabo's actions or inactions meet the elements of fraud. (*See* Opp'n 11-16.)

Instead, Plaintiffs appear to point to the same allegations that it relies on for most of their other claims—allegations about the "red flags" with the Debtors' operations, statements between Rabo employees concerning Debtors, and the substantial volume of funds flowing through Debtors' accounts leading up to the collapse of the scheme. (*See* Opp'n 11-16.) These allegations, however, fall far short of supporting any cognizable claim for fraud, and Plaintiffs make no attempt to explain or argue otherwise. (*See id.*)[2] Furthermore, the allegations do not demonstrate that Rabo even knew about Debtors' fraudulent scheme, with Plaintiffs directing the Court to their allegations that one of Rabo's inspectors reported a "*Possible* Fraud Case."[3] (*Id.* 15 (citing TAC ¶ 32).) While true that the inspector reported significant concerns about McClain's operation in *March of 2023* (just a few weeks before Rabo caused the Ponzi scheme to crumble), again, as

---

[1] The plaintiff must also show defendant made the representation "intend[ing] to induce the plaintiff to act upon the representation." *Burroughs v. APS Int'l, Ltd.* 93 S.W.3d 155, 161 (Tex. Ct. App. 2002).

[2] Plaintiffs' arguments concerning Rabo's alleged acceptance of the Wired Funds and the significant flow of funds through the Debtors' accounts fall particularly flat given Plaintiffs' admission about the Wired Funds and the troubling irony that 2B Farms was a primary source of the "suspicious transactions" referenced.

[3] Plaintiffs also assert that the inspector "testified that she immediately called senior bank representatives at Rabo and multiple meetings occurred shortly thereafter to discuss the fraud." (Opp'n 15.) Such facts are not alleged in the complaint. And even if they were, the fact that the inspector called Rabo and that multiple meetings occurred does not establish that Rabo *knew*, not just had reason to know, of McClain's fraud.

explained in the opening brief, such allegations of constructive knowledge are insufficient for an aiding and abetting fraud claim, let alone a stand-alone claim of fraud. (*See* MTD 7–8.) Accordingly, even though Plaintiffs cite allegations showing that Rabo may have had reason to know of McClain's fraud, such allegations do not support a claim of fraud against Rabo. Plaintiffs' claim for conversion and/or fraud should be dismissed.

## III.   PLAINTIFFS FAIL TO ALLEGE FACTS ESTABLISHING RABO'S VICARIOUS LIABILITY FOR MCCLAIN'S FRAUD (COUNT 6).

In the opening motion, Rabo argued that count six of Plaintiffs' complaint was properly construed as a claim seeking to hold Rabo liable for McClain's fraud, "based on a theory of vicarious liability." (MTD 7 (quoting *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 647 (5th Cir. 1999)).) Accordingly, Rabo showed that Plaintiffs' claim failed for lack of allegations showing that Rabo acted "with 'mutual understanding or in furtherance of [a] common plan' [with McClain] to defraud" them. (*Id.* (quoting *Foix v. Moeller*, 159 S.W. 1048, 1052 (Tex. Ct. App. 1913)).) Plaintiffs appear to accept Rabo's framing of count six; but they argue that they *have* alleged (1) "that Rabo knew of McClain's fraud" and (2) that Rabo "knowingly acted in furtherance of McClain's fraud by keeping the McClain Accounts open to deposits . . . but, at the same time, stopping all withdrawals." (Opp'n 15–16.) Plaintiffs are mistaken.

First, as outlined above, Plaintiffs fail to point to allegations showing that Rabo knew of McClain's fraud. In purported support of this claim, Plaintiffs again direct the Court to the same Rabo employee who, just shortly before the McClain scheme collapsed, reported a "*Possible* Fraud Case." (*Id.* 15 (citing TAC ¶ 32).) While true that the inspector reported significant concerns about McClain's operation, again, as explained in the opening brief, such allegations of constructive knowledge are insufficient. (*See* MTD 7–8.) "Knowing means *knowing*." *Terry v. Tex. Partners Bank (In re Chris Pettit & Assocs., P.C.)*, 670 B.R. 602, 628 (Bankr. W.D. Tex. 2025).

