## Exhibit A

**Movants' PowerPoint Presentation**

HB: 4918-8143-7832.1

# Movants' Joint Supplement to Motions to Dismiss Plaintiffs and Intervenors' First Amended Complaint

**February 17, 2026**

- First Amended Federal Complaint (**ECF No. 213**)
- *Rabo AgriFinance LLC's Motion to Dismiss and Brief in Support* (**ECF Nos. 264 and 265**)
- *Defendants HTLF's and Ragland's Motion to Dismiss and Brief in Support* (**ECF No. 259 and 260**)
- *Defendant Mechanics Bank's Motion to Dismiss and Brief in Support* (**ECF Nos. 280 and 281**)
- Plaintiffs' and Intervenors' Amended Omnibus Response to the three motions (**ECF No. 319**)
- Defendants' respective replies (**ECF Nos. 329, 340 & 343**)

# List of Claims and Respective Defendants

Count One – Conversion (Rabo and Mechanics)

Count Two – Fraud (All Defendants)

Count Three - Negligence and Gross Negligence in Lending (All Defendants)

~~Count Four – Conspiracy to Commit Gross Negligence (withdrawn) (All Defendants)~~

Count Five – Negligence in Hiring, Supervision, or Management (All Defendants)

Count Six – Negligent Undertaking (All Defendants)

Count Eight – Tortious Interference with Contract (Rabo and Mechanics)

Count Nine – Civil conspiracy (to tortiously interfere) (Rabo and Mechanics)

Count Ten – Aiding & Abetting/Knowing Participation in Fraud (All Defendants)

Count Eleven – Civil conspiracy to commit fraud, tortious interference, conversion, and BOFD (All Defendants)

Count Twelve – Breach of Fiduciary Duty and Aiding & Abetting/Knowing Participation in BOFD (Rabo and Mechanics)

Count Thirteen – RICO (Rabo and Mechanics)

Count Fourteen – RICO  (HTLF and Ragland)

Count Fifteen – Breach of Intercreditor Agreement (Rabo)

~~Count Sixteen – Breach of Letter of Understanding Agreement (Rabo)~~

2

# Proposed Roadmap for Presentation

Counsel for the Parties conferred and concluded that Plaintiffs would respond after Defendants first addressed all claims.

The Defendants have prepared this joint PowerPoint presentation and have grouped Plaintiffs' claims into the following five categories:

    1 – Direct Fraud Claims (Counts Two, Thirteen, and Fourteen)

    2 – Other Intentional Tort Claims (Counts One, Eight, and Twelve)

    3 – Participatory Intentional Tort Claims (Counts Nine through Twelve)

    4 – Negligence Claims (Counts Three, Five, and Six)

    5 – Breach of Contract (Count 16)

Unless directed otherwise by the Court, the Defendants will address one claim at a time to avoid duplication and otherwise streamline the arguments.

# Background – Procedural History

# Posture/Context of FAC

- It has been over thirty-two (32) months since the Debtors filed their Chapter 7 Bankruptcy cases.

- The parties have engaged in extensive discovery concerning the Defendants' respective business dealings with Debtors:
  - Numerous discovery requests have been served and answered;
  - Defendants have produced over 67,000 pages of documents;
  - Numerous depositions, including of six (6) Rabo employees;
  - Over 30 subpoenas served and answered.

# Posture/Context of FAC

The FAC is the sixth iteration of the Complaint.

- Complaint 1 – filed April 21, 2023 – 71 paragraphs – Pls: AgTexas/Thorlakson Defs: Rabo, Debtors, B. McClain estate.
- Complaint 2 – filed April 28, 2023 – 106 paragraphs – Pls: AgT/Thor & Intervenors Defs: Rabo, Debtors, B. McClain estate.
- Complaint 3 – filed March 5, 2024 – 101 paragraphs – Pls: AgT/Thor & Intervenors Defs: Rabo, HTLF, Ragland, Mech Bank, Goad.
- Complaint 4 – filed March 21, 2024 – 101 paragraphs – Pls: AgT/Thor & Intervenors Defs: Rabo, HTLF, Ragland, Mech Bank, Goad.
- Complaint 5 – filed March 14, 2025 – 211 paragraphs – Pls: AgT/Thor & Intervenors Defs: Rabo, HTLF, Ragland, Mech Bank, Goad.
- Complaint 6 – filed August 19, 2025 – 392 paragraphs – Pls: AgT/Thor & Intervenors Defs: Rabo, HTLF, Ragland, Mech Bank, Goad.

# Posture/Context of FAC

- Defendants previously moved to dismiss Complaints "4" & "5" and filed briefs <span style="color:red">outlining the deficiencies</span> in those respective pleadings.

- In Plaintiffs' FAC (Complaint 6), Plaintiffs "cite to documents and deposition testimony of fact witnesses supporting those allegations in the Complaint." (Pls' Opp'n ¶ 19.)

- The claims in the FAC were originally brought by 56 Plaintiffs but three of the Plaintiffs—Priest Cattle Company, Ltd, Priest Victory Investment LLC, and Eddie Stewart—<span style="color:red">have dismissed</span> (or will today) <span style="color:red">their claims</span>.

- Accordingly, 53 Plaintiffs remain.

# Posture/Context of FAC

- Plaintiffs have filed numerous Complaints
- Plaintiffs have had the benefit of two prior motions to dismiss
- Plaintiffs have had the benefit of over two years of discovery

- As explained and argued in Defendants' briefs, Plaintiffs continue to assert no cognizable claim

- Given the history/posture at issue, the FAC should be dismissed WITH PREJUDICE

# Background

- Rabo was the <span style="color:green">commercial lender</span> for McClain's multi-state cattle operations. (FAC 301 ("Rabo is a lender, but is not a bank."))



Case 24-02007-swe    Doc 373-1    Filed 02/17/26    Entered 02/17/26 16:04:42    Desc
Exhibit A-B Joint PowerPoint Presentation of Rabo    Mechanics and HTLF    Page 10 of 102

RABO

# Background

- Rabo's lending relationship with Debtors started in 2018.

- During the relationship, Rabo "advanced nearly $2 million In land-backed loans and more than $50 million in working capital to McClain." (FAC 84).

- In January 2023, Rabo increased McClains' credit line approximately $7 million. (FAC 114).

- In February 2023, Rabo conducted a physical inspection at McClain's Texas facilities and despite McClain's claims that they possessed approximately 80,000 head of cattle, "only 8,000 cattle were present." (FAC 146.)

- A Chief Restructuring Officer was retained in early April 2023.

- On April 18, 2023, Mr. McClain died by suicide within days of the CRO taking over operations and beginning his financial investigation.

RABO

# Plaintiffs' Agreements with Debtors and Dealer Trust Claims

- Plaintiffs generally allege that they purchased cattle from McClain for feeding and care at a McClain feedyard, and that once the cattle were ready to be sold, McClain would facilitate the sale of the cattle and remit sales proceeds to Plaintiffs, less McClain's costs and handling fees. (FAC 13-65)

- In the weeks following Mr. McClain's passing, Plaintiffs and dozens others filed <span style="color:red">dealer trust claims</span> with the USDA claiming that they had not been paid for cattle that were purportedly sold to or by McClain.

