ALAN DABDOUB
LYNN PINKER HURST & SCHWEGMANN LLP
2100 ROSS AVENUE, SUITE 2700
DALLAS, TEXAS 75201

HUDSON M. JOBE
JOBE LAW PLLC
6060 NORTH CENTRAL EXPRESSWAY,
SUITE 500
DALLAS, TEXAS 75206

SPECIAL COUNSEL TO THE TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| In re:<br><br>McClain Feed Yard, Inc., et al.,<br><br>　　　Debtors. | § § § § § § | Case No. 23-20084-swe-7<br>Jointly Administered |
| In re:<br><br>2B Farms, a Texas General Partnership, et al.,<br><br>　　　Debtors. | § § § § § § § § § | Case No. 23-50096-swe-12<br>Jointly Administered |
| AgTexas Farm Credit Services, AgTexas, PCA, Thorlakson Diamond T Feeders, LP,<br><br>　　　Plaintiffs,<br><br>v.<br><br>Rabo AgriFinance, LLC, et al.,<br><br>　　　Defendants. | § § § § § § § § § § § | Adv. No. 24-2007-swe<br>Consolidated Adversary Proceeding |

## TRUSTEE'S MOTION FOR RECONSIDERATION OF
## THE COURT'S MARCH 27, 2026 *ORDER DISMISSING COMMON-LAW CLAIMS*
## *BASED ON THE AFFIRMATIVE DEFENSE OF IN PARI DELICTO*

Plaintiff-Intervenor Kent Ries, the Chapter 7 Trustee ("**Trustee**") of the bankruptcy estates of McClain Feed Yard, Inc. (Case No. 23-20084-swe), McClain Farms, Inc. (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. (Case No. 23-20086-swe) (collectively, the "**Debtors**"), files this Motion for Reconsideration (the "**Motion**") of the Court's March 27, 2026 Order Dismissing Common-Law Claims Based On the Affirmative Defense of *In Pari Delicto* (the "**Order**"), and respectfully requests that the Court grant this Motion, vacate its Order, and enter an order denying Defendants' motions to dismiss on the basis of *in pari delicto*, or alternatively, grant the trustee leave to amend his common-law claims, for the reasons that follow:

## I.   INTRODUCTION

The Trustee respects the Court's careful analysis and, for purposes of this Motion, acknowledges that a bankruptcy trustee stands in the Debtors' shoes under 11 U.S.C. § 541 subject to the same common-law claims and defenses as the debtor would have been.[1] Nevertheless, reconsideration is warranted.[2]

***First,*** the Court should reconsider its decision and grant the Trustee leave to amend rather than dismiss his common-law claims with prejudice for the following reasons:

- The Trustee's prior two amendments were really one amendment, first amending to revise his claims against CFSB and incorporate additional supporting allegations, and then to revise claims and corresponding allegations against the remaining Defendants.

- This was the first instance the Court has addressed the *in pari delicto* defense as applied to the Trustee's claims. The issue was not specially

---

[1] The Trustee preserves this issue for appeal but does not challenge it here.

[2] The Trustee files this Motion now, rather than wait until the Court has ruled on each Defendant's motion to dismiss as to all claims, to preserve his right to appeal the Court's Order under Federal Rules of Bankruptcy Procedure 8002-04.

briefed but subsumed among tens of challenges, including choice of law arguments, raised by Rabo Agrifinance, LLC ("**Rabo**"), Mechanics Bank ("**Mechanics**"), Community Financial Services Bank ("**CFSB**"), and HTLF Bank ("**HTLF**") (collectively, "**Defendants**") in their motions to dismiss.

- The Court acknowledged that its decision departed from prior bankruptcy courts' decisions in this circuit on this issue.[3]

- The Trustee can allege additional facts to qualify for other exceptions to the *in pari delicto* defense (as detailed below).

- The Trustee can allege additional claims, such as a claim for contribution from Defendants as joint tortfeasors, that is not defeated by *in pari delicto* as a matter of law. Such claims arise from the same conduct and transactions already described in the complaint and would therefore relate back under Federal Rule of Civil Procedure 15, avoiding any limitations issues.

