ALAN DABDOUB
LYNN PINKER HURST & SCHWEGMANN LLP
2100 ROSS AVENUE, SUITE 2700
DALLAS, TEXAS 75201

HUDSON M. JOBE
JOBE LAW PLLC
6060 NORTH CENTRAL EXPRESSWAY,
SUITE 500
DALLAS, TEXAS 75206

SPECIAL COUNSEL TO THE TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| In re:<br><br>McClain Feed Yard, Inc., et al.,<br><br>    Debtors. | §<br>§<br>§<br>§<br>§<br>§ | Case No. 23-20084-swe-7<br>Jointly Administered |
| In re:<br><br>2B Farms, a Texas General<br>Partnership, et al.,<br><br>    Debtors. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 23-50096-swe-12<br>Jointly Administered |
| AgTexas Farm Credit Services,<br>AgTexas,<br>PCA, Thorlakson Diamond T Feeders,<br>LP,<br><br>    Plaintiffs,<br><br>v.<br><br>Rabo AgriFinance, LLC, et al.,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adv. No. 24-2007-swe<br>Consolidated Adversary<br>Proceeding |

**TRUSTEE'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF
THE COURT'S MARCH 27, 2026 *ORDER DISMISSING COMMON-LAW CLAIMS
BASED ON THE AFFIRMATIVE DEFENSE OF IN PARI DELICTO***

Plaintiff-Intervenor Kent Ries, the Chapter 7 Trustee ("**Trustee**") of the bankruptcy estates of McClain Feed Yard, Inc. (Case No. 23-20084-swe), McClain Farms, Inc. (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. (Case No. 23-20086-swe) (collectively, the "**Debtors**"), files this *Motion for Reconsideration of the Court's March 27, 2026* Order Dismissing Common-Law Claims Based On the Affirmative Defense of *In Pari Delicto* (the "**Order**") and brief in support (the "**Motion**"), and respectfully requests that the Court grant this Motion, vacate its Order, and enter an order denying Defendants' motions to dismiss on the basis of *in pari delicto*, for the reasons that follow:

## I.    INTRODUCTION

The Trustee respects the Court's careful analysis and, for purposes of this Motion, acknowledges that a bankruptcy trustee stands in the Debtors' shoes under 11 U.S.C. § 541 subject to the same common-law claims and defenses as the debtor would have been.[1] Nevertheless, reconsideration is warranted.

*First,* the Court should reconsider its decision and grant the Trustee leave to amend rather than dismiss his common-law claims with prejudice for the following reasons:

- The Trustee's prior two amendments were really one amendment, first amending to revise his claims against CFSB and incorporate additional supporting allegations, and then to revise claims and corresponding allegations against the remaining Defendants.

- This was the first instance the Court has addressed the *in pari delicto* defense as applied to the Trustee's claims. The issue was not specially

---

[1] The Trustee preserves this issue for appeal but does not challenge it here.

1

briefed but subsumed among tens of challenges, including choice of law arguments, raised by Rabo Agrifinance, LLC ("**Rabo**"), Mechanics Bank ("**Mechanics**"), Community Financial Services Bank ("**CFSB**"), and HTLF Bank ("**HTLF**") (collectively, "**Defendants**") in their motions to dismiss.

- The Court acknowledged that its decision departed from prior bankruptcy courts' decisions in this circuit on this issue.[2]

- The Trustee can allege additional facts to qualify for other exceptions to the *in pari delicto* defense (as detailed below).

- The Trustee can allege additional claims, such as a claim for contribution from Defendants as joint tortfeasors, that is not defeated by *in pari delicto* as a matter of law. Such claims arise from the same conduct and transactions already described in the complaint and would therefore relate back under Federal Rule of Civil Procedure 15, avoiding any limitations issues.

The Fifth Circuit instructs that "dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Here, it would be even more inequitable to deny the Trustee leave to amend his complaint to address the issues and/or pleading deficiencies raised in the Order. To be sure, granting the Trustee leave to amend would not be futile.[3]

---

[2] Order at 21 ("Thus, the Court must respectfully part ways with two bankruptcy court opinions in the Fifth Circuit . . . ."). *See also Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 642 (S.D. Tex. 2009) (denying *in pari delicto* defense at the 12(b) stage because "at this stage of the proceedings, the Court is unable to rule as a matter of law that public policy would not demand that Plaintiff be afforded relief"); *In re Chris Pettit & Associates, P.C.*, 670 B.R. 602, 624 (Bankr. W.D. Tex. 2025) (denying motion to dismiss based on *in pari delicto* because "[m]ost other Texas bankruptcy courts generally find in pari delicto to not be a proper basis for a 12(b)(6) motion."); *Osherow as Tr. for Estate of Republic Res., LLC v. York*, No. 5:17-CV-483-DAE, 2019 WL 6048017, at *6 (W.D. Tex. Aug. 5, 2019) ("A Lewis policy analysis cannot be undertaken prior to discovery . . . ."); *In re TOCFHBI, Inc.*, 413 B.R. 523, 537 (Bankr. N.D. Tex. 2009) (denying summary judgment on *in pari delicto* defense because the "peculiar facts and equities" the Court must consider under *Lewis* were not susceptible to resolution on the record).

[3] *Cf.* Order at 25-26 ("There are no additional facts the Trustee could assert that would overcome this defense . . . .").

2

*Second*, granting leave to amend would not be futile because even if the Debtors are as culpable as Defendants, and thus *in pari delicto* <u>might</u> bar the Trustee's claims, the defense still fails as a matter of policy under Texas law—which governs these common-law claims. Though akin to the "receivership method" of applying *in pari delicto* described by the Court, Texas common law contains a public policy exception to its application. In other words, the Trustee is not contending that because he is a trustee under the Bankruptcy Code, *in pari delicto* fails based on his status as trustee. Rather, the Trustee contends that under Texas substantive law, *even where a plaintiff is as culpable as defendants, in pari delicto will not bar the plaintiff's claims if (i) affording relief on the claims is in the public interest (including by benefitting innocent creditors and discouraging future wrongdoing and (ii) denying relief would not benefit the plaintiff-wrongdoer.* Not every debtor or trustee can defeat *in pari delicto*; only some can, and it depends on the applicable state law and facts of the case, not the Bankruptcy Code.

