UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

   *and*

Michael R. Johnson (*Pro Hac Vice*)
Matthew M. Cannon (*Pro Hac Vice*)
Austin C. Nate (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: mcannon@rqn.com
Email: anate@rqn.com

*Attorneys for Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| In re:<br><br>MCCLAIN FEED YARD, INC., et al.<br><br>   Debtors. | CASE NO. 23-20084-swe7<br>Jointly Administered |
| In re:<br><br>2B FARMS, a Texas General Partnership, et al.,<br><br>   Debtors. | CASE NO. 23-50096-swe12<br>Jointly Administered |

1

| | |
|---|---|
| AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA and THORLAKSON DIAMOND T FEEDERS, LP,<br><br>    Plaintiffs,<br><br>v.<br><br>RABO AGRIFINANCE LLC et al.,<br><br>    Defendants. | ADV. NO. 24-02007-swe<br>Consolidated Adversary Proceeding |

**RABO AGRIFINANCE LLC'S BRIEF IN OPPOSITION TO THE TRUSTEE'S MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 27, 2026 MEMORANDUM OPINION AND ORDER**

Defendant Rabo AgriFinance LLC ("**Rabo**"), through counsel, hereby submits this brief in opposition to the Trustee's motion to reconsider (the "**Motion**") concerning the Court's *Memorandum Opinion and Order Dismissing Common-Law Claims Based on the Affirmative Defense of In Pari Delicto* (the "**Order**").

2

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................. 4

**ARGUMENT** ......................................................................................................................... 6

    **I.**     **THE COURT CORRECTLY REJECTED THE TRUSTEE'S
PUBLIC POLICY ARGUMENTS IN ITS APPLICATION OF THE
*IN PARI DELICTO* DEFENSE.**.......................................................................... 6

    **II.**   **THE TRUSTEE IDENTIFIES NO PRIOR OR POTENTIAL
FACTUAL ALLEGATION IMPLICATING ANY EXCEPTION TO
THE *IN PARI DELICTO* DEFENSE.**................................................................ 9

        **A.**    **The Trustee Provides No Support for a "Control" Exception.** ............ 9

        **B.**    **The Trustee Provides No Support for a "Corporate Insider"
Exception.** ................................................................................................ 10

        **C.**    **The Trustee's "Adverse Interest" Arguments are Without
Merit.**........................................................................................................ 12

    **III.**  **DISMISSAL WITH PREJUDICE WAS WARRANTED, AND THE
TRUSTEE'S MOTION FURTHER CONFIRMS THAT REALITY.** .......... 13

**CONCLUSION** ................................................................................................................... 15

**INTRODUCTION**

The Court correctly applied the *in pari delicto* defense in dismissing with prejudice the Trustee's common-law claims. Dissatisfied with the Court's decision, the Trustee now asks the Court to reconsider its ruling based on two general arguments. First, the Trustee re-argues his prior position that because creditors may benefit (and the Debtors will not) from any potential recovery on the common-law claims, "public policy" considerations preclude dismissal based on *in pari delicto*. Second, the Trustee contends that there are other "exceptions" to the *in pari delicto* defense that are either implicated in the Second Amended Complaint (the "**SAC**") or that could be supported through amendment. Both arguments fail.

First, the Trustee's arguments on the "public policy" exception were already thoroughly addressed—and correctly rejected—in the Court's Order. Despite the Trustee's attempt to recharacterize his position by dropping any reliance on his status as a trustee, his argument continues to suffer from the same fatal flaw identified by the Court in its Order. Specifically, the Trustee continues to ask the Court to analyze the *in pari delicto* defense based on the potential results of the claims—payment to innocent creditors and no payment to culpable Debtors—which results are in the public interest and therefore an exception to *in pari delicto*. This approach, which the Trustee acknowledges is "akin to the 'receivership method,'" is indeed the same approach that the Fifth Circuit acknowledged applies in a receivership setting. But in that same case, the Fifth Circuit clearly stated that this approach ***does not*** apply to state law claims brought pursuant to section 541 of the Bankruptcy Code because, unlike a receiver, a bankruptcy trustee stands in a debtor's shoes in asserting such claims. Instead, the Fifth Circuit strongly suggested it would apply the "section 541 snapshot method" used by the majority of courts, where the court analyzes the claims and defenses as though brought by the debtor on the petition date. Accordingly, the proper

