

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 1, 2026**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| In re:<br><br>McClain Feed Yard, Inc., et al.,<br><br>    Debtors. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 23-20084-swe-7<br>Jointly Administered |
| In re:<br><br>2B Farms, a Texas General Partnership, et al.,<br><br>    Debtors. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 23-50096-swe-12<br>Jointly Administered |
| AgTexas Farm Credit Services et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Rabo AgriFinance, LLC et al.,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adv. No. 24-2007-swe<br>Consolidated Adversary Proceeding |

1

### *Order Dismissing Bankruptcy and Avoidance-Related Claims Against HTLF*

## I.  Introduction

As part of a scheme to defraud his creditors, Delbert the debtor transferred his red Ferrari to his brother Fred. To assist with the scheme—the details of which aren't important—Fred transferred the Ferrari back to Delbert a couple days later. That pattern continued 90 times over the next year, with the Ferrari being transferred back and forth in a seemingly endless circle. Shortly before the scheme collapsed and he filed bankruptcy, Delbert received the Ferrari back. May the Chapter 7 trustee in Delbert's bankruptcy sue Fred to avoid the transfer of the Ferrari as a fraudulent transfer and recover the value of the Ferrari from Fred? Of course not. Fred's obligation to return the Ferrari was fully satisfied, and the trustee is entitled to only a single satisfaction. *See* 11 U.S.C. § 550(d). May the trustee sue Fred to recover the value of 90 Ferraris since Delbert transferred the Ferrari to Fred 90 times? The suggestion is preposterous.

How about bowling balls? This time Delbert transferred 100 shiny black bowling balls to Fred as part of a fraudulent scheme. Fred dutifully returned the bowling balls—every one of them—within a few days. Again, the pattern continued 90 times over the next year, in a circle, until all the shiny black balls came back to Delbert shortly before bankruptcy. May the trustee sue Fred to avoid the transfer of the bowling balls and recover the value of 100 bowling balls from Fred? No. Fred already satisfied the obligation to return them. May the trustee sue to recover the value of 9,000 bowling balls since Delbert transferred 100 bowling balls 90 times? Another ludicrous windfall.

What if we have the same bowling-ball scheme, but after Delbert transferred 100 shiny black bowling balls to Fred a year before bankruptcy, Fred returned "most or all" of the balls. That pattern continued 90 times, with Delbert transferring 100 balls to Fred and Fred returning "most or all" of the balls each time, with the last balls returned shortly before Delbert's bankruptcy. May Delbert's bankruptcy trustee sue Fred to avoid the transfer of the bowling balls and recover the value of 100 bowling balls from Fred? How about the value of nine thousand bowling

balls? If Fred returned "all" of the balls each go-around, Delbert's Chapter 7 trustee cannot recover more because he's entitled to only a single satisfaction under section 550(d) of the Bankruptcy Code. But if Fred returned only "most" of the balls during one or more go-arounds, the trustee *might* be entitled to recover the value of those unreturned balls *if* he can identify the unreturned balls and otherwise meet the elements of a fraudulent transfer or a preference. But the trustee can't recover the value of all bowling balls transferred *and* returned. That would be an absurd windfall.

The Plaintiff, Chapter 7 trustee for the Debtors (the "**Trustee**"), is like the Delbert trustee, but instead of seeking recovery of already-returned Ferraris or bowling balls, he seeks recovery of dollars that are alleged to have been transferred "in an endless circle" back and forth between the Debtors, on the one hand, and HTLF Bank ("**HTLF**") and its customers, on the other hand, even though "most or all" of those dollars were returned to the Debtors during the course of an alleged cattle Ponzi scheme. The Chapter 7 trustee thus has pleaded "most or all" of his claims away, and—for the reasons described below—any surviving claims for the recovery of the unreturned dollars are not adequately pleaded. The Court thus grants HTLF's Rule 12(b)(6) motion to dismiss.

## II.  Jurisdiction and Venue

This Court has subject-matter jurisdiction over this adversary proceeding under 28 U.S.C. sections 157 and 1334. This proceeding involves either core matters or noncore, related-to matters as to which HTLF has consented to this Court's entry of final orders and judgments. Docket No. 206.

## III.  Procedural History

Brian McClain formed, owned, and operated the Debtors, which he used for various functions in the cattle industry. McClain Feed Yard, Inc. ("**MFY**") bought and sold cattle or held and grew them for customers primarily in Texas. McClain Farms, Inc. ("**MFI**") did the same type of business primarily in Kentucky and the southeast United States. 7M Cattle Feeders, Inc. ("**7M**") owned and operated the feedyards for the cattle owned or held by the other Debtors.

3

The Debtors operated their businesses for several years, but then credi-tors discovered the Debtors owned or held only a fraction of the number of cattle the Debtors previously claimed. Brian McClain took his own life shortly thereafter, and the Debtors tumbled into bankruptcy, leaving creditors of all sorts unpaid and angry at the fraud.

On April 28, 2023, the three Debtors filed their individual Chapter 7 voluntary petitions. The Court ordered the cases jointly administered under the lead case of MFY. Order Consolidating, Case No. 23-20084, Docket No. 66. Kent Ries was appointed Chapter 7 trustee.

