ALAN DABDOUB
LYNN PINKER HURST & SCHWEGMANN LLP
2100 ROSS AVENUE, SUITE 2700
DALLAS, TEXAS 75201

HUDSON M. JOBE
JOBE LAW PLLC
6060 NORTH CENTRAL EXPRESSWAY,
SUITE 500
DALLAS, TEXAS 75206

SPECIAL COUNSEL TO THE TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| In re:<br><br>McClain Feed Yard, Inc., et al.,<br><br>  Debtors. | §<br>§<br>§<br>§<br>§<br>§ | Case No. 23-20084-swe-7<br>Jointly Administered |
| In re:<br><br>2B Farms, a Texas General<br>Partnership, et al.,<br><br>  Debtors. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 23-50096-swe-12<br>Jointly Administered |
| AgTexas Farm Credit Services,<br>AgTexas,<br>PCA, Thorlakson Diamond T Feeders,<br>LP,<br><br>  Plaintiffs,<br>v.<br>Rabo AgriFinance, LLC, et al.,<br><br>  Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adv. No. 24-2007-swe<br>Consolidated Adversary<br>Proceeding |

**TRUSTEE'S REPLY TO RABO'S OBJECTION TO THE TRUSTEE'S
MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 27, 2026
ORDER DISMISSING COMMON-LAW CLAIMS BASED ON THE
AFFIRMATIVE DEFENSE OF IN PARI DELICTO**

Plaintiff-Intervenor Kent Ries, Chapter 7 Trustee ("Trustee") of the bankruptcy estates of McClain Feed Yard, Inc. (Case No. 23-20084-swe), McClain Farms, Inc. (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. (Case No. 23-20086-swe) (collectively, the "Debtors"), respectfully submits this Reply Brief in further support of the Trustee's Motion for Reconsideration of the Court's March 27, 2026 Memorandum Opinion and Order Dismissing Common-Law Claims Based on the Affirmative Defense of In Pari Delicto (the "Order") and in response to the Brief in Opposition filed by Defendant Rabo AgriFinance LLC ("Rabo") [Dkt. No. 421] (the "Opposition").

**INTRODUCTION**

Rabo's Opposition confirms far more than it refutes. Rather than grapple with the substance of the Trustee's arguments, Rabo largely repackages the same positions it has advanced throughout this litigation, dismisses the Trustee's well-pleaded factual allegations as insufficient by comparison to inapposite cases, and asks this Court to foreclose the Trustee's common-law claims permanently—without affording the Trustee a single opportunity to amend in response to this Court's first ruling on *in pari delicto*.

The Trustee respectfully submits that Rabo's Opposition fails on each of its principal arguments. First, Rabo mischaracterizes the Trustee's public-policy argument as merely a restatement of a "receivership method" that the Court already rejected, when in fact the Trustee's argument rests squarely on the substantive content of Texas common law—which, unlike the laws of other states, contains an independent public-policy exception that applies regardless of the plaintiff's status as

a trustee. Second, Rabo's dismissal of the Trustee's ability to plead control, insider, and adverse-interest exceptions depends on selectively reading the Trustee's allegations and ignoring the reasonable inferences to which the Trustee is entitled at the Rule 12(b)(6) stage. Third, Rabo's insistence that dismissal with prejudice was warranted ignores longstanding Fifth Circuit precedent affording plaintiffs at least one meaningful opportunity to cure pleading deficiencies before entering a dismissal with prejudice unless it is certain that any and every amendment would be futile— an opportunity the Trustee has never received on the issue of *in pari delicto*. The Court should reconsider its Order and *deny* Rabo's motion to dismiss the Trustee's common-law claims or, at minimum, grant the Trustee at least one opportunity to amend his complaint to address the deficiencies the Court identified in its Order.

