ALAN DABDOUB
LYNN PINKER HURST & SCHWEGMANN LLP
2100 ROSS AVENUE, SUITE 2700
DALLAS, TEXAS 75201

HUDSON M. JOBE
JOBE LAW PLLC
6060 NORTH CENTRAL EXPRESSWAY,
SUITE 500
DALLAS, TEXAS 75206

SPECIAL COUNSEL TO THE TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| In re:<br><br>McClain Feed Yard, Inc., et al.,<br><br>    Debtors. | §<br>§<br>§<br>§<br>§<br>§ | Case No. 23-20084-swe-7<br>Jointly Administered |
| In re:<br><br>2B Farms, a Texas General Partnership, et al.,<br><br>    Debtors. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 23-50096-swe-12<br>Jointly Administered |
| AgTexas Farm Credit Services, AgTexas, PCA, Thorlakson Diamond T Feeders, LP,<br><br>    Plaintiffs,<br>v.<br>Rabo AgriFinance, LLC, et al.,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adv. No. 24-2007-swe<br>Consolidated Adversary Proceeding |

### TRUSTEE'S REPLY BRIEF IN SUPPORT OF MOTION
### FOR RECONSIDERATION IN RESPONSE TO COMMUNITY
### FINANCIAL SERVICES BANK'S OBJECTION [DKT. NO. 423]

---

**TRUSTEE'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION**          **Page 1**

Plaintiff-Intervenor Kent Ries, Chapter 7 Trustee ("Trustee") of the bankruptcy estates of McClain Feed Yard, Inc. (Case No. 23-20084-swe), McClain Farms, Inc. (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. (Case No. 23-20086-swe) (collectively, the "Debtors"), respectfully submits this Reply Brief in further support of the Trustee's Motion for Reconsideration of the Court's March 27, 2026 Memorandum Opinion and Order [Dkt. No. 405] (the "Order") and in response to the Objection filed by Defendant Community Financial Services Bank ("CFSB") [Dkt. No. 423] (the "Objection").

**INTRODUCTION**

CFSB's Objection reduces to a single, repeated refrain: the Trustee has already had his chance and should not get another one. But this refrain, however vigorously pressed, cannot overcome the fundamental procedural reality that the Court's Order was the first time any court addressed the in pari delicto defense as applied to the Trustee's claims—a defense that, despite CFSB's protestations, raises issues of Texas substantive law that the Trustee has only now had the occasion to address in the posture the Court's ruling requires.

CFSB's Objection also reveals a troubling willingness to conflate the procedural question of whether the Trustee should be afforded leave to amend with the merits question of whether the Trustee's exceptions and theories would ultimately succeed. At this stage, the question is not whether the Trustee will prevail on his insider, adverse-interest, or contribution theories; the question is whether there exists a plausible path forward that warrants leave to amend rather than dismissal with prejudice. There does—and CFSB's arguments to the contrary are unpersuasive.

## ARGUMENT

### I.  **CFSB applies the wrong legal standard to the Trustee's Motion.**

#### A.  **Rule 54(b) Governs the Trustee's Motion.**

CFSB's lead legal argument contends that the Trustee's Motion must satisfy one of the narrow grounds for reconsideration set forth in Rule 59(e) and that the Trustee "offers none" of the traditional bases for relief under Rule 59(e). CFSB even argues that the Trustee does not contend the Court made a "manifest error of law or fact." This misstates both the procedural posture and the Trustee's arguments.

The Trustee's Motion is made under both Federal Rule of Civil Procedure 54(b) and Rule 59(e), made applicable here by Federal Rules of Bankruptcy Procedure 7054 and 9023. Rule 54(b) permits the Court to "reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Providence Title Co. v. Truly Title, Inc., No. 4:21-CV-147-SDJ, 2021 WL 5003273, at \*3 (E.D. Tex. Oct. 28, 2021)(quotation omitted).* Unlike Rule 59(e), Rule 54(b) is not confined to the three traditional grounds of intervening law, new evidence, or manifest error. Because the Order dismissed only the common-law claims while leaving the Trustee's statutory avoidance claims pending, it is an interlocutory order subject to Rule 54(b)'s broader standard.