Accordingly, even though Plaintiffs cite allegations showing that Rabo may have had reason to know of McClain's fraud, such allegations do not support a claim holding Rabo vicariously liable.

Second, Plaintiffs fail to direct the Court to allegations showing that Rabo took actions in furtherance of McClain's fraud. They cite only their allegations that Rabo maintained McClain's accounts open despite having notice of potential fraud and that Rabo prevented money from leaving McClain's accounts after the fraud was uncovered. Neither act, however, amounts to conduct that Rabo took with "mutual understanding or in furtherance of [a] common plan" with McClain to defraud Plaintiffs. *Foix*, 159 S.W. at 1052.

For these reasons, Plaintiffs fail to state a claim establishing Rabo's vicarious liability. The Court should therefore dismiss count six.

## IV.    PLAINTIFFS' NEGLIGENCE CLAIM (COUNT 3) SHOULD BE DISMISSED.

Plaintiffs provide little defense to their claim for negligent undertaking. (Opp'n 34-36.) The TAC is devoid of allegations that would support a duty on Rabo, let alone a duty undertaken by Rabo. (*See generally* TAC.) Plaintiffs do not identify allegations showing that Rabo undertook to protect them, that Rabo undertook to perform services for them, or that Rabo's undertaking was for the benefit of Plaintiffs. (Opp'n 34-36); *see Murray v. Nabors Well Serv.*, 622 S.W.3d 43, 54 (Tex. App. 2020) ("Texas law is clear that to succeed in a negligent undertaking claim, the services the defendant undertakes to perform are for the benefit of the plaintiff, whether the plaintiff is the person being assisted or a third party.")) Plaintiffs fail to point to any allegations satisfying this requirement. (Opp'n 34-36.) Instead, Plaintiffs again simply argue that Rabo may have known about Debtors' scheme and that Rabo wrongfully took Plaintiffs' funds. (*Id.*) Not only are these arguments unsupported by the factual allegations, but they fail to even go to the required elements of a negligent undertaking claim. *See, e.g., Murray,* 622 S.W.3d at 54.

V.    **COUNT FIVE FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR TORTIOUS INTERFERENCE.**

Rabo argued that count five fails to state a claim for tortious interference because Plaintiffs' conclusory allegations do not (1) "identify [the] specific contracts that are the purported basis" for the claim, (2) show that Rabo took any willful or intentional act of interference, or (3) establish that Rabo's conduct "proximately caused their injuries." (MTD 17.) Plaintiffs inadequately respond to these points.

They argue, first, that they alleged "valid contracts with McClain for the purchase and sale of cattle"—pointing to exhibits F and G to the complaint. But exhibits F and G are just checks and invoices. (Opp'n 18–19.) To the extent any of the exhibits amounts to an enforceable contract, the claim still fails because, under Texas law, a tortious interference claim must point to "a specific contract right" that the plaintiff had under the relevant contract. *Inwood Nat'l Bank v. Fagin*, 706 S.W.3d 342, 351 (Tex. 2025) (per curiam) (cleaned up); *see also McDonald Oilfield Ops., LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 751 (Tex. Ct. App. 2019) ("A general statement that a contract . . . exists, without details about the specific terms of the contract, is insufficient to maintain a tortious-interference-with-contract claim."). If a plaintiff fails to establish "details about the specific terms" such that the court can determine whether the defendant interfered with the contract, then the claim fails. *See McDonald Oilfield*, 582 S.W.3d at 751. Thus, Plaintiffs cannot simply point vaguely to the alleged contracts at issue here (whether in exhibits F and G or elsewhere) and claim that Rabo interfered with them without identifying which of their contract rights were interfered with and how.