Case 24-02007-swe   Doc 373-1   Filed 02/17/26   Entered 02/17/26 16:04:42   Desc
Exhibit A/B Joint PowerPoint Presentation of Rabo   Mechanics and HTLF   Page 13 of 102
RABO Joint PowerPoint Presentation of Rabo

# Plaintiffs' Agreements & Dealer Trust Claims

**Cattle Feeding Agreement**

Dated 7/12/2022

This agreement exists to identify the partnership of McClain Feedyard and AJ JACQUES LIVING TRUST whom are involved in a cattle feeding arrangement. The arrangement allows for AJ JACQUES LIVING TRUST to purchase the calves from McClain Feedyard in total. At the time of purchase the cattle have also been contracted for sale, at a pre-determined price, after pounds have been added to the cattle through McClain Feedyard feeding them at McClain Feedyard, Friona, TX. McClain Feedyard fattens the cattle by certain feed and ingredients that McClain Feedyard provides at its expense. McClain Feedyard is also responsible for providing processing, medicine, yardage, and trucking at its expense.

As the fattened cattle are delivered, McClain Feedyard will distribute the profit as follows:

Sales price of fattened cattle

Minus

Cost stated above that McClain Feedyard incurs

Minus

Original cost of calves, returned to AJ JACQUES LIVING TRUST

Equals profit

Profit divided 1/3 McClain Feedyard and 2/3 AJ JACQUES LIVING TRUST

This agreement is for 175 head of steers at a total weight of 103145 lbs at a price of 1.773 per pound. Total cost for this group of cattle is $182,876.09 which AJ JACQUES LIVING TRUST has paid to McClain Feedyard. Sales contract for 1.7238 @ 775.

AJ JACQUES LIVING TRUST

McClain Feedyard

**MCCLAIN FEEDYARD INC.**
824 MULLINS LANE
BENTON KY. 42025

BILL TO: A.J JACQUES
LIVING TRUST DATED
APRIL 21, 2000 AS AMENDED
AND RESTARTED

7/12/2022

| HEAD | SEX | WEIGHT | PRICE/LB | TOTAL COST |
|------|-----|--------|----------|------------|
| 175 | ST | 103145 | 1.773 | $182,876.09 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | $0.00 | |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| 175 | | | | $182,876.09 |

**PROJECTED CLOSE OUT**

| | |
|---|---|
| HEAD | 175 |
| COST | 182876.09 |
| BOUGHT WEIGHT | 103145 |
| $ SOLD | 233784.44 |
| SELL WEIGHT | 135625 |
| COST/GAIN | 30856 |
| LBS GAINED | 32480 |
| PROFIT | 20052.35 SPLIT |

Case 24-02007-swe   Doc 373-1   Filed 02/17/26   Entered 02/17/26 16:04:42   Desc
Exhibit A-C Joint PowerPoint Presentation of Rabo   Mechanics and HTLF   Page 14 of 102
RABO

# USDA Issues Report on Dealer Trust Claims

- The USDA engaged in a six-month-long investigation, analyzing Debtors' operations and the dealer trust claims.

- On June 9, 2023, with update on October 12, 2023, the USDA issued its *Investigative Report Synopsis* (the "USDA Report").
  - $122,295,867.46 in total trust claims filed
  - $2,930,940.33 were preliminarily deemed "valid"
  - $119,364,927.13 were preliminarily deemed "invalid"
  - The proceeds from the liquidation of Debtors' cattle inventory (plus other funds) provided $2,645,850.14 in potential "Trust Assets"

# USDA Report on Dealer Trust Claims



RABO

# USDA Report – Invalid Trust Claims

"Claims received from companies and individuals that had <span style="color:red">unsatisfied livestock feeding arrangements</span> after purchasing livestock in total from McClain with either written or verbal promise of future sale gains equated to <span style="color:red">$119,364,927.13</span> of the trust claims received by USDA . . . These claims were alleged not subject to dealer trust provisions. <span style="color:red">USDA investigators discerned that the invalid claims were not timely, and/or were part of livestock feeding arrangements comprised of both feeding contracts and/or a fraudulent livestock financial scheme as purported</span>, all of which were not defined as dealer activity subject to the trust." (USDA Report at 4-6.)

# Bankruptcy and Discovery

- In May 2023, the Debtors filed their Chapter 7 Bankruptcy cases.

- The discovery and investigations over the following months, started to shed light on the business operations of McClain.

- Thousands of communications, bank records, and other documents were produced and reviewed.

# The Debtors' Fraudulent Scheme

Case 24-02007-swe   Doc 373-1   Filed 02/17/26   Entered 02/17/26 16:04:42   Desc
Exhibit A Joint PowerPoint Presentation of Rabo   Mechanics and HTLF   Page 18 of 102
Exhibit A
RABO





# Introductory Arguments

19

RABO

# Two Fundamental and Fatal Flaws in FAC

- Absence of factual allegations showing that Rabo knew about the fraudulent scheme.

- Absence of factual allegations concerning Rabo's statements to, interactions with, or knowledge concerning each of the 53 Plaintiffs.

# Absence of Cognizable Claims is Predictable

- The fraudulent scheme alleged is that McClain/Debtors were not buying cattle with Plaintiffs' funds.

- Such a scheme fundamentally undermines Rabo's security and otherwise provides no benefit to Rabo.

- Furthermore, Plaintiffs acknowledge that Rabo provided an additional $7 million to Debtors in January 2023, which was one month before the February inspection that Plaintiffs allege led to the house of cards crumbling, and Plaintiffs also devote the vast majority of its sixth Complaint to allegations concerning Rabo's failure to more quickly investigate or follow-up on purported red flags.

- These realities help explain why—despite years of discovery, access to tens of thousands of Rabo documents, and six depositions of Rabo employees—Plaintiffs cannot allege facts showing that Rabo knew about, let alone knowingly engaged in, the fraudulent scheme.

- It is likewise predictable that Plaintiffs have failed to identify any legal authority that would support a duty owed to Plaintiffs by Rabo or otherwise support holding Rabo liable to these 53 Plaintiffs for Rabo's alleged failures to heed red flags with its borrowers.