The Fifth Circuit instructs that "dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Here, it would be even more inequitable to deny the Trustee leave to amend his complaint to address the issues and/or pleading deficiencies raised in the Order. To be sure, granting the Trustee leave to amend would not be futile.[4]

---

[3] Order at 21 ("Thus, the Court must respectfully part ways with two bankruptcy court opinions in the Fifth Circuit . . . ."). *See also Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 642 (S.D. Tex. 2009) (denying *in pari delicto* defense at the 12(b) stage because "at this stage of the proceedings, the Court is unable to rule as a matter of law that public policy would not demand that Plaintiff be afforded relief"); *In re Chris Pettit & Associates, P.C.*, 670 B.R. 602, 624 (Bankr. W.D. Tex. 2025) (denying motion to dismiss based on *in pari delicto* because "[m]ost other Texas bankruptcy courts generally find in pari delicto to not be a proper basis for a 12(b)(6) motion."); *Osherow as Tr. for Estate of Republic Res., LLC v. York*, No. 5:17-CV-483-DAE, 2019 WL 6048017, at *6 (W.D. Tex. Aug. 5, 2019) ("A <u>Lewis</u> policy analysis cannot be undertaken prior to discovery . . . ."); *In re TOCFHBI, Inc.*, 413 B.R. 523, 537 (Bankr. N.D. Tex. 2009) (denying summary judgment on *in pari delicto* defense because the "peculiar facts and equities" the Court must consider under *Lewis* were not susceptible to resolution on the record).

[4] *Cf.* Order at 25-26 ("There are no additional facts the Trustee could assert that would overcome this defense . . . .").

2

*Second*, granting leave to amend would not be futile because even if the Debtors are as culpable as Defendants, and thus *in pari delicto* <u>might</u> bar the Trustee's claims, the defense still fails as a matter of policy under Texas law—which governs these common-law claims. Though akin to the "receivership method" of applying *in pari delicto* described by the Court, Texas common law contains a public policy exception to its application. In other words, the Trustee is not contending that because he is a trustee under the Bankruptcy Code, *in pari delicto* fails based on his status as trustee. Rather, the Trustee contends that under Texas substantive law, *even where a plaintiff is as culpable as defendants, in pari delicto will not bar the plaintiff's claims if (i) affording relief on the claims is in the public interest (including by benefitting innocent creditors and discouraging future wrongdoing and (ii) denying relief would not benefit the plaintiff-wrongdoer.* Not every debtor or trustee can defeat *in pari delicto*; only some can, and it depends on the applicable state law and facts of the case, not the Bankruptcy Code.

Here, even if McClain were alive, *in pari delicto* would not defeat the Trustee's claims because:

- There is little to no chance this will be a 100% case; all recoveries will be distributed to creditors and not remain with the Debtors. Even if wrongdoers, the Debtors still will not benefit from any relief granted on the Trustee's claims in this chapter 7 liquidation.

- It is innocent, defrauded creditors who will benefit should the Trustee prevail on his common-law claims; wrongdoing will not be rewarded but remedied.

- Denying the *in pari delicto* defense would discourage banks and lenders from reckless practices and intentional misconduct, which would protect the public from frauds such as this one.

- Conversely, permitting Defendants to escape accountability as joint tortfeasors only because the Debtors were also used by McClain in the fraud would unjustly enrich the Defendants. 100% liability is shifted to the Debtors while the wrongdoer Defendants escape accountability–the exact opposite outcome that *in pari delicto* is intended to achieve.

Under Texas law, where applying *in pari delicto* would result in an outcome wholly unmoored from the very justification for the defense–denying judicial assistance where it would benefit wrongdoers–*in pari delicto* will not bar the plaintiff's claims. As Defendants do not contend this will be a 100% case, and given that McClain, the wrongdoer in fact, is dead and cannot possibly benefit from any recoveries, there is no public interest in denying the Trustee relief; the public's interest is furthered *only* by denying its application here. These unavoidable conclusions, and not the trustee's status as a trustee in bankruptcy, are what defeats *in pari delicto* as a matter of Texas law, which applies here.[5]

***Third***, even if the Court finds Texas would not recognize compelling public interests warrant denying the *in pari delicto* defense, the Trustee has alleged sufficient facts at least as to Rabo to qualify for two separate "exceptions" to the *in pari delicto* defense. If granted leave to amend, the Trustee could amend his claims and allegations such that these–or still other–exceptions would also apply to preclude one or more of the remaining Defendants from asserting the defense.