Here, even if McClain were alive, *in pari delicto* would not defeat the Trustee's claims because:

- There is little to no chance this will be a 100% case; all recoveries will be distributed to creditors and not remain with the Debtors. Even if wrongdoers, the Debtors still will not benefit from any relief granted on the Trustee's claims in this chapter 7 liquidation.

- It is innocent, defrauded creditors who will benefit should the Trustee prevail on his common-law claims; wrongdoing will not be rewarded but remedied.

- Denying the *in pari delicto* defense would discourage banks and lenders from reckless practices and intentional misconduct, which would protect the public from frauds such as this one.

- Conversely, permitting Defendants to escape accountability as joint tortfeasors only because the Debtors were also used by McClain in the fraud would unjustly enrich the Defendants. 100% liability is shifted to the Debtors while the wrongdoer Defendants escape accountability–the exact

3

opposite outcome that *in pari delicto* is intended to achieve.

Under Texas law, where applying *in pari delicto* would result in an outcome wholly unmoored from the very justification for the defense–denying judicial assistance where it would benefit wrongdoers–*in pari delicto* will not bar the plaintiff's claims. As Defendants do not contend this will be a 100% case, and given that McClain, the wrongdoer in fact, is dead and cannot possibly benefit from any recoveries, there is no public interest in denying the Trustee relief; the public's interest is furthered *only* by denying its application here. These unavoidable conclusions, and not the trustee's status as a trustee in bankruptcy, are what defeats *in pari delicto* as a matter of Texas law, which applies here.[4]

*Third*, even if the Court finds Texas would not recognize compelling public interests warrant denying the *in pari delicto* defense, the Trustee has alleged sufficient facts at least as to Rabo to qualify for two separate "exceptions" to the *in pari delicto* defense. If granted leave to amend, the Trustee could amend his claims and allegations such that these–or still other–exceptions would also apply to preclude one or more of the remaining Defendants from asserting the defense.

- The Trustee's allegations that Rabo exerted excessive control over Debtors gives rise to the factual possibility that Rabo, as the party in control, was more culpable than Debtors and therefore cannot invoke *in pari delicto* to defeat the Trustee's claims.[5]

- The Trustee alleges Rabo exerted excessive control over the Debtors, which control culminated in the removal of McClain, the Debtors' sole owner and

---

[4] The Trustee concurs that Kentucky and Iowa law contain similar public policy exceptions to *in pari delicto* and would likewise not support applying *in pari delicto* to bar the Trustee's claims. *See* Order at 11-12. But to the extent there may be differences in the parameters of that exception across these states, the Trustee also agrees resolving a choice of law conflict at this stage generally be inappropriate. *Id.*

[5] *See ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 430 (S.D. Tex. 2008) ("Because AMC/Grupo dominated and controlled ASARCO during the relevant time and dictated the terms of the SPCC transaction, the Court finds that ASARCO (and its creditors) were not at equal fault.").

4

longtime sole manager. When Rabo's control of the Debtors, which also included regularly commanding some of the Debtors' cash transactions on a near daily basis and extracting the DACAs and broad releases and waivers of claims preceding McClain's removal, began is a fact question that cannot be resolved at this stage. But at minimum, prior to the Petition Date, Rabo clearly qualified as an "insider" pursuant to 11 U.S.C. § 101(31)(B)(iii). A reasonable inference, which the Court must afford the Trustee at this stage, is that a party that can force out the sole owner and manager from three of his companies against his preference controls those companies and is an therefore an insider. And insiders cannot invoke *in pari delicto* to defeat a trustee's claims.[6]

- The Trustee could also allege facts to render CFSB, HTLF, and Mechanics as insiders of the Debtors if afforded leave to amend.

  o Based on recently produced text messages, Brian McClain appears to have had two children, Meagan and Kinsey, with Leslie White.[7] Ms. White was an employee of CFSB, while Meagan and Kinsey worked for the Debtors. Ms. White regularly serviced Debtors' accounts, including sending private text messages to Meagan and/or Kinsey about overdrafts and the need for deposits, while running cover for them internally at CFSB. And she did this all while musing, as early as January 1, 2020, that it was "partially Chase's [i.e., McClain's relationship manager] fault too . . . . He always lets him [*i.e.*, McClain] get away with stuff and would blow it off like it's nothing when it really was a big deal."[8] By the end, the Debtors had been paid and had separately paid out approximately $330 million to investors and family members who also banked at CFSB, placing CFSB on both sides of transaction they internally doubted.

  o HTLF controlled blank, signed checks of the Debtors, and thus had control over the Debtors, with the power to empty their accounts at any time. Moreover, the transactions involving HTLF's use of the Debtors' signed, blank checks cannot be considered "arms-length" given the only

---

[6] *In re Today's Destiny, Inc.*, 388 B.R. 737, 749 (Bankr. S.D. Tex. 2008) ("Insiders fail to cite any authority supporting the proposition that in pari delicto bars a Trustee from asserting claims against Insiders for their wrongful conduct because of the same wrongful conduct . . . . No case, logic, or equitable proposition supports the conclusion that insiders of a bankrupt corporation can insulate themselves from liability by virtue of the illegal character of their conduct. Granting Insiders relief based on in pari delicto would directly oppose *in pari delicto*'s purpose of denying assistance to wrongdoers.").

[7] Evidence suggests Ms. White is McClain's first ex-wife.

[8] *See In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 431 (Bankr. N.D. Tex. 2021) (setting forth the relevant considerations for determining non-statutory insider status).

justification for the transactions was to fraudulently kite checks.[9]

- o Mechanics, for purposes of servicing the Debtors' accounts, could potentially be insiders of Debtors via Rabo. For example, prior to Mechanics' acquisition of Rabobank, N.A., the Debtors' deposit accounts and loan accounts were managed by Rabo or its affiliate. Management of the accounts generally remained the same from the Debtors' perspective, with Mechanics instructing Rabo what to command McClain to deposit or transfer on any particular date or time. Rabo maintained such control that Mechanics executed the DACAs against their own interest, with nothing to gain, days before the Petition Date.