4

*in pari delicto* analysis here does not include consideration of the potential benefit to creditors as argued by the Trustee but focuses on the culpability of the debtor. Using this approach, eight federal circuit courts of appeals have applied the *in pari delicto* defense to bar state common-law claims brought by a bankruptcy trustee (or comparable scenario) despite similar "public policy" arguments made here. The Trustee's argument fails, and his continued reliance on *In re Vantage, Today's Destiny*, and any other case that does not apply the "section 541 snapshot method" is misplaced.

Second, the Trustee cites no case and identifies no prior or new factual allegation that would implicate any other "exception" to the *in pari delicto* defense or could otherwise save his claims from dismissal. The alleged relationship between Rabo and Debtors lacks the domination, control, "insider" status, or other relationship that could even remotely support an exception to *in pari delicto*. This reality is confirmed by the very cases relied on by the Trustee, which involved alleged actions and relationships (such as actual ownership and years of company leadership/control) that are not at issue here.

Debtors' bankruptcies were filed three years ago. The Trustee has long had at his disposal a vast repository of documents, deposition testimony, and other information obtained through years of discovery in these bankruptcy proceedings. Each of the Trustee's three complaints are replete with references to these depositions and documents. After Rabo raised the *in pari delicto* defense in its first motion to dismiss, the Trustee prepared and filed two new complaints, prepared and filed an opposition to Rabo's second motion to dismiss (containing multiple pages devoted to *in pari delicto*), and presented oral argument to the Court with pointed discussion on the defense. In response to the Court's Order, the Trustee filed his Motion where he again argues the same issue. The Trustee's Motion, however, fails to identify any plausible path for pleading cognizable

common-law claims against Rabo and erases any doubt as to whether the claims were properly dismissed with prejudice. A fourth complaint would be both futile and a colossal waste of resources for the Court and all parties. The Trustee's Motion should be denied.

### ARGUMENT

The *in pari delicto* defense "bars a plaintiff's claim when the claim arises from an illegal, fraudulent, or wrongful transaction in which the plaintiff participated, and the plaintiff's fault is at least substantially equal to (or greater than) the defendant's fault." (Order at 12 (citing *Lewis v. Davis*, 199 S.W.2d 146, 151 (Tex. 1947) & *General Car & Truck Leasing Sys. v. Lane & Waterman*, 557 N.W.2d 274, 279 (Iowa 1996))); *see also Pinter v. Dahl,* 486 U.S. 622, 632, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) ("Under the doctrine of *in pari delicto,* actions brought on illegal or corrupt bargains cannot prevail if the plaintiff was a significant participant in the wrongdoing, bearing at least equal fault.").) Rabo raised this defense in its motion to dismiss the Trustee's original complaint, (ECF No. 27), and then re-raised the defense in its motion to dismiss the Trustee's SAC, (ECF No. 74). After oral argument on Rabo's second motion to dismiss, the Court entered its Order dismissing with prejudice the Trustee's common-law claims. (*See* Order.) The Trustee's Motion asks the Court to reconsider and reverse its Order. The Trustee, however, provides no law or fact that would justify this requested and extraordinary relief.

### I.   THE COURT CORRECTLY REJECTED THE TRUSTEE'S PUBLIC POLICY ARGUMENTS IN ITS APPLICATION OF THE *IN PARI DELICTO* DEFENSE.