On March 14, 2025, the Trustee filed a 56-page complaint (not including attachments) against the four Defendants: Community Financial Ser-vices Bank ("**CFSB**") and Mechanics Bank ("**Mechanics**"), the Debtors' depositary banks; Rabo AgriFinance, LLC ("**Rabo**"), the Debtors' pri-mary lender; and HTLF, the depositary bank for 2B Farms and its owner Terry "Bo" Robinson, who were significant contract-counterparties with the Debtors. Trustee's Original Adversary Compl., Adv. No. 25-2005, Docket No. 1 (the "**Original Complaint**"). The Original Complaint as-serted fifteen counts against the Defendants, including common-law tort claims. According to the Trustee, the Defendants permitted, enabled, fa-cilitated, and participated in the Debtors' giant Ponzi scheme and check-kiting scheme. The complaint alleges common-law claims, claims for avoidable transfers under both the Bankruptcy Code and state law, and claims for equitable subordination, claim disallowance, and lien-priority determination.

In response, the Defendants filed Rule 12(b)(6) motions to dismiss and related briefs, raising various arguments about why the Original Com-plaint should be dismissed. Adv. No. 25-2005, Docket Nos. 21–24, 26–28, 31–32.

After the Defendants filed their motions to dismiss, the Trustee filed a 70-page first amended complaint on June 16, 2025, asserting substan-tially the same fifteen counts against the Defendants,[1] but with more detail. Trustee's First Am. Adversary Compl., Adv. No. 25-2005, Docket No. 39. The Trustee filed a response to CFSB's original motion to

---

[1] The Trustee removed CFSB from, and added HTLF to, Count II: Breach of Fiduciary Duty.

dismiss, Adv. No. 25-2005, Docket No. 40, 42 (amended), then shortly thereafter stipulated with CFSB to file a second amended complaint. Adv. No. 25-2005, Docket No. 46.

The Trustee then filed the 80-page second amended complaint (the "**Second Amended Complaint**") against the Defendants on July 2, 2025, asserting substantially the same[2] fifteen counts against the Defendants, with yet more detail. Trustee's Second Am. Adversary Compl., Adv. No. 25-2005, Docket No. 48.

The Court later ordered adversary proceeding number 25-2005 consolidated into adversary proceeding number 24-2007, in which various creditors allege direct claims against these same Defendants. Order Consolidating, Adv. No. 25-2005, Docket No. 97.

The Second Amended Complaint primarily alleges the following against HTLF:

- HTLF, which is now First Bank & Trust, a division of UMB Bank n.a., is a corporation formed and existing under the laws of the State of Colorado. Second Amended Complaint ¶ 11 & n.4.
- The Debtors were engaged in a Ponzi scheme because they were repaying investors[3] with other investors' funds or with fictitious funds generated through check-kiting. *Id.* ¶ 30.
- HTLF was a lynchpin of the Debtors' Ponzi Scheme. HTLF held pre-signed, otherwise blank checks from the Debtors, which it would fill in at McClain's or his daughter's direction, deposit into investors' (Terry "Bo" Robinson and 2B Farms) accounts, and permit these investors to immediately send "new" investment funds back to the Debtors before the Debtors' banks were presented with the checks, thereby creating more float. *Id.* ¶ 46.
- During this "float" period, HTLF was the party whose cash was at risk when used by the Debtors and was effectively loaning the Debtors the float. *Id.* ¶ 80.

---

[2] The Trustee removed Mechanics from Count II: Breach of Fiduciary Duty.

[3] Throughout the bankruptcy case, the "investors" have bristled at the label, calling themselves either creditors or cattle sellers instead.

- HTLF was both (i) acting as an agent for, and fiduciary of, the Debtors by possessing and completing blank checks at the Debtors' instruction, and (ii) serving as a shadow or pseudo-lender to the Debtors. *Id.*
- The Debtors transferred a total of $264,945,582.72 to 2B Farms on account of its investments with the Debtors, including $104,354,798.76 during the preference period, as detailed on Exhibit B attached to the Second Amended Complaint. *Id.* ¶ 206.
- The Debtors transferred a total of $9,653,108.15 to Terry "Bo" Robinson on account of his investments with the Debtors as detailed on Exhibit C attached to the Second Amended Complaint. *Id.*
- 2B Farms, Robinson, and HTLF transferred "most or all of those funds right back to the Debtors on the very same day or the day after." *Id.* ¶¶ 78-80.
- Given HTLF's active participation in the Debtors' schemes and control over the Debtors' funds, HTLF exposed itself and its customers to the risk of incurring millions of dollars of unreimbursed checks if the Debtors' banks decided to dishonor one or more checks. Indeed, that risk was ultimately realized in the days before the Petition Date, when Mechanics dishonored millions of dollars of checks that HTLF had already credited 2B Farms' and/or Terry Robinson's accounts at HTLF, and those investors had already sent that money back to Mechanics. *Id.* ¶ 207.
- To the extent that 2B Farms and/or Terry Robinson were insolvent and unable to repay the millions of dollars in overdrafts, it is HTLF that is left with the loss. As HTLF had liens on funds in the 2B Farms and Terry Robinson depositary accounts, any payments into those accounts substantially benefitted HTLF, as HTLF had ultimate control over those funds and could and did use them to pay down the credit facilities of 2B Farms and Terry Robinson. *Id.* ¶ 208.