## ARGUMENT

As a threshold matter, the standard of review applicable to the Trustee's Motion should not change the outcome. The Trustee's Motion is brought under Federal Rule of Civil Procedure ("Rule") 59(e), per Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9023, as well as under Rule 54(b), which empowers the Court to alter its non-final judgments for any reason prior to entry of a final judgment and applies here under Bankruptcy Rule 7054. And Rule 15(a)'s liberal standard for granting leave to amend governs the Trustee's request that should the Court not reverse its Order on reconsideration, the Court modify it to permit the Trustee an opportunity to amend his common-law claims. Whether analyzed under any of these provisions, the same core proposition controls: a dismissal with prejudice should not stand where amendment would not be futile and where the dismissed party has not previously had a meaningful opportunity to address the specific deficiencies the Court has now identified. *See Tex. Indigenous Council v. Simpkins*, 544 Fed. Appx. 418, 421 (5th Cir. 2013). Permission to amend "should be denied only

3

if it **appears with certainty** that plaintiffs cannot state a claim showing they are entitled to relief or defendant will be unduly prejudiced." *Tex. Indigenous Council v. Simpkins*, 544 Fed. Appx. 418, 421-22 (5th Cir. 2013) (citation omitted).

Here, the Trustee's arguments in the Motion, as supplemented below, confirm it is not factually certain the Trustee's claims cannot survive the *in pari delicto* defense–even if the Court does not reconsider its position on the effect of 11 U.S.C. § 541 on the Trustee's claims. Exceptions to *in pari delicto* may apply. The Trustee has not had an opportunity to amend and remediate or otherwise address the *in pari delicto* issues that the Court identified in its *initial* consideration of the Trustee's claims. Rule 15 and Fifth Circuit precedent provide the Trustee the right to have that opportunity.

The Trustee's request for permission to amend is just as strong now as it would have been had the Trustee not amended at all prior to the Court's initial decision. Rule 15(a)(1) contemplates that a party might amend as a matter of right like the Trustee did here, while Rule 15(a)(2) instructs that even after such an initial amendment, courts still "should freely give leave when justice so requires." Here, it would be unjust to only give the Trustee a single opportunity to plead his claims before dismissing them with prejudice since it is not impossible that the Trustee could add claims based on the same facts and theories immune to *in pari delicto* or plead supplemental facts establishing exceptions thereto. At minimum, an opportunity to amend, if necessary, is warranted regardless of which procedural rule governs.

## I. Rabo mischaracterizes the Trustee's public policy argument and ignores the substance of Texas law.

Before the Court considers whether to grant leave, the Trustee first asks the Court to reconsider its conclusion that the defense of *in pari delicto* under Texas law, when applied to the specific facts and circumstances of this case, bars the Trustee's

common-law claims as they are pleaded. The Trustee argues this is an erroneous application of the *in pari delicto* defense under Texas law to the facts of this case. Rabo mischaracterizes the Trustee's argument as recycling a "public policy" position that the Court already "thoroughly addressed—and correctly rejected," Opposition at 4. Rabo contends that the Trustee "continues to ask the Court to analyze the *in pari delicto* defense based on the potential results of the claims" and that this approach is "akin to the 'receivership method'" that the Fifth Circuit, in *Jones v. Wells Fargo Bank, N.A.*, distinguished from a trustee's claims in bankruptcy. Opposition at 4 (citing 666 F.3d 955, 963–68 (5th Cir. 2012)). But this fundamentally misrepresents the Trustee's argument and reflects Rabo's misapprehension of Texas law.

The Trustee does not contend that his status as trustee or the mere institution of the Debtors' bankruptcy cases entitles him to obtain greater rights than the Debtors possessed as of the Petition Date. The Trustee expressly acknowledges that under 11 U.S.C. § 541, he stands in the Debtors' shoes and is subject to the same claims and defenses. The Trustee's argument is not that § 541 provides an exception; it is that *Texas substantive law itself*—the very law governing the Trustee's common-law claims and Rabo's *in pari delicto* defense—contains an independent public-policy prong that applies in every case in which *in pari delicto* is asserted, not just bankruptcy cases, which decisively resolves Rabo's defense in the Trustee's favor given the facts and circumstances of *this* case, which must be specifically considered before resolving the *in pari delicto* defense. *In re Vantage Benefits Administrators, Inc.*, No. 18-31351-SGJ-7, 2021 WL 1815065, at *14 (Bankr. N.D. Tex. May 5, 2021). Under the public policy prong, where (i) no wrongdoer will benefit if the defense is denied, (ii) denying the defense will insure to the public benefit in compensating defrauded creditors and discouraging future misconduct, and (iii) granting the defense would unfairly allocate accountability for joint torts on some wrongdoers but not others, Texas law resolutely requires the denial of the *in pari delicto* defense. *See*