Moreover, even under the Rule 59(e) framework, the Fifth Circuit applies Rule 15(a)'s standard where a party seeks reconsideration for the purpose of obtaining leave to amend following dismissal with prejudice. CFSB itself acknowledges this in its Objection, noting that in such cases, "the Fifth Circuit considers such motions under Rule 59(e) procedurally, but such considerations on whether to reopen a case to allow amendment follow similar standards as motions for leave under Rule 15(a)." The governing question, therefore, is whether the Rule 15(a) factors—including

undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, undue prejudice, and futility—support granting leave to amend. As shown below, they do.

### B.    *The Trustee Has Identified a Manifest Error of Law.*

Contrary to CFSB's assertion, the Trustee has identified what he respectfully submits is a manifest error of law: the application of in pari delicto without engaging in the case-by-case public-policy analysis that Texas substantive law requires. Texas law provides that even where parties are equally at fault, "relief will be granted if public policy demands it." *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 110 (Tex. App.—San Antonio 2011, pet. denied).

The Court acknowledged that Texas law considers public policy as part of the in pari delicto analysis. But the Court did not engage in the fact-specific public policy analysis Texas law requires. Instead, the Court effectively substituted the case-specific public policy analysis Texas law requires with the bankruptcy-specific, federal public-policy analysis anchored around interpreting § 541 to foreclose any argument that the Bankruptcy Code preempts common-law defenses otherwise available against a debtor, and thus, a trustee. This is the narrow focus of the Trustee's Motion for Reconsideration on the merits.

While the two policy analyses have overlapping parts and may appear to be the same at first glance, they are not identical. Critically, the federal public policy analysis that permeates the other circuit court opinions addressing *in pari delicto*, which opinions the Court found persuasive, omits a most critical inquiry: will permitting the claims to proceed benefit a wrongdoer? If a wrongdoer will not benefit from any recovery (*e.g.*, any amounts recovered will flow to innocent third-parties); the public will benefit by permitting the claims (*e.g.*, discouraging future misconduct; increasing innocent-creditors' recoveries); and permitting the claims will prevent joint-tortfeasors from escaping accountability, then *in pari delicto* should be rejected because there is no justification to apply it in such scenario. *In pari delicto* is intended to both restrict wrongdoers

from using the law to their advantage after disregarding it to others' disadvantage, and to promote the public interest. *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 110 (Tex. App.—San Antonio 2011, pet. denied) (citing *Lewis v. Davis*, 199 S.W.2d 146 (Tex. 1947)). Barring claims that will hold wrongdoers accountable without rewarding other wrongdoers does not accomplish the goal of excluding wrongdoers from taking advantage of the legal process, as no wrongdoers will be advantaged by permitting the claims to proceed. Nor will barring the claims promote the public interest. To the contrary, barring the claims may incentivize others to commit similar misconduct in the future, as they may think they, too, will avoid accountability. It also significantly impairs the ability of the Trustee to recover estate funds and increase creditor recoveries. This is exactly the opposite outcome *in pari delicto* is intended to achieve. And, for more than 100-years, Texas law has made clear *in pari delicto* does not apply to defeat claims that achieve the very goals *in pari delicto* exists to promote. *See Wright v. Wight & Wight*, 229 S.W. 881, 882 (Tex.Civ.App.—El Paso 1921)

## II. CFSB'S PROCEDURAL ARGUMENTS DO NOT DEFEAT LEAVE TO AMEND.

### A. The Trustee Has Not Had a Meaningful Opportunity to Address the Court's In Pari Delicto Ruling.

CFSB devotes considerable space to the argument that the Trustee "had over two years to research the in pari delicto doctrine" and "chose to stand on his Second Amended Complaint." CFSB further insists the Trustee made a "stunning admission" by acknowledging he "only now know[s] the specific facts that he must plead to defeat in pari delicto."

This argument mistakes strategic confidence for waiver. The Trustee's prior complaints were crafted in reliance on the prevailing law in this circuit—including *Vantage*, *Today's Destiny*, *Floyd*, *Chris Pettit*, and *Osherow*—which collectively held that in pari delicto either should not be resolved at the motion-to-dismiss stage or does not bar a trustee's claims where public policy favors

recovery. The Trustee was not only entitled to rely on this body of law but also on decades-old Fifth Circuit precedent that a plaintiff need not anticipate all potential affirmative defenses and plead factual allegations to overcome each and every one of them. *See Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (explaining affirmative defenses warrant dismissal only in the few cases in which it is apparent from the fact of the complaint that plaintiff could prove no set of facts consistent with his allegations that would overcome the defense); *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 471 (5th Cir. 2006) (same); *Accord U.S. ex rel. Coppock v. Northrop Grumman Corp.*, No. CIV.A. 398CV2143D, 2002 WL 1796979, at *11 (N.D. Tex. Aug. 1, 2002) ("In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint.").