Second, Plaintiffs argue that Rabo interfered with their contracts with McClain by instructing Mechanics Bank to "accept[] 2B Farms' wires to purchase cattle" while "at the same time, prevent[ing] the payment of checks McClain had presented to 2B Farms on the sale of its

cattle." (Opp'n 19.) But Plaintiffs fail to explain how Rabo's conduct was "independently tortious," i.e., that it "violate[s] some other recognized tort duty," as required to establish the interference element of the claim. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001). The allegations do not establish that Rabo's directive to Mechanics Bank "would be actionable under a recognized tort." *Id.* at 726. Rabo was, after all, a secured creditor of the McClain Debtors and had entered into DACAs with the McClain Debtors and Mechanics Bank which authorized Rabo to engage in the very conduct it did. A secured creditor enforcing its rights against a debtor and a debtor's assets can hardly constitute tortious interference with its debtor's contracts with third parties.

Finally, Plaintiffs assert that "[b]ut for Rabo knowingly allowing [McClain's] fraud to continue as to deposits but not as to withdrawals . . . , 2B Farms would not have sustained a direct loss." (Opp'n 22.) But again, the injury in a tortious interference claim is one to the plaintiff's contract rights. And as explained, Plaintiffs fail to allege how Rabo's conduct deprived them of any "specific contract right" they had under their agreements with McClain. *Inwood Nat'l Bank*, 706 S.W.3d at 351. While Plaintiffs generally allege a cattle purchase arrangement with McClain, they allege only vaguely that Rabo interfered with those contracts by directing Mechanics Bank to freeze McClain's accounts. That is insufficient for a federal pleading. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (explaining that a complaint must show, not just allege, "that the pleader is entitled to relief" (cleaned up)). The claim should be dismissed.

## VI.   PLAINTIFFS DO NOT MEANINGFULLY RESPOND TO RABO'S ARGUMENT THAT THE CIVIL CONSPIRACY CLAIM (COUNT 7) FAILS.

Rabo moved to dismiss Plaintiffs' civil conspiracy claim, among other reasons, because Plaintiffs failed to allege an underlying tort necessary to support the claim. (MTD 8–9.) Indeed, Plaintiffs allege only that Rabo (and Mechanics Bank) prevented "withdrawals, draws, [and]

transfers" from McClain's accounts, while still accepting deposits. (TAC ¶ 133.) That is not tortious, particularly where there is a DACA in place between a debtor, a secured creditor, and the debtor's financial institution. And Plaintiffs fail to show otherwise in their opposition memo. They simply restate the allegations of the complaint—which go mainly to the alleged "object to be accomplished," not whether Rabo or Mechanics Bank committed an underlying tort. *Hunt v. Baldwin*, 68 S.W.3d 117, 133 (Tex. App. 2001). The Court should therefore dismiss Plaintiffs' civil conspiracy claim for lack of an underlying tort. *See Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (explaining that civil conspiracy is a derivative claim requiring an underlying tort).

## VII. PLAINTIFFS' KNOWING PARTICIPATION CLAIM (COUNT 8) FAILS TO ALLEGE THAT RABO TOOK ANY ACT IN FURTHERANCE OF MCCLAIN'S BREACH OF FIDUCIARY DUTY, WITH ACTUAL AWARENESS OF SAME.

Rabo argued that count eight of Plaintiffs' TAC was properly construed as a claim for knowing participation in breach of fiduciary duty. So construed, the claim fails on two grounds: (1) like Plaintiffs' civil conspiracy claim, a knowing participation claim is derivative and therefore requires an underlying claim for breach of fiduciary duty against McClain—which is missing from the TAC; and (2) Plaintiffs fail to allege facts showing that Rabo took specific actions that aided McClain's breach, with "aware[ness] it was participating in [any such] breach" by McClain. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007). (*See* MTD 10–12.) Plaintiffs do not meaningfully dispute Rabo's framing of their claim as one for knowing participation.[4]

---

[4] To the extent Plaintiffs dispute Rabo's framing, Texas courts and the Fifth Circuit interpreting Texas law have made clear that no aiding and abetting claim is available. *See Christopher v. Depuy Orthopaedics, Inc. (In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.)*, 888 F.3d 753, 782 (5th Cir. 2018); *Reynolds v. Sanchez Oil & Gas Corp.*, No. 1-18-940-CV, 2023 WL 8262764, at *9 (Tex. Ct. App. Nov. 30, 2023).