# Standard of Review

# Rule 8(a)/12(b)(6) Standard of Review (All Defs.)

| Well-Pled Claim | Claim Fails 12(b)(6) |
|---|---|
| Each claim must be:<br><br>1. **Plausible** – More than a sheer possibility. Plausible means something more than conceivable, but less than probable.<br><br>2. **Legally cognizable** – If plaintiff proves claim, then plaintiff is entitled to relief. Focuses on whether each plaintiff has a legal claim for relief.<br><br>Sufficient factual substance to allow the court to make a **reasonable inference** that each defendant is liable. An inference is reasonable when **common sense** and **judicial experience**, considering the surrounding facts, requires the inference be drawn.<br><br>The quantity **_and_** quality of allegations both matter. | No legally cognizable claim. E.g.,<br><br>• Derivative claims / lack of standing.<br><br>Insufficient facts to support cognizable claim. E.g.,<br><br>• Negligence / breach of duty → fails to plead facts supporting **duty** or **proximate causation**.<br><br>• Breach of contract → fails to identify **contract**.<br><br>• Intentional torts → fails to plead **knowledge** and **intent**.<br><br>• Conspiracy → no (i) **prior agreement** to ultimate harm or (ii) **prior awareness** of conspiracy itself.<br><br>• **Conclusory allegations** → _not_ accepted as true |
| **Key Citations**: Fed. R. Civ. P. 8(a), 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ||

# Rule 9(b) Heightened Pleading Standard (All Defs.)

| Well-Pled Fraud Claim | Claim Fails Rule 9(b) |
|---|---|
| 1. *Each* fraudulent statement or omission made *to each Plaintiff*.<br><br>2. *Each* speaker of *each* statement.<br><br>3. *When* each statement/omission was made.<br><br>4. *Why* each statement/omission was made.<br><br>5. *Why* each statement/omission was fraudulent.<br><br>6. Knowledge or recklessness of speaker.<br><br>7. Detrimental reliance on *each* stmt/omission. | General allegations that lack particularity.<br><br>Conclusory allegations.<br><br>Unwarranted deductions of fact.<br><br>Group pleading that fails to separate wrongdoing of one defendant from wrongdoing of another.<br><br>Facts establishing only the possibility or conceivability of fraud. |

**Key Citations**: Fed. R. Civ. P. 9(b); *Benchmark Electronics*, 343 F.3d 719 (5th Cir. 2003)

"Even assuming that Shadle did have a duty to disclose under the circumstances here, Plaintiffs have failed to provide **any details as to the communications between the parties** such that the Court could determine the place in which the omissions should have appeared or the way in which the omitted facts made the representations misleading." *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 747 (N.D. Tex. 2014) (emphasis added)

# *Three Banking Concepts Specific to Mechanics*

1. Depository banking relationship results in the bank owing an ordinary debt to the account holder; *i.e.*, Mechanics owed an ordinary debt to McClain entities to repay deposits. No dominion or control by Mechanics, no fiduciary or trustee obligations.

2. Routine advances on uncollected deposits do **not** create a loan or debt to the account holder; *i.e.*, Mechanics honoring items in a routine fashion even if account balance fell below zero did not create a debt from McClain to Mechanics.

3. California UCC "**midnight deadline**" = midnight *the next banking day* following receipt of item. Cal. Com. Code § 4104(a)(10).
   ➢ Complaint fails to allege a "true overdraft" occurred; *i.e.*, that provisional credit extended beyond the midnight deadline.



Case 24-02007-swe Doc 373-1 Filed 02/17/26 Entered 02/17/26 16:04:42 Desc
Exhibit A - Joint PowerPoint Presentation of Rabo Mechanics and HTLF Page 28 of 102

## *Routine Advances ≠ Antecedent Debt (Public Policy)*

[R]outine advances against uncollected deposits do not create a "debt" to the bank. A contrary rule would be inconsistent with the parties' expectations and their view of the banking relationship. A contrary rule would pin banks between the strong federal policy in favor of expedited funds availability and a Bankruptcy Code that treats advances as loans and their reduction as preferences. Such a rule might cause banks to terminate a service that is invaluable in today's economy. At a minimum, it would immensely complicate many bankruptcy proceedings.

*Laws v. United Missouri Bank of Kansas City, N.A.,* 98 F.3d 1047, 1051 (8th Cir. 1996) (citations omitted).

# *Routine Advances ≠ Antecedent Debt (Public Policy)*

[R]outine advances against uncollected deposits do not create a "debt" to the bank. A contrary rule would be inconsistent with the parties' expectations and their view of the banking relationship. A contrary rule would pin banks between the strong federal policy in favor of expedited funds availability and a Bankruptcy Code that treats advances as loans and their reduction as preferences. Such a rule might cause banks to terminate a service that is invaluable in today's economy. At a minimum, it would immensely complicate many bankruptcy proceedings.

*Laws v. United Missouri Bank of Kansas City, N.A.,* 98 F.3d 1047, 1051 (8th Cir. 1996) (citations omitted).

# Direct Fraud Claims

Count 2 – Fraud (All Defendants)

Counts 13 & 14 – RICO (predicate acts wire fraud, mail fraud, and bank fraud)

  Count 13 – RICO against Rabo and Mechanics
  Count 14 – RICO against HTLF and Ragland

# Fraud – Elements

(1) a material misrepresentation,

(2) made with knowledge of its falsity or asserted without knowledge of its truth

(3) made with the intention that it should be acted on by the other party

(4) which the other party relied on and

(5) which caused injury.

*Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018).

# (All) Fraud by Nondisclosure– Elements

(1)  the defendant failed to disclose material facts to the plaintiff that the defendant had a duty to disclose

(2)  the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts

(3)  the defendant was deliberately silent when she had a duty to speak

(4)  by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting

(5)  the plaintiff relied on the defendant's nondisclosure; and

(6)  the plaintiff was injured as a result of acting without that knowledge."

*Frankoff v. Norman*, 448 S.W.3d 75, 84 (Tex. Ct. App. 2014).

# (HTLF) Plaintiffs make no allegations of any fraud by HTLF

- No allegations of any representations made by HTLF
- No allegations of any partial disclosures
- No allegations of any dealings creating a duty to disclose
- No allegation that HTLF handled Plaintiffs' checks
- No allegation that HTLF processed Plaintiffs' transactions
- No allegations of any relationship between Plaintiffs and HTLF

HTLF's processing of 2B Farms' transactions with McClain is not a warranty of McClain's business to unknown fourth-parties.

# (HTLF) Plaintiffs were not parties to the alleged check kite.



- Not a true check kite
- Net result is McClain has more cash available
- Plaintiffs are 4th Parties to HTLF

# (HTLF) Plaintiffs were not the victims of the alleged check kite.

Only HTLF and 2B Farms directly suffered losses from the alleged check kite.

"The victim in a check kiting scheme is the check kiter's bank that honored checks for which the check kiter did not make covering deposits, not the check kiter and not the check kiter's creditors."
   *In re Able Body Temp. Servs., Inc.*, 626 B.R. 643, 681 (Bankr. M.D. Fla. 2020)

**Plaintiffs were defrauded by McClain—Not by HTLF. Their direct fraud claims against HTLF and Ragland must be dismissed.**

# (Rabo) No Claim for Fraud

Case 24-02007-swe    Doc 373-1    Filed 02/17/26    Entered 02/17/26 16:04:42    Desc
Exhibit A Joint PowerPoint Presentation of Rabo    Mechanics and HTLF    Page 36 of 102
RABO
Exhibit A

- "Here, the Defendants made misrepresentations to Plaintiffs and Intervenors as shown herein, both directly and through McClain recklessly without any knowledge of the truth and as a positive assertion." (FAC 198.)