- The Trustee's allegations that Rabo exerted excessive control over Debtors gives rise to the factual possibility that Rabo, as the party in control, was more culpable than Debtors and therefore cannot invoke *in pari delicto* to defeat the Trustee's claims.[6]

- The Trustee alleges Rabo exerted excessive control over the Debtors, which control culminated in the removal of McClain, the Debtors' sole owner and longtime sole manager. When Rabo's control of the Debtors,

---

[5] The Trustee concurs that Kentucky and Iowa law contain similar public policy exceptions to *in pari delicto* and would likewise not support applying *in pari delicto* to bar the Trustee's claims. *See* Order at 11-12. But to the extent there may be differences in the parameters of that exception across these states, the Trustee also agrees resolving a choice of law conflict at this stage generally be inappropriate. *Id.*

[6] *See ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 430 (S.D. Tex. 2008) ("Because AMC/Grupo dominated and controlled ASARCO during the relevant time and dictated the terms of the SPCC transaction, the Court finds that ASARCO (and its creditors) were not at equal fault.").

4

which also included regularly commanding some of the Debtors' cash transactions on a near daily basis and extracting the DACAs and broad releases and waivers of claims preceding McClain's removal, began is a fact question that cannot be resolved at this stage. But at minimum, prior to the Petition Date, Rabo clearly qualified as an "insider" pursuant to 11 U.S.C. § 101(31)(B)(iii). A reasonable inference, which the Court must afford the Trustee at this stage, is that a party that can force out the sole owner and manager from three of his companies against his preference controls those companies and is an therefore an insider. And insiders cannot invoke *in pari delicto* to defeat a trustee's claims.[7]

- The Trustee could also allege facts to render CFSB, HTLF, and Mechanics as insiders of the Debtors if afforded leave to amend.

  o Based on recently produced text messages, Brian McClain appears to have had two children, Meagan and Kinsey, with Leslie White.[8] Ms. White was an employee of CFSB, while Meagan and Kinsey worked for the Debtors. Ms. White regularly serviced Debtors' accounts, including sending private text messages to Brian, Meagan and/or Kinsey about overdrafts and the need for deposits, while running cover for them internally at CFSB. And she did this all while musing, as early as January 1, 2020, that it was "partially Chase's [i.e., the CFSB account manager] fault too . . . . He always lets him [*i.e.*, McClain] get away with stuff and would blow it off like it's nothing when it really was a big deal."[9] By the end, the Debtors had been paid and had paid out approximately $330 million to investors and family members who also banked at CFSB, placing CFSB on both sides of transaction they internally doubted.

  o HTLF controlled blank, signed checks of the Debtors, and thus had control over the Debtors, with the power to empty their accounts at any time. Moreover, the transactions involving HTLF's use of the Debtors' signed, blank checks cannot be considered "arms-length"

---

[7] *In re Today's Destiny, Inc.*, 388 B.R. 737, 749 (Bankr. S.D. Tex. 2008) ("Insiders fail to cite any authority supporting the proposition that in pari delicto bars a Trustee from asserting claims against Insiders for their wrongful conduct because of the same wrongful conduct . . . . No case, logic, or equitable proposition supports the conclusion that insiders of a bankrupt corporation can insulate themselves from liability by virtue of the illegal character of their conduct. Granting Insiders relief based on in pari delicto would directly oppose in pari delicto's purpose of denying assistance to wrongdoers.").

[8] Evidence suggests Ms. White is McClain's first ex-wife.

[9] *See In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 431 (Bankr. N.D. Tex. 2021) (setting forth the relevant considerations for determining non-statutory insider status).

given the only justification for the transactions was to fraudulently kite checks.[10]

- o Mechanics, for purposes of servicing the Debtors' accounts, could potentially be insiders of Debtors via Rabo. For example, prior to Mechanics' acquisition of Rabobank, N.A., the Debtors' deposit accounts and loan accounts were managed by Rabo or its affiliate. Management of the accounts generally remained the same from the Debtors' perspective, with Mechanics instructing Rabo what to command McClain to deposit or transfer on any particular date or time. Rabo maintained such control that Mechanics executed the DACAs against their own interest, with nothing to gain, days before the Petition Date.