- The Trustee could also potentially amend to incorporate facts that would support finding the "adverse interest" exception to the *in pari delicto* defense applies.[10]

  - o For at least part of the period covering the Trustee's claims, Crystal McClain, Brian's ex-wife, was a 50% owner of at least McClain Farms, Inc. and McClain Feed Yard, Inc. Moreover, at no time was McClain the sole representative of the Debtors; Meagan, Kinsey, and/or others were also employed. Since McClain was never the sole representative of Debtors, the adverse interest exception is available to the Debtors.[11]

  - o Under the *Ponzi*-scheme presumption, every transfer is considered presumptively fraudulent because each is designed to perpetuate, and unavoidably grow, the fraud, harming the Debtors and their creditors. As such, McClain's conduct was predominantly adverse to the Debtors' interests. Therefore, his wrongdoing should not be imputed to the Debtors, thereby defeating *in pari delicto*.[12]

  - o Likewise, if granted leave, the Trustee could add a statutory claim for contribution (*e.g.*, Tex. Civ. Prac. & Rem. Code §§ 33.001, *et seq.*), which

---

[9] *Id.*; *see also* 11 U.S.C. § 101(31)(B)(ii).

[10] *Cf.* Order at 13 n.8.

[11] *In re Sunpoint Sec., Inc.*, 377 B.R. 513, 566 (Bankr. E.D. Tex. 2007) (citations omitted) ("While Lewis certainly enjoyed a predominant position of control, he clearly did not act as the sole representative of Sunpoint and, under Texas law, "sole actor" means just that—sole actor—and is not applied when the rationale for the rule has no application.").

[12] *See F.D.I.C. v. Ernst & Young*, 967 F.2d 166, 170 (5th Cir. 1992).

is not subject to the defense of *in pari delicto* as a matter of law.[13]

Since the Trustee's Second Amended Complaint: already alleges sufficient facts to defeat *in pari delicto* as a matter of public policy as to all Defendants; already alleges sufficient facts to, at minimum, give rise to reasonable inferences that Rabo exerted control over the Debtors, and was thus an insider of Debtors who cannot invoke *in pari delicto*; can be amended to include sufficient allegations to establish CFSB, HTLF, and/or Mechanics as insiders ineligible to invoke *in pari delicto*; and can be amended to include claims not defeated by *in pari delicto*, the Court should reconsider and its Order and deny Defendants' motion to dismiss as to all Defendants, or at least Rabo, based on the *in pari delicto* defense. Alternatively, as this is the Trustee's first time learning the Court's particular perspective on any deficiencies in the Trustee's pleadings on this issue, the Court should reconsider its Order dismissing the Trustee's common law claims with prejudice and instead grant the Trustee leave to amend.

## II.   JURISDICTION AND STANDARD OF REVIEW

This Motion is made under Federal Rules of Civil Procedure ("**FRCP**") 54(b) and 59(e), made applicable here by Federal Rules of Bankruptcy Procedure ("**FRBP**") 7054 and 9023. FRCP 54(b) permits the Court to "reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Providence Title Co. v.*

---

[13] *In re Today's Destiny, Inc.*, 388 B.R. 737, 753 (Bankr. S.D. Tex. 2008) ("Customers have filed proofs of claims against Today's Destiny . . . . The Trustee has asserted that Lenders aided and abetted and conspired with Today's Destiny to defraud Customers. If these allegations are proven true and 100% of the liability to Customers is imposed on Today's Destiny, Today's Destiny would be entitled to contribution from Lenders for their proportionate share."); *id.*, at 750 ("The Court can, as a matter of law, rule that *in pari delicto* does not bar the Trustee's contribution claim."); *see also Norman v. B. V. Christie & Co.*, 363 S.W.2d 175, 178 (Tex. App.-Houston 1962, writ ref'd n.r.e.) (joint venture partner could not invoke in pari delicto against his partner to defeat a claim for contribution arising from entry of judgment relating to an illegal contract).

*Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2021 WL 5003273, at *3 (E.D. Tex. Oct. 28, 2021) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)); *see also* FED. R. CIV. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). FRCP 59(e) similarly allows the Court to reconsider its decision if it would result in a manifest error of law or fact or is necessary to prevent manifest injustice. *Marseilles Homeowners Condo. Ass'n Inc. v. Fid. Nat. Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008) (citation omitted); *Ross Dress for Less, Inc. v. ML Dev. LP*, No. CV H-20-978, 2021 WL 4205064, at *1 (S.D. Tex. Jan. 26, 2021). Finally, the Motion is timely under FRBP 9023(b).[14]

In ruling upon a defendant's motion to dismiss, courts must take "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007). Further, the Court must "draw all reasonable inferences in the plaintiff's favor," *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Indeed, a plaintiff should be permitted to proceed on his claim so long as the "factual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (*even if doubtful in fact*)." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

## III.   ARGUMENT

*First*, the Court should reconsider its Order to the extent it dismissed the Trustee's common-law claims with prejudice. The Trustee has not repeatedly failed

---

[14] This Motion does not seek relief under FRCP 60, as made applicable by FRBP 9024.

8

to cure deficiencies. Rather, the Trustee amended once to address issues raised by Defendants in their first motions to dismiss. This is now just the first time the Court has addressed the applicability of the *in pari delicto* defense. Under longstanding precedent, it is improper to deny the Trustee a second opportunity to amend and address the deficiencies and issues raised in the Order.

*Second*, granting leave to amend would not be futile. As it is, the Trustee's live complaint alleges sufficient facts to defeat *in pari delicto* on policy grounds as to all Defendants at this stage. To be clear, the Trustee appreciates the Court's ruling and does not contest in this Motion that the Fifth Circuit is likely to find the *in pari delicto* defense can be asserted against bankruptcy trustees. Nor does the Trustee claim to have greater rights than the Debtors had as of the Petition Date. Rather, the Trustee contends that *akin* to laws establishing receiverships, Texas' law on *in pari delicto*, unlike other states, builds in a public policy exception to its enforcement such that if granting relief will only further the public interest, the defense fails, and the Trustee's claims survive. *See generally In re Vantage Benefits Administrators, Inc.*, No. 18-31351-SGJ-7, 2024 WL 3842796, at *26-29 (Bankr. N.D. Tex. Aug. 14, 2024) (finding the trustee's claims governed by New York law to be barred by *in pari delicto* but claims governed by Texas law were not); *Osherow as Tr. for Estate of Republic Res., LLC v. York*, No. 5:17-CV-483-DAE, 2019 WL 6048017, at *6 (W.D. Tex. Aug. 5, 2019) (explaining whereas *in pari delicto* may automatically bar claims under New York law, it is not an automatic bar under Texas law). Here, granting relief will not possibly benefit any wrongdoer–including debtors; it will benefit innocent creditors and discourage reckless conduct by financial institutions, furthering the public interest. Applying *in pari delicto* here is contrary to longstanding Texas precedent.