The Trustee again argues that the "public policy" considerations preclude dismissal based on *in pari delicto* given the potential benefits to innocent creditors (and none to Debtors) from a potential recovery on the claims. (*See generally* Motion; *see also* Trustee's Opp. to Mot. to Dismiss at 6-9 [ECF No. 99].) In support of this position, the Trustee points primarily to the same cases he cited in his briefing on the motion to dismiss, including *In re Vantage* and *Today's Destiny*. (*See*

6

Motion at 8-10, 13-17 (citing *Mims v. Matrix Tr. Co. (In re Vantage Benefits Adm'rs, Inc.)*, No. 18-31351-SGJ-7, 2024 WL 3842796, at *28 (N.D. Tex. Aug. 14, 2024))) & *Hill v. Day (In re Today's Destiny, Inc.)*, 388 B.R. 737, 743 (Bankr. S.D. Tex. 2008)); Trustee's Opp. to Mot. to Dismiss at 6-9 (citing same).) The Trustee also cites a number of "new" cases concerning Texas' "public policy" exception and its equitable considerations (most of which are simply quoting or citing *Lewis*), but the Trustee ultimately returns to, and concludes his argument with, quotes from *In re Vantage*:

> "In other words, a policy analysis must occur on a case by case basis." *In re Vantage Benefits Administrators, Inc.*, 2021 WL 1815065, at *14. This requirement is "particularly acute when a defendant is asserting the defense against a Trustee who seeks recovery for the benefit of creditors of a wrongdoer rather than the wrongdoer himself." *Id.* (citing *In re Today's Destiny*, 388 B.R. at 749)).

(Motion at 13-15.) The Trustee continues to advocate for an *in pari delicto* analysis akin to that used in receiverships where regardless of the fault or culpability of the debtor, the defense will be disregarded if recovery is for the benefit of creditors and not the wrongdoer. (*See id.*) This proposed approach, however, provides a trustee with rights the debtor would not have had, which is contrary to the Bankruptcy Code and the reason why the majority of courts do not employ such a process.

When a trustee asserts claims under the authority of section 541 of the Bankruptcy Code, "'the trustee stands in the shoes of the debtor'" and the "'success or failure on the merits is determined as if the debtor entity itself brought the claims at issue under the applicable law.'" (Order at 12-13 (quoting *Sender v. Simon*, 84 F.3d 1299, 1305 (10th Cir. 1996)).); *see also Law v. Siegel*, 571 U.S. 415, 421 (2014) (explaining that "a bankruptcy court may not contravene specific statutory provisions" and that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code") (cleaned up).) Accordingly, "section 541 of the Bankruptcy Code forecloses any interpretation that would give a

7

trustee greater rights in common-law claims than the debtor had as of the bankruptcy filing."
(Order at 9 (citing 11 U.S.C. § 541(a)(1)); *In re Moody*, 77 B.R. 566, 580 (S.D. Tex. 1987)), *see also In re Hedged-Invs. Assocs., Inc.*, 84 F.3d 1281, 1285 (10th Cir. 1996)).)

Pursuant to the provisions and purposes of section 541, the majority of courts utilize a "section 541 snapshot" approach when analyzing the merits/defenses of common-law claims asserted by a bankruptcy trustee. (Order at 16-18.) This involves analyzing the claims and defenses while assuming the debtor brought the claim at the petition date. (*Id.*) Using this approach, eight federal circuit courts of appeals have applied the *in pari delicto* defense to bar state common-law claims brought by a bankruptcy trustee or other assignee standing the shoes of a debtor, and they have done so over "public policy" arguments similar to those raised here by the Trustee. (*Id.* at 17-18.) Furthermore, in distinguishing the *in pari delicto* considerations used when a receiver is asserting claims, the Fifth Circuit strongly suggested that courts considering claims filed pursuant to section 541 should use the "section 541 snapshot method" employed used by the majority of courts. *See Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 963-68 (5th Cir. 2012).

As to *Vantage* and *Today's Destiny*, the Court correctly concluded that these cases "applied the defense in a way the circuit courts of appeals did not, in a way the Fifth Circuit found was 'plainly distinguishable' from the way it should be applied to bankruptcy trustees under section 541, and in a way that give the trustee greater rights than the debtor had." (Order at 23.)

The Trustee's arguments for reversal based on "public policy" consideration are without merit.[1]  The Trustee's Motion should be denied.