Based on these allegations and those detailed below in the Analysis section, the Trustee asserts the following causes of action against HTLF:

- Count I: Knowing Participation in Breach of Fiduciary Duties;
- Count II: Breach of Fiduciary Duty;
- Count III: Common-law Civil Conspiracy;
- Count IV: Professional Negligence;
- Count V: Punitive Damages; and

6

- Count XIII: Fraudulent Transfer.[4]

HTLF filed its motion to dismiss and related briefs, Adv. No. 25-2005, Docket Nos. 70–71; Adv. No. 24-2007, Docket Nos. 230–231 (together, the "**Motion**"). The Trustee responded to the Motion, Adv. No. 25-2005, Docket No. 98; Adv. No. 24-2007, Docket No. 235, and HTLF replied. Adv. No. 24-2007, Docket No. 248. The Court heard oral arguments on January 21, 2026.

On March 27, 2026, the Court entered a memorandum opinion and order that dismissed the Trustee's common-law claims against HTLF and the other Defendants based on the affirmative defense of *in pari delicto*. Adv. No. 24-2007, Docket No. 405.

Because the Court has already dismissed Counts I, II, III, IV, and V, the only remaining count against HTLF is Count XIII, which seeks to avoid preferential transfers under Bankruptcy Code section 547 and actual or constructive fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, sections 24.005 and 24.006 of the Texas Uniform Fraudulent Transfer Act ("**TUFTA**"), and sections 378A.040 and 378A.050 of the Kentucky Uniform Voidable Transactions Act ("**KUVTA**"). The Trustee also seeks recovery under section 550 of the Bankruptcy Code.[5] The matter is fully briefed and argued.

## IV.  Legal Standard

The general rules of pleading under Federal Rule of Civil Procedure 8 apply in an adversary proceeding. Fed. R. Bankr. P. 7008. Federal Civil Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[4] Although Count XIII is styled as a fraudulent-transfer count, it also seeks avoidance of alleged preferential transfers under section 547 of the Bankruptcy Code.

[5] Paragraph 210 of the Second Amended Complaint asks for a judgment avoiding and preserving the alleged transfers, directing the transfers to be set aside, and recovering the transfers or their value from HTLF. The complaint appears to have inadvertently omitted the statutory reference to section 550, which is contained in the other avoidance counts. The Court construes Count XIII as seeking recovery under section 550.

7

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Bankr. P. 7012 (incorporating Federal Civil Rule 12(b)–(i) into adversary proceedings).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court may not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation modified).

Count XIII against HTLF is for the avoidance and recovery of preferential transfers and fraudulent transfers. To survive the Motion, the Trustee needs to allege a preferential transfer or fraudulent transfer occurred consistent with applicable pleading standards. Courts vary in

8

how much detail they require for pleading fraudulent transfer claims and preference claims. *In re Reagor Dykes Motors, LP*, Adversary No. 20-05002, 2020 WL 4939180 at \*7–8 (Bankr. N.D. Tex. 2020) (compiling cases). The court in *Reagor Dykes* identified three lines of thinking: (1) Rule 8 requires pleading only a description of the types of transfers to be avoided;[6] (2) Rule 8 requires a plaintiff to plead each transfer by date, amount, transferor, and transferee;[7] and (3) the heightened Rule 9 standard applies to claims for actual fraudulent transfers.[8] *Id.* at \*5–8.

---

[6] *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 114 (Bankr. S.D.N.Y. 2011) ("Defendants have notice of the Trustee's allegations that the Defendants provided insufficient value for the Six Year Aggregations at a time that BLMIS was insolvent. As such, the allegations contain sufficient information for Defendants to prepare for litigation on the merits, satisfying Rule 8(a)."); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 617 F.Supp.2d 700, 722 (S.D. Ohio 2009) ("Though the complaint fails to specify the exact dates and amounts of the dividend payments, this claim is subject to Rule 8's liberal pleading standard . . . ."); *In re Cellular Exp. of Ariz., Inc.*, 275 B.R. 357, 363 (Bankr. D. Ariz. 2002) ("It may not be necessary for an initial complaint to identify each transfer by check number, date and amount, but at minimum there must be some description of the *types* of transfers sought to be avoided . . . .") (emphasis in the original).

[7] *See, e.g., In re Valley Media, Inc.*, 288 B.R. 189, 192 (Bankr. D. Del. 2003) ("[T]he following information must be included in a complaint to avoid preferential transfers in order to survive a motion to dismiss: (a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer."); *In re AmerLink, Ltd.*, No. 09-01055-8-JRL, 2011 WL 864953, at \*3 (Bankr. E.D.N.C. 2011) ("Mere conclusory statements that the transfers were made on account of an antecedent debt owed by the transferor are insufficient."); *In re Motorwerks, Inc.*, 371 B.R. 281, 294 (Bankr. S.D. Ohio 2007) ("[T]he Trustee fails to identify, by date or amount, even one actual transfer from the Debtor to State Bank that is to be avoided.")