*In re Vantage Benefits Administrators, Inc.*, No. 18-31351-SGJ-7, 2024 WL 3842796, at *33 (Bankr. N.D. Tex. Aug. 14, 2024); *In re Today's Destiny, Inc.*, 388 B.R. 737, 749 (Bankr. S.D. Tex. 2008); *see also In re Aliera Cos., Inc.*, 665 B.R. 468, 504 (Bankr. N.D. Ga. 2024) (finding Georgia's similar public policy or "equity" prong dictates the same outcome in the same circumstances); *see also Wright v. Wight & Wight*, 229 S.W. 881, 882 (Tex.Civ.App–El Paso 1921).

Under Texas law, the in pari delicto defense is "adopted, not for the benefit of either party and not to punish either of them, but for the benefit of the public." *Reneker v. Offill*, No. CIV.A. 3:08-CV-1394, 2010 WL 1541350, at *8 (N.D. Tex. Apr. 19, 2010) (quoting *Lewis v. Davis*, 199 S.W.2d 146 (Tex. 1947)). Unlike states that rigidly apply *in pari delicto*, Texas law provides that even where parties are equally at fault, "relief will be granted if public policy demands it." *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 110 (Tex. App.—San Antonio 2011, pet. denied) (citing *Lewis*, 199 S.W.2d at 151). "In such cases*, courts do not consider the guilt of the respective parties, but rather look to the higher right of the public*." *Id.* (emphasis added).

The operative question under Texas law is "whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of the other." *Geis*, 362 S.W.3d at 110 (quoting *Lewis*, 199 S.W.2d at 151). This inquiry requires a case-by-case analysis of the "peculiar facts and equities" at hand. *In re Am. Hous. Found.*, No. 09-20232-RLJ-11, 2011 WL 4625349, at *32 (Bankr. N.D. Tex. Sept. 30, 2011), *aff'd*, 544 Fed. Appx. 516 (5th Cir. 2013). The peculiar facts and equities at hand that are relevant are uncontested. This is a chapter 7 liquidation case in which creditors will not recover 100% of their allowed claims, such that the Debtors will not benefit from any recoveries; the wrongdoer that owned Debtors and used them to commit the fraud is deceased and will obtain no benefit; any recoveries will benefit creditors, *i.e.*, the public (and not any party); and denying Rabo's *in pari delicto* defense will discourage lenders like

6

Rabo from knowingly participating in breaches of fiduciary duties by allowing a ballooning Ponzi scheme to consistently and blatantly kite millions of dollars of checks to perpetuate the scheme and rope in more victims.

Texas law requires the Court to consider these facts and these circumstances of this adversary proceeding. These uncontested facts, under Texas's public policy prong, lead to the inevitable conclusion that no wrongdoer will benefit from any recoveries the Trustee obtains through his common-law claims, Only the public will benefit. And for more than a century, it is the "higher right of the public," and not "the guilt of the respective parties," that controls whether to grant or deny the defense. *Wright*, 229 S.W. at 881,