Now that defendants have asserted *in pari delicto* and the Court has, for the first time in this lawsuit, ruled on the merits on any of the claims or defenses by granting dismissal based thereon–departing from most other Texas state courts and federal trial courts in this circuit as the Court itself acknowledged—the Trustee is entitled to amend his complaint to overcome *in pari delicto* on grounds beyond those already alleged and upon which most other courts have decided the issue in the Trustee's favor. The Fifth Circuit instructs that "dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). CFSB concedes that the two prior amendments were responsive to the defendants' motions to dismiss—not to a ruling on *in pari delicto* that had not yet been issued.

The Trustee has not had the opportunity to amend to respond to the Court's first ruling on a motion to dismiss in this case. Federal Rule of Civil Procedure 15(a) instructs that the Trustee

should be afforded at least one such opportunity. While CFSB focuses on the Trustee's initial amendments undertaken as a matter of right (accounting for the Trustee's stipulations with the defendants), Rule 15(a)(2) provides that even if a party amends one or more times as a matter of right under Rule 15(a)(1), leave should still be "freely given when justice so requires." Unless granting leave to amend would be futile–for example, where the allegations foreclose any possibility of recovering on the dismissed claims–dismissing claims with prejudice upon initial review under Rule 12(b) would be unjust. *Jacquez*, 801 F.2d at 792. Since the Trustee has set forth multiple potential scenarios that, if pleaded and proven, would overcome *in pari delicto*, it would be unjust to maintain dismissal of the trustee's common-law claims with prejudice. Justice therefore requires the Trustee be afforded at least one opportunity to amend.

### B.      CFSB's Argument That the Trustee Was on Notice of In Pari Delicto Is Beside the Point.

CFSB asserts that the Trustee "obviously knew" about CFSB's in pari delicto arguments because CFSB raised them in its first motion to dismiss, and the Trustee addressed them in his response. CFSB suggests this knowledge somehow creates an obligation to have anticipated and preemptively pleaded every conceivable exception to the defense before the Court ruled.

This argument confuses awareness of an opposing party's argument with the obligation to exhaust every possible response before a court has ruled. Plaintiffs are not required to plead in response to every conceivable defense before a court has even addressed that defense. The Trustee responded to CFSB's in pari delicto arguments in his briefing on the motion to dismiss and in oral argument. The Trustee argued, consistent with the weight of authority in this circuit, that public policy defeated the defense. The Court disagreed. That disagreement is precisely the kind of first-instance ruling to which a plaintiff is ordinarily afforded an opportunity to respond through amendment.

CFSB's suggestion that Rule 9011(b) concerns attach to the Trustee's characterization of the in pari delicto issue as having been "subsumed" among other challenges is both baseless and inappropriate. The Trustee is accurately describing the posture of briefing in which multiple defendants raised dozens of arguments across hundreds of pages and under competing state laws.

### C.      *The Rule Against Theories Seriatim Does Not Apply Here.*

CFSB argues a court may deny leave to amend when a party attempts to raise facts which were "available previous to the district court's opinion." Objection at 10-11 (citing *Stevens v. St. Tammany Parish Gov't*, 17 F.4th 563, 575 (5th Cir. 2021)). But *St. Tammany* is distinguishable. There, the plaintiff had received an adverse ruling on the basis of res judicata, attempted to amend, and received a second adverse ruling on the same issue before seeking a third attempt. The Fifth Circuit held the district court did not abuse its discretion in denying leave, stating: "Additionally, plaintiffs do not explain why any of the facts in the third amended complaint were not otherwise "available previous to the district court's opinion." *Id.* Here, the Trustee has received *one* adverse ruling on in pari delicto; has explained that the complaint does not exhaust every possible manner of overcoming *in pari delicto* because the present allegations would have overcome *in pari delicto* on their own under numerous prior opinions within this circuit; and has never been afforded an opportunity to amend and supplement its complaint with complimentary allegations that would support still additional reasons that *in pari delicto* does not defeat his claims.