As to the grounds for dismissal, Plaintiffs fail to address the first ground. They argue generally that they have adequately "plead[ed] the requirements" of their claim, pointing to allegations that Rabo questioned the "legitimacy of the transactions through the McClain Accounts," and again to Rabo's inspector's report and Rabo's letter email to Mechanics Bank instructing it to freeze the accounts. (Opp'n 23–24.) While these allegations go to Rabo's argument that Plaintiffs fail to allege particular facts, the fact remains that Plaintiffs fail to allege an underlying claim for breach of fiduciary duty against McClain. Their knowing participation therefore fails necessarily. *See Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. Ct. App. 2020) (explaining that "[k]nowing participation in breach of fiduciary duty is a derivative claim, requiring an underlying breach of fiduciary duty").

On the second ground, Plaintiffs' cited allegations do not establish that Rabo took any "specific action that aid[ed] [McClain's] breach" of fiduciary duty, *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 573 (N.D. Tex. 2024), with "*actual* awareness, at the time of the conduct" that it was participating in the breach, *7X Cattle Co. v. Brandstadt*, No. 6:22-CV-396-JDK-KNM, 2025 WL 852624, at *13 (E.D. Tex. Feb. 28, 2025) (cleaned up), *report and recommendation adopted* 2025 WL 848446 (E.D. Tex. Mar. 18, 2025). The only "specific action[s]" that Plaintiffs point to are "the placement of the DACAs" and the "freezing [of] accounts."[5] But Plaintiffs do not explain how these actions, which are common and commercially reasonable actions taken by many secured lenders when there are defaults on the secured lenders' loans, facilitated McClain's breach of fiduciary duty. Neither do Plaintiffs articulate how Rabo took those actions with "*actual* awareness, at the time of the conduct," that it did so to aid McClain's breach. *7X Cattle*, 2025 WL

---

[5] Plaintiffs also point generally to the allegation that Rabo allowed McClain's fraud to continue. (*See* Opp'n 23–24.) But a knowing participation claim requires "specific action"—not just an omission. *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 573 (N.D. Tex. 2024).

852624, at *13 (cleaned up). The fact that Rabo may have had reason to know of McClain's fraud—vis-à-vis the allegations that Rabo questioned the legitimacy of McClain's transactions and its inspector identified "[p]ossible fraud"—does not establish the degree of knowledge required. Again, "constructive knowledge" of the underlying breach "will not suffice" to establish a knowing participation claim. *Id.*

Whether for lack of an underlying claim against McClain, or because Plaintiffs fail to allege facts establishing the claim, the Court should dismiss Plaintiffs' knowing participation claim for failure to state a claim to relief.

## VIII. PLAINTIFFS' FRAUDULENT TRANSFER CLAIMS (COUNTS 4 & 9) AND BANKRUPTCY CODE CLAIMS (COUNTS 9, 10, & 11) SHOULD BE DISMISSED.

In the opening motion, Rabo argued that Plaintiffs' TUFTA claim and its claims under 11 U.S.C. §§ 548(a)(1)(B), § 550, 551, and/or 502 with respect to the McClain Farms Checks and the 2B Wires should be dismissed as a matter of law. (*See generally* MTD 14-19). Plaintiffs' opposition fails to rebut these arguments. As an initial matter, Plaintiffs' fraudulent transfer claims against Rabo have been critically undermined by their admission that Rabo never received the funds which Plaintiffs wired into the McClain accounts in April 2023. (*See supra* Section I.) In any event, the transfer and other bankruptcy claims fail for additional, independent reasons.