- The allegation is conclusory and unsupported.

- What did Rabo represent to the 53 Plaintiffs?

- No factual allegations showing that Rabo "made a material representation that was false" and that "the plaintiff[s] actually and justifiably relied upon the representation and suffered harm as a result." *Burroughs v. APS Int'l, Ltd.*, 93 S.W.3d 155, 161 (Tex. Ct. App. 2002).

# RICO

- Count Thirteen – RICO against Rabo and Mechanics
- Count Fourteen – RICO against HTLF and Ragland

- Both based on the predicated acts of wire fraud, mail fraud, and bank fraud.

# Elements of a RICO Claim

- Three common elements of a RICO claim under § 1962:
  - (1) A person who engages in
  - (2) a **pattern** of racketeering activity
  - (3) connected to the acquisition, establishment, conduct, or control an **enterprise**.

- A **pattern** requires (i) predicate acts of racketeering, and (ii) a pattern of such acts.
  - Fraud predicates evaluated under Rule 9(b) pleading standard.

- An **enterprise** can be either (i) an entity or (ii) an association in fact.

*In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993).

Case 24-02007-swe    Doc 373-1    Filed 02/17/26    Entered 02/17/26 16:04:42    Desc
Exhibit A - Joint PowerPoint Presentation of Rabo    Mechanics and HTLF    Page 40 of 102

HTLF

# Alleged RICO predicates fail under 9(b) and as a matter of law (HTLF/Ragland).

- No credible allegations to support any fraud predicates.
  - No allegations of specific communications to/from HTLF or Ragland. Insufficient under 9(b).
    - *Tel-Phonic Servs. Inc. v. TBS Intern. Inc.,* 975 F.2d 1134, 1139 (5th Cir. 1992).
  - The check kite was not a fraud on Plaintiffs/Intervenors.

- Wire and mail fraud:
  - Refers to activity through mail or wires (e.g., phone or internet lines) with the intent to defraud.
  - Communications and transactions between McClain and 2B Farms.
  - Processing transactions, without more, insufficient to support mail/wire fraud predicate.

- Bank fraud only actionable by financial institutions.

# Complaint fails to plead a pattern of racketeering (HTLF/Ragland).

- Requires (i) a relationship between predicate acts, and (ii) the acts must constitute or threaten long-term continuity of criminal activity.

- No pattern –
  - Reagor Dykes check kite was unrelated and did not relate to the alleged enterprise.
  - Complaint tries to conflate HTLF/Ragland conduct with Mechanics/McClain/Rabo conduct.

- No continuity –
  - A closed-period theory of racketeering conduct must last at least a year to be actionable. *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992)
  - According to the Complaint, the alleged conduct lasted less than four months. *See Complaint* ¶ 218, 357-58.

# Complaint fails to plead a sufficient enterprise (HTLF/Ragland).

- The alleged enterprise is not <u>separate</u> from the alleged pattern of racketeering activity.

  - The enterprise allegedly existed to conduct racketeering activity against only Plaintiffs/Intervenors. Complaint ¶ 356.

  - "An enterprise created by the alleged racketeering activity itself . . . is obviously not sufficient to plead the existence of an enterprise 'separate and apart from the pattern of racketeering activity in which it engages.'" *Zastrow v. Houston Auto Imps. Greenway, Ltd.*, 789 F.3d 553, 561 (5th Cir. 2015).

- Complaint does not sufficiently allege the enterprise has a common purpose of conducting a pattern of racketeering activity.

  - *U.S. v. Shows Urquidi*, 71 F.4th 357, 383 (5th Cir. 2023).

- Complaint does not sufficiently allege the enterprise had any communications, organizational structure, or connections between all three members.

  - *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015).

41

Case 24-02007-swe    Doc 373-1    Filed 02/17/26    Entered 02/17/26 16:04:42    Desc
Exhibit A- Joint PowerPoint Presentation of Rabo    Mechanics and HTLF    Page 42 of 102

HTLF
Exhibit A- Joint

# (Rabo) No RICO Violation

- Thirty-four (34) of the allegations in purported support of their RICO claim appear to be lifted directly from another court filing, in another state, involving none of the Plaintiffs, citing unattached exhibits, and seeking relief for a non-party. (FAC 319-353)

# (Rabo) No RICO Violation

- The few allegations that appear to be potentially relevant to Plaintiffs fall far short of satisfying pleading requirements for a RICO claim.

- The purported "seven-step methodology" for the alleged racket is unsupported and illogical.

- The allegations fail to support the fraud predicates. *Tel-Phonic Servs. Inc. v. TBS Intern. Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

- The so-called "final liquidation" purportedly occurred right after Rabo loaned another $7 million and was at the height of its loan exposure—all leading to an over-$50 million loss to Rabo.

- No credible facts supporting "looting trust accounts" or "installing a fixer."

# Other Intentional Tort Claims

Count One – Conversion (Rabo and Mechanics)

Count Eight – Tortious Interference with Contract (Rabo and Mechanics)

Count Twelve – Breach of Fiduciary Duty (Rabo and Mechanics)

# (All) Conversion Elements

Each Plaintiff must allege facts showing:

(1) it owned or had a right to possession of the property;

(2) the defendant assumed and exercised dominion and control over the property inconsistent with plaintiff's rights;

(3) the defendant refused plaintiff's demand for return of the property.

*Edge Petrol. Operating Co. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292, 306 (5th Cir. 2007); *see also United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012).

# (All) Conversion Elements – Money

When alleged conversion is of funds, must show:

(1) delivered for safekeeping;

(2) intended to be kept segregated;

(3) substantially in the form in which it is received or an intact fund;

(4) not the subject of a title claim by the keeper.

*Edge Petrol. Operating Co., Inc. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292, 308 (5th Cir. 2007).

47

RABO
Exhibit A

# (Rabo) No Conversion – Unsupported

- Plaintiffs provide one example where cattle were purportedly taken and sold at Rabo's direction – the 489 heifer owned by Priest Cattle Company, Ltd. (FAC 191)

- That party has <span style="color:red">dismissed its claims</span>.

# (Rabo) No Conversion – Unsupported

- Plaintiffs' payments consisted of checks and/or wire transfers that resulted in funds being deposited in Debtors' bank accounts along with all other deposited funds.

- Such transactions and accounts understandably fall far short of satisfying the requirements for a potential conversion claim based on funds. *Edge Petrol. Operating Co., Inc. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292, 308 (5th Cir. 2007).

MED

# *Depository = Mere Conduit; No Dominion/Control*

The Bankruptcy Code does not define "initial transferee," and this circuit has not articulated a definition. Other circuits that have, however, use a **dominion or control test** to determine whether a party is an initial transferee. Under this test, a party that receives a transfer directly from the debtor will not be considered the initial transferee unless that party gains actual dominion or control over the funds. In *Bonded,* the court held that **the intermediary party was not the initial transferee because it held the funds "only for the purpose of fulfilling an instruction to make the funds available to someone else." Adopting the dominion or control test** ...