- The Trustee could also potentially amend to incorporate facts that would support finding the "adverse interest" exception to the *in pari delicto* defense applies.[11]

- o For at least part of the period covering the Trustee's claims, Crystal McClain, Brian's ex-wife, was a 50% owner of at least McClain Farms, Inc. and McClain Feed Yard, Inc. Moreover, at no time was McClain the sole representative of the Debtors; Meagan, Kinsey, and/or others were also employed. Since McClain was never the sole representative of Debtors, the adverse interest exception is available to the Debtors.[12]

- o Under the *Ponzi*-scheme presumption, every transfer is considered presumptively fraudulent because each is designed to perpetuate, and unavoidably grow, the fraud, harming the Debtors and their creditors. As such, McClain's conduct was predominantly adverse to the Debtors' interests. Therefore, his wrongdoing should not be imputed to the Debtors, thereby defeating *in pari delicto*.[13]

---

[10] *Id.*; *see also* 11 U.S.C. § 101(31)(B)(ii).

[11] *Cf.* Order at 13 n.8.

[12] *In re Sunpoint Sec., Inc.*, 377 B.R. 513, 566 (Bankr. E.D. Tex. 2007) (citations omitted) ("While Lewis certainly enjoyed a predominant position of control, he clearly did not act as the sole representative of Sunpoint and, under Texas law, "sole actor" means just that— sole actor—and is not applied when the rationale for the rule has no application.").

[13] *See F.D.I.C. v. Ernst & Young*, 967 F.2d 166, 170 (5th Cir. 1992).

- Likewise, if granted leave, the Trustee could add a statutory claim for contribution (*e.g.*, Tex. Civ. Prac. & Rem. Code §§ 33.001, *et seq.*), which is not subject to the defense of *in pari delicto* as a matter of law.[14]

Since the Trustee's Second Amended Complaint: already alleges sufficient facts to defeat *in pari delicto* as a matter of public policy as to all Defendants; already alleges sufficient facts to, at minimum, give rise to reasonable inferences that Rabo exerted control over the Debtors, and was thus an insider of Debtors who cannot invoke *in pari delicto*; can be amended to include sufficient allegations to establish CFSB, HTLF, and/or Mechanics as insiders ineligible to invoke *in pari delicto*; and can be amended to include claims not defeated by *in pari delicto*, the Court should reconsider and its Order and deny Defendants' motion to dismiss as to all Defendants, or at least Rabo, based on the *in pari delicto* defense. Alternatively, as this is the Trustee's first time learning the Court's particular perspective on any deficiencies in the Trustee's pleadings on this issue, the Court should reconsider its Order dismissing the Trustee's common law claims with prejudice and instead grant the Trustee leave to amend.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court grant this Motion, vacate the Order, deny Defendants' motions to dismiss on in pari

---

[14] *In re Today's Destiny, Inc.*, 388 B.R. 737, 753 (Bankr. S.D. Tex. 2008) ("Customers have filed proofs of claims against Today's Destiny . . . . The Trustee has asserted that Lenders aided and abetted and conspired with Today's Destiny to defraud Customers. If these allegations are proven true and 100% of the liability to Customers is imposed on Today's Destiny, Today's Destiny would be entitled to contribution from Lenders for their proportionate share."); *id.*, at 750 ("The Court can, as a matter of law, rule that *in pari delicto* does not bar the Trustee's contribution claim."); *see also Norman v. B. V. Christie & Co.*, 363 S.W.2d 175, 178 (Tex. App.-Houston 1962, writ ref'd n.r.e.) (joint venture partner could not invoke in pari delicto against his partner to defeat a claim for contribution arising from entry of judgment relating to an illegal contract).

delicto grounds (or, alternatively, grant leave to amend), and award such other and further relief to which the Trustee may be entitled.

Dated: April 10, 2026.                    Respectfully submitted,


                                          /s/ Alan Dabdoub
                                          Alan Dabdoub
                                          State Bar No. 24056836
                                          adabdoub@lynnllp.com
                                          P. Campbell Sode
                                          State Bar No. 24134507
                                          csode@lynnllp.com
                                          Farsheed Fozouni
                                          State Bar No. 24097705
                                          ffozouni@lynnllp.com
                                          Steven G. Gersten
                                          State Bar No. 24087579
                                          sgersten@lynnllp.com
                                          LYNN PINKER HURST & SCHWEGMANN LLP
                                          2100 Ross Avenue, Suite 2700
                                          Dallas, Texas 75201
                                          Telephone:   214-981-3800
                                          Facsimile:   214-981-3839


                                          Hudson M. Jobe
                                          State Bar No. 24041189
                                          hjobe@jobelawpllc.com
                                          JOBE LAW PLLC
                                          6060 North Central Expressway, Suite 500
                                          Dallas, Texas 75206
                                          Telephone:   214-807-0563

                                          SPECIAL COUNSEL TO THE TRUSTEE

8