*Third*, the Court should at minimum reconsider its Order as to Rabo because the Order fails to consider the implications of the Trustee's allegations that Rabo exercised excessive control over the Debtors. *E.g.*, Sec. Am. Compl. [Dkt. No. 48] at

9

¶ 73. The Trustee alleges that Rabo controlled the Debtors, including through liens on the Debtors' property, that Rabo was "able to leverage the Debtors to do what Rabo wanted," *id.* at ¶ 92, and "would lead the discussion on how to move the Debtors' cash and incoming receivables around," ¶ 126. The Trustee further alleges Rabo's excessive control was indisputably evident when Rabo extracted broad waivers and releases from the Debtors and forced McClain–the Debtors' sole owner and executive– out of his own companies in favor of an independent chief restructuring officer chosen by Rabo. *Id.* As the Court must take the Trustee's allegations as true and give all reasonable inferences to the Trustee, the questions of when and to what extent Rabo gained control of Debtors, and may therefore be more culpable than the Debtors, is a fact question that cannot be resolved at this stage. *Cf. ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 430 (S.D. Tex. 2008).

Furthermore, these same allegations of control give rise to a reasonable inference that Rabo is an insider under 11 U.S.C. § 101(31)(B)(iii) and therefore ineligible to invoke the *in pari delicto* defense. *In re Today's Destiny, Inc.*, 388 B.R. 737, 749. If afforded the opportunity, the Trustee could amend to add allegations supporting insider status as to CFSB, HTLF, and Mechanics. Likewise, the Trustee could add allegations sufficient to establish other exceptions to the *in pari delicto* defense, such as the adverse interest exception, and assert claims against which the defense cannot be asserted, such as contribution claims. As the Trustee could plausibly further defeat *in pari delicto* on grounds beyond public policy, the Court should grant the Trustee leave to amend even if the Court finds the Trustee's policy argument unavailing.

A.     The Claims Should Not Have Been Dismissed With Prejudice.

As an initial matter, the Court should reconsider its Order to the extent it dismisses the Trustee's claims with prejudice and instead grant the Trustee leave to

amend. "Under Rule 15(a), 'leave to amend shall be freely given when justice so requires,' and should be granted absent some justification for refusal." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir. 2003) (citation omitted). "District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 330 (5th Cir. 2002). Here, the Trustee has not had an opportunity to amend to address the issues raised in the Court's Order. And though the Court posited that the Trustee could not plead facts that would change the outcome, the Order does not consider every exception to *in paru delicto* and therefore does not justify the conclusion that any amendment would be futile. Moreover, as explained herein, the Trustee could both add facts and claims that withstand Defendants' invocation of *in pari delicto*. The Court should therefore afford the Trustee leave to amend.

### 1) This Was the Court's first ruling addressing *in pari delicto.*

To be sure, though the Trustee has technically amended his complaint twice, the two amendments were serial to each other and filed in that manner only because the Trustee's deadline to respond to CFSB's motion to dismiss was two weeks prior to the deadline to respond to the other Defendants' motions. *See* Case No. 25-02005, Dkt. No. 34 at 3 (motion to extend); Dkt. No. 38 (order) at ¶¶ 2-3 (establishing the Trustee's deadline to respond to CFSB's motion to dismiss two weeks earlier than the remaining Defendants' motions). The Trustee's unopposed motion to extend the response deadline, however, contemplated the Trustee's deadline to respond to CFSB's motion was "subject to further extensions." Case No. 25-02005, Dkt. No. 34 ¶ 9(b). The Trustee filed his First Amended Complaint, focusing on amendments

pertaining to the claims against CFSB. *See* Exhibit A (redline of Original Complaint against First Amended Complaint). CFSB subsequently stipulated that the Trustee would file his Second Amended Complaint and CFSB would respond to that, Case No. 25-02005, Dkt. No. 46, such that no party answered or moved to dismiss the Trustee's First Amended Complaint. The Trustee then filed his Second Amended Complain, focusing on amendments pertaining to CFSB, HTLF, and Mechanics, two weeks after the first. *See* Exhibit B (redline of First Amended Complaint against the Second Amended Complaint). Defendants filed their second motions to dismiss the Trustee's claims, and the Court issued its Order.

The Trustee has thus amended his claims against each Defendant once *prior* to the Court considering them. The Trustee's amendments prior to the Court's ruling should not and does not deprive the Trustee of the ordinarily afforded opportunity to replead following the Court's first time speaking on this issue. Indeed, this is borne out by Rule 15(a)(2), which instructs that a court "should freely give leave when justice so requires," even after the opportunity to amend in Rule 15(a)(1) has expired or even been used. Such a rule would be inconsistent with longstanding precedent that courts should ordinarily not dismiss with prejudice without affording a plaintiff an opportunity to replead. *Great Plains Tr. Co.*, 313 F.3d at 330. Rule 15(a)(1) allows plaintiffs to freely amend in response to a motion to dismiss before the Court rules on the motion. Instructing courts to freely give leave even after that time period, *i.e.*, after the Court rules on a motion to dismiss, means that any amendments prior to the Court's first consideration of a motion to dismiss cannot count against the Plaintiff. Rather, it is only after the Court has ruled that a Plaintiff has had an opportunity to present his case. Indeed, leave should only not be freely given under Rule 15(a)(2) after *repeated* failures to cure deficiencies. *See United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010). And absent extraordinary circumstances, the Trustee is entitled to more than one attempt,

12

particularly where, as here, the Trustee can allege plausible facts that would enable his claims to survive Defendants' assertion of *in pari delicto. Great Plains Tr. Co.*, 313 F.3d at 330.