---

[1] The Trustee's argument about adding/recharacterizing his claims as ones for contribution is unpersuasive as such a claim(s) suffers from the same defects outlined herein. Under the Trustee's theory, a party could simply characterize otherwise barred state law claims as ones for "contribution" and forever avoid application of *in pari delicto*.

II.    **THE TRUSTEE IDENTIFIES NO PRIOR OR POTENTIAL FACTUAL ALLEGATION IMPLICATING ANY EXCEPTION TO THE *IN PARI DELICTO* DEFENSE.**

The Trustee's second general argument for reconsideration is that even if the *in pari delicto* analysis were limited to comparison of culpability, the Trustee has alleged (or through amendment, could allege) facts showing that Rabo's purported "control" of Debtors implicates potential exceptions to the defense. The Trustee, however, fails to identify any such facts, and the cases cited by the Trustee simply illustrate the futility of his arguments.

A.    **The Trustee Provides No Support for a "Control" Exception.**

The Trustee first points to a purported "control" exception to *in pari declicto* that has or could be implicated. (Motion at 19-20.)[2] As for the purported existence and legal support for this exception, the Trustee cites *ASARCO LLC v. Americas Mining Corp*, 396 B.R. 278 (S.D. Tex. 2008) [hereinafter "*ASARCO*"].) The over-100-page *ASARCO* decision involves a dispute between multiple mining companies and addresses claims asserted (on behalf of creditors) by two of these mining companies as debtors in possession. *See generally id.* Plaintiff ASARCO was a mining company wholly owned by a company called AMC, and AMC was wholly owned by a company called Grupo. *Id.* at 302. There was "[s]ignificant overlap between the board members at AMC and ASARCO" and the ASARCO board members "who were not also on AMC's board were otherwise affiliated with AMC and/or the Grupo conglomerate." *Id.* at 302 and 410-12. ASARCO asserted state law claims against AMC in connection with the transfer of certain stock, and "AMC

---

[2] The "control" exception argued in the Motion appears to be different from the "control" exception argued by the Trustee at oral argument and addressed by the Court in its Order. (*See* Order at 13-14 ("The Trustee's counsel argued that the chief restructuring officer who was appointed shortly before the bankruptcy filing was akin to a receiver and had sufficiently rehabilitated the Debtors prior to bankruptcy; according to that public-policy argument, the Trustee, inheriting the Debtors' causes of action on the petition date, took the claims free and clear of *in pari delicto*.") (citing Transcript of Hearing Held Jan. 21, 2026, at 155 [Docket No. 387]".)

9

was intricately involved in every aspect of the transaction" in question. *Id.* at 412. In fact, "AMC

had an agreement with ASARCO's directors to abandon their duties to ASARCO and ASARCO's

creditors" for purposes of this transaction. *Id.* at 420. AMC's nineteenth affirmative defense

against those claims was *in pari delicto*, which the Court addressed as follows:

> Under the doctrine of *in pari delicto*, actions brough on illegal or corrupt bargains
> cannot prevail if the plaintiff was a significant participant in the wrongdoing,
> bearing at least equal fault. . . Because AMC/Grupo dominated and controlled
> ASARCO during the relevant time and dictated the terms of the SPCC transaction,
> the Court finds that ASARCO (and its creditors) were not at equal fault. Thus
> AMC's *in pari delicto* defense fails.

*Id.* at 429-30.

Given AMC's ownership and control of ASARCO, not to mention its involvement in

"every aspect of the transaction" forming the basis of the lawsuit, it is wholly unsurprising that the

court summarily rejected AMC's *in pari delicto* defense. *See id.* With *ASARCO* serving as the

purported legal standard and precedent for a "control" exception to *in pari delicto*, the Trustee

directs the Court to three (3) allegations in the SAC (which contains 226 allegations) that

purportedly support the "control" exception. As an initial point, these three allegations are directly

contradicted by *dozens* of the Trustee's allegations concerning Rabo's purported *lack* of oversight

and control over the Debtors and Rabo's failure to take steps earlier to identify the Debtors' fraud.