[8] *See, e.g., In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 733 (Bankr. S.D. Tex. 2020) ("Rule 9 applies whenever fraud is an essential part of the claim. In an *actual* fraudulent transfer case, fraud is an essential element.") (emphasis in the original); *In re Crescent Res., LLC*, No. 09-11507-CAG, 2012 WL 195528, at \*3 n.5 (Bankr. W.D. Tex. 2012) ("[T]he Court sees no reason to consider the [Litigation] Trust's argument that a Trustee should not be held to the Rule 9(b) standard."); *In re James River Coal Co.*, 360 B.R. 139, 162 (Bankr. E.D. Va. 2007) ("If a fraudulent transfer claim details the transfers alleged to be fraudulent, the reasons the transfers are fraudulent, and the roles of the defendants in the transfers, it has been pled with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b).").

9

For all claims for fraudulent transfers and preferences, this Court concludes that Rule 8 requires a plaintiff to plead, at the very least, each transfer by date, amount, transferor, and transferee. The text of Bankruptcy Code sections 547 and 548, and the statutory counterparts in Texas and Kentucky, all support this conclusion because they describe the elements of a singular "transfer" that may be avoided. *Cf. Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 580 (Tex. 2016) (citing *Finn v. All. Bank*, 860 N.W.2d 638, 647 (Minn. 2015)) (state fraudulent-transfer statutes require a "transfer-by-transfer" inquiry). The Trustee must allege why *each* such transfer is avoidable.

In addition, for actual fraudulent transfers, the Court concludes that Rule 9(b) applies because of the fraudulent-intent element. *In re Animo Servs.*, 2026 Bankr. LEXIS 735 at *24-25 (Bankr. N.D. Tex. March 24, 2026).

## V.  Analysis

The Court first will address why the Trustee has pleaded away most or all of his avoidance claims by alleging the return of most or all of the transfers. Then the Court will address why, assuming some transfers were not returned, the Second Amended Complaint fails to adequately state a claim for preferences, constructive fraudulent transfers, or actual fraudulent transfers. Finally, the Court will address why—with one exception—it will allow the Trustee to replead.

**A.  By alleging that "most or all" of the alleged transfers were returned to the Debtors, and by not identifying any unreturned transfers, the Trustee has failed to adequately plead a claim for avoidance and recovery**

The Trustee seeks to avoid deposits into the HTLF bank accounts of 2B Farms and Terry Robinson as preferential transfers under Bankruptcy Code section 547 or actual or constructive fraudulent transfers under Bankruptcy Code sections 548 and 544, TUFTA sections 24.005 and 24.006, and KUVTA sections 378A.040 and 378A.050. *See also* Tex. Bus. & Com. Code § 24.008 (remedies, including avoidance); Ky. Rev. Stat. § 378A.070 (same). The Trustee also seeks recovery under section 550 of the Bankruptcy Code.

10

Bankruptcy Code section 548 provides in relevant part that a trustee (subject to certain defenses) may avoid a transfer of an interest of the debtor in property made within two years of the bankruptcy petition date if the debtor made the transfer with actual fraudulent intent, or if a financially strapped debtor received less than reasonably equivalent value for such transfer—that is, if the transfer was constructively fraudulent. *See* 11 U.S.C. § 548(a)(1)(A) (actual fraudulent transfer), (a)(1)(B) (constructive fraudulent transfer).

Similarly, Bankruptcy Code section 544(b) allows a bankruptcy trustee to avoid a transfer of an interest of the debtor in property that is avoidable under applicable state law by an actual unsecured creditor of the debtor. 11 U.S.C. § 544(b)(1). Both TUFTA and KUVTA in turn permit a creditor (subject to certain defenses) to avoid an actual fraudulent transfer or constructive fraudulent transfer by the debtor, using tests like those in section 548, but with a potentially longer, four-year lookback period. *See* Tex. Bus. & Com. Code §§ 24.005(a)(1) (actual fraudulent transfer), 24.006(a), (b), and 24.005(a)(2) (constructive fraudulent transfer), 24.010 (extinguishment after certain periods); Ky. Rev. Stat. §§ 378A.040(1)(a) (actual fraudulent transfer), 378A.040(1)(b) and 378A.050(1), (2) (constructive fraudulent transfer), 378A.090 (extinguishment after certain periods).

Bankruptcy Code section 547 provides in relevant part that a trustee (subject to certain defenses) may avoid a transfer of an interest of the debtor in property (1) to or for the benefit of a creditor, (2) for or on account of an antecedent debt owed by the debtor before such transfer was made, (3) made while the debtor was insolvent, (4) made within 90 days before the date of the filing of the petition, and (5) that enables such creditor to receive more than such creditor would receive if the case were a chapter 7 and such transfer has not been made. *See* 11 U.S.C. § 547(b)(1)–(5).

Finally, to the extent a transfer is avoided under sections 548 and 544, section 550 of the Bankruptcy Code allows a trustee (subject to certain defenses and limitations) to recover, for the benefit of the estate, either the property transferred or—if the court permits—the value of such property from the initial transferee, from the party for whose benefit the transfer was made, or from subsequent transferees. 11 U.S.C. § 550. One of those limitations is found in section 550(d), which provides that a

11

trustee is entitled to only a single satisfaction for avoided transfers under section 550(a). 11 U.S.C. § 550(d).