Rabo's Opposition ignores these authorities. Rabo offers no response to the line of Texas cases holding that public policy can override *in pari delicto* regardless of the parties' relative culpability. *See id.*; *see also Orthodontic Centers of Tex., Inc. v. Wetzel*, 410 Fed. Appx. 795, 799–800 (5th Cir. 2011). These cases establish that the "***public policy inquiry . . . [focuses] on the public's interest, not the parties***." *Wetzel*, 410 Fed. Appx. at 800 (emphasis added). Rabo instead repeats that the "section 541 snapshot method" governs, conflating the question of *whose shoes the Trustee stands in* (the Debtors') with the separate question of *what Texas substantive law provides* once the Trustee is standing in those shoes. Section 541 dictates that the Trustee's success or failure is determined as if the Debtors brought the claims, but it does not rewrite the substantive content of Texas's *in pari delicto* doctrine. Indeed, the point of the "section 541 snapshot method" cases is that the Bankruptcy Code is generally not intended to alter applicable common-law claims and defenses. Yet, applying § 541 to preclude consideration of who benefits from a recovery on the claims, as Rabo argues it should, would do just that by writing the public policy prong right out of the *in pari delicto* doctrine under Texas common law. That is precisely the outcome § 541 prohibits.

7

If the Debtors themselves had brought these claims against Rabo, the Texas public-policy analysis would still require the Court to weigh the equities—including the fact that every dollar of any recovery flows to innocent creditors, that the Debtors are being liquidated and cannot benefit, and that Brian McClain is dead. Rabo's suggestion that these facts are irrelevant because § 541 forbids considering them is contrary to the very nature of the "snapshot method": the snapshot freezes the Debtors' legal rights as of the Petition Date, but those rights include whatever public-policy exceptions Texas law affords to any plaintiff *in pari delicto*.

Furthermore, Rabo's reliance on eight circuit courts of appeals is unpersuasive in this context. None of those circuits applied Texas law. And of the federal courts in the Fifth Circuit that have applied Texas *in pari delicto* law to a trustee's claims, most have found a trustee's claims survived the *in pari delicto* defense–including in cases where those same courts held *in pari delicto* barred the trustee's alternative claims brought under New York's stricter *in pari delicto* law. *See In re Vantage Benefits Administrators, Inc.*, 2024 WL 3842796, at *26–29 (Bankr. N.D. Tex. Aug. 14, 2024). The distinction is the substance of Texas law, not the status of the Trustee or some preemption of the common law by the Bankruptcy Code. Multiple courts in this circuit have reached similar conclusions. *See Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 642 (S.D. Tex. 2009); *In re Chris Pettit & Associates, P.C.*, 670 B.R. 602, 624 (Bankr. W.D. Tex. 2025); *Osherow as Tr. for Estate of Republic Res., LLC v. York*, No. 5:17-CV-483-DAE, 2019 WL 6048017, at *6 (W.D. Tex. Aug. 5, 2019).

Finally, Rabo dismisses the Trustee's argument concerning contribution claims as "unpersuasive" and suggests that it would allow a party to "simply characterize otherwise barred state law claims as ones for 'contribution' and forever avoid application of in pari delicto." Opposition at 8, n.1. This is a straw man. A contribution claim is a distinct cause of action under Texas Civil Practice and Remedies Code Chapter 33, and "as a matter of law," *in pari delicto* does not bar a

trustee's contribution claim against alleged joint tortfeasors. *In re Today's Destiny, Inc.*, 388 B.R. 737, 750 (Bankr. S.D. Tex. 2008); *see also Norman v. B.V. Christie & Co.*, 363 S.W.2d 175, 178 (Tex. App.—Houston 1962, writ ref'd n.r.e.). Here, for example, the Trustee alleges Rabo knowingly participated in McClain's breaches of his fiduciary duties, which resulted in the Debtors' increasing insolvency and growing inability to repay creditor claims.