### III.   CFSB'S ARGUMENTS ON THE MERITS OF THE TRUSTEE'S PROPOSED AMENDMENTS FAIL.

### A.      *The Trustee's Insider Theory as to CFSB Is Not Foreclosed.*

CFSB dismisses the Trustee's proposed insider allegations as "beside the point" and argues that the familial relationship between Leslie White (a CFSB employee) and McClain's children "does not" create an insider exception. CFSB characterizes the Trustee's recently received text-

---

**TRUSTEE'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION**

message evidence from CFSB as merely "additional detail" about a "close relationship" that was already alleged and rejected.

This argument misstates both the law and the facts. The Bankruptcy Code defines "insider" to include a "person in control of the debtor," 11 U.S.C. § 101(31)(B)(iii); and, in the Fifth Circuit, the determination of non-statutory insider status generally focuses on two factors: (1) the closeness of the relationship between the parties, and (2) whether the relevant transactions were conducted at arm's length. *In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 431 (Bankr. N.D. Tex. 2021).

The Trustee's new allegations go far beyond a generalized "close relationship." The text messages reveal that Leslie White—the mother of two of McClain's children (Meagan and Kinsey), who worked for the Debtors—was employed by CFSB; that she serviced the Debtors' accounts outside normal procedure; that she regularly sent private text messages to Meagan and Kinsey about overdrafts and banking issues; and that she ran interference within CFSB by making excuses for overdrafts and irregularities—all while acknowledging internally that CFSB "always lets him get away with stuff." Combined with the fact that the Debtors paid and separately received approximately $330 million from investors and family members who banked at CFSB, these facts support an inference that the transactions between the Debtors and CFSB were not conducted at arm's length and that CFSB bore a non-statutory insider relationship to the Debtors.

Whether these facts ultimately establish CFSB as an insider is a fact question that cannot be resolved at the motion-to-dismiss stage. What matters at this juncture is whether the Trustee has identified a *plausible* basis for amendment—and he has.

### B.    The Text-Message Evidence Is Not Merely "Cumulative."

CFSB argues that whatever "new" information the Trustee possesses "is not actually 'new' information at all" because it was "known or knowable" before the Second Amended Complaint was filed. CFSB is wrong. CFSB produced these text messages many months after the Second

Amended Complaint was filed. Whether this is "new" evidence or "cumulative" evidence is immaterial; Rule 54 does not require new evidence be introduced before a court can reconsider its interlocutory orders. And to be sure, though CFSB asserts otherwise, the Fifth Circuit has made clear that even dismissal with prejudice is an interlocutory order unless it resolves all claims or, if partial, is certified as final judgment under Rule 54(b). *Matter of Wood & Locker, Inc.*, 868 F.2d 139, 143 (5th Cir. 1989) (citation omitted) ("If the bankruptcy court has not certified as final an order that is a partial judgment within the meaning of Rule 54(b), the order will, by operation of the rule, remain interlocutory."); *Robinson v. Bridgewater Owners Ass'n, Inc.*, No. 3:21-CV-545-DPJ-FKB, 2022 WL 1112820, at *2 (S.D. Miss. Apr. 8, 2022) (noting the argument that an order is "final" because it dismissed some claims with prejudice is "without supporting authority" and holding partial dismissal with prejudice was not final judgment and therefore only subject to Rule on reconsideration).

Ultimately, the question is not whether the Trustee could theoretically have included these facts earlier; the question is whether the Trustee had reason to believe they were necessary to plead given the prevailing legal landscape. Under the law as it exists in Texas and has been applied in this circuit prior to the Order, the Trustee had no need to plead insider status as to CFSB—because the *in pari delicto* defense itself was not expected to be sustained at the motion-to-dismiss stage. Now that the Court has ruled otherwise, the Trustee should be permitted to supplement the complaint with additional facts that further defeat the defense. Rule 15(a) exists for precisely this purpose.

### C.   *Judicial Estoppel Does Not Bar the Trustee's Theories.*

CFSB's invocation of judicial estoppel is meritless. Most courts have identified at least two limitations on the application of the judicial estoppel doctrine: (1) it may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that

party must have convinced the court to accept that previous position. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 205-206 (5th Cir. 1999).