### A.    The McClain Farms Checks.

Rabo cannot be subject to any Chapter 5 liability as a matter of law concerning the dishonored checks because Plaintiffs never held an interest in the McClain Farms Checks, the transfer of which could then be avoided. As described in greater detail in the Motion, section 548(a)(1) of the Bankruptcy Code addresses avoidance of "transfer[s]…of an interest of the debtor in property." 11 U.S.C. § 548(a)(1). Section 101(54) of the Bankruptcy Code defines "transfer" broadly, but makes clear that a transfer can only occur where there is first "property[]…or an

interest in property" to be transferred. 11 U.S.C. § 101(54). As a matter of law, "[a] check or other draft does not of itself operate as an assignment of funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until the drawee accepts it." TEX. BUS. & COMM. CODE § 3.408. Thus, the funds represented by the McClain Farms Checks were never Plaintiffs' property. *See In re Bowen Indus., Inc.*, 48 B.R. 3, 5 (Bankr. W.D. Tex. 1984) (stating "funds represented by [a] check [do] not become property of the estate until [the] check is honored by the drawer bank."). And therefore, no transfer of Plaintiffs' property could have occurred.

Plaintiffs' arguments to the contrary are unavailing. Plaintiffs argue that Congress intended for the Bankruptcy Code's definition of "transfer" to be as broad as possible, which Rabo does not dispute. However, Plaintiffs suggest that "Rabo's active control and management of the McClain Accounts to its benefit during the time period when it was aware of the McClain fraudulent cattle scheme in early April 2023, distinguishes this matter from the case law and argument that it cites in its Motion, and as such the same is applicable to the case at bar." (Opp'n 25-26). Plaintiffs' conclusory arguments fail.

As cited above, the Texas Business and Commerce Code provides that "[a] check or other draft does not of itself operate as an assignment of funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until the drawee accepts it." TEX. BUS. &. COM. CODE § 3.408. With respect to the case at hand, "[a] check or other draft does not of itself operate as an assignment of funds in the hands of [Rabo] available for [the check's] payment, and [Rabo] is not liable on the instrument until [Rabo] accepts it." (*Id.*) Even if Rabo, not Mechanics or McClain, had been making every decision regarding the disposition and non-disposition of funds in the Debtors' Accounts, the fact would remain that the McClain Farms Checks did not grant Plaintiffs an interest in any of the funds in the Accounts, no matter who controlled the

accounts. Without an interest, there can be no transfer. Furthermore, Plaintiffs have not and cannot cite facts showing that Rabo had any intent to hinder, delay, or defraud creditors, nor facts concerning reasonably equivalent value. (*See generally Id.*)

**B.     The 2B Wires.**

With respect to the 2B Wires, Rabo does not dispute that (1) a transfer was made of Plaintiffs' property; (2) the transfer was made within two years of the commencement of Plaintiffs' bankruptcy proceeding; (3) Plaintiffs received less than reasonably equivalent value from McClain in exchange for such transfer; and (4) Plaintiffs likely were insolvent or rendered insolvent at the time of the wire transfers. *See* 11 U.S.C. § 548(a)(1)(B). However, as Rabo asserts and Plaintiffs admit, Rabo was not an initial transferee of the 2B Wires. (*See* Opp'n 32 ("Mechanics Bank was the initial transferee pursuant to Section 550(a) of the Bankruptcy Code"). The parties' only disagreement is as to the correct initial transferee: Plaintiffs claim Mechanics Bank, Rabo claims McClain Feedyard, the owner of the account into which the wires were deposited.

Regardless, courts consistently read section 550 of the Bankruptcy Code as requiring a plaintiff to first bring a successful suit against the initial transferee before recovering the transfer or its value from the subsequent transferee. *See, e.g.*, *Weinman v. Simons (In re Slack-Horner Foundries Co.)*, 971 F.2d 577, 580 (10th Cir. 1992) ("[I]n order to recover from a subsequent transferee the trustee must first have the transfer of the debtor's interest to the initial transferee avoided under § 548"); *see also* MTD 17 n. 5 (listing cases). Accordingly, Plaintiffs' claims with respect to the 2B Wires fail as a matter of law.

Second, regardless of the identity of the initial transferee, Plaintiffs have admitted that Rabo never received the funds, which is also fatal to their claims.