*Matter of Coutee*, 984 F.2d 138, 140–41 (5th Cir. 1993) (citing *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890 (7th Cir.1988); *In re Chase & Sanborn Corp.,* 848 F.2d 1196 (11th Cir.1988); *In re Columbia Data Products, Inc.,* 892 F.2d 26 (4th Cir.1989); *In re Bullion Reserve of North America,* 922 F.2d 544 (9th Cir.1991); *In re Baker & Getty Financial Services, Inc.,* 974 F.2d 712 (6th Cir.1992)).

Case 24-02007-swe   Doc 373-1   Filed 02/17/26   Entered 02/17/26 16:04:42   Desc
Exhibit A - Joint PowerPoint Presentation of Rabo   Mechanics and HTLF   Page 52 of 102
MEA

# *No Pleading of Dominion or Control by Mechanics*

- Mechanics is the only Defendant who served as the depository bank for McClain and Mechanics was subject to a DACA.

- Not a single allegation of dominion or control by Mechanics standing alone anywhere in the complaint.

- "Rabo and Mechanics…" pled 55 times. Also pled: "line of credit" and "deposit account control agreement." Standard lender/ borrower/depository bank tripartite relationship.

- "Defendants exercised control…" pled 37 times. Impermissible group pleading. Does not permit **reasonable inference** of Mechanics' liability given status as depository bank.

# Tortious Interference Elements

(1) an existing contract subject to interference,

(2) a willful and intentional act of interference with the contract,

(3) that proximately caused the plaintiff's injury, and

(4) caused actual damages or loss.


*Mr. W Fireworks, Inc. v. NRZ Inv. Grp., LLC*, 677 S.W.3d 11, 26 (Tex. Ct. App. 2023).

# Tortious Interference – Willful and Intentional Requirements

- A plaintiff must allege facts showing "that the defendant was more than a willing participant and knowingly induced one of the contracting parties to breach its obligations under a contract."

- *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. Ct. App. 2011).


- The intentional and willful element requires that "[t]he interfering party . . . [knew] of the existence of a contract between the plaintiff and a third party."

- *CPM Consulting LLC v. Capsugel US, LLC*, No. 3:17-CV-3059-S, 2019 WL 3769651, at *2 (N.D. Tex. Aug. 9, 2019) (cleaned up).

RABO

# (Rabo) No Tortious Interference

- First, Plaintiffs fail to allege facts showing that Rabo knew of the contracts between McClain and each of the Plaintiffs.

- Second, the FAC is devoid of allegations showing that Rabo knowingly interfered with each of those contracts.

- Third, and relatedly, Rabo could not have proximately caused Plaintiffs' alleged damages where it was unaware of the contracts.

Case 24-02007-swe    Doc 373-1    Filed 02/17/26    Entered 02/17/26 16:04:42    Desc
Exhibit A Joint PowerPoint Presentation of Rabo    Mechanics and HTLF    Page 56 of 102

RABO

# (Rabo) No Tortious Interference

- Fourth, Plaintiffs provide no facts showing that Rabo "knowingly induced [McClain] to breach its obligations under a contract." *Funes*, 352 S.W.3d at 213.

- Fifth, insofar as Plaintiffs are arguing that the alleged interference occurred through Rabo's acceptance of payments from McClain pursuant to their loan agreements, there could be no interference, not to mention the drastic chilling and public policy problems of subjecting lenders to such a claim.

- Sixth, Rabo's security interest, which is referenced by Plaintiffs, naturally included all assets, including contract rights and all proceeds of collateral.

**COUNT 12:**
*Breach of Fiduciary duty and Knowing Participation or Aiding & Abetting BOFD(Rabo & Mechanics)*

| Elements | Limitations on BOFD |
|---|---|
| **Breach of Fiduciary Duty ("BOFD"):**<br><br>1. Defendant was *each* Plaintiff's direct fiduciary.<br><br>2. Breach: did Defendant fail to meet fiduciary obligations?<br><br>3. Causation: Defendant's breach caused injury to Plaintiff.<br><br>4. Damages resulting from breach.<br><br>***Knowing* participation in BOFD:**<br><br>1. Existence of a fiduciary relationship involving each Plaintiff (see above).<br><br>2. Third party had ***knowledge*** of the relationship.<br><br>3. Third party ***knew*** that it participated in breach. | 1. Banks and lenders do not owe general duty of care to non-customers/third parties.<br><br>2. Banks and lenders do not owe fiduciary duties to their own customers.<br><br>3. Bank only owes fiduciary duty to non-customer if bank ***knows*** customer is holding funds on deposit in fiduciary capacity.<br><br>4. Atypical transactions, procedural oddities, conclusory allegations fail to raise ***plausible inference*** of knowledge.<br><br>5. Trust requires (i) trust agreement, (ii) parties to trust agreement, (iii) res, (iv) trust purpose. |

Case 24-02007-swe   Doc 373-1   Filed 02/17/26   Entered 02/17/26 16:04:42   Desc
Exhibit A - Joint PowerPoint Presentation of Rabo   Mechanics and HTLF   Page 59 of 102

**COUNT 12:**
*Participation in Breach of Fiduciary Duty (Rabo & Mechanics)*

| COUNT 12 FAILS 12(b)(6) | |
|---|---|
| • Failure to plead specific facts supporting fiduciary duty McClain owed to each plaintiff<br><br>• Failure to plead specific facts supporting knowledge of each fiduciary relationship<br><br>• Failure to plead *how* Defendants participated in a knowing breach<br><br>• Allegations of overdrafts, credit extensions, failures to enforce financial controls and other red flags are conclusory, not factual, and do not permit a reasonable inference of *knowing* participation | • Failure to plead that McClain or any Plaintiffs informed Defendants of fiduciary relationship or funds held in trust<br><br>• Failure to plead Mechanics Bank knew or had reason to know that McClain held depository funds in trust<br><br>• Retroactive relabeling of ordinary course transactions between McClain and Plaintiffs (his customers) as trust/fiduciary fails<br><br>• Failure to plead specific trust agreement, parties to trust agreement, purpose of trust, or knowledge of trust agreement |



**COUNT 12:**
*Participation in Breach of Fiduciary Duty (Rabo & Mechanics)*

| 7 U.S.C.A. § 217b(b) |
|---|

(a) [establishing trust]...

**(b) Preservation of trust**

An ***unpaid cash seller shall lose the benefit of a trust*** under subsection (a) if the unpaid cash seller has not preserved the trust by giving written notice to the dealer involved and filing such notice with the Secretary--

**(1)** within 30 days of the final date for making a payment under section 228b of this title in the event that a payment instrument has not been received; or

**(2)** within 15 business days after the date on which the seller receives notice that the payment instrument promptly presented for payment has been dishonored.

**(c) Notice to lien holders**

When a dealer receives notice under subsection (b) of the unpaid cash seller's intent to preserve the benefits of the trust, ***the dealer shall, within 15 business days, give notice*** to all persons who have recorded a security interest in, or lien on, the livestock held in such trust.