### 2) The Court's break from other courts in this circuit further warrants leave to amend.

The circumstances here do no warrant denial with prejudice because, as shown below, there are numerous plausible ways the Trustee could and would amend to survive Defendants' *in pari delicto* defenses. Moreover, the circumstances here all the more favor an opportunity to amend given that the Court acknowledges its decision deviates from those of other bankruptcy courts in this circuit. *See* Order at 21; n.2, *supra.* In addressing the various arguments raised concerning the *in pari delicto* defense, the Trustee also had to respond to numerous other arguments, including choice of law arguments, and could not exhaustively focus on the numerous reasons *in pari delicto* should not defeat the Trustee's common law claims–particularly given that most other courts in this circuit have decided the issue in the Trustee's favor based on allegations already in the Trustee's live complaint. As the Trustee is only now aware of the Court's view, the Trustee only now know the specific facts that he must plead to defeat *in pari delicto.* The Trustee has the right, and should have the chance, to plead and prove his case.

### B. Texas Law Requires a Fact-Specific Equitable Analysis That Defeats Defendant's *In Pari Delicto* Defense.

*Second*, the Court should reconsider its Order because the Trustee has already pleaded sufficient facts to defeat Defendants' invocation of *in pari delicto* as a matter of policy under Texas law. *In pari delicto* is an equitable affirmative defense arising out of the common law of each state in which it is recognized. *See generally In re Vantage Benefits Administrators, Inc.*, No. 18-31351-SGJ-7, 2021 WL 1815065, at *11-12 (Bankr. N.D. Tex. May 5, 2021). Here, the Trustee asserts claims under Texas

13

law, and Defendants have not identified any differences between Texas law and any other purportedly applicable state's law on *in pari delicto*. Accordingly, for purposes of adjudicating Defendants' motions to dismiss, "Texas law governs whether *in pari delicto* bars the Plaintiff's claim." O*sherow as Tr. for Estate of Republic Res., LLC v. York*, No. 5:17-CV-483-DAE, 2019 WL 6048017, at *6 (W.D. Tex. Aug. 5, 2019).

The defense of *in pari delicto* "is adopted, not for the benefit of either party and not to punish either of them, but for the benefit of the public.'" *Reneker v. Offill*, No. CIV.A. 3:08-CV-1394-, 2010 WL 1541350, at *8 (N.D. Tex. Apr. 19, 2010) (quoting *Lewis v. Davis*, 199 S.W.2d 146 (Tex. 1947)) (denying dismissal of special receiver's negligence claim where receiver was standing in shoes of persons who signed consent orders with the SEC admitting to violating the securities laws). The doctrine "enforce[s] a public policy of precluding recovery for damages resulting from the willful commission of crimes." *Osherow as Tr. for Estate of Republic Res.*, 2019 WL 6048017, at *6; *see also In re Vantage Benefits Administrators, Inc.*, No. 18-31351-SGJ-7, 2021 WL 1815065, at *12 (Bankr. N.D. Tex. May 5, 2021) (quoting *Jones v. Wells Fargo Bank, N.A.,* 666 F.3d 955, 965 (5th Cir. 2012)) ("The doctrine . . . is undergirded by the concerns, first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality" (cleaned up)).

Unlike in states that strictly apply the *in pari delicto* defense, under Texas law, even where parties are *in pari delicto*, "relief will be granted if public policy demands it." *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 110 (Tex. App.—San Antonio 2011, pet. denied) (citing *Lewis*, 199 S.W.2d at 151) (other citations omitted). "In such cases, courts do not consider the guilt of the respective parties, but rather look to the higher right of the public." *Id.* ("Allowing recovery here advances the public interest by promoting compliance with architectural statutes and regulations, and by discouraging similar illegal transactions in the future."). Thus, for example, "[e]ven

14

if the parties are *in pari delicto*, courts will permit equitable claims for restitution to proceed if allowing those claims will advance the public interest." *Orthodontic Centers Of Tex., Inc. v. Wetzel*, 410 Fed. Appx. 795, 799 (5th Cir. 2011) (citing *Lewis*, 199 S.W.2d at 151; *Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 642 (S.D. Tex. 2009)).

"Whether to allow a defendant to block plaintiff's recovery" by asserting the defense "depends upon the peculiar facts and equities of the case, and the answer usually given it is that which it is thought will better serve public policy." *In re Am. Hous. Found.*, No. 09-20232-RLJ-11, 2011 WL 4625349, at *32 (Bankr. N.D. Tex. Sept. 30, 2011), aff'd, No. 09-20232-RLJ-11, 2012 WL 11851620 (N.D. Tex. Sept. 14, 2012), aff'd, 544 Fed. Appx. 516 (5th Cir. 2013) (citing *Lewis v. Davis*, 145 Tex. 468, 477 (Tex. 1947)). "In reaching a decision as to granting or withholding relief, the question is whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of the other." *Geis*, 362 S.W.3d at 110 (quoting *Lewis*, 199 S.W.2d at 151) (cleaned up). "In such cases **the guilt of the respective parties is not considered by the court, which looks only to the higher right of the public**; the guilty party to whom relief is granted being only the instrument by which the public is served." *Wright v. Wight & Wight,* 229 S.W. 881, 882 (Tex.Civ.App.-El Paso 1921) (emphasis added). Rather than block relief by affirming the *in pari delicto* defense, **relief is granted to discourage such transactions by others**." *Id.* This outcome is dictated by Texas law, which focuses the "public policy inquiry . . . on the public's interest, not the parties." *Orthodontic Centers Of Tex., Inc. v. Wetzel*, 410 Fed. Appx. 795, 800 (5th Cir. 2011) (citations omitted).

"In other words, a policy analysis must occur on a case-by-case basis." *In re Vantage Benefits Administrators, Inc.*, 2021 WL 1815065, at *14. This requirement is "particularly acute when a defendant is asserting the defense against a Trustee who seeks recovery for the benefit of creditors of a wrongdoer rather than the

15

wrongdoer himself." *Id.* (citing *In re Today's Destiny*, 388 B.R. at 749)). Here, a policy analysis reveals that none of the equities in this case weigh in favor of barring the Trustee's claims. To the contrary, permitting the Trustee to pursue his common-law claims against Defendants would further the public interest.