In any event, the "control" alleged in these three allegations is not in the same league, ballpark,

universe, or any other comparable idiom as the control at issue in *ASARCO*, and obviously fail to

support any plausible suggestion that Rabo exercised the control necessary to defeat *in pari delicto*.

**B.      The Trustee Provides No Support for a "Corporate Insider" Exception.**

In addition to or in connection with the "control" exception, the Trustee also suggests in

his Motion that there are or may be facts supporting the conclusion that Rabo is an "insider" of the

Debtors under the Bankruptcy Code and that the "corporate insider" exception to *in pari delicto* would be implicated. (Motion at 20-22.) This argument is likewise wholly unsupported.

The Bankruptcy Code provides the following definitions/examples of an "insider": "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor, or (vi) relative of a general partner, director, officer, or person in control of the debtor." 11 U.S.C. § 1301(31)(B). Rabo, as Debtors' commercial lender, does not fit under these definitions. Indeed, the only possibly relevant language would be "person in control of the debtor." The primary case relied on by the Trustee in support of this "exception" is *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC,* 566 B.R. 815 (W.D. Tex. 2017). Once again, this case provides no support to the Trustee, but instead simply confirms that the exception is inapplicable here.

In *Brickley*, the trustee of the debtor company, CryptoMetrics, asserted state laws claims against CryptoMetrics' attorneys, collectively known as Stolzar. *See generally, id.* The trustee alleged that a fraudulent scheme to make illegal payoffs in the hopes of securing a contract was "structured and implemented under the guidance, counsel, and advice of" Stolzar, who also "allegedly drafted highly relevant documents as part of the scheme." *Id.* at 826. The trustee further alleged that Stolzar knowingly "corroborated [company officers'] fraudulent statements and made further fraudulent statements to investors and lenders" and knowingly made false statements and warranties in the Loan Agreement and Opinion Letters. *Id.* Stolzar raised the *in pari delicto* defense, to which the trustee argued the "insider" exception. The court held that the complaint "contains no allegations that the Stolzar defendants had such domination or control over CryptoMetrics to be considered 'insiders'" and concluded the exception did not apply. *Id.* at 842.

11

Furthermore, the court proceeded to dismiss claims against Stolzar where the applicability of the *in pari delicto* defense was apparent on the face of the Complaint. *Id.*

Once again, the Trustee's own case unequivocally dictates denial of the Trustee's argument. Not only was Stolzar's alleged control and participation in the company's fraudulent scheme addressed in *Brickley* significantly more extensive than the alleged control and participation by Rabo here, but the *Brickley* court concluded that the trustee's complaint in that case contained "no allegations" supporting the domination or control to be considered "insiders." *Id.* The Trustee has identified no fact or law that would support application of the "insider" exception and, indeed, he cannot do so.  Rabo was simply the Debtors' secured lender.

The Court correctly recognized the SAC is patently clear in demonstrating that the "Debtors masterminded and orchestrated the schemes" while the Defendants purportedly "participated in and helped the schemes in different ways." (Order at 13 (citing SAC ¶¶ 3, 19-34, 38-45 (describing schemes orchestrated by the Debtors with Brian McClain at the helm). The SAC fails to allege facts that could support any plausible application of the "control" or "insider" exception, and the Trustee fails to identify in its Motion any additional facts or any plausible path where such facts could even be alleged. (*See generally* SAC; Motion.)

### C.    The Trustee's "Adverse Interest" Arguments are Without Merit.

The Trustee also attempts to resuscitate his argument that Debtors should not be "imputed" with the knowledge of the fraudulent schemes at issue in this case based on the "adverse interest" exception. (Motion at 23-24.) The Trustee continues to raise this argument despite the fact he has filed pleadings and numerous other documents in these bankruptcy cases expressly and repeatedly alleging and representing that the *Debtors* operated the fraudulent schemes. Indeed, despite an attempt to distance the Debtors from the fraud in the SAC, the SAC remains replete with allegations and documents demonstrating that the Debtors facilitated and operated the fraudulent

12

schemes, with the Debtors being named parties to the "investment contracts" and the funds flowing through the Debtors' accounts. (*See generally* SAC.)