The Trustee here seeks to avoid and recover from HTLF nearly $274 million of alleged transfers even though—by the Trustee's express admission—"most or all" of the funds transferred came right back to the Debtors within a day or two. Second Amended Complaint ¶¶ 78-80. The Fifth Circuit shot down this exact type of windfall in *In re DeBerry*, 945 F.3d 943 (5th Cir. 2019), ruling that a bankruptcy trustee cannot recover fraudulently transferred property that was returned to the debtor before bankruptcy:

> Obtaining a duplicate of something is not getting it back; it's getting a windfall. Property that has already been returned cannot be "recovered" in any meaningful sense. And that principle defeats the Trustee's claims against [the transferee]. Once the fraudulently transferred property has been returned, the bankruptcy trustee cannot "recover" it again using § 550(a).

*Id.* at 947. The Trustee tries to save his avoidance and recovery claims by arguing that he has adequately pleaded his claims and that HTLF is merely quibbling over the precise amount of damages, a factual issue the Trustee says is best determined at trial. The Court disagrees. Avoidance and recovery are determined—and alleged—on a transfer-by-transfer basis. The Trustee must identify each avoidable and recoverable transfer rather than leave the matter to speculation. Here, the Trustee has not identified a single avoidable and recoverable transfer. It was inappropriate for the Delbert trustee to seek recovery of already returned bowling balls. It is equally inappropriate for the Trustee here to seek recovery of all transfers, including "most or all" returned dollars, without specifically identifying any unreturned dollars that would be avoidable.

12

For these reasons, the Court dismisses the Trustee's claims for avoidance and recovery of preferences, constructive fraudulent transfers,[9] and actual fraudulent transfers.

**B.      Even if there are unreturned transfers lurking in the Second Amended Complaint, the Trustee has not adequately alleged how they are preferences or fraudulent transfers**

Even if the Trustee could identify an unreturned transfer, the Trustee has otherwise failed to adequately plead the required elements of a preference, a constructive fraudulent transfer, and an actual fraudulent transfer.

### 1. *The Trustee has not adequately pleaded the elements of a preference*

Unlike Count XIV against Mechanics for a preference, which at least contains a recitation of the statutory elements, Count XIII against HTLF (styled, "Fraudulent Transfer") contains only a threadbare cite to section 547, a list of payments made to 2B Farms and Terry Robinson during the preference period (included in Exhibits B and C), and not much else. The preference count just doesn't cut it.

As mentioned earlier, Bankruptcy Code section 547 provides in relevant part that a trustee (subject to certain defenses) may—based on reasonable due diligence under the circumstances and taking into account a party's known or reasonably knowable affirmative defenses—avoid a transfer of an interest of the debtor in property (1) to or for the benefit of a creditor, (2) for or on account of an antecedent debt owed by the debtor before such transfer was made, (3) made while the debtor was insolvent, (4) made within 90 days before the date of the filing of the petition, and (5) that enables such creditor to receive more than such

---

[9] The briefing from HTLF and the Trustee doesn't specifically address TUFTA section 24.006(b) and KUVTA section 378A.050(2), involving payment of an antecedent debt of an insider when the debtor is insolvent and the insider had reasonable cause to believe that the debtor was insolvent (for convenience, an "**Insider Constructive Fraudulent Transfer**"). But the Court construes HTLF's Motion as seeking dismissal of *all* claims for avoidable transfers based on the failure to identify unreturned transfers. The Court thus grants HTLF's Motion to dismiss Count XIII in its entirety on that basis.

creditor would receive if the case were a chapter 7 and such transfer has not been made. *See* 11 U.S.C. § 547(b)(1)–(5).

The first element is that there must be a transfer to or for the benefit of a creditor. Transfers have been identified in Exhibits B and C, but who is the relevant creditor of the Debtors here? HTLF? Its customers, 2B Farms and Mr. Robinson? The Second Amended Complaint is fuzzy on this. The complaint alleges that HTLF is a "shadow or pseudo-lender" to the Debtors because it gave provisional credit on checks deposited in its customers' accounts before funds cleared, and because HTLF "permitted" its customers to wire those funds back to the Debtors, again before the check funds cleared. Second Amended Complaint ¶ 80. These are not well-pleaded facts that would support a finding that HTLF was a lender to (and thus a creditor of) the Debtors. At most, those facts suggest HTLF was a lender to its customers,[10] who in turn might have lent money to the Debtors.

The Trustee's theory of recovery therefore must rely on avoidance of alleged preferential payments to 2B Farms and Mr. Robinson, who are creditors of the Debtors, with recovery under section 550 against HTLF as either a subsequent transferee or party for whose benefit a transfer was made. But the Second Amended Complaint does not identify, for each alleged transfer, the corresponding antecedent debt to 2B Farms or Mr. Robinson that was paid. Nor does the Second Amended Complaint explain how each preferential payment allowed 2B Farms and Mr. Robinson to recover more than they would have recovered in a Chapter 7 had such transfers not been made. Nor does the complaint indicate whether the Trustee has taken into account HTLF's known or reasonably knowable affirmative defenses. In short, the Second Amended Complaint fails to allege facts that would support the elements of a section 547 preference claim.

For these reasons, the Trustee's count (or sub-count) for avoidance and recovery of preferential transfers will be dismissed for failure to state a claim.

---

[10] The facts alleged aren't even well pleaded enough to determine whether HTLF lent money to its customers by honoring checks because the allegations don't consider the application of the midnight-deadline rule that is discussed in the Mechanics order. *See* Docket No. 413 at 12-16.