This rule is consistent with the general principle that statutory schemes may supplant common-law defenses like *in pari delicto. See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985). And it is likewise consistent with the treatment of other defenses to tort claims, such as the statute of limitations, when applied to contribution claims. For example, a defendant can assert a third-party contribution claim in response to a plaintiff's claims, in the same lawsuit in which defendant is being sued, relating to the same underlying conduct, even if the plaintiff had been barred from suing the third party because of limitations. This result is based on the fact that a contribution claim is a distinct cause of action arising under statute from the underlying tort claims, and the claim arises at separate times. Just because the Trustee's contemplated contribution claim is based on the same underlying facts and theories, it arises under statute, not common law, and is not susceptible to *in pari delicto*. Indeed, applying *in pari delicto* to a claim that is premised on both parties jointly committing the misconduct, would be nonsensical. As such, it is apparent that the contribution statute is intended to preempt *in pari delicto*.

Rabo offers no explanation for why Texas law would sanction pleading a contribution claim rather than the underlying tort to circumvent the limitations defense–a defense intended to benefit the *defendant*– but would not sanction the very same practice to evade the *in pari delicto* defense–which is *not* intended to protect the defendant but rather the public. The Court should therefore reject Rabo's arguments.

II.   **The Trustee's allegations support recognized exceptions to *in pari delicto.*

A.   **The Trustee's allegations raise genuine fact questions regarding the "control" exception.**

Rabo contends that the Trustee "provides no support" for a control exception and that the allegations in the Second Amended Complaint ("SAC") are "not in the same league, ballpark, universe, or any other comparable idiom" as the control at issue in *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008). Opposition 9-10. Rabo further suggests that only three paragraphs of the SAC support this argument and that those allegations are "directly contradicted" by allegations concerning Rabo's purported lack of oversight. *Id.* This argument ignores both the standard of review and the weight of the Trustee's allegations.

At the Rule 12(b)(6) stage, the Court must take all well-pleaded facts as true and draw all reasonable inferences in the Trustee's favor. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007). The SAC alleges far more than three paragraphs of control. The Trustee alleges that Rabo "exerted an atypical level of control over Debtors beyond the typical banking and lending relationships between commercial parties," including through comprehensive security interests in the Debtors' property and deposit accounts. The Trustee alleges that "Rabo was able to leverage the Debtors to do what Rabo wanted" because the Debtors were wholly reliant on Rabo's loans, which were in a perpetual state of default. The Trustee alleges that Rabo "would lead the discussion on how to move the Debtors' cash and incoming receivables around." And, critically, the Trustee alleges that "Rabo's domination of the Debtors was made indisputably manifest when it forced McClain out of his own companies and installed its own, handpicked chief restructuring officer in his place." Rabo's own employee, Lawson, "admitted in his deposition that Rabo was controlling Debtors and McClain."

10

Rabo cannot escape these allegations by pointing to *ASARCO* and asserting that its own control was somehow lesser. The question is not whether Rabo's control is identical to the parent-subsidiary relationship in *ASARCO*; the question is whether the Trustee has alleged facts from which a reasonable inference of excessive control can be drawn. Taking the Trustee's allegations as true—as the Court must—Rabo forced out the Debtors' sole owner and manager, installed its preferred officer, extracted broad waivers and releases, directed the movement of Debtors' cash on a near-daily basis, and compelled the execution of the DACAs on the eve of Bankruptcy against the Debtors' (and Mechanics Bank's) best interests. These are not allegations of a garden-variety lending relationship. They describe a party that exercised domination and control sufficient to raise a genuine factual question as to whether Rabo was more culpable than the Debtors—a question that cannot be resolved at this stage given the disputed factual allegations concerning Rabo's control.

Rabo's contention that the Trustee's allegation that Rabo controlled the Debtors is "directly contradicted by dozens of the Trustee's allegations concerning Rabo's purported lack of oversight" misapprehends the pleading. These allegations are complementary, not contradictory: a lender can dominate and control a borrower while simultaneously failing to exercise its legal and corporate oversight responsibilities. That is precisely what the SAC alleges Rabo did here. The SAC asserts Rabo controlled the Debtors, knowingly partook in the check kiting scheme, and continually propped up the Debtors by extending credit beyond approved limits, so that it could continue to profit from the scheme. The SAC alleges Rabo did not merely ignore or fail to heed red flags and warning signs. Rather, the Trustee alleges Rabo failed to address the obvious fraud for so long that it could only have been because Rabo was purposefully disregarding its oversight responsibilities as part of its knowing participation in the fraudulent scheme. When read in conjunction with the Trustee's other supporting allegations, such as Lawson's admission that Rabo

11

"controlled" the Debtors, the SAC consistently alleges both that Rabo controlled the Debtors and knowingly disregarded red flags and its own policies to perpetuate the scheme. Indeed, Rabo's dual posture—controlling the Debtors' operations while willfully ignoring the fraud—is precisely the conduct that makes the control exception appropriate here.