The Trustee has never taken the "inconsistent position" that CFSB could not be an insider. CFSB—in an effort to misdirect from the evidence produced in discovery that it knew of the check kiting and participated in the scheme, and of the familial ties that CFSB employee Leslie White had with Brian, Meagan and Kinsey McClain—twists an analogy. The Trustee alleged that Brian McClain drove the fraud with CFSB's active participation; the Trustee did not allege that CFSB played no role or could not be deemed an insider. Nor does the Trustee allege anywhere that Brian McClain was the "sole *actor*" for the Debtors, as CFSB claims. Objection at 9-10. None of the potential amendments offered in the Trustee's Motion are contravened by or inconsistent with the Trustee's current allegations and claims.

Judicial estoppel does not apply to bar a party from making arguments that were simply unnecessary under the prior legal landscape and have become necessary only because of a new ruling. To apply judicial estoppel here would effectively write Rule 15(a) out of the Federal Rules of Civil Procedure and punish the Trustee for having argued his case consistent with the law as it existed—an outcome that the doctrine was never intended to produce.

### D.      *Prejudice to CFSB Does Not Warrant Denial.*

CFSB argues it would suffer "undue prejudice" because it has "incurred substantial attorneys' fees" and its "witnesses have already been deposed." Courts within the Fifth Circuit have consistently held that the normal litigation costs of defending a case do not constitute undue prejudice sufficient to deny leave to amend. *See, e.g., Babin v. Caddo E. Ests. I, Ltd.*, No. 10-896, 2012 WL 3310017, at *1 (E.D. La. Aug. 13, 2012) (granting motion to amend despite argued prejudice of additional costs because that is not sufficient to establish undue prejudice); *Richards' Realty Co., L.L.C. v. Paramount Disaster Recovery, Inc.*, No. 06-2396, 2008 WL 440325, at *3

(E.D. La. Feb. 8, 2008) (Vance, J.) (stating that continued expenditure of substantial litigation resources does not establish undue prejudice). One deposition—not even yet completed—has occurred in this matter: a corporate representative witness of CFSB (CFSB designated two witnesses) that has not even been completed. The deposition included the substantive merits of the case—testimony that will remain relevant regardless of whether the Trustee amends.

## IV.   THE CONTRIBUTION CLAIM IS NOT BARRED AND IS NOT FUTILE.

CFSB does not separately address the Trustee's proposed contribution claim under Texas Civil Practice and Remedies Code Chapter 33. This silence is telling. The court in *In re Today's Destiny, Inc.*, 388 B.R. 737, 750 (Bankr. S.D. Tex. 2008), held "as a matter of law" that in pari delicto does not bar a trustee's contribution claim against alleged joint tortfeasors. Such a claim arises from the same conduct and transactions already described in the Trustee's complaint and would relate back under Federal Rule of Civil Procedure 15, avoiding any limitations issues. Because this claim is legally immune from the in pari delicto defense, its addition alone would render amendment non-futile. *See McLemore v. Lumen Techs., Inc.*, No. 25-30264, 2026 WL 252698, at *4 (5th Cir. Jan. 30, 2026).

### CONCLUSION

For the foregoing reasons, CFSB's Objection provides no basis for denying the Trustee's Motion for Reconsideration. The Trustee respectfully requests that the Court grant the Motion, vacate the Order as to CFSB, deny CFSB's motion to dismiss or permit the Trustee leave to amend, and grant such other and further relief as Court deems just and proper.

Dated: May 8, 2026

Respectfully submitted,

*/s/ Alan Dabdoub*

Alan Dabdoub
State Bar No. 24056836
adabdoub@lynnllp.com
P. Campbell Sode
State Bar No. 24134507
csode@lynnllp.com
Farsheed Fozouni
State Bar No. 24097705
ffozouni@lynnllp.com
Steven G. Gersten
State Bar No. 24087579
sgersten@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:    214-981-3800
Facsimile:    214-981-3839

Hudson M. Jobe
State Bar No. 24041189
hjobe@jobelawpllc.com
**JOBE LAW PLLC**
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
Telephone:    214-807-0563

**SPECIAL COUNSEL TO THE TRUSTEE**