Third, even if Rabo had received the funds attributable to the 2B Wires, Plaintiffs would still have no basis for a claim against Rabo because of the loan obligations owed to Rabo by Debtors. The TAC acknowledges that Rabo made multimillion dollar loans to McClain Feedyards and the other McClain Debtors starting in 2018, and that the approved line of credit on the loan in January 2023 was $55 million. (TAC ¶ 41.) A transfer of property is only avoidable under section 548(a)(1)(B) of the Bankruptcy Code when the debtor/transferor does not receive "reasonably equivalent value" in return for the transfer. 11 U.S.C. § 548(a)(1)(B). Section 548(d)(2)(A) includes in its definition of "value" the "satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). Had Rabo received proceeds of the 2B Wires, such receipt would have partially satisfied the Debtors' outstanding debt on a dollar-for-dollar basis. In other words, any money sent by the Debtors to Rabo would have been sent for "reasonably equivalent value," and could not be avoided as a fraudulent transfer as a matter of law.

Plaintiffs' Count Eleven is based on Count Nine and Ten and asserts Rabo's proof of claim must be disallowed pursuant to section 502(d) of the Bankruptcy Code because "Rabo has not paid the amount of the Avoidable Transfers, or turned over such property, for which Rabo is liable under 11 U.S.C. § 550." (TAC ¶ 160.) Because Plaintiffs' Ninth and Tenth claims fail as a matter of law, so does their Eleventh.

## IX.    PLAINTIFFS FAIL TO EXPLAIN WHY MOST OF THEIR CLAIMS DO NOT BELONG EXCLUSIVELY TO THE TRUSTEE.

Rabo argued that regardless of whether Plaintiffs' claims are adequately pleaded, most of their claims allege derivative injuries pursuable exclusively by the Trustee. Plaintiffs dispute that argument—but seemingly only as to 2B Farms' claims. (*See generally* Opp'n 36–42.). They argue that the claims belong to 2B Farms because: (1) with respect to the TUFTA claim, 2B Farms, not the Trustee, is the proper plaintiff because it accrued when Rabo was in control of McClain's

accounts (*id.* 37; *see also id.* 40–42); and (2) 2B Farms' Chapter 12 plan confirmation order allows

them to bring each of their claims (*id.* 38–40). Neither of these arguments prevails.[6]

### A.    2B Farms' TUFTA Claim Is Derivative.

On the TUFTA claim specifically (Count 4), 2B Farms acknowledges that the Court

previously held that the Trustee alone could assert the TUFTA claim alleged in the prior complaint.

(*See* Opp'n 36–37; *see also* Order Granting in Part & Denying in Part the Trustee's Mot. to

Intervene & Enforce the Automatic Stay, ECF No. 201, at 3–4.) Plaintiffs have now repleaded

their TUFTA claim, alleging a fraudulent transfer of $15M+ attributable to (1) three "Cattle Sale

Checks" that were not honored, and (2) three "Cattle Purchase Wires"—i.e., money 2B Farms

allegedly sent to McClain to purchase cattle, and for which they claim they received no benefit.

(*See* TAC ¶¶ 79–85, 114.) Plaintiffs argue that the TUFTA claim remains 2B Farms' to assert "in

light of the fact that [its] damages primarily occurred and cause of action primarily derived during

a period when Rabo and Mechanics Bank were in control of the McClain Accounts and not

McClain, individually (and, derivatively, therefore, the McClain Trustee)." (Opp'n 37.) And they

also argue that 2B Farms' claim based on the "Checks" and "Wires" is 2B Farms' to assert because

it alleges personal, not generalized injury. (*Id.* 40–42.) These arguments are misplaced.

First, whether Rabo (or Mechanics Bank) had "control of the McClain Accounts" at the

time of the transactions is irrelevant. As explained in the opening brief, the question of whether a

claim is the trustee's vs. a creditor's to assert turns on the alleged injury—that is, whether it is "a

direct injury or one that is derivative of an injury to the debtor." *Buccaneer Energy Ltd. v. Burton*

---

[6] Plaintiffs further argue that counts nine, ten, and eleven are theirs to assert because they arise under the Bankruptcy Code. Rabo did not argue that these claims belonged exclusively to the Trustee. (*See* MTD 19 (arguing only that Plaintiffs' "non-bankruptcy claims" were the Trustee's to assert).)