## *No Evidence of Fiduciary Relationship in Complaint*

The existence of a fiduciary relationship, outside of formal relationships that automatically give rise to fiduciary duties, is usually a fact intensive inquiry. ***However, when the evidence offered is no evidence of a fiduciary relationship, the issue can be determined as a matter of law***. ***Under Texas law, "a fiduciary duty will not be lightly created***" since "it imposes extraordinary duties" and requires the fiduciary to "put the interests of the beneficiary ahead of its own if the need arises."

ARA Auto. Group v. Cent. Garage, Inc., 124 F.3d 720, 723 (5th Cir. 1997) (emphasis added)

RABO

# (Rabo) No Fiduciary Duty to Plaintiffs

- General rule is that there is no fiduciary duty in the lender-borrower relationship, *let alone* a fiduciary duty to third parties such as Plaintiffs.

  - *Houle v. Casillas*, 594 S.W.3d 524 (Tex. Ct. App. 2019) (stating that a fiduciary relationship does not exist in an ordinary lender-borrower relationship)

  - *Jones v. Thompson*, 338 S.W.3d 573, 583 (Tex. Ct. App. 2010) (recognizing that "no fiduciary relationship exists between a lender and a borrower")

# Participatory Intentional Tort Claims

- Count Ten – Aiding & Abetting Fraud (All Defendants)
- Count Ten – Knowing Participation in Fraud (All Defendants)
- Count Twelve – Aiding & Abetting BOFD (Rabo and Mechanics)
- Count Twelve – Knowing Participation in BOFD (Rabo and Mechanics)
- Count Nine – Civil conspiracy (to tortiously interfere) (Rabo and Mechanics)
- Count Eleven – Civil conspiracy to commit fraud, tortious interference, conversion, and BOFD (All Defendants)

# (All) Aiding & Abetting Not Recognized

- Fifth Circuit has declined to recognize cause of action without adoption by the Texas Supreme Court. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018).

- Distinct from knowing participation. *Milligan, Tr. for Westech Cap. Corp. v. Salamone*, No. 1:18-CV-327-RP, 2019 WL 4003093, at *2 (W.D. Tex. Aug. 23, 2019).

# (All) Aiding & Abetting - Elements

(1) Tort committed by third party;

(2) Defendant had actual knowledge of the breach of duty;

(3) Defendant intended to accomplish the wrongful act that caused harm to plaintiff;

(4) Defendant substantially assisted and encouraged the tortfeasor in accomplishing the wrongful act.

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 225 (Tex. 2017) (Discussing elements without adopting cause of action)

# (All) Knowing Participation in Fraud– Elements

(1) Fraud committed by someone other than defendant

(2) The defendant had actual knowledge of the misrepresentations underlying the fraud; and

(3) The defendant participated in the fraud:
  - The defendant participated in the underlying fraudulent acts; or
  - The defendant was a party to and profited from the fraudulent transaction.

*Corpus Christi Area Tchrs. Credit Union v. Hernandez*, 814 S.W.2d 195, 198-200 (Tex. App.—San Antonio 1991, no writ); *Kinnie Ma Individual Ret. Acct. v. Ascendant Cap.*, No. 1:19-CV-1050-LY, 2021 WL 11963131, at *2 (W.D. Tex. Aug. 25, 2021); *In re NE 40 Partners, Ltd.*, 411 B.R. 352, 362 (Bankr. S.D. Tex. 2009)

# (All) Examples of "Participation"

*Corpus Christi:* Credit union was a party to real estate transaction that fraudulently granted a security interest on the victims land, on which the credit union foreclosed

*Kinnie Ma:* Third-party was alleged to own and receive part of the profits from Ponzi scheme

*NE 40 Partners:* Third-party was insider who received half of the proceeds of the fraud.

# (All) Conspiracy - Elements

(1)  two or more persons;

(2)  an object or course of action (fraud, conversion, BOFD, tortious interference) to be accomplished;

(3)  a meeting of minds on the object or course of action;

   • Requires awareness of the intended harm or wrongful conduct
   • Requires specific intent to cause the harm, not merely specific intent to engage in conduct that caused the harm.

(4)  one or more unlawful, overt acts;

(5)  resulting damages.

*Tri v. J.T.T.*, 162 S.W.3d 552, 557 (Tex. 2005); *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995)

# (All) Summary of Participatory Liability Elements

| | Knowing Participation | Conspiracy | Aiding & Abetting |
|---|---|---|---|
| Tort against Plaintiffs by Third Party | X | X | X |
| Actual Knowledge of Tort | X | X | X |
| Intent to Accomplish Tort | | X | X |
| Participation in Tort | X | | |
| Substantial Assistance or Encouragement | | | X |

# (HTLF) Plaintiffs were injured by the loss of cattle and/or funds: the "Cattle Fraud"

- Plaintiffs allege that McClain was:
  - (1) misrepresenting the quantity of cattle in his possession;
  - (2) misrepresenting the ownership of cattle; and
  - (3) misrepresenting the use of funds paid to McClain by Plaintiffs.
  - [*See, e.g.,* Doc. 213 ¶¶ 146, 243, 257].

- Plaintiffs assert that they were damaged by:
  - (1) the loss of cattle—or proceeds—that they owned or
  - (2) the loss of the funds paid for cattle and feed that McClain failed to purchase.
  - [*See, e.g.,* Doc. 213 ¶ 190; Doc. 213 ¶ 140.

- These injuries are the basis for Plaintiffs' claims for fraud, BOFD, tortious interference, and conversion.

# (HTLF) Plaintiffs fail to plausibly allege HTLF's knowledge of McClain's scheme.

- No allegation that HTLF knew about any particular transaction between Plaintiffs and McClain

- No allegation that HTLF knew of any representations made to Plaintiffs

- No allegation that HTLF had access to McClain's financial information

- No allegation that HTLF knew what McClain was doing with Plaintiffs' money

- No allegation that HTLF knew how many cattle McClain claimed to own

Case 24-02007-swe  Doc 373-1  Filed 02/17/26  Entered 02/17/26 16:04:42  Desc
Exhibit AV - Joint PowerPoint Presentation of Rabo  Mechanics and HTLF  Page 72 of 102

HTLF

# (HTLF) HTLF's actions do not demonstrate knowledge.

- Completing instruments is contemplated by the UCC.
- Granting immediate credit is a standard banking practice.
- Plaintiffs allege that Ragland was inexperience in cattle operations.
- "Irregular" does not mean "illegal"

- Merely alleging that [HTLF] 'should have known' based on 'red flags' that [McClain] was operating a scheme does not establish that [HTLF] knowingly permitted [McClain] to engage in suspicious transactions. Knowing means *knowing*."
  - *In re Chris Pettit & Assocs., P.C.*, 2025 WL 1583366 (Bankr. W.D. Tex. June 4, 2025)

# (HTLF) No allegations of HTLF's participation

- As discussed above, no allegations that HTLF participated in the fraud directly.

- No allegations that HTLF was a party to any of the transactions with Plaintiffs.