1) <u>There are no compelling interests to apply the *in pari delicto* defense in this case.</u>

Under Texas common law, *in pari delicto* is not a rigidly applied rule that applies even where doing so would subvert the very purpose of the rule. Rather, each case must examine whether the rationale for the defense is applicable, and if so, whether it is outweighed by greater public interests. *See In re Vantage Benefits Administrators, Inc.*, 2024 WL 3842796, at *28. Here, neither of the two policies undergirding the *in pari delicto* defense–that courts should not assist wrongdoers and should discourage illegal conduct–favor applying the *in pari delicto* defense as a bar to the Trustee's claims. Regardless of whether McClain's conduct should be imputed to the Debtors, as legal fictions, the Debtors can only act through individuals. McClain, who committed the wrongdoing, with the assistance of Defendants as pleaded, is dead and cannot benefit from any recovery. And Debtors are being liquidated. As this is not a chapter 11 reorganization, and is a less than 100% recovery case, whether the Trustee prevails is similarly of no import to the Debtors; they will be discharged from these bankruptcy cases with no assets. Thus, one of the primary purposes of the *in pari delicto* defense does not weigh in favor of applying the defense and barring the Trustee's common-law claims.

Likewise, applying *in pari delicto* to bar the Trustee's claims would not discourage similar illegal and fraudulent conduct in the future. To the contrary, it would have the exact opposite result. By permitting Defendants to escape accountability for their misconduct, the Court inevitably shifts full responsibility for the misconduct to just the Debtors, the one party of the five who is least able to

16

account for it. Worse, most of the Defendants have pending proofs of claim against Debtors, which if allowed, would further unjustly enrich Defendants.

### 2) The equities favor permitting the Trustee to prosecute his common-law claims.

### i. No wrongdoers will benefit from any recovery.

Even assuming McClain's fraudulent conduct is imputed to the Debtors, the equities of this particular case still favor permitting the Trustee to prosecute his common-law claims against Defendants. Here, the Trustee is pursuing claims on behalf of innocent creditors through the Debtors' estates. The Debtors will not ultimately retain the funds or benefit from any recoveries. And no other wrongdoers associated with the Debtors stand to benefit from the Trustee's potential recoveries either; the Debtors have no ongoing operations or employees. There is simply no public interest in denying the Debtors access to the Courts to prosecute its claims because the Debtors will not benefit, much less be unjustly enriched, by any recoveries to be had. Rather, all the benefit will flow to innocent creditors. And protecting creditor interests and maximizing their recoveries is a key goal of Chapter 7 bankruptcies. Given the lack of any counterweight, this policy of not "inflicting additional harm on the innocent victims" of McClain's fraud, *i.e.*, innocent creditors, easily tips the scales in the Trustee's favor. *In re Vantage Benefits Administrators, Inc.*, 2024 WL 3842796, at *28; *In re Today's Destiny, Inc.*, 388 B.R. 737, 749 (Bankr. S.D. Tex. 2008) ("The Trustee may be able to demonstrate that any recovery would benefit only innocent creditors, not the wrongdoers."). *See generally In re Aliera Companies, Inc.*, 665 B.R. 468, 504 (Bankr. N.D. Ga. 2024) ("[T]he Trustees are bringing their own claims based on injury unique to the debtors estates, and any recoveries of the Trustees would ultimately be for the sole benefit of the creditors. As such, Georgia's equity principles would apply the innocent creditor exception to the

17

*in pari delicto* defense."); *Nicholson v. Shapiro & Associates, LLC*, 2017 IL App (1st) 162551, ¶ 17, 82 N.E.3d 529, 533 (citations omitted) ("The *in pari delicto* defense 'loses its sting' once the person who is in *in peri delicto* is removed. *In pari delicto* keeps the wrongdoer from profiting from his wrong, and that reason does not exist once the wrongdoer is gone.")

*Critically, this approach comports with over 100 years of Texas case law*. That the Debtors' corporate shells, which were used by McClain to further his wrongdoing, "may be the instruments by which the public is served" is of no import. *Wright,* 229 S.W. at 882. Likewise, the Debtors' "guilt" or lack thereof is of no import. *Id.*; *see also Geis*, 362 S.W.3d at 110. Rather, it is the "higher right of the public" that controls whether *in pari delicto* should bar the Trustee's claims. *Wright,* 229 S.W. at 882.

      ii.   <u>Permitting the Trustee to pursue his claims will discourage similar fraudulent conduct.</u>

Barring the *in pari delicto* defense rather than the Trustee's claims would further serve the public interest by discouraging Defendants, as well as banks and lenders more generally, from engaging in conduct that facilitates a $100 million Ponzi scheme. Conversely, as noted above, since no benefit will inure to the Debtors, permitting the Trustee's claims to move forward would not encourage wrongdoing, as no benefits are flowing to wrongdoers. The benefit to the public of discouraging wrongdoing is another weight on the scale in the Trustee's favor. *See Wetzel*, 410 Fed. Appx. At 800 ("The relief is granted to discourage such transactions by others."); *Geis*, 362 S.W.3d at 110 (same); *In re Am. Hous. Found.*, 2011 WL 4625349, at *33 ("Allowing [the]*in pari delicto* defense does not deter future wrongdoing, does not prevent unjust enrichment, degenerates the Bankruptcy Code and principles of equity, and offends public policy.").

Here, the "equities" of the case all lay on the side of denying Defendants' *in pari delicto* defense. It is therefore of no import that the Debtors may be vicariously

18

guilty based on McClain's misconduct. Barring the Trustee's claims only cuts against the public's interest. The defense should therefore be barred and not the Trustee's claims.

C.     <u>The Trustee's Allegations Establish the "Control" and "Insider" Exceptions As To Rabo, and the Trustee Could Amend To Establish These, and Other, Exceptions and Claims Immune To *In Pari Delicto.*</u>

*Third*, the Court should reconsider its Order as to Rabo because the Trustee's allegations establish at least two 'exceptions' to *in pari delicto* may apply to prevent Rabo from invoking it. And the Trustee could amend to allege facts and claims to survive dismissal as to all Defendants on at least one joint-tortfeasor based claim at the motion to dismiss stage.