In any event, the Trustee's argument fails for the simple and obvious fact that Mr. McClain *is and was* the Debtors. *See Mays v. First State Bank of Keller*, 247 S.W. 845, 846 (Tex. Ct. App. 1923) (where "the officer or agent . . . is the sole representative," his conduct is necessarily considered that of the company. ; *accord Steward v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 310–11 (Del. Ch. 2015) (explaining that the "sole actor rule overrides the adverse interest exception . . . because it is absurd to presume that the one actor involved and affected somehow could keep secrets from himself, and because the principal, as the same sole owner, benefits from the fraud"). Additionally, the SAC is clear in showing that the costs of the fraud were borne out by those who were defrauded by Debtors (including Rabo and the $50 million it lost), not the Debtors themselves. *FDIC v. Ernst & Young*, 967 F.2d 166, 170–71 (5th Cir. 1992) (stating that adverse interest exception applies only where the fraud was "against" the company and not to the company's benefit and that where the "costs of [the] fraud" are "borne out . . . by outsiders," e.g., creditors, then it cannot be said that the agent's conduct is unattributable to the company).

As the Court already concluded, the exception does not apply. (Order at 13.)

## III.   DISMISSAL WITH PREJUDICE WAS WARRANTED, AND THE TRUSTEE'S MOTION FURTHER CONFIRMS THAT REALITY.

The Court properly dismissed the common-law claims and the Trustee's failure here to point to any fact or law that would potentially spare those claims from the *in pari delicto* defense is further confirmation that the Court was correct to dismiss those claims with prejudice. Amendment is futile. This is not surprising given the posture of this case.  It has been almost *three years* since the Debtors filed their Chapter 7 Bankruptcy cases. The circumstances surrounding Debtors' fraud not only have been thoroughly investigated by the USDA, the Trustee, Rabo, and

13

the other parties, but the parties have also engaged in extensive discovery concerning the Defendants' respective business dealings with Debtors. For example, numerous written discovery requests have been served and answered; over 30 subpoenas have been served and answered; Defendants have produced over 67,000 pages of documents; and numerous depositions have been taken, including depositions of six (6) Rabo employees.

The extensive discovery is illustrated in each of the Trustee's three complaints, with the Trustee's original complaint spanning over 50 pages and containing numerous references to the produced documents and deposition testimony within its 176 paragraphs. The Defendants then filed motions to dismiss that complaint, identifying the various deficiencies in the pleading, including Rabo's arguments based on *in pari delicto*. (Dkt Nos. 21, 22, 23, 24, 26, 27, 31, 32.) In response to the motions to dismiss, the Trustee filed his second Complaint, which Complaint was now 70 pages, included 209 paragraphs, and obviously attempted to address the arguments for dismissal contained in the motions to dismiss. (Dkt. No. 39.) The Trustee then filed his third Complaint on July 3, 2025, which Complaint grew to 225 paragraphs and 80 pages (not counting the exhibits) and includes dozens of references to the deposition testimony of Rabo employees. (Dkt. No. 48.) Consequently, when the Trustee fails to identify or articulate any facts that could support a position, that silence is particularly deafening.[3] The Motion contains no fact or argument that would justify granting the Trustee leave to amend, and the Court correctly dismissed the claims with prejudice.

---

[3] The futility of any amendment is further confirmed by the other grounds for dismissal argued in Rabo's motions to dismiss, including, without limitation, waivers in the controlling agreements and failure to identify facts supporting essential elements for each of the common-law claims. (*See generally* Rabo Mot. to Dismiss [ECF No. 74].)

14

## **CONCLUSION**

The Trustee has provided the Court with no plausible path for pleading cognizable common-law claims against the Defendants, and to allow the Trustee to file a fourth Complaint at this stage of the proceedings would be a colossal waste of resources for the Court and all parties. Accordingly, for the reasons stated herein and in the Court's Order, the Trustee's Motion to Reconsider should be denied.