### 2. *The Trustee has not adequately pleaded the elements of a constructive fraudulent transfer*

Next, the Trustee seeks to avoid deposits into the HTLF bank accounts of 2B Farms and Terry Robinson as constructive fraudulent transfers. The Trustee alleges that the Debtors transferred a total of $274,598,690.87 to 2B Farms and Terry Robinson— as initial transferees—on account of their "investments" with the Debtors. Second Amended Complaint ¶¶ 206-07. The complaint generally alleges a Ponzi scheme regarding purported investments in cattle, *e.g., id.* ¶ 3, so the Trustee seems to allege—remarkable as it may seem—that 2B Farms and Mr. Robinson together invested in $274 million of cattle.[11] If that is the allegation, the claim for constructive fraudulent transfer fails.

A constructive fraudulent transfer occurs only if a debtor receives less than reasonably equivalent value in exchange for the transfer. 11 U.S.C. § 548(a)(1)(B)(i); Tex. Bus. & Com. Code §§ 24.005(a)(2), 24.006(a); Ky. Rev. Stat. §§ 378A.040(1)(b), 378A.050(1). "Value" includes satisfaction or securing of a present or antecedent debt of the debtor. 11 U.S.C. § 548(d)(2); Tex. Bus. & Com. Code § 24.004; Ky. Rev. Stat. § 378A.030. Therefore, dollar-for-dollar repayments of an antecedent debt constitute reasonably equivalent value. *In re Louisiana Pellets, Inc.*, 838 Fed. App'x 45, 50 (5th Cir. 2020); *see also In re Se. Waffles, LLC*, 702 F.3d 850, 857 (6th Cir. 2012) ("[Plaintiff] cannot state a claim for avoidance of payments that necessarily resulted in a dollar-for-dollar reduction in the penalties due."); *In re Colliau*, 584 B.R. 812, 815 (Bankr. W.D. Tex. 2017) ("If an estimated tax payment is a payment of an antecedent or present debt, then the transfer in satisfaction of the tax debt would be a dollar-for-dollar exchange, and would be for a reasonably equivalent value.").

The purported transfers here cannot have been constructively fraudulent because the Debtors repaid the cattle investments of 2B Farms and Terry Robinson, antecedent debts, dollar-for-dollar.

---

[11] This allegation is difficult to square with the other allegation of an "endless circle" stream of payments that somehow created "float." As discussed above, if the transfers were not actually on account of cattle investments but were simply dollars passed back and forth like Delbert's bowling balls, then the Trustee may have already received his single satisfaction for any avoidable transfer. Indeed, paragraph 207 of the Second Amended Complaint strongly suggests it was HTLF and its customers who were left bowling-ballless as of the petition date.

15

Notwithstanding that dollar-for-dollar exchange, the Trustee contends that, as a matter of law, all transfers made in furtherance of a Ponzi or Ponzi-like scheme cannot be in exchange for reasonably equivalent value, thus rendering the reasonably-equivalent-value inquiry irrelevant and the reasonably-equivalent-value allegations unnecessary. Docket No. 235 ¶ 46 (citing *In re Reagor-Dykes Motors, LP*, Adversary No. 20-05039, 2021 WL 1219537, at *9 (Bankr. N.D. Tex. 2021)). In related briefing involving Mechanics on the exact same issue, the Trustee alleges this is "[s]ettled Fifth Circuit law . . . ." Docket No. 82 ¶ 38. The Trustee overstates his case and the settled law.

There are two groups of cases from the Fifth Circuit discussing when transfers in Ponzi schemes were or were not made for reasonably equivalent value. The first group of cases involves payments to transferees who provided no measurable economic value to the debtors in exchange. In these cases, the Fifth Circuit held that when a Ponzi-scheme company pays somebody (like a salesman who works on commission) to peddle the scheme to investors, the fraudulent services of the salesman to the company are not reasonably equivalent value for the Ponzi-scheme company's payments to him as a matter of law. *See In re Life Partners Holdings, Inc.*, 926 F.3d 103, 120-21 (5th Cir. 2019) (holding, as a matter of law, that payments to certain "Licensees" to solicit the purchase of life-insurance policies as part of the debtors' Ponzi scheme were transfers "in furtherance of" the scheme and thus not transfers made for reasonably equivalent value under TUFTA section 24.005(a)(2) and Bankruptcy Code section 548(a)(1)(B)); *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006) (Edith H. Jones, Chief Judge) (holding, as matter of law, that payments for "broker services" to secure investments in a debtor's Ponzi scheme were not made for reasonably equivalent value under Washington's adoption of the Uniform Fraudulent Transfer Act).

As Judge Edith Jones noted in *Warfield* about that type of exchange, "[t]he primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved. It takes cheek to contend that in exchange for the payments he received, the RDI Ponzi scheme benefited from [the broker salesman's] efforts to extend the fraud by securing new investments." *Warfield*, 436 F.3d at 560 (citation omitted). This first group of cases specifically addresses avoiding transfers made for worthless services performed in furtherance of peddling a Ponzi scheme. In these cases, according to the Fifth Circuit,

16

the transferor debtor's net worth is not preserved by the exchange of value because the debtor paid real dollars to the transferee, but the transferee provided no measurable value to the debtor in exchange.