.

**B.     The Trustee has alleged sufficient facts to support the "corporate insider" exception.**

Rabo argues that Rabo "does not fit" the Bankruptcy Code's definition of an insider because it is merely the Debtors' "secured lender." Opposition at 10-12. Rabo then points to *Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification Beams Systems, LLC*, 566 B.R. 815 (W.D. Tex. 2017), in which the court found that the complaint contained "no allegations" supporting insider status, and contends that the Trustee's case fares even worse.

Rabo's reliance on *Brickley* undercuts its argument. The *Brickley* court dismissed the insider exception because the complaint in that case did not allege that the defendants had "such domination or control over [the debtor] to be considered 'insiders.'" *Brickley*, 566 B.R. at 842. By contrast, the SAC is replete with allegations of Rabo's domination and control—including its ability to force McClain out of his own companies, install its own handpicked management, direct the use of the Debtors' cash, extract DACAs and releases against the Debtors' interests, and control the Debtors' access to their own deposit accounts. The Bankruptcy Code defines "insider" to include a "person in control of the debtor." 11 U.S.C. § 101(31)(B)(iii). A reasonable inference—which the Court must afford the Trustee at this stage—is that a party with the power to force out the sole owner and manager of three companies and install its own chosen successor, is a person "in control of the debtor." The Trustee thus pleaded Rabo was an insider.

Insiders of a debtor are ineligible to invoke the *in pari delicto* defense against a trustee. *In re Today's Destiny, Inc.*, 388 B.R. at 749. Whether Rabo was an insider is a fact question that cannot be resolved on a motion to dismiss. The Court cannot determine that no exceptions to Rabo's *in pari delicto* defense apply at this stage and therefore should reconsider its Order and deny Rabo's motion to the extent based on *in pari delicto*.

**C.    The Trustee's "adverse interest" arguments also compel the Court's reconsideration of its Order.**

Rabo dismisses the Trustee's adverse-interest arguments on two grounds: (1) that the SAC alleges the Debtors "operated the fraudulent schemes," and (2) that the "sole actor rule" bars the exception because "Mr. McClain is and was the Debtors." Opposition at 12-13. Neither argument withstands scrutiny.

As to the first point, the adverse-interest exception does not require that the Debtors be wholly innocent of participation in wrongdoing. Rather, under the exception, an individual's misconduct is not imputed to the corporation where the conduct victimizes the corporation. *In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 431 (Bankr. N.D. Tex. 2021). Here, in the context of a Ponzi scheme, every transfer is presumptively fraudulent and harmful to the Debtors because each transaction deepened their insolvency and was intended to perpetuate the scheme. McClain's conduct was thus inherently adverse to the Debtors' interests; the Debtors were the vehicles through which the fraud was perpetrated, and the costs of the fraud were borne by the Debtors and their creditors. Indeed, the Trustee asserts Rabo knowingly participated in McClain's breaches of his duties to Debtors, thereby *harming* the Debtors.