*(In re Buccaneer Res., LLC)*, 912 F.3d 291, 293 (5th Cir. 2019). Thus, the relevant question is whether the creditor's injury "flow[s] from injury to the debtor." *Id.* The question is not, as Plaintiffs suggest, whether the third-party defendant (Rabo and/or Mechanics Bank) vs. the debtor (McClain) is responsible for the conduct that *caused* the injury. Plaintiffs' argument is therefore inapposite.

Further, whether 2B Farms' injury is personal, not general, is also not the relevant question. As explained in the opening motion, "the test is not whether the creditor alleges a unique or 'personal' injury." (MTD 20 (quoting *Highland Cap. Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petrol., Inc.)*, 522 F.3d 575, 588–89 (5th Cir. 2008)).) Again, the question is whether the creditor's injury is direct vs. derivative, *see In re Buccaneer*, 912 F.3d at 293. As the court put it in *In re Educators Group* (the case Plaintiffs cite), a claim belongs to the Trustee if the creditor "explicitly or implicitly allege[s] harm to the debtor"—"implicitly" being a key word. *Schertz-Cibolo-Universal City, Independent Sch. Dist. v. Wright (In re Educators Grp. Health Tr.)*, 25 F.3d 1281, 1284 (5th Cir. 1994). That is, even where the creditor alleges a seemingly personal claim, the claim is still the Trustee's to assert if the injury "flows from injury to the debtor." *In re Buccaneer*, 912 F.3d at 293. That is why, in *In re Educators Group*, the benefits plan participants' claims for unpaid benefits belonged to the Trustee for the bankrupt plan, even though the participants' claims were individualized. *See* 25 F.3d at 1284–85 (concluding that the participants' claims "that the [plan administrators] negligently managed EGHT, causing EGHT to become insolvent and thus unable to pay the claims of employees of the plaintiff school districts" were derivative). Here, 2B Farms alleges that Rabo coopted funds deposited with McClain and funds McClain intended to disburse to them. While "personal" in the sense that other creditors do not

share the same injury, the claim is still derivative because, at bottom, the claim alleges that *Debtors* owe them funds that Rabo took instead, i.e., injury flowing from injury to the Debtor.

This analysis helps explain why the Fifth Circuit appears to have held that fraudulent transfer claims are derivative claims writ large. *See Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir. 1983). After all, a fraudulent transfer claim "is essentially one for property that properly belongs to the debtor and which the debtor has fraudulently transferred in an effort to put it out of the reach of creditors." *Id.* Thus, the "equitable interest—at least as far as the creditors . . . are concerned—is considered to remain in the debtor." *Id.* Following that reasoning, the Fifth Circuit has held that "it makes the most sense to consider the debtor as continuing to have a legal or equitable interest in the property fraudulently transferred within the meaning of section 541(a)(1)." *Id.* (cleaned up). In short, a fraudulent transfer claim over funds a third party is alleged to have obtained unlawfully from the debtor is necessarily derivative and, therefore, the trustee's to assert.[7]

### B.    The Chapter 12 Plan Confirmation Order Is Irrelevant.

Plaintiffs again raise their novel theory that the Trustee lacks exclusive authority to bring claims under section 541(a)(1) because Plaintiffs' Chapter 12 Plan Confirmation Order reserves for them the right to pursue "specific claims and cause of action against Rabo." (Opp'n 39.) The Court implicitly rejected that theory before, and it should do so again. (*See* Order Granting in Part & Denying in Part the Trustee's Mot. to Intervene & Enforce the Automatic Stay, ECF No. 201,