- Participation requires more than being a subsequent transferee of funds from McClain

# (HTLF) Allegations of HTLF's intent and knowledge are implausible

- Banks satisfy their profit motive by making good loans, not bad loans.

- Nonsensical to argue that HTLF would have continued loaning money to 2B Farms if it knew.

- HTLF was not trying to buy time - No allegations that HTLF attempted to reduce its exposure.

- Allegations of intent to harm Plaintiffs are entirely speculative.

**All the vicarious liability claims against HTLF and Ragland must be dismissed.**

RABO
Exhibit ABC

# (Rabo) No Knowing Participation/Vicarious Liability for Fraud

- Even if a recognized cause of action, or if viewed as "vicarious liability," the claim (Count 10) fails:

  - No allegations showing Rabo knew about fraudulent scheme.

  - No allegations showing Rabo knowingly participated in the fraudulent scheme.

  - No allegations showing how Rabo acted in coordination with McClain or "in furtherance of [a] common plan" to defraud Plaintiffs. *Foix* 159 S.W. at 1052.

- Allegations that Rabo "allowed the fraud to continue" and should have "launch[ed] a thorough investigation" into the red flags sooner are insufficient. *See, e.g., In re Chris Pettit*, 670 B.R. at 628–29.

# (Rabo) No Conspiracy – No Underlying Tort

- Plaintiffs' claim of conspiracy against Rabo fails for numerous reasons.

- Plaintiffs have failed to allege facts supporting the underlying tort, which is fatal to the conspiracy claim. *See Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) ("In order to adequately plead a claim for civil conspiracy, a plaintiff must adequately plead the underlying tort.")

# (Rabo) No Conspiracy – No Knowledge of Scheme

Case 24-02007-swe    Doc 373-1    Filed 02/17/26    Entered 02/17/26 16:04:42    Desc
Exhibit A B C Joint PowerPoint Presentation of Rabo    Mechanics and HTLF    Page 77 of 102

RABO

- Plaintiffs' failure to allege facts demonstrating Rabo's knowledge of the fraudulent scheme is fatal to the conspiracy claim.

  - Without knowledge of the scheme, there can be <span style="color:red">no awareness of the "harm or wrongful conduct."</span>

  - Without knowledge of the scheme, there can be <span style="color:red">no meeting of the minds.</span>

  - Without knowledge of the scheme, there can be <span style="color:red">no "object"</span> to be accomplished.

  - Without knowledge of the scheme, there can be no unlawful acts in furtherance of the scheme.

Case 24-02007-swe   Doc 373-1   Filed 02/17/26   Entered 02/17/26 16:04:42   Desc
Exhibit A Joint PowerPoint Presentation of Rabo   Mechanics and HTLF   Page 78 of 102

RABO

# (Rabo) No Conspiracy – No Intent to Participate

- "Proof of intent to participate in the conspiracy is necessary to [establish] the meeting of the minds element" of a civil conspiracy claim. *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010).

- Texas law "requires specific intent," i.e., "the parties must be aware of the harm or the wrongful conduct at the beginning of the combination or agreement." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); *see also Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995).

- Furthermore, even a "joint intent to engage in the conduct that resulted in the injury is not sufficient." *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)

- Here, no knowledge, let alone facts showing intent to participate.

# (Rabo) No Conspiracy – Claim is Unsupported, Illogical, and Belied by Plaintiffs' Allegations

- Illogical that Rabo conspired to engage in a fraudulent scheme that would naturally result in Rabo's loss of millions of dollars.

- Theory is also belied by Plaintiffs' legion of allegations concerning Rabo's alleged failure to identify and stop the scheme earlier. (*See generally* FAC; *compare* FAC ¶¶ 275-79.)

Case 24-02007-swe    Doc 373-1    Filed 02/17/26    Entered 02/17/26 16:04:42    Desc
Exhibit ABO Joint PowerPoint Presentation of Rabo   Mechanics and HTLF    Page 79 of 102

RABO

Exhibit ABC Joint PowerPoint Presentation of Rabo

# (Rabo) No Knowing Participating in Breach of Fiduciary Duty

- Claim fails for two primary reasons:

  - Plaintiffs fail to allege an underlying claim for breach of fiduciary duty by McClain, and

  - Plaintiffs fail to allege facts showing that Rabo was "aware that it was participating in [McClain's] breach" of fiduciary duty. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007).

Exhibit ABC

RABO

# (Rabo) No Knowing Participating in Breach of Fiduciary Duty – No Underlying Claim

- The claim fails because "[k]nowing participation in breach of fiduciary duty is a derivative claim." *7X Cattle Co.*, 2025 WL 852624, at *13.

- Plaintiffs required "to state a separate underlying claim"—i.e., for breach of fiduciary duty by McClain—"on which the court may grant relief." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007).

Exhibit A RABO

# (Rabo) No Knowing Participating in Breach of Fiduciary Duty – No Knowledge

- "[A] knowing-participation claim is premised on the defendant's contribution to a breach of fiduciary duty and must involve the knowing participation in such breach." *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 574 (N.D. Tex. 2024).

- While the Plaintiffs' allegations claim that Rabo's failure to act sooner facilitated McClain's fraud, the FAC falls short of alleging facts that Rabo acted knowingly and affirmatively to "participat[e] in the breach" of fiduciary duty. *In re Chris Pettit*, 670 B.R. at 625.

# Negligence Claims

Count Three - Negligence and Gross Negligence in Lending (All Defendants)

~~Count Four – Conspiracy to Commit Gross Negligence (withdrawn) (All Defendants)~~

Count Five – Negligence in Hiring, Supervision, or Management (All Defendants)

Count Six – Negligent Undertaking. (All Defendants)

# (All) Ordinary Negligence - Elements

(1) a legal duty owed by one person to another;

(2) a breach of that duty; and

(3) damage proximately caused by the breach."

*Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App.—El Paso 2012, no pet.).

# (All) Banks do not owe duties to third-parties

- "Generally, there is no duty to control the conduct of third persons."
  - Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990)

- "[A] bank owes no duty to a person with whom the bank has not dealt and otherwise has no relationship."
  - *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239, 248 (5th Cir. 2020).

- "[t]he almost-universal law in this country is that banks owe a duty of care only to their own customers."
  - *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 357 (6th Cir. 2014).

# (All) *Midwestern Cattle Marketers* forecloses the possibility of a duty.

Fraudster used victim to operate a check kiting scheme. Victim's checks were deposited in fraudster's account at defendant bank.

"MCM asserts Legend owed it a duty because 'if a bank knows or has reason to know that its customer is perpetrating a fraud, the bank has a duty not to continue to enable the fraud'.

MCM's position is foreclosed by Texas law, which maintains that, in the absence of a fiduciary or confidential relationship, a bank owes no duty to a person with whom the bank has not dealt and otherwise has no relationship."

*Midwestern Cattle,* 800 F. App'x at 247-48

# (All) Requirements of Proximate Cause

"The components of proximate cause are cause in fact and foreseeability." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995).