1)     <u>The Trustee's allegations raise fact questions about the "control" exception to *in pari delicto*,</u>

The Trustee's complaint alleges sufficient facts to at least raise a factual dispute as to whether Rabo is entitled to invoke *in pari delicto* because Rabo is allegedly responsible for the Debtors' wrongdoing. The Trustee alleges Rabo exercised excessive control over the Debtors, which culminated in Rabo forcing McClain out from his own companies and appointing an independent chief restructuring officer in his place. *E.g.*, Sec. Am. Compl. ¶¶ 73, 76. Where a defendant is found to exercise excessive control over a plaintiff, courts have held the defendant cannot invoke *in pari delicto* to defeat the plaintiff's claims. *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 430 (S.D. Tex. 2008) ("Because AMC/Grupo dominated and controlled ASARCO during the relevant time and dictated the terms of the SPCC transaction, the Court finds that ASARCO (and its creditors) were not at equal fault. Thus, AMC's in pari delicto defense fails.").

Here, at the 12(b) stage, the Court must consider the Trustee's non-conclusory allegations that Rabo literally took over the Debtors as true. While that may have

19

occurred shortly before the Petition Date, the Trustee alleges Rabo;s control began long before that date, and involved directing the use of the Debtors' cash to satisfy their (i.e., Defendants') debts rather than other creditors' debts. *E.g.*, Sec. Am. Compl. ¶ 126. At minimum, the Trustee's allegations of Rabo's control over Debtors raises questions of fact as to when and to what extent Rabo began controlling the Debtors. Since that question cannot be resolved now, and since Rabo would potentially be more culpable than the Debtors if Rabo was controlling them, Rabo cannot establish on the face of the complaint that Debtors are equally or more culpable than it and that it is entitled to prevail on *in pari delicto*, as *in pari delicto* will not always bar a less culpable defendant from obtaining relief from the courts. *Dibrell v. Cent. Nat. Bank*, 293 S.W. 874, 878 (Tex. App.-Austin 1927, writ dism'd w.o.j.) ("Where the parties to a contract against public policy or otherwise illegal are not in pari delicto, or equally guilty, which they may not be, and where public policy is considered as advanced by allowing either, or at least the more excusable of the two, to sue for relief against the transaction, relief is given to him."). At minimum, the Court's dismissal of the Trustee's common law claims against Rabo on the basis of the *in pari delicto* defense is improper.

### 2) The Trustee's allegations raise fact questions about Rabo's insider status.

Questions concerning Rabo's control over Debtors is but one example of why it is often improper to resolve the *in pari delicto* defense prior to summary judgment, if not trial. *See, e.g.*, *In re TOCFHBI, Inc.*, 413 B.R. 523, 537 (Bankr. N.D. Tex. 2009) (could not resolve *in pari delicto* at summary judgment); *In re Today's Destiny, Inc.*, 388 B.R. at 749 ("A *Lewis* policy analysis can not be undertaken prior to discovery and an evidentiary hearing. In the present case, consideration of the equities and

public policy may exempt the Trustee from *in pari delicto's* application.").[15] The Trustee's allegations of Rabo's control, including, ultimately, its ability to elect who managed Debtors, at minimum also gives rise to the reasonable inference that Rabo was an "insider" of the Debtors under the Bankruptcy Code. *See* 11 U.S.C. § 101(31)(B)(iii). And insiders of a debtor are ineligible to invoke the *in pari delicto* defense against a trustee bringing claims on behalf of a debtor's estate. *See In re Today's Destiny, Inc.*, 388 B.R. at 749 ("Insiders fail to cite any authority supporting the proposition that *in pari delicto* bars a Trustee from asserting claims against Insiders for their wrongful conduct *because* of the same wrongful conduct . . . . No case, logic, or equitable proposition supports the conclusion that insiders of a bankrupt corporation can insulate themselves from liability by virtue of the illegal character of their conduct."); *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 842 (W.D. Tex. 2017) (discussing the "corporate insider exception to the *in pari delicto* defense" but finding it did not apply because the complaint did not allege excessive control).

To allow Rabo to escape liability despite its insider status would "directly oppose *in pari delicto's* purpose of denying assistance to wrongdoers." *In re Today's Destiny, Inc.*, 388 B.R. at 749. Indeed, it would assist a wrongdoer while denying assistance to the innocent Trustee and the innocent creditors he represents. Whether Rabo indeed controlled the Debtors is a fact question that cannot be resolved at this

---

[15] The Trustee agreed that the *in pari delicto* defense *could* be resolved at the motion to dismiss stage in this case because there is no evidence that has arisen or that will arise that will suggest any wrongdoer will benefit from any of the Trustee's recoveries, and therefore, public policy inherently favors permitting the Trustee to bring the claims with the aim of improving payouts to innocent creditors. As no facts will change this foregone conclusion, the Court can conclude as much at this time. But the Trustee does not concede the issue can be decided in Defendants' favor without discovery.

stage. Accordingly, Rabo has not established as a matter of law it is entitled to prevail on *in pari delicto,* and the Court should reverse its decision at least as to Rabo.

### 3) The Trustee could amend to plead facts to establish CFSB, HTLF, or Mechanics were also insiders of the Debtors.

Furthermore, the Trustee could amend his complaint to add facts capable of rendering CFSB, HTLF, and/or Mechanics insiders of the Debtors and likewise ineligible to invoke the *in pari delicto* defense.

For example, the Trustee could amend his Complaint as to CFSB to include recently produced text messages that strongly suggest that the mother of two of McClain's children, Meagan and Kinsey (and potentially his first ex-wife), Leslie White, was employed by CFSB at all relevant times; that White serviced the Debtors' accounts on CFSB's behalf outside of normal procedure, including regularly sending private text messages to Brian, Meagan, and Kinsey about overdrafts and other banking issues; that White would run interference within CFSB for the Debtors by coming up with excuses for various overdrafts and other irregularities (while at the same time remarking on the disarray of McClain's money management).[16] This close familial relationship between White, on CFSB's side, and her daughters and their father on the Debtors' side, is a primary factor that would weigh in favor of finding CFSB a non-statutory insider of the Debtors. *In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 431 (Bankr. N.D. Tex. 2021). And the Trustee could further allege as to the second relevant factor–whether the relevant transactions were conducted at arms length, *see id.*–that CFSB was further compromised because the Debtors both paid and separately received approximately $330 million from investors and family members who banked at CFSB.

---

[16] As but one stark example, on January 1, 2020, White texted Meagan and Kinsey that it was partially CFSB's "fault" for the disarray because they "always let[] him get away with stuff and would blow it off like it's nothing when it really was a big deal," in reference to an incident arising from one of the Debtors' numerous overdrafts.