DATED: April 24, 2026.

UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

--and--

RAY QUINNEY & NEBEKER P.C.
Michael R. Johnson *(Pro Hac Vice)*
Matthew M. Cannon *(Pro Hac Vice)*
Austin C. Nate *(Pro Hac Vice)*
36 South State, Suite 1400
Salt Lake City, UT 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: mcannon@rqn.com
Email: anate@rqn.com

*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

15

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2026, the foregoing document was filed with the Clerk of

the Court using the CM/ECF system, which sent notice of electronic filing to all electronic filing

users in this case as follows:

- **Rachel E Barr**    rbarr@namanhowell.com
- **Charity S Bird**    cbird@kaplanjohnsonlaw.com, hfrint@kaplanjohnsonlaw.com;charity-bird-9970@ecf.pacerpro.com;tyeager@kaplanjohnsonlaw.com
- **Lynn Hamilton Butler**    lynn.butler@huschblackwell.com, christine.deacon@huschblackwell.com
- **Matthew M. Cannon**    mcannon@rqn.com, lbeidoun@rqn.com;docket@rqn.com
- **Alan Dabdoub**    adabdoub@lynnllp.com, kridenour@lynnllp.com;wgillaspie@lynnllp.com;csode@lynnllp.com
- **Michael S Duncan**    mduncan@namanhowell.com
- **Todd Farmer**    todd@farmerwright.com, stephanie@sfk-law.com
- **Dallas Flick**    dflick@cwl.law
- **Farsheed Fozouni**    ffozouni@lynnllp.com
- **Elizabeth Geary**    elizabeth@geary.law
- **Steven G Gersten**    sgersten@lynnllp.com, sjohnston@lynnllp.com
- **William Heath Hendricks**    heath.hendricks@uwlaw.com, roberta.duke@uwlaw.com;isabel.esparza@uwlaw.com
- **Richard A. Illmer**    rick.illmer@huschblackwell.com, karen.massey@huschblackwell.com,dee.baatz@huschblackwell.com,Kerri.mata@huschblackwell.com,javon.johnson@huschblackwell.com,karen-massey-7572@ecf.pacerpro.com
- **Hudson M. Jobe**    hjobe@jobelawpllc.com, admin@jobelawpllc.com;mberryman@jobelawpllc.com;hudsonjobe77@ecf.courtdrive.com
- **Michael R. Johnson**    mjohnson@rqn.com, asanchez@rqn.com;docket@rqn.com
- **Todd Jeffrey Johnston**    tjohnston@mcjllp.com, tlofgren@mcjllp.com
- **Aaron Michael Kaufman**    akaufman@grayreed.com
- **Buffey E. Klein**    buffey.klein@huschblackwell.com, Tanya.adams@huschblackwell.com;buffey-klein-8494@ecf.pacerpro.com
- **Joshua D. Kundert**    kundert@gassturek.com
- **David L. LeBas**    dlebas@namanhowell.com, jaucoin@namanhowell.com
- **Abel Angel Leal**    abel@ssbtxlaw.com, abel@leal.law
- **John H. Lovell**    john@lovell-law.net, tiffany@lovell-law.net;trinity@lovell-law.net;courtney@lovell-law.net
- **John F. Massouh**    john.massouh@sprouselaw.com, sherida.stone@sprouselaw.com
- **Matthew S Merriott**    mmerriott@mhba.com, lsteen@mhba.com
- **Matthew S. Muckleroy**    mmuckleroy@cwl.law, paralegal2@cwl.law

- **Kent David Ries**    kent@kentries.com
- **Kyle Weldon**    kyle.weldon@wickphillips.com
- **Thomas Joseph Zavala**    Tom.Zavala@huschblackwell.com,
Christine.Deacon@huschblackwell.com;tom-zavala-3068@ecf.pacerpro.com

*/s/ Michael R. Johnson*
Michael R. Johnson

17