The second group of cases involves payments to transferees who, in exchange, either provided measurable economic value to the debtors that preserved the debtor's net worth, or provided value that was objectively reasonable from a creditor's perspective at the time of the transaction. For example, in *Janvey v. Brown*, the investor defendants had valid fraud claims against the debtor for the tangible economic value they were duped into providing the debtor—that is, their principal investment. The Fifth Circuit held that principal payments made to investor-defendants were payments of antecedent debt—the investors' valid fraud claims—and thus were not recoverable as constructive fraudulent transfers. *Janvey v. Brown*, 767 F.3d 430, 443 (5th Cir. 2014). In other words, the investors had valid claims against the debtor when they were duped into providing their principal investments. When the debtor later paid those valid antecedent debts, those payments were for reasonably equivalent value because the debtor's net worth was preserved by the transaction—stated differently, even though the debtor had less cash after the transfers, its valid liabilities were reduced in an equal amount dollar-for-dollar.

On the other hand, that court ruled interest payments beyond the principal investments were recoverable because the investor defendants had no valid claim for contractual interest from a Ponzi scheme and the debtor received nothing of value in the exchange that preserved its net worth. *Id.*; *cf. In re Hannover*, 310 F.3d 796, 802 (5th Cir. 2002) (Edith H. Jones, Circuit Judge) (Ponzi scheme debtor received value from defendant under § 548(c) defense for real-estate purchase-option payments made to defendant because the options had value from the transferee's perspective; concern about disparity in values exchanged is addressed in § 548(a)(1)(B), which requires a showing of reasonably equivalent value from the perspective of the transferor: "Did the transferor receive enough?") (citation modified).

In *Golf Channel*, the Texas Supreme Court held that payments by a Ponzi-scheme company for media-advertising services—services that indisputably had objective value from a creditor's perspective at the time of the transaction—were of reasonably equivalent value under TUFTA's nonstandard, nonexclusive definition of the term. *Janvey v. Golf*

*Channel, Inc.*, 487 S.W.3d 560, 570, 582 (Tex. 2016) ("[W]e discern nothing in TUFTA's text suggesting the Legislature intended a different value standard to apply in the Ponzi-scheme context.").

In the present case, the transfers (again, assuming they were transfers on account of antecedent cattle investments) more closely resemble those in this second line of cases, and particularly those in *Janvey v. Brown*. There are no specific allegations that the Trustee made any payments beyond the principal investments of 2B Farms and Terry Robinson. Repaying those investments dollar-for-dollar both preserved the transferor's net worth and provided objectively reasonable value at the time of each transaction.[12] Dollar-for-dollar repayment is reasonably equivalent value, even when the payor is operating a Ponzi scheme. As 2B Farms and Terry Robinson received payments for reasonably equivalent value, there was never a constructive fraudulent transfer in the first place.

Should the outcome here change because HTLF is alleged to be complicit in the Ponzi scheme? No, because the Debtors received reasonably equivalent value when they repaid investments dollar-for-dollar. The Trustee asserted separate common-law claims against HTLF for its role in the alleged scheme, and the Court dismissed those claims with prejudice. If the Trustee can adequately plead an actual fraudulent transfer against HTLF, its purported knowledge of the scheme will be tested through its good-faith affirmative defenses under the Bankruptcy Code, TUFTA, and KUVTA. Those issues should not bleed over into a constructive-fraudulent-transfer analysis.

---

[12] In a single sentence in the opinion upon which the Trustee relies, the *Reagor-Dykes* court stated that allegations of lack of reasonably equivalent value were not required in that case because there was a Ponzi-like scheme and "any transfer in furtherance of such scheme 'does not confer reasonably equivalent value as a matter of law.'" *In re Reagor-Dykes Motors*, 2021 WL 1219537, at *9 (quoting *In re Life Partners*, 926 F.3d at 121). This Court believes that the *Life Partners* and *Warfield* opinions are more limited than they're given credit for. They do not, as the Trustee appears to suggest, mean that the Trustee automatically wins the reasonably-equivalent-value determination whenever a Ponzi scheme is involved. In many cases, a trustee must still plead and eventually prove lack of reasonably equivalent value.

18

For the reasons explained above, there are no allegations in the Second Amended Complaint supporting the conclusion that a transfer was made for less than reasonably equivalent value. The Trustee thus has not adequately pleaded a claim for a constructive fraudulent transfer.[13]

### 3. The Trustee has not adequately pleaded the elements of an actual fraudulent transfer

Finally, the Trustee seeks to avoid and recover from HTLF alleged actual fraudulent transfers. Even though this count has caused some confusion in the briefing, the Trustee has not adequately stated a claim for relief.

First, according to HTLF, the Trustee might be asserting that HTLF's possession of blank, pre-signed checks makes HTLF a transferee of the funds that are payable by the checks. Docket No. 231 ¶ 47. This control allegation appears directed at other causes of action and not at a theory that such control makes HTLF a transferee. But if the Trustee really does claim HTLF is a transferee on this theory, the Court rejects that claim.