As to the sole-actor rule, Rabo's assertion that "Mr. McClain is and was the Debtors" is factually incorrect. Until mid-2021, Crystal McClain, Brian's ex-wife, was a 50% owner of at least McClain Farms, Inc. and McClain Feed Yard, Inc. Motion at

13

23-24. Moreover, at no time was McClain the sole representative of the Debtors; the Debtors employed *at least* one other employee at all relevant times, including Meagan and Kinsey. Under Texas law, "'sole actor' means just that—sole actor—and is not applied when the rationale for the rule has no application." *In re Sunpoint Sec., Inc.*, 377 B.R. 513, 566 (Bankr. E.D. Tex. 2007). Because McClain was not the sole representative of the Debtors, the sole-actor rule does not override the adverse-interest exception, and the Trustee should at minimum be afforded the opportunity to plead this exception more fully; the Trustee should not be required to anticipate every potential affirmative defense to his claims and plead every potentially applicable exception or exceptions to exceptions that may also apply if a defense is asserted.

Rabo's invocation of *FDIC v. Ernst & Young*, 967 F.2d 166, 170–71 (5th Cir. 1992), is also misplaced. Rabo reads *Ernst & Young* as holding that the adverse-interest exception applies only where the fraud was solely "against" the company. In a Ponzi scheme, the fraud is inherently against the debtor companies: every fraudulent transaction deepens the Debtors' insolvency and exposes them to massive liability. The Debtors' bankruptcy estate includes over $100 million in claims—confirming that the Debtors were harmed, not benefited, by the fraudulent schemes. At minimum, whether the implicated transactions provided a net benefit or a net harm to the Debtors is a fact question the Court cannot resolve at this stage. The Court therefore cannot find as a matter of law that the exception does not apply and should, at minimum, allow the Trustee an opportunity to plead facts that plausibly support the adverse-interest and other exceptions to *in pari delicto*.

14

### III.    Dismissal with prejudice was not warranted and is not supported by precedent.

Rabo's final argument—that dismissal with prejudice was warranted because the Trustee has failed to identify any "plausible path" for pleading cognizable claims—is inherently premised on Rabo's other arguments refuted above. Rabo did not and cannot establish as a matter of undisputed fact and law that the Trustee cannot possibly amend to state plausible and viable common-law claims against Rabo. Dismissal with prejudice was therefore contrary to Fifth Circuit precedent affording plaintiffs at least one opportunity to cure deficiencies in pleadings following a court's ruling on a motion to dismiss where repleading will not be futile.

### A.    The Trustee has not had a meaningful opportunity to address the Court's *in pari delicto* ruling.

The Fifth Circuit instructs that "dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). "District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 330 (5th Cir. 2002).

Rabo emphasizes that the Trustee has filed three complaints and had extensive discovery. But this characterization obscures the critical fact: the Court's Order was the *first time* the Court addressed the *in pari delicto* defense as applied to the Trustee's claims. Moreover, the Trustee's two amendments prior to the Order were primarily responsive to other arguments raised in Defendants' motions to dismiss— not to a ruling on *in pari delicto* that had not yet been issued. Indeed, the First Amended Complaint focused primarily on amendments pertaining to the claims against CFSB, and the SAC addressed Rabo, HTLF, and Mechanics. No party

15

answered or moved to dismiss the First Amended Complaint; the Trustee's amendments prior to the Court's ruling were effectively one amendment, not two.

Rule 15(a)(2) instructs that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave should only be denied "after repeated failures to cure deficiencies." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010). There has been no such repeated failure here. The Trustee is only now aware of the Court's particular view of *in pari delicto's* application and should have the opportunity to amend in light of that ruling.

### B. Amendment would not be futile.

Rabo's contention that a fourth complaint would be "futile and a colossal waste of resources," Opposition at 6, is belied by the record. As set forth in the Trustee's Motion and this Reply, the Trustee has identified multiple concrete avenues for amendment that could overcome the *in pari delicto* defense. First, the Trustee can further allege facts supporting the control and insider exceptions as to Rabo—drawing on deposition testimony and documents already in the record, including the admission by Rabo's own employee that Rabo was controlling the Debtors.[1]

Second, the Trustee can further develop the adverse-interest exception by alleging that Crystal McClain was a 50% owner until mid-2021, that additional employees were representatives of the Debtors at all relevant times, and that McClain's conduct was adverse to the Debtors' interests under the Ponzi-scheme presumption.

Third, the Trustee can add a claim for contribution against Rabo (and other bank defendants) as joint tortfeasors under Texas Civil Practice and Remedies Code Chapter 33, which is immune to the *in pari delicto* defense as a matter of law. *In re*

---

[1] As set forth in the Motion, the Trustee can, and should be permitted to, similarly plead facts that could render CFSB, Mechanics Bank, and HTLF insiders of the Debtors.

16

*Today's Destiny, Inc.*, 388 B.R. at 750. Such a claim arises from the same conduct and transactions already described in the complaint and would relate back under Federal Rule of Civil Procedure 15.

The availability of these plausible amendments—any one of which could defeat the *in pari delicto* defense—demonstrates that dismissal with prejudice was premature. Rabo's argument that the Trustee's "silence" about additional facts "is particularly deafening" given extensive discovery ignores that the Trustee was not required to marshal every possible allegation in his complaint and anticipate this Court would deviate from numerous other federal courts in the Fifth Circuit in applying *in pari delicto* to a trustee's claims before the Court ever ruled on Rabo's (or anyone else's) *in pari delicto* defense. The Trustee was entitled to plead his case in light of the prevailing law in this circuit, which, as the Court acknowledged, generally favored the Trustee's position. Now that the Court has articulated its particular view, the Trustee should be permitted to respond. *See McLemore v. Lumen Techs., Inc.*, No. 25-30264, 2026 WL 252698, at *4 (5th Cir. Jan. 30, 2026).

C.    **The Court's departure from other courts in the Fifth Circuit further warrants leave to amend.**

The Court acknowledged that its Order "must respectfully part ways with two bankruptcy court opinions in the Fifth Circuit" that applied the *in pari delicto* defense differently. The prevailing approach among bankruptcy courts in this circuit—reflected in *Vantage*, *Today's Destiny*, *Floyd*, *Chris Pettit*, and *Osherow*—generally holds that *in pari delicto* should not be resolved at the motion-to-dismiss stage or that the defense does not bar a trustee's claims *as a matter of law* where the Debtors will not obtain any ultimate benefit but where creditors wronged by the Debtors will benefit. The Trustee was entitled to rely on this body of law in crafting his complaint.

17

Now that the Court has charted a different course, it would be manifestly unjust to deny the Trustee the opportunity to amend to address the Court's specific concerns.

## CONCLUSION

For the foregoing reasons, Rabo's Opposition provides no basis for denying the Trustee's Motion for Reconsideration. The Trustee has demonstrated that: (1) the *in pari delicto* defense should not bar the Trustee's common-law claims under the substantive public-policy exception provided by Texas law; (2) the Trustee's well-pleaded allegations raise genuine factual questions concerning the control, insider, and adverse-interest exceptions that cannot be resolved at the Rule 12(b)(6) stage; and (3) dismissal with prejudice was premature and unwarranted, particularly given that the Trustee has identified concrete and plausible avenues for amendment.

The Trustee respectfully requests that the Court grant the Trustee's Motion, vacate the Order, and deny Rabo's (and other defendants') motion(s) to dismiss on the basis of *in pari delicto*. Alternatively, the Court should afford the Trustee leave to amend to address the issues raised in the Court's Order, and award such other and further relief to which the Trustee may be entitled.

Dated: May 1, 2026.

Respectfully submitted,

*/s/ Alan Dabdoub*
Alan Dabdoub
State Bar No. 24056836
adabdoub@lynnllp.com
P. Campbell Sode
State Bar No. 24134507
csode@lynnllp.com
Farsheed Fozouni
State Bar No. 24097705
ffozouni@lynnllp.com
Steven G. Gersten
State Bar No. 24087579
sgersten@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:   214-981-3800
Facsimile:   214-981-3839

Hudson M. Jobe
State Bar No. 24041189
hjobe@jobelawpllc.com
**JOBE LAW PLLC**
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
Telephone:   214-807-0563

**SPECIAL COUNSEL TO THE TRUSTEE**

19