---

[7] Plaintiffs also argue that 2B Farms can maintain its TUFTA Claim because "Section 544(b) of the Bankruptcy Code permits [them] to exercise the rights of an unsecured creditor in a state law fraudulent transfer avoidance action." (Opp'n 38.) Though Section 544(b) can allow a trustee to exercise the rights of *its own* unsecured creditor, the McClain Debtors are not Plaintiffs' creditors. Section 544(b) could permit the Trustee to exercise the rights of Plaintiffs; it does not permit Plaintiffs to exercise the rights of the Trustee.

at 3–4 (concluding that two of Plaintiffs' claims were assertable only by the Trustee, despite Plaintiffs' argument that they could pursue those claims under the Confirmation Order); *see also* Plaintiffs' Opp'n to Trustee's Mot. to Intervene, ECF No. 179, at 11–14).)

For starters, Plaintiffs assert without authority that an order in a different bankruptcy proceeding can bind what claims a trustee can assert in this proceeding. Ordinarily, only a "judgment" can be binding on a separate bankruptcy proceeding—and only where the elements of res judicata apply. *Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 740 (5th Cir. 1993) ("Thus, a bankruptcy judgment bars a subsequent suit if: 1) both cases involve the same parties; 2) the prior judgment was rendered by a court of competent jurisdiction; 3) the prior decision was a final judgment on the merits; and 4) the same action is at issue in both cases."). Plaintiffs make no effort to show that the Confirmation Order functions as a judgment for res judicata purposes, nor that any of its elements are met.

Plaintiffs' theory springs from a single district court case—a chapter 11 case—where the court explained that "[a]fter [a] reorganization plan is confirmed by the bankruptcy court, the debtor . . . will have standing [only] to bring claims that the debtor reserved in the reorganization plan." *Unsecured Claim Pool Sub-Tr. of Liquid. Tr. of Lilis Energy, Inc. v. Ormand*, No. 4:22-CV-2084, 2023 WL 3006699, at *2 (S.D. Tex. Apr. 17, 2023) (cleaned up). Thus, "[f]or a debtor to preserve a claim, the plan must expressly retain the right to pursue such actions." *Id.* (cleaned up). But whether a debtor reserves or abandons a claim via its reorganization plan does not affect whether, by operation of section 541(a)(1), a claim in a *different* proceeding is deemed property of the debtor's estate vs. that of a creditor (who happens to be a debtor with a reorganization plan). The fact that a claim is reserved in a confirmation plan merely preserves the debtor's right to pursue the claim; but it does not guarantee that the debtor will prevail on the claim. Where, as here,

the claim is swept into the estate under section 541(a)(1) because the claim is derivative, the claim is still the Trustee's alone to assert.

In sum, Plaintiffs fail to show that their non-bankruptcy claims are direct, not derivative. Accordingly, regardless of how those claims are pleaded, the Court should dismiss them on the ground that only the Trustee can assert them.

## **CONCLUSION**

WHEREFORE, Rabo prays that its Motion be granted in its entirety, and that all of the claims against Rabo be dismissed.

DATED: December 23, 2025.

> UNDERWOOD LAW FIRM, P.C.
> Thomas C. Riney, SBN: 16935100
> W. Heath Hendricks, SBN: 240556451
> 500 South Taylor, Suite 1200, LB 233
> Amarillo, Texas 79101
> Telephone: (806) 376-5613
> Facsimile: (806) 379-0316
> Email: tom.riney@uwlaw.com
> Email: heath.hendricks@uwlaw.com
>
> --and—
>
> RAY QUINNEY & NEBEKER P.C.
> Michael R. Johnson *(Pro Hac Vice)*
> Matthew M. Cannon *(Pro Hac Vice)*
> Austin C. Nate  *(Pro Hac Vice)*
> 36 South State, Suite 1400
> Salt Lake City, UT 84111
> Telephone:  (801) 532-1500
> Facsimile:  (801) 532-7543
> Email:  mjohnson@rqn.com
> Email:  mcannon@rqn.com
> Email:  anate@rqn.com
>
> */s/ Michael R. Johnson*
> Michael R. Johnson
> *Attorneys for Rabo AgriFinance LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2025, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in this case.

*/s/ Michael R. Johnson*
Michael R. Johnson

1730706