"Cause in fact has two components: (1) 'but-for' causation, and (2) 'substantial-factor' causation." *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 532 (Tex. 2025).

"Foreseeability, the other aspect of proximate cause, requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Boys Clubs of Greater Dallas*, 907 S.W.2d at 478.

# (All) Enabling McClain is not cause in fact.

"Where the initial act of negligence was **not the active and efficient cause** of plaintiffs' injuries, **but merely created the condition** by which the second act of negligence could occur, the resulting harm is **too attenuated** from the defendants' conduct to constitute the cause in fact of plaintiffs' injuries."

*IHS Cedars Treatment Ctr. of DeSoto v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004).



# (All) Negligent Hiring, etc. - Elements

(1)  Underlying tort committed by employee

(2)  Employer owes duty to third party in hiring, retaining, supervising, or managing its employees due to the nature of the activity;

(3)  Employee was incompetent or unfit, creating an unreasonable risk of harm;

(4)  Employer knew or should have known that employee was a danger to others; and

(5)  The tort resulted from the particular risk at issue.

*Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.); *Cox v. City of Ft. Worth, Tex.*, 762 F. Supp. 2d 926, 940 (N.D. Tex. 2010); *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010).

Example: Commercial trucking companies owe duties in hiring drivers.

# (All) Negligent Undertaking - Elements

(1) Defendant undertakes to render services;

(2) Services are recognizable as necessary for the protection of Plaintiff's person or things; and

(3) Defendant failed to use reasonable care, resulting in physical harm where:

    (1) Failure to use care increased risk of harm; or

    (2) Harm was suffered because of reliance on the undertaking.

*Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000); RESTATEMENT (Second) of Torts § 323 (1965)

Example: Maintaining a bridge or attempting to rescue someone who is drowning

# (HTLF) No basis to impose a duty on HTLF or Ragland

- Plaintiffs are unknown fourth parties.

- No "fiduciary or confidential relationship"

- No services undertaken for Plaintiffs.

- Absent a duty owed, Plaintiff's negligence claims fail.

# (HTLF) Plaintiffs' negligent hiring claims fail.

- Ragland did not commit a tort.

- Banking is not an activity where the nature of the activity creates a duty in hiring, supervision, or management.

- Not foreseeable:
  - "The fact that it may have been foreseeable that a negligently employed teller would improperly issue checks does not make it foreseeable that a third party who never came into direct contact with the teller would rely on the issuance of cashier's checks to make investment decisions."
    - *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 954 (Tex. 1996)

**All the negligence claims against HTLF and Ragland must be dismissed.**

RABO
Exhibit A

# (Rabo) No Negligence – No Duty

- Demonstrating a legal duty owed by Rabo is naturally also a requirement for all negligence-based claims against it, no matter how characterized.
  - *See Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 655 (Tex. Ct. App. 2002) *Vance v. Hurst Joint Venture LP*, 657 S.W.3d 141, 156 (Tex. Ct. App. 2022) (demonstrating a duty a requirement for negligent undertaking claim)

- Plaintiffs fail to allege facts supporting any duty.

RABO

# (Rabo) No Negligence – No Duty and No Exception Applicable

- Given the absence of general duty, Plaintiffs point to *Midwest Feeders* in purported support of an exception to this rule.

- Addressing Mississippi law, and quoting an 11th Cir. decision, the *Midwest Feeders* court stated that a bank may owe a duty to a non-customer where (1) a fiduciary relationship exists between the customer and the noncustomer, (2) the bank knows or ought to know of the fiduciary relationship, and (3) the bank has actual knowledge of its customer's misappropriation. *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 518 (5th Cir. 2018).)

- Plaintiffs' reliance on *Midwest* is misplaced.

Case 24-02007-swe   Doc 373-1   Filed 02/17/26   Entered 02/17/26 16:04:42   Desc
Exhibit A Joint PowerPoint Presentation of Rabo   Mechanics and HTLF   Page 96 of 102

RABO

# (Rabo) No Negligence – *Midwest* Misplaced

- First, Rabo is the lender, not a bank.

- Second, the purported exception has not been recognized in Texas and is foreclosed by current caselaw. *Midwestern*

- Third, even if exception were recognized, Plaintiffs have failed to allege facts showing Plaintiffs had "actual knowledge" of Debtors' fraud—let alone Debtors' fraud with respect to each Plaintiff.

- Fourth, no allegations showing Rabo had even heard of the vast majority of Plaintiffs before this case, nor that Rabo knew about their alleged "fiduciary relationship" with Debtors—relationships based on their cattle feeding agreements.

# (Rabo) No Negligence – *Midwest* Misplaced

- Finally, the facts here are in <span style="color:red">stark contrast</span> to the facts in the 11th Circuit case the *Midwest* court cited.

- In *Chang*, the bank (1) set up the OPT Escrow Account, (2) had not complied with the bank's procedures when doing so, (3) "wrote a letter on bank letterhead representing that OPT Title's 'escrow account' had 'deposits in a business checking and savings account in the seven digit amounts' when in fact the total balance in all OPT Title's accounts with the Bank was less than $100,000"; (4) received in exchange a $100,000 payment from the business owner.

# (Rabo) No Breach of Contract

- Count 16 brought by "Priest" parties, who have stipulated to dismissal of their claims.

- Count 15 is brought on behalf of Plaintiffs AgTexas and Thorlakson.

- Though captioned as a breach of contract claim, the substantive allegations assert that "AgTexas and Thorlakson are therefore entitled to and seek recovery of judgment for fraud, conversion, breach of contract and breach of fiduciary duty against Rabo to the extent that Rabo acquired cattle or proceeds belonging to Plaintiffs."

# (Rabo) No Proximate Cause of Damages – Unprecedented Request – Chilling Effect

- Rabo lending money to its borrowers, who then improperly and in breach of the loan agreements use some of that money to pay certain investors instead of purchasing or caring for cattle as part of a Ponzi scheme unknown to Rabo does not (and should not) make Rabo the "proximate cause" of their injuries.

- Making lenders liable under such circumstances is unprecedented and would have a drastic impact and chilling effect on lending operations.

**Attorneys' Fees and Declaratory Judgment (All Defendants)**

| Applicable Law | Reason for Failure |
|---|---|
| Recovery of attorneys' fees only permitted when provided by statute or contract. | Plaintiffs seek attorneys' fees "to the extent provided by agreement" (¶ 383) having failed to identify a single agreement between any plaintiff and any defendant. |
| Recovery of attorneys' fees fails when underlying cause of action fails. | Each one of plaintiffs' claims fails under R. 12(b)(6) and/or R. 9(b). No legal basis to award attorneys' fees. |
| Declaratory judgment unavailable when there is no viable cause of action to support relief. | Each one of plaintiffs' claims fails under R. 12(b)(6) and/or R. 9(b). No legal basis to award declaratory judgment. |

# Conclusion

The First Amended Complaint fails to adequately state a claim against any of the Movants.

Given prior opportunities to replead, length of the case, and prior discovery, the First Amended Complaint should be dismissed with prejudice.