Similarly, the Trustee could allege as to HTLF that HTLF was in control of the Debtors by virtue of their grasp on the Debtors' purse strings. At any moment, HTLF could have directed the use of Debtors' funds on a whim in any manner whatsoever. That power and control is sufficient to give rise to fiduciary duties. It likewise supports an inference that HTLF was therefore an insider of the Debtors.

In the same vein, the Trustee understands that prior to Mechanics' acquisition of Rabobank, N.A., the Debtors loans and deposit accounts were both managed by Rabo or an affiliate. The Trustee further understands that the day-to-day administration of the account did not materially change following the sale. With respect to the Debtors' accounts, other than the depository personnel being employees of Mechanics, nothing changed. And Mechanics was effectively an alter ego of, and directed by, Rabo with regard to these accounts. As alleged in the complaint, Mechanics and Rabo would coordinate regularly, if not daily, with Rabo instructing Mechanics whether to honor or dishonor checks despite insufficient funds. *E.g.*, Sec. Am. Compl. ¶ 126. Likewise, Rabo directed Mechanics to sign DACAs days before the bankruptcy, which Mechanics readily did despite having no obligation to do so.

These are only some of the potential allegations the Trustee could readily make today without having reviewed the large volume of discovery specifically for this purpose that could overcome the *in pari delicto* defense. As such, the Court cannot determine as a matter of law today that Defendants will prevail on *in pari delicto*. The Trustee's common-law claims should not be dismissed.

### 4)    The Trustee could establish the adverse interest exception.

Beyond just the control and insider exceptions, the Trustee can also plausibly plead facts that would arguably support applying the "adverse interest" exception to the *in pari delicto* defense. While the Court posits this exception does not seem to apply, Order at 13, n.8, that is not inherently the case.

23

Under the adverse interest exception, an individual's misconduct is not imputed to the corporation where the conduct victimizes the corporation. *In re Essential Fin. Educ., Inc.*, 629 B.R. at 431. While the exception is not available where the wrongdoer was the only representative of the entity, it still could apply so long as there is at least one other representative of the entity. *In re Sunpoint Sec., Inc.*, 377 B.R. 513, 566 (Bankr. E.D. Tex. 2007) (citations omitted) ("While Lewis certainly enjoyed a predominant position of control, he clearly did not act as the sole representative of Sunpoint and, under Texas law, "sole actor" means just that—sole actor—and is not applied when the rationale for the rule has no application."). And there always were. Until mid-2021, McClain shared 50/50 ownership of at least McClain Farms, Inc. and McClain Feed Yard, Inc., with his ex-wife. And at all times, the Debtors employed at least one other employee. McClain was therefore not the sole representative. And under the *Ponzi*-scheme presumption, all transfers are presumptively fraudulent and harmful to the Debtors, as these activities are designed to perpetuate the fraud and inherently deepen Debtors' insolvency. As such, a reasonable inference that must be afforded to the Trustee at this stage is that McClain acted adverse to the Debtors' interest and the exception applies, at least pending discovery. The Trustee should be afforded an opportunity to establish these exceptions now that the Court has raised these issues.

### 5) The Trustee can add a claim for contribution immune from the *in pari delicto* defense.

*Finally*, should the Court find all of the Trustee's preceding arguments unavailing, it should still afford the Trustee leave to amend to at least assert a claim for contribution against Defendants under Texas Civil Practice and Remedies Code Chapter 33.001, *et seq.* This case is no different than the facts in *In re Today's Destiny*. There, as here, millions of dollars in proofs of claim had been filed against the debtor. But, unlike the Trustee's Second Amended Complaint, in *Today's Destiny*,

24

the trustee there asserted a contribution claim against defendants as alleged joint-tortfeasors of the debtors giving rise to the claimed liabilities in the proofs of claim, which the court held "as a matter of law" was not barred by *in pari delicto*. *In re Today's Destiny, Inc.*, 388 B.R. at 750; *see also Norman v. B. V. Christie & Co.*, 363 S.W.2d 175, 178 (Tex. App.-Houston 1962, writ ref'd n.r.e.). This rule is consistent with a general rule that statutory schemes may fully supplant the common law and thereby immune from common-law defenses like *in pari delicto*. *See, e.g.*, *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985).

Here, the Trustee's present claims against Defendants allege that Defendants were joint-tortfeasors together with McClain. Should the Trustee amend to add a claim for contribution, based on the same facts, circumstances, and theories as already alleged in the live complaint, such claim would relate back to the Trustee's Original Complaint and avoid limitations issues under Federal Rule of Civil Procedure 15. Permitting the Trustee to add such a claim would therefore not be futile, and the Court would be abusing its discretion to deny the Trustee leave to do so. *McLemore v. Lumen Techs., Inc.*, No. 25-30264, 2026 WL 252698, at *4 (5th Cir. Jan. 30, 2026). At minimum, the Court should reconsider its dismissal of the Trustee's common-law claims *with prejudice* and grant the Trustee a chance to amend. Under Texas law, the Court should reconsider and vacate its Order and instead deny Defendants' motions to dismiss based on the *in pari delicto* defense.

## IV.    CONCLUSION

For the foregoing reasons, the Trustee requests that the Court grant the Trustee's Motion, vacate its Order, and deny Defendants' motions to dismiss on *in pari delicto* grounds. Alternatively, the Court should afford the Trustee leave to amend to address the issues raised in the Court's Order, and award such other and further relief to which the Trustee may be entitled.

Dated: April 10, 2026.

Respectfully submitted,

/s/ Alan Dabdoub
Alan Dabdoub
State Bar No. 24056836
adabdoub@lynnllp.com
P. Campbell Sode
State Bar No. 24134507
csode@lynnllp.com
Farsheed Fozouni
State Bar No. 24097705
ffozouni@lynnllp.com
Steven G. Gersten
State Bar No. 24087579
sgersten@lynnllp.com
LYNN PINKER HURST & SCHWEGMANN LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:   214-981-3800
Facsimile:   214-981-3839

Hudson M. Jobe
State Bar No. 24041189
hjobe@jobelawpllc.com
JOBE LAW PLLC
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
Telephone:   214-807-0563

SPECIAL COUNSEL TO THE TRUSTEE

26