The Fifth Circuit has adopted the dominion-and-control test to determine whether a party was actually a transferee from whom a transfer may be avoided. *In re Coutee*, 984 F.2d 138, 140–41 (5th Cir. 1993) (relying on *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988)).[14] In *Coutee*, the Fifth Circuit held

---

[13] The Court is referring to the more commonly discussed constructive fraudulent transfer that requires a lack of reasonably equivalent value, and not to an Insider Constructive Fraudulent Transfer, which contains no such requirement. Even though the Second Amended Complaint does not adequately plead an Insider Constructive Fraudulent Transfer as to HTLF, that Defendant (unlike Mechanics) has not moved to dismiss on that specific ground, perhaps because the Second Amended Complaint generally refers to TUFTA section 24.006 and KUVTA section 378.050 without specifically referring to subsections, and without mentioning the word "insider" when discussing those statutes. Because HTLF has not moved specifically on the insider issue, the Court does not dismiss Count XIII on that specific ground.

[14] Texas courts have adopted this same version of the dominion-and-control test when analyzing transferee status under TUFTA. *See, e.g.*, *Hearne v. Riversource Life Ins. Co.*, 670 S.W.3d 360, 370 (Tex. App.—Texarkana 2023); *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 165 (Tex. App.—Houston 1996, writ denied); *Williams v. Performance Diesel Inc.*, No. 14-00-00063-CV, 2002 WL 596414 at *5 (Tex. App.—Houston 2002, no pet.). The Court is aware of no contrary authority under KUVTA.

"dominion over funds means the right to put the money to one's own use. . . . an entity does not have dominion over the money until it is, in essence, free to invest the whole [amount] in lottery tickets or uranium stocks if it wishes." *Id.*

The Trustee alleges that HTLF filled out and deposited the checks at the direction of Brian McClain or his daughter. Second Amended Complaint ¶¶ 78-80. The Trustee even asserts that HTLF was a fiduciary and agent of the Debtors by completing these blank checks. *Id.* ¶ 80. HTLF thus was bound to fill out the checks as instructed and then deposit them into the accounts of 2B Farms or Terry Robinson. Tex. Bus. & Com. Code § 3.115(a), (b). HTLF—while holding the checks—could not invest that money in lottery tickets or uranium stocks.

In short, there are no well-pleaded facts that support a finding that HTLF's physical possession of the blank checks makes it a transferee.

Next, the Trustee alleges that HTLF was a transferee of the Debtors' funds—that is, of the $274 million plus of deposits—when it used those funds to pay down HTLF's credit facilities with 2B Farms and Terry Robinson. But there are scant allegations on that front. What are the terms of the credit facilities? How much was owed under those facilities? On which dates were they paid down? In what amounts? The Court is left with a bare-naked assertion that HTLF somehow, at some point, used the Debtors' money to pay down some unspecified portion of credit facilities of 2B Farms and Terry Robinson. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). And once again, the Court does not agree with the Trustee's argument that the lack of specificity in pleading is merely quibbling over the precise amount of damages. Avoidance and recovery are determined—and alleged—on a transfer-by-transfer basis.

Therefore, Count XIII of the Second Amended Complaint must be dismissed because the Trustee has failed to adequately plead actual fraudulent transfers.

20

**C.     The Court grants the Motion with leave to amend the claims except for constructive fraudulent transfers involving lack of reasonably equivalent value for the payment of the principal amount of prior cattle investments**

After a party has amended a pleading as a matter of course, further amendments require the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2); Fed. R. Bankr. P. 7015. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The language of Federal Rule of Civil Procedure 15 shows a "bias in favor of granting leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Atheltic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted). However, "[l]eave to amend may be denied for undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . and futility of the amendment." *N. Cypress Med. Center Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) (citation modified).

There is no evidence demonstrating "undue delay, bad faith or dilatory motive on the part of the movant," although the Trustee's request for the recovery of all returned dollars is a true head-scratcher. While this is now the Trustee's third attempt to file a complaint, there are apparent factual deficiencies that, if cured, might make a third amended complaint fruitful as to claims other than those involving constructive fraudulent transfers on account of the repayment of the principal amount of prior cattle investments. When a complaint has been amended twice and no additional facts or information will overcome the pleading standard, dismissal with prejudice is proper. *United States of Am. ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, 157 F.4th 758, 765–66 (5th Cir. 2025). Dollar-for-dollar repayments of the principal amount of antecedent cattle investments necessarily constitute reasonably equivalent value. There are no additional facts the Trustee could assert that would overcome this deficiency. Granting leave to amend the complaint to assert constructive fraudulent transfers on account of the repayment of the principal amount of prior cattle investments would be futile. Therefore, the Court dismisses the claims for that type of constructive fraudulent transfer with prejudice.

21

## VI.  Conclusion

For the reasons stated above, the Court **ORDERS** as follows:

1. The Motion is **GRANTED** in part as stated herein.
2. The claims against HTLF in Count XIII for actual fraudulent transfers, preferential transfers, Insider Constructive Fraudulent Transfers, and (with the exception covered in the next paragraph) other constructive fraudulent transfers, are dismissed without prejudice.
3. The claims against HTLF in Count XIII for constructive fraudulent transfers involving lack of reasonably equivalent value are dismissed with prejudice to the extent they involve payments on account of the principal amount of prior cattle investments.
4. The Trustee shall not replead until after the Court rules on the pending motion to dismiss filed by Rabo. After the Court rules on that motion, the Trustee and HTLF shall confer on an appropriate deadline to replead.

